CHAPMAN AND CUTLER LLP
1270 Avenue of the Americas
New York, New York 10020
Telephone: (212) 655-6000
Facsimile: (212) 697-7210
Michael Friedman
David T. B. Audley

*Counsel to Petitioning Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------X
                                                            :
In re                                                       :    **Chapter 11**
                                                            :
**WYTHE BERRY FEE OWNER LLC,**                              :    **Case No. 22-11340**
                                                            :
Debtor.[1]                                                  :
                                                            :
------------------------------------------------------------X

**STATEMENT ON INVOLUNTARY PETITION**
**AGAINST WYTHE BERRY FEE OWNER LLC**

       Mishmeret Trust Company Ltd., solely in its capacity as Trustee ("**Mishmeret**" or the "**Trustee**") of the Series C Notes (as defined below), Yelin Lapidot Provident Funds Management Ltd., The Phoenix Insurance Company Limited and Klirmark Opportunity Fund III L.P. (each, a "**Petitioning Creditor**" and together, the "**Petitioning Creditors**") have filed an involuntary petition (the "**Petition**") pursuant to section 303 of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") and hereby state as follows:

**The Petitioning Creditors' Guaranty Claims**

       1.     The Petitioning Creditors' claims arise from a guaranty (described below) of obligations arising under certain Series C Notes (the "**Series C Notes**" and the holders thereof,

---

[1] The Debtor's federal tax identification number is currently unknown to the Petitioning Creditors. The address of the Debtor's principal place of business is 55 Wythe Avenue, Brooklyn, New York 11249.

the "**Series C Noteholders**"), issued in the original principal amount of NIS 617,970,000 pursuant to that certain Deed of Trust dated as of February 19, 2017 (as amended, restated, supplemented, or otherwise modified from time to time, the "**Deed of Trust**"), the original and English translation of which are attached hereto as Exhibit A, between All Year Holdings Limited, a company registered under the laws of the British Virgin Islands ("**All Year Holdings**") and the Trustee.

2.  On February 28, 2017, Wythe Berry Fee Owner LLC (the "**Debtor**") executed that certain Guaranty of Payment (the "**Guaranty**")[2] attached hereto as Exhibit B, in favor of the Trustee, pursuant to which the Debtor guaranteed to the Trustee and the Series C Noteholders, among other things, "the prompt payment and performance of all debts, obligations and liabilities of every kind and character of [All Year Holdings], whether now or hereafter advanced, as the same shall become due and payable under the Bond Documents, whether at stated maturity, by acceleration or otherwise, and any and all sums of money that, at the time, may have become due and payable under the provisions of the Deed of Trust, the Security Agreement or any other Bond Document, and the due and prompt performance of all of the terms, agreements, covenants and conditions of the Deed of Trust, Security Agreement and the other Bond Documents [ . . . ]"

3.  Following the occurrence of certain Events of Default (as defined in the Deed of Trust), the Series C Noteholders approved a declaration, attached hereto as Exhibit C, that All Year Holdings was in default on its obligations under the Deed of Trust as of February 17, 2021, and, pursuant to the Deed of Trust, all obligations thereunder were accelerated and became immediately due and payable. On that same day, counsel to the Trustee delivered notice of such declaration to counsel to All Year Holdings and the Guarantor, attached hereto as Exhibit D.

---

[2] Capitalized terms used but not defined herein have the meanings given to them in the Guaranty.

Pursuant to the Guaranty, all such amounts were immediately rendered due and payable on such date without demand or notice. On September 21, 2022, the Trustee delivered that certain Demand for Payment under Deed of Trust dated February 19, 2017 and Guaranty dated February 28, 2017 (the "**Demand Letter**"), attached hereto as Exhibit E. The obligations of the Debtor under the Guaranty are unsecured. Consequently, pursuant to the Guaranty, Mishmeret and the Series C Noteholders have unsecured claims against the Debtor for the entirety of the amount due on the Series C Notes, which in the aggregate is no less than NIS 667,758,000, which as of the date hereof is equivalent to $188,739,000, inclusive of all interest accrued prior to the date hereof (the "**Petition Date**"), plus all fees and expenses accrued prior to the Petition Date. The claim of each Series C Noteholder under the Guaranty is equal to its pro rata share (calculated as the amount of Series C Notes held by such Series C Noteholder divided by the total amount of Series C Notes) of the total claims of all Series C Noteholders under the Guaranty. As shown on Schedule A, each Series C Noteholder that is a Petitioning Creditor holds an unsecured claim against the Debtor under the Guaranty that exceeds the minimum amount of $18,600.00 under section 303(b)(1) of the Bankruptcy Code.[3]

