**EXHIBIT D**

**Notice of Default**

**Chapman and Cutler LLP**

Attorneys at Law · Focused on Finance®

Michael Friedman
Partner

1270 Avenue of the Americas
30th Floor
New York, New York  10020-1708

D 212.655.2508
F 212.655.2509
friedman@chapman.com

February 18, 2021

**VIA E-Mail**

David Herman, Esq.
Weil Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153

Dear Mr. Herman:

  Reference is hereby made to that certain Deed of Trust dated as of February 19, 2017 (as amended, restated, supplemented, or otherwise modified from time to time, the "*Deed of Trust*"), between All Year Holdings Limited, a company registered under the laws of the British Virgin Islands ("*All Year*") and Mishmeret Trust Services Company Ltd., a company registered under the laws of the State of Israel (the "*Trustee*"), that certain Amended and Restated Promissory Note dated as of February 28, 2017 (together with all security documents executed therewith, including but not limited to mortgages and assignments, the "*WV Loan*"), between Wythe Berry Fee Owner LLC, as Borrower ("*Fee Owner*") and All Year, as Lender and that certain Guaranty of Payment dated as of February 28, 2017 (as amended, restated, supplemented, or otherwise modified from time to time, the "*Guaranty*"), between Fee Owner, as Guarantor and the Trustee.  We write to you in our capacity as counsel to the Trustee in connection with the Deed of Trust.

  All defined terms used herein shall have the same meanings herein as in the Deed of Trust unless otherwise defined herein.

  As you know, in accordance with the vote of the holders of bonds issued pursuant to the Deed of Trust (the "*Series C Bondholders*"), as published by the Trustee on February 17, 2021, as a result of certain Events of Default that have occurred and are continuing under the Deed of Trust, **the entire debt owed to the Series C Bondholders pursuant to the Deed of Trust has been accelerated and is immediately due and payable**.

  As you are also aware, the Deed of Trust is secured by, principally, a collateral assignment of the WV Loan and a mortgage relating to same over that certain property known as the William

Vale Hotel and Complex (the "*Property*") owned by Fee Owner, which Property has been leased to Wythe Berry LLC ("*Lessee*") under that certain Ground Lease dated February 28, 2017 (the "*Lease*") between Fee Owner and Lessee.

Pursuant to the Deed of Trust, All Year has a responsibility to the Trustee to preserve the Property and the value thereof and to provide to the Trustee information and access to the Property and information in respect of same upon the Trustee's request. All Year has a further obligation to take all commercially reasonable actions with respect to the Property and the Lessee to ensure that the Property and all operations related to such Property are being appropriately managed.

Notwithstanding numerous prior requests from the Trustee to All Year and Fee Owner, the Trustee understands that no material action has been taken by All Year or Fee Owner to exercise their rights under the Lease and obtain, let alone provide to the Trustee, even the most customary and commercial information and access to the Property as required under the Deed of Trust and related agreements and that All Year and Fee Owner have been entirely delinquent in their management and oversight of the Property.

Furthermore, the Trustee has been made aware that the Lessee has not complied with its rental obligations under Section 2.1 of the Lease having come due on February 1, 2021 and, as you know, this failure has resulted in a further Event of Default under the Deed of Trust. As you are also aware, All Year's obligation to satisfy its payment obligations under the Deed of Trust are not dependent on whether or not the Lessee satisfies its rental payment obligations under the Lease. All Year's failure to make any payment required to be made by it under the Deed of Trust will constitute a further Event of Default thereunder.

The Trustee expects and demands that All Year and Fee Owner take all reasonable commercial actions to enforce all available rights and remedies under the Lease against the Lessee, which thus far All Year and Fee Owner have been unable or unwilling to do. While All year has informed the Trustee that it sent a letter to the Lessee over a week ago, the Trustee has not received any update regarding such letter and if any response was received. Moreover, we note that this letter was sent long after All Year was notified that the Lessee did not intend to pay the required rental payment and only after the Trustee indicated that it was ready to send a letter to the Lessee as power of attorney for All Year. While the Trustee recognizes that All Year is addressing many other issues, the Trustee cannot permit the existing situation at the Property to continue thereby exposing the Series C Bondholders to increased damages and risks.

As a consequence of the foregoing and in order to satisfy All year's obligations to the Trustee, we hereby insist that All Year:

1. Obtain and provide the information identified on **Exhibit A** hereof as soon as possible.

2. Take all commercially reasonable action within All Year's power to cause the Lessee to permit the Trustee (either in its capacity as Trustee or as a power of attorney for Lessor) and/or its agents or representatives, including external advisors, reasonable access to the Property for inspection of the physical premises as well as business records, hardware, computer systems, and other assets located thereon.