## The Trustee's Mortgage Claims

4.  Pursuant to that certain Amended and Restated Promissory Note, dated as of February 28, 2017 (as amended, restated, supplemented or otherwise modified from time to

---

[3] As of the Petition Date, the total amount outstanding under the Series C Notes is not less than $188,739,000. Although the Petitioning Creditors have not sought an appraisal of the William Vale Hotel (as defined herein), the Series C Noteholders have marketed the Note and Mortgage (both as defined herein) in excess of 12 months. During that time, the highest offer received by the Series C Noteholders for the Note and Mortgage was $162,000,000. Based on such value, even if the collateral for the Note is treated as collateral for the Series C Notes (which the Petitioning Creditors believe should not be the case) the Series C Noteholders' aggregate unsecured claim would still be approximately $26,739,000. Therefore, because each of the Petitioning Creditors holds between 6.594% and 13.485% of the total amount of Series C Notes, the pro rata share of the aggregate unsecured claim held by each Petitioning Creditor is significantly in excess of the statutory minimum of $18,600.00 under section 303(b)(1) of the Bankruptcy Code.

time, the "**Note**") attached hereto as Exhibit F, between All Year Holdings and the Debtor, All Year Holdings made a loan (the "**Mortgage Loan**") to the Debtor in the original principal amount of $166,320,000.00. The Mortgage Loan was secured by, among other things, a first lien mortgage on the Debtor's fee simple interest in a hotel property (the "**William Vale Hotel**") located in Brooklyn, New York (the "**Mortgage**") attached hereto as Exhibit G, having an address of 55 Wythe Avenue, Brooklyn, NY (the "**Property**").

5. To secure the payment of the indebtedness arising under the Deed of Trust and the performance of all obligations, covenants, agreements and undertakings of All Year Holdings to Mishmeret arising in connection therewith, All Year Holdings granted to Mishmeret a security interest in certain rights in Collateral defined and described in that certain Security Agreement – Collateral Assignment and Pledge of Secured Notes dated as of February 28, 2017 (together with all collateral security documents executed therewith, including but not limited to collateral assignments of mortgages and assignments, the "**Collateral Assignment**") attached hereto as Exhibit H, which Collateral was primarily comprised of the Mortgage Loan and the Mortgage.

6. Following All Year Holdings' default under the Deed of Trust and, in consideration for Mishmeret's willingness to forebear from the exercise of remedies thereunder and under the Collateral Assignment, All Year Holdings agreed to sell and assign each item of Collateral (as defined in the Collateral Assignment) to Mishmeret, including the Mortgage Loan and the Mortgage, pursuant to that certain Assignment of Consolidated Leasehold Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing (the "**Assignment of Mortgage**") and that certain Assignment of Loan Documents (the "**Assignment of Loan Documents**" and, together with the Assignment of Mortgage, the "**Assignments**") both dated as

of March 16, 2021 between All Year Holdings and Mishmeret, on behalf of the Series C Notes, attached hereto as <u>Exhibit I</u> and <u>Exhibit J</u>, respectively.

7. As a result of the Assignments, Mishmeret became a creditor of the Debtor holding a secured claim against the Debtor in the amount of the value of the Property and an unsecured deficiency claim against the Debtor believed to be in excess of the statutory minimum amount of $18,600.00 under section 303(b)(1) of the Bankruptcy Code.

8. The Petitioning Creditors have brought the Petition against the Debtor **<u>solely in their capacity as unsecured creditors</u>**.

Dated: October 6, 2022
New York, New York

/s/ Michael Friedman
CHAPMAN AND CUTLER LLP
1270 Avenue of the Americas
New York, New York 10020
Telephone: (212) 655-6000
Facsimile: (212) 697-7210
Michael Friedman
David T. B. Audley

*Counsel to the Petitioning Creditors*

## Schedule A

| Noteholder | Principal Amount of Series C Notes | Percentage of Total |
|---|---|---|
| Mishmeret Trust Company Ltd., as Trustee, representing all other Series C Noteholders not party to the petition | NIS 444,706,079.60 | 70.088% |
| Yelin Lapidot Provident Funds Management Ltd. | NIS 56,966,249.17 | 9.833% |
| The Phoenix Insurance Company Limited | NIS 38,203,517 | 6.594% |
| Klirmark Opportunity Fund III L.P. | NIS 78,124,154.23 | 13.485% |