The continued failure of All Year and Fee Owner to comply with these basic requests can only be viewed as a derogation of All year's duties to preserve the Property and the value thereof as required by the Deed of Trust.

The Trustee will continue to monitor the default situation very carefully and will decide in its sole discretion on a "day-by-day" basis whether or not to exercise further rights and remedies under the Deed of Trust and Guaranty. We remind you, however, that nothing in this letter, any temporary arrangement or agreement, ongoing discussions or negotiations between the Trustee, on the one hand, and All Year and/or Fee Owner, on the other hand, nor any delay on the part of the Trustee in exercising any of its rights and remedies under the Deed of Trust, Guaranty and/or applicable law, shall directly or indirectly: (i) create any obligation to forbear from taking any enforcement action, (ii) constitute a consent to or waiver of any past, present or future Default or Event of Default or other violation of any provisions of the Deed of Trust or Guaranty, (iii) amend, modify or operate as a waiver of any provision of the Deed of Trust or Guaranty or any right, power, privilege or remedy of the Trustee thereunder or under applicable law or constitute an agreement to forbear or to restructure All Year's obligations in any respect or otherwise modify the capital structure of All Year, or (iv) constitute a course of dealing or other basis for altering any rights or obligations of the Trustee under the Deed of Trust or All Year's obligations or obligations of any other party under the Deed of Trust, Guaranty or any other contract or instrument. Nothing contained in this letter shall confer on All Year or any other person any right to notice or cure periods with respect to any Event of Default.

The Trustee may exercise its rights, powers, privileges and remedies under the Deed of Trust and Guaranty, all of which are reserved and are not affected hereby, at any time in its sole and absolute discretion without further notice. No oral representations or course of dealing on the part of the Trustee or any of its officers, employees or agents, and no failure or delay by the Trustee with respect to the exercise of any right, power, privilege or remedy under any of the Deed of Trust or the Guaranty or applicable law shall operate as a waiver thereof, and the single or partial exercise of any such right, power, privilege or remedy shall not preclude any later exercise of any other right, power, privilege or remedy.

[Signature Pages Follow]

3

Very truly yours,

CHAPMAN AND CUTLER LLP

By: _____
Michael Friedman

cc:   All Year Holdings Limited
      Wythe Berry Fee Owner LLC

Exhibit A
Information Requests

1. Signed financial reports of Lessee in All Year's or Wythe Berry Fee Owner's possession received from the Lessee for the years 2019 and 2020 as well as all documents related to any loans under the U.S. Small Business Administration's Paycheck Protection Program or other government program that Lessee or any of its affiliates received or anticipates receiving.

2. Any information in All Year's or Wythe Berry Fee Owner's possession relating to any business practice changes or other measures taken by Lessee to address the decreased commercial activity at the William Vale Hotel and Complex, including PPP or other similar loans or financial and/or governmental accommodations

3. All current agreements (including amendments and supplements, if any) and material correspondence between and among All Year, Fee Owner, Lessee, Espresso Management and/or William Vale Hotel LLC.

4. Any agreements (including amendments and supplements, if any) that may exist between Fee Owner and any of its equity holders.

5. Profit and loss, cash flow and balance sheet information and statements for the Property covering the previous three (3) years, which must include food & beverage, banquet operations and commercial areas, in each case in the aggregate and by category.

6. A rent schedule for the Property, including a copy of each rental agreement, together with amendments.

7. Detailed breakdown of labor cost by F.T.E positions, employer cost and benefit for each position.

8. Detailed architectural plans of the Property and any plans regarding the surrounding area.

9. Detailed documentation regarding mechanical, electrical and plumbing systems, definition, purpose, last inspection duration of warranties and guarantees, log of preventing maintenance.

10. Banquet department rent schedule or income per sqf. for the last three (3) years.

11. Information regarding Market segments, r/n, ADR per segment. Weekday/Weekends, seasons etc.

12. Marketing information detailing not less than fair conventions effect, days of conventions and fairs each year.

13. Detail regarding the revenue management system at the Property.

[Exhibit A]

14. Quality survey for the last year results.

15. Information regarding food and beverage outlets description, covers per months for each, average food expense, average beverage expense and menus.

16. Comp set info for the prior three (3) years.

17. Current furniture, fixtures and equipment reserve, utilization and account balance.

18. PIP report.

19. Insurance Policy

[Exhibit A]