**Hearing Date: December 6, 2022 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: November 17, 2022**

Kristopher M. Hansen
Nicholas A. Bassett
Jason M. Pierce
Will Clark Farmer
**PAUL HASTINGS LLP**
200 Park Avenue
New York, New York 10166
Telephone: (212) 318-6000
Facsimile: (212) 319-4090
        krishansen@paulhastings.com
        nicholasbassett@paulhastings.com
        jasonpierce@paulhastings.com
        willfarmer@paulhastings.com

*Counsel to Zelig Weiss*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------------x
                                        :
In re:                                  :    Chapter 11
                                        :
WYTHE BERRY FEE OWNER LLC,              :    Case No. 22-11340 (MG)
                                        :
        Alleged Debtor.                 :
                                        :
-------------------------------------------------------x
```

### NOTICE OF ZELIG WEISS'S MOTION (I) TO DISMISS INVOLUNTARY
### PETITION AND (II) TO THE EXTENT NECESSARY,
### <u>TO INTERVENE AS AN INTERESTED ENTITY</u>

**PLEASE TAKE NOTICE** that, on October 27, 2022, Zelig Weiss, by and through his

undersigned counsel, filed with the United States Bankruptcy Court for the Southern District of

New York (the "<u>Bankruptcy Court</u>") *Zelig Weiss's (I) to Dismiss Involuntary Petition and (II) to*

*the Extent Necessary, to Intervene as an Interested Entity* (the "<u>Motion</u>").

**PLEASE TAKE NOTICE** that, a hearing to consider the relief sought in the Motion will be held on **December 6, 2022 at 10:00 a.m.** (Prevailing Eastern Time) before the Honorable Martin Glenn, Chief United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Courtroom No. 523, New York, New York 10004 (the "Hearing").

**PLEASE TAKE FURTHER NOTICE** that, any objections shall be filed in writing through the Clerk's ECF system, with to copies delivered to the Honorable Martin Glenn at the United States Bankruptcy Court for the Southern District of New York, Courtroom 523, One Bowling Green, New York, New York 10004, and a copy served upon (i) the Petitioning Creditors counsel, Michael Freidman, Esq., David T. B. Audley, Esq. and Aaron M. Krieger, Esq.,  Chapman and Cutler LLP, 1270 Avenue of the Americas, New York, NY 10020, (ii) co-counsel to All Year Holdings Limited and YGWV LLC, Matthew Goren, Esq., Richard Gage, Esq. and Robert Berezin, Esq., Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153, and Janice Goldberg, Esq. and Stephen Selbst, Esq., Herrick Feinstein LLP, 2 Park Avenue, New York, NY 10016, and (iii) the undersigned counsel on or before, **November, 17, 2022.**

**PLEASE TAKE FURTHER NOTICE** that due to the COVID-19 pandemic, the Hearing will be conducted using Zoom for Government. Parties should not appear in person and those wishing to appear or participate at the Hearing (whether "live" or "listen only") must make an electronic appearance prior to **4:00 p.m. (Prevailing Eastern Time) on December 5, 2022** by using the following link: https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl. Instructions for making an eCourtAppearance and additional information on the Court's Zoom procedures can be found at https://www.nysb.uscourts.gov/content/chief-judge-martin-glenn.

LEGAL_US_E # 166525862.3

Dated: October 27, 2022           Respectfully Submitted
      New York, New York

/s/ Nicholas A. Bassett
_____
Kristopher M. Hansen
Nicholas A. Bassett
Jason M. Pierce
Will Clark Farmer
**PAUL HASTINGS LLP**
200 Park Avenue
New York, New York  10038
Telephone: (212) 318-6000
Facsimile:  (212) 319-4090
      krishansen@paulhastings.com
      nicholasbassett@paulhastings.com
      jasonpierce@paulhastings.com
      willfarmer@paulhastings.com

*Counsel to Zelig Weiss*

**Hearing Date: December 6, 2022 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: November 17, 2022**

Kristopher M. Hansen
Nicholas A. Bassett
Jason M. Pierce
Will Clark Farmer
**PAUL HASTINGS LLP**
200 Park Avenue
New York, New York 10166
Telephone: (212) 318-6000
Facsimile:  (212) 319-4090
         krishansen@paulhastings.com
         nicholasbassett@paulhastings.com
         jasonpierce@paulhastings.com
         willfarmer@paulhastings.com

*Counsel to Zelig Weiss*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x
:
In re:                                                  :    Chapter 11
                                                        :
WYTHE BERRY FEE OWNER LLC,           :    Case No. 22-11340 (MG)
                                                        :
          Alleged Debtor.                      :
                                                        :
-------------------------------------------------------x

## ZELIG WEISS'S MOTION (I) TO DISMISS INVOLUNTARY PETITION AND
## (II) TO THE EXTENT NECESSARY, TO INTERVENE AS AN INTERESTED ENTITY

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT .................................................................................................. 1

BACKGROUND ..................................................................................................................... 3

RELIEF REQUESTED............................................................................................................ 7

JURISDICTION ..................................................................................................................... 7

ARGUMENT .......................................................................................................................... 7

I.     WEISS SHOULD BE PERMITTED TO CONTEST THE PETITION ................................. 7

   A.     Weiss Should Be Permitted to Seek Dismissal Under Section 303 of the
Bankruptcy Code Due to Fee Owner's Conflict of Interest................................. 8

   B.     Weiss Either Has Standing to Seek Dismissal Under Section 1112(b) and/or
Section 305(a) or Should Be Permitted to Intervene For Such Purpose........................... 12

II.     THE PETITION SHOULD BE DISMISSED ................................................................. 15

   A.     The Court Should Dismiss the Petition for "Cause" Pursuant to Section 1112(b)
of the Bankruptcy Code ...................................................................................... 15

   B.     Alternatively, the Court Should Abstain and Dismiss the Petition Pursuant to
Section 305 of the Bankruptcy Code ................................................................... 19

   C.     The Court Should Dismiss the Petition Pursuant to Section 303 of the
Bankruptcy Code and Rule 12(b)(6) of the Federal Rules of Civil Procedure
Because the Petitioning Creditors Fail to State a Claim Upon Which Relief
May Be Granted.................................................................................................... 21

RESERVATION OF RIGHTS ................................................................................................. 24

CONCLUSION...................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brennan v. N.Y.C. Board of Education*,
    260 F.3d 123 (2d Cir. 2001)..................................................................................... 13

*In re A & J Quality Diamonds, Inc.*,
    377 B.R. 460 (Bankr. S.D.N.Y. 2007) ..................................................................... 22

*In re Averil, Inc.*,
    33 B.R. 562 (Bankr. S.D. Fla. 1983)........................................................................ 22

*In re BDC 56 LLC*,
    330 F.3d 111 (2d Cir. 2003)..................................................................................... 23

*In re Best Home Performance of Connecticut, LLC*,
    No. 19-20688, 2019 Bankr. LEXIS 3682 (Bankr. D. Conn. Dec. 2, 2019).......... 9, 10

*In re BH S & B Holdings, LLC*,
    439 B.R. 342 (Bankr. S.D.N.Y. 2010) ..................................................................... 15

*In re C-TC 9th Avenue Partnership*,
    113 F.3d 1304 (2d Cir. 1997)................................................................................... 15

*In re Fox*,
    No. 93 C 5773, 1994 WL 484596 (N.D. Ill. Sept. 2, 1994)..................................... 21

*In re Integrated Telecom Express, Inc.*,
    384 F.3d 108 (3d Cir. 2004)..................................................................................... 16

*In re Ionosphere Clubs, Inc.*,
    101 B.R. 844 (Bankr. S.D.N.Y. 1989) ................................................................ 13, 14

*In re Jr. Food Mart of Arkansas, Inc.*,
    234 B.R. 420 (Bankr. E.D. Ark. 1999) .................................................................... 18

*In re MarketXT Holdings Corp.*,
    347 B.R. 156 (Bankr. S.D.N.Y. 2006) ..................................................................... 18

*In re McMeekin*,
    16 B.R. 805 (Bankr. D. Mass. 1982) ....................................................................... 22

*In re Monitor Single Lift I, Ltd.*,
    381 B.R. 455 (Bankr. S.D.N.Y. 2008)..................................................................... 19

*In re Mountain Dairies, Inc.*,
    372 B.R. 623 (Bankr. S.D.N.Y. 2007)................................................................ 20, 23

*In re Murray*,
    543 B.R. 484 (Bankr. S.D.N.Y. 2016), *aff'd*, 565 B.R. 527 (S.D.N.Y. 2017),
    *aff'd*, 900 F.3d 53 (2d Cir. 2018) ........................................................................... 17

*In re Murray*,
    900 F.3d 53 (2d Cir. 2018)................................................................................... 15, 16

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

*In re National Republic Co.*,
  109 F.2d 167 (7th Cir. 1940) ................................................................. 8

*In re New Era Co.*,
  115 B.R. 41 (Bankr. S.D.N.Y. 1990), *aff'd*, 125 B.R. 725 (S.D.N.Y. 1991) ......................... 12

*In re Newbury Operating LLC*,
  No. 20-12976, 2021 WL 1157977 (Bankr. S.D.N.Y. Mar. 25, 2021) ......................... 15, 17, 18

*In re Oakland Popcorn Supply, Inc.*,
  213 F. Supp. 665 (N.D. Cal. 1963) .......................................................... 8

*In re Persico Contracting & Trucking, Inc.*,
  No. 10-22736, 2010 WL 3766555 (Bankr. S.D.N.Y. Aug. 20, 2010) .............................. 20, 23

*In re Public Service Co. of New Hampshire*,
  88 B.R. 546 (Bankr. D.N.H. 1988) ......................................................... 14

*In re Synergistic Technologies, Inc.*,
  No. 07-31733, 2007 WL 2264700 (Bankr. N.D. Tex. Aug. 6, 2007) .......................... 9

*In re T.P. Herndon & Co.*,
  87 B.R. 204 (Bankr. M.D. Fla. 1988) ....................................................... 22

*In re Taberna Preferred Funding IV, Ltd.*,
  594 B.R. 576 (Bankr. S.D.N.Y. 2018) ...................................................... 16

*In re Westerleigh Development Corp.*,
  141 B.R. 38 (Bankr. S.D.N.Y. 1992) ................................................. 8, 9, 10

*Lynch v. Barnard*,
  590 B.R. 30 (E.D.N.Y. 2018) .............................................................. 15

**Statutes**

11 U.S.C. § 101(15) ......................................................................... 14

11 U.S.C. § 101(41) ......................................................................... 14

11 U.S.C. § 105(a) ........................................................................... 1

11 U.S.C. § 1109(b) ......................................................................... 13

11 U.S.C. § 1112(b) ..................................................................... passim

11 U.S.C. § 1112(b)(1) ...................................................................... 15

11 U.S.C. § 303 ........................................................................... 1, 7

11 U.S.C. § 303(b) ................................................................. 1, 3, 20, 21

11 U.S.C. § 303(b)(1) ....................................................................... 22

11 U.S.C. § 303(b)(2) ....................................................................... 21

11 U.S.C. § 303(d) .................................................................. 2, 7, 8, 18

iv

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

11 U.S.C. § 305(a)(1)...................................................................................................... passim

28 U.S.C. § 1334 ..................................................................................................................... 7

28 U.S.C. § 1408 ..................................................................................................................... 7

28 U.S.C. § 1409 ..................................................................................................................... 7

28 U.S.C. § 157(b) .................................................................................................................. 7

**Rules**

Fed. R. Bankr. P. 1011 ............................................................................................................ 1

Fed. R. Bankr. P. 1011(b) ..................................................................................................... 14

Fed. R. Bankr. P. 1018 ......................................................................................................... 13

Fed. R. Bankr. P. 2018(a) ............................................................................................... passim

Fed. R. Bankr. P. 7024 ..................................................................................................... 8, 13

Fed. R. Civ. P. 12(b)(6) ..................................................................................................... 1, 21

Fed. R. Civ. P. 24 ................................................................................................................. 13

Zelig Weiss ("Weiss"), the owner of 50% of the membership interests in Wythe Berry
Member LLC ("Member LLC"), which, in turn, wholly owns and controls the alleged debtor,
Wythe Berry Fee Owner LLC ("Fee Owner"), by and through his undersigned counsel, hereby
submits this motion (this "Motion") for entry of an order, pursuant to sections 105(a), 303,
305(a)(1) and 1112(b) of title 11 of the United States Code, 11 U.S.C. § 101-1532 (the
"Bankruptcy Code"), Rules 1011 and 2018(a) of the Federal Rules of Bankruptcy Procedure (the
"Bankruptcy Rules") and Rule 12(b)(6) of the Federal Rules of Civil Procedure (incorporated by
reference through Bankruptcy Rule 1011), (i) dismissing the involuntary petition [ECF No. 1] (the
"Petition"), filed on October 6, 2022 against Fee Owner by Mishmeret Trust Company Ltd., solely
in its capacity as Trustee for the Series C Notes[1] (the "Trustee"), Yelin Lapidot Provident Funds
Management Ltd. ("YLP"), The Phoenix Insurance Company Limited ("Phoenix") and Klirmark
Opportunity Fund III L.P. ("Klirmark" and, together with YLP and Phoenix, the
"Noteholder Petitioning Creditors" and, together with the Trustee, collectively, the
"Petitioning Creditors"), or, alternatively, abstaining from consideration of the Petition and
dismissing this case, and (ii) to the extent necessary, permitting Weiss to intervene in this case as
an interested entity for all purposes, including to contest the Petition on the grounds set forth
herein. In support of this Motion, Weiss respectfully states as follows:

## PRELIMINARY STATEMENT

1.     This involuntary case is a blatant forum-shopping tactic on the part of the
Petitioning Creditors, betrayed by their patently defective Petition that attempts to divvy up the
Trustee's claim under the Guaranty[2] to manufacture standing under section 303(b) of the

---

[1]   Capitalized terms used but not defined herein shall have the meanings given to such terms in the *Statement on
Involuntary Petition Against Wythe Berry Fee Owner LLC* [ECF No. 2] (the "Petitioning Creditors' Statement").

[2]   A copy of the Guaranty is attached to the Petitioning Creditors' Statement as Exhibit B.

Bankruptcy Code. The Trustee first declared certain events of default under the Deed of Trust on February 17, 2021, then waited more than 19 months to issue Fee Owner a demand for payment under the Guaranty. For nearly 10 months after the Series C Bonds went into default, the Trustee was at liberty to pursue all available remedies against All Year outside the bankruptcy process. Then, for more than an additional 9 months after All Year became subject to the automatic stay upon filings its voluntary chapter 11 case, the Trustee could have sought payment of All Year's guaranteed obligations from Fee Owner, including by commencing a lawsuit or foreclosure action in state court. The Trustee idly waited until now—in the home stretch of All Year's own bankruptcy case—to exercise alleged remedies against Fee Owner, in a transparent effort to co-opt the bankruptcy system, and this Court, as its personal debt collection agency.

2.      As the Court is aware, Weiss is the 50% owner of Member LLC, which is the sole member of Fee Owner. Although section 303(d) of the Bankruptcy Code provides that ordinarily only the alleged debtor itself (Fee Owner) may contest an involuntary petition, courts have created an exception to this rule where the alleged debtor is incapable of faithfully responding to the petition due to a debilitating conflict of interest. Such a conflict exists here because All Year, which purports to indirectly control Fee Owner, is obligated on the same Series C Notes that underlie the Guaranty claim, meaning that every dollar the Petitioning Creditors collect from Fee Owner under the Guaranty will reduce All Year's liabilities dollar for dollar under the Series C Notes. All Year thus has no incentive to direct Fee Owner to contest the Petition, and every incentive not to do so. All Year is also conflicted due to its preexisting agreements and relationship with the Petitioning Creditors in All Year's own chapter 11 case before this Court. Under these circumstances, the relevant precedent compels that Weiss—as the only other member of Fee Owner's parent entity, Member LLC—should be recognized to have standing to seek

2

dismissal of the Petition. Alternatively, to the extent necessary, the Court should permit Weiss to intervene in this case for purposes of responding to the Petition.

3.      The ability of Weiss, an un-conflicted party, to contest the Petition is critical because the Petition was filed unjustly and is subject to dismissal for multiple reasons. The fact that the Petitioning Creditors are improperly using the bankruptcy process as their personal debt collection mechanism alone presents a manifest basis for dismissal of the Petition, either for cause pursuant to section 1112(b) of the Bankruptcy Code, or abstention and dismissal pursuant to section 305(a)(1). Courts in this Circuit have held that where, as here, an involuntary case is essentially just a two-party dispute, and alternative fora are available to adjudicate the dispute, the petition should promptly be dismissed to prevent the alleged debtor from further suffering the negative consequences of being improperly haled into bankruptcy court. In addition, dismissal is required also as a result of the Petitioning Creditors' failure to establish the requirements of section 303(b)—namely, that they satisfy the requirement that the petition be filed by three or more truly separate creditors, and that their claims are not subject to bona fide dispute as to amount.

4.      For these reasons and those discussed further below, Weiss respectfully requests that the Petition be dismissed.

**<u>BACKGROUND</u>**

5.      By now, the Court is familiar with the parties and their disputes leading up to the filing of the Petition, but a brief summary of the background relevant to this case and the reasons it should be dismissed is provided below for the Court's convenience.

6.      Fee Owner is the titular owner of a commercial real property complex located in Brooklyn, New York, that includes The William Vale Hotel (the "<u>WV Complex</u>"). Fee Owner is co-owned, indirectly, by Weiss and YGWV LLC ("<u>YGWV</u>"), a wholly-owned, direct subsidiary of All Year Holdings Limited ("<u>All Year</u>"), the debtor in the chapter 11 case pending before this

Court styled *In re All Year Holdings Limited*, No. 21-12051 (MG) (Bankr. S.D.N.Y.).[3]
Specifically, Weiss and YGWV each hold 50% of the membership interests in Member LLC,
which, in turn, is the direct parent, and sole member, of Fee Owner. YGWV purports to be the
designated managing member of Member LLC and, thus, purports to control Fee Owner.[4]

7.      In February 2017, debts incurred in the development and construction of the
WV Complex were refinanced with the proceeds of the Series C Notes, issued by All Year
pursuant to the Deed of Trust. Specifically, using the proceeds of the Series C Notes issuance, All
Year loaned Fee Owner $166,320,000 (the "Mortgage Loan") to acquire the WV Complex from
Wythe Berry LLC. In exchange, Fee Owner issued All Year a promissory note in the equivalent
amount (the "Note").[5] The Mortgage Loan was secured by, among other things, a first lien
mortgage on the WV Complex (the "Mortgage").[6]

8.      To secure payment of its obligations under the Deed of Trust, on or around
February 28, 2017, All Year granted the Trustee a security interest in certain Collateral (as defined
in the Collateral Assignment),[7] including the Note and Mortgage. On or around the same time,
Fee Owner executed the Guaranty in favor of the Trustee as further security for the repayment of
All Year's obligations under the Deed of Trust and other Bond Documents (as defined in the
Guaranty). Following All Year's alleged default under the Deed of Trust, on or around

---

[3]    This Motion refers to docket entries in the above-captioned chapter 11 case as "ECF No. __" and docket entries in All Year's chapter 11 case as "All Year ECF No. __".

[4]    Weiss asserts YGWV lost its membership interest in Member LLC upon the filing by All Year of its chapter 11 petition. That issue now is on appeal before the United States District Court for the Southern District of New York. Without a waiver of his position, and solely for ease of reference and reading, Weiss herein describes YGWV as still holding a membership interest in Member LLC.

[5]    A copy of the Note is attached to the Petitioning Creditors' Statement as Exhibit F.

[6]    A copy of the Mortgage is attached to the Petitioning Creditors' Statement as Exhibit G.

[7]    A copy of the Collateral Assignment is attached to the Petitioning Creditors' Statement as Exhibit H.

March 16, 2021, All Year assigned each item of Collateral (as defined in the Collateral Assignment), including the Note and Mortgage, to the Trustee, without adequate consideration.[8]

9.      On December 14, 2021, All Year commenced its voluntary chapter 11 case in this Court. In bankruptcy, All Year engaged in a marketing process for the sale of its assets, in consultation with the Trustee, as the representative for All Year's most significant creditor constituency, the Series C Noteholders. The marketing process ultimately culminated in All Year and the Trustee entering into that certain investment agreement (as amended, modified or supplemented from time to time, the "Investment Agreement") with Paragraph Partners, LLC (the "Sponsor"), which is the cornerstone of All Year's proposed chapter 11 plan of reorganization [All Year ECF No. 214] (the "All Year Plan").

10.     The Series C Noteholders are the key stakeholders and beneficiaries under the All Year Plan, which proposes to use the bulk of the funds to be provided by the Sponsor under the Investment Agreement to fund recoveries to Series C Noteholders and holders of other series of notes issued by All Year. Nevertheless, the All Year Plan still leaves the Series C Notes significantly impaired, and, thus, the Series C Noteholders presumably remain motivated to seek opportunistic ways to increase their recoveries, including by filing the Petition against Fee Owner in an attempt to obtain control over, and presumably sell, the WV Complex.

11.     Ordinarily, an entity in All Year's position that purports to exercise control over an alleged debtor would strenuously contest an involuntary petition filed against that entity—particularly where it owns an asset such as the WV Complex. In light of the Guaranty of All Year's obligations given by Fee Owner in favor of the Trustee, every dollar the Trustee collects from

---

[8]    Copies of the documents effectuating such assignments are attached to the Petitioning Creditors' Statement as Exhibit I and Exhibit J.

Fee Owner on account of the Guaranty reduces All Year's obligations dollar-for-dollar. Accordingly, All Year and its controlled subsidiary, YGWV, have no motivation to contest the Petition and are hopelessly conflicted from acting in the best interest of Fee Owner and its estate in connection with this case.

12.     Under the limited liability company agreement governing Member LLC (the "Member LLC Agreement"),[9] YGWV, as purported managing member, must object to any involuntary petition filed against Fee Owner unless Weiss agrees otherwise.[10] On October 12, 2022, after the filing of the Petition, Weiss wrote to All Year to explain this and demand that All Year (through its purported control of YGWV and, through YGWV, Member LLC) cause Fee Owner to object to the Petition. All Year's counsel responded that they were "currently evaluating whether there are grounds upon which Fee Owner may contest the petition, and will determine what future actions to take in accordance with its fiduciary duties to all constituencies." Bassett Declaration, Ex. B. As of the filing of this Motion, Weiss has not received any further communication from All Year's counsel confirming their decision whether or not to direct Fee Owner to contest the Petition.

13.     Weiss also served limited discovery requests on the Petitioning Creditors to evaluate the Petition and provide support for certain of the arguments set forth herein. Specifically, he served six limited document requests seeking documents related to, among other things, (i) the

---

[9]     A copy of the Member LLC Agreement is attached as **Exhibit A** to the *Declaration of Nicholas A. Bassett in Support of Zelig Weiss's Motion (I) to Dismiss Involuntary Petition and (II) to the Extent Necessary, to Intervene as an Interested Entity* (the "Bassett Declaration"), filed contemporaneously herewith.

[10]    Specifically, section 5.2.5 of the Member LLC Agreement states that the "Managing Member" (YGWV) shall have no authority, absent Weiss's agreement, to cause Member LLC to "consent to the institution o[f] bankruptcy or insolvency proceedings against it . . . ." Bassett Declaration, Ex. A, § 5.2.5, *Weiss v. All Year Holding Ltd.*, No. 22-01115 (MG) (Bankr. S.D.N.Y. Aug. 17, 2022), ECF No. 20. Section 5.2.10, in turn, extends this restriction to all subsidiaries of Member LLC, including Fee Owner, stating that YGWV may not "[c]ause [Fee Owner] to take any of the foregoing actions," including consenting to a bankruptcy or insolvency proceeding. *Id.* § 5.2.10.

6

Petitioning Creditors' reasons for filing the Petition, and (ii) the number and amount of the Petitioning Creditors' and other creditors' claims against Fee Owner. The Petitioning Creditors responded by refusing to produce documents in response to these requests on the grounds that Weiss allegedly lacks standing to be heard in response to the Petition. Weiss communicated his disagreement with that position and reserved his right to seek responses to the discovery and/or re-serve the discovery at a later date.

## RELIEF REQUESTED

14.    By this Motion, Weiss seeks entry of an order (i) dismissing the Petition with prejudice pursuant to sections 1112(b) and/or 303 of the Bankruptcy Code or, alternatively, abstaining from consideration of the Petition and dismissing this case pursuant to section 305(a)(1) of the Bankruptcy Code, and (ii) to the extent necessary, permitting Weiss to intervene in this case for all purposes, including to contest the Petition on the grounds set forth herein, pursuant to Bankruptcy Rule 2018(a).

## JURISDICTION AND VENUE

15.    The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference M-41*, dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## ARGUMENT

## I.    WEISS SHOULD BE PERMITTED TO CONTEST THE PETITION

16.    Since filing the Petition, the Petitioning Creditors, in correspondence with Weiss, have taken the position that Weiss has no right to challenge the Petition because section 303(d) of the Bankruptcy Code provides only that "the debtor, or a general partner in a partnership debtor that did not join in the petition, may file an answer to a petition under this section." 11 U.S.C.

§ 303(d). The Petitioning Creditors are wrong, however, as Weiss should be permitted to respond

to the Petition for at least two reasons—first, notwithstanding the language of section 303(d),

courts have permitted parties such as Weiss to be heard in circumstances like these, where the

alleged debtor has a conflict of interest rendering it incapable of faithfully contesting the petition;

second, Weiss either (i) is a party in interest who may seek dismissal of the petition for cause under

section 1112(b) of the Bankruptcy Code and/or request abstention under section 305(a)(1) of the

Bankruptcy Code, or (ii) alternatively, should be permitted to intervene in this case for purposes

of filing such motions and otherwise contesting the involuntary petition under Bankruptcy Rules

2018(a) or 7024.

### A.    Weiss Should Be Permitted to Seek Dismissal Under Section 303 of the Bankruptcy Code Due to Fee Owner's Conflict of Interest

17.    While there is no express statutory authority for parties other than the debtor to

contest an involuntary petition, courts have recognized that this is "not an inflexible rule." *In re*

*Westerleigh Dev. Corp.*, 141 B.R. 38, 40 (Bankr. S.D.N.Y. 1992); *see also In re Oakland Popcorn*

*Supply, Inc.*, 213 F. Supp. 665, 667 (N.D. Cal. 1963) ("While it is true that stockholders of a

bankrupt corporation have no statutory right to contest an involuntary petition, it is within the

discretion of the bankruptcy court to permit them to do so."); *cf. In re Nat'l Republic Co.*, 109 F.2d

167, 170 (7th Cir. 1940) ("Stockholders and state court receivers have never had [the] absolute

right [to contest an involuntary petition], although it lay within the discretion of the District Court

to permit them to intervene upon a proper showing."). Courts in this District and other jurisdictions

have acknowledged the propriety of allowing equity holders to contest an involuntary petition

under certain circumstances, including where the alleged debtor is unable or unwilling to do so on

behalf of itself due to a governance deadlock or the controlling person(s) being "utterly conflicted."

*In re Best Home Performance of CT, LLC*, No. 19-20688, 2019 Bankr. LEXIS 3682, at *19-20

(Bankr. D. Conn. Dec. 2, 2019) (granting and recognizing standing of an LLC member to contest an involuntary petition filed against the LLC by an entity controlled by the same individual in control of the alleged debtor LLC, noting that "where the Debtor's control party also happens to be the control party of the Petitioner, as in the present case, the underlying purpose of the statute would be thwarted in favor of manipulation and abuse if no one was to have a voice for the corporation"); *In re Synergistic Techs., Inc.*, No. 07-31733, 2007 WL 2264700, at *5 (Bankr. N.D. Tex. Aug. 6, 2007) ("[W]hen there is a corporate governance deadlock that prevents a corporate debtor from taking a position with regard to an involuntary bankruptcy petition, the court should allow shareholders to assert positions on behalf of the alleged debtor."); *accord In re Westerleigh Dev. Corp.*, 141 B.R. at 40.

18.    For example, in *Westerleigh Development Corp.*, an involuntary petition was filed against a defunct corporation by an entity owned by one of its two 50% shareholders that purported to hold a claim against the corporation. *See In re Westerleigh Dev. Corp.*, 141 B.R. at 39. The alleged debtor corporation had been formed for the purpose of developing real property and had one remaining asset—an undeveloped parcel of real property, which was encumbered by a mortgage in favor of the non-petitioning shareholder to secure the purchase price. *See id.* A dispute arose between the two shareholders as to how this real property lot should be developed, and each shareholder alleged he was owed money from the alleged debtor corporation. *See id.* Shortly after the mortgagee-shareholder commenced a foreclosure action in state court and was about to foreclose on the real property, the other shareholder, through his family-owned business that provided construction services to the alleged debtor corporation, filed an involuntary petition against the alleged debtor corporation. *See id.*

19.    The mortgagee-shareholder moved to dismiss the involuntary petition, and the petitioning creditor objected to his standing to challenge or answer the involuntary petition. *See id.* In response, the mortgagee-shareholder asserted that the alleged debtor had been unable to execute any corporate decisions or actions for the prior two years as a result of the parties' dispute, which left the alleged debtor "paralyzed." *In re Westerleigh Dev. Corp.*, 141 B.R. at 39. Noting the absence of express statutory authority for stockholders to contest an involuntary petition filed against their corporation, the United States Bankruptcy Court for the Southern District of New York also acknowledged that it might be appropriate to permit stockholders to contest an involuntary petition under certain circumstances, including where an alleged debtor "is unable to answer the petition because its only two shareholders are on either side of the case, with neither having authority to act for the corporation." *Id.* at 40. The court held that, where an alleged debtor is paralyzed to act due to corporate deadlock, either shareholder should be afforded standing to contest an involuntary petition filed against the alleged debtor, "especially when the petitioner is the family owned corporation of the other 50% shareholder." *Id.*

20.    In a case involving similar facts, *Best Home Performance of Connecticut*, the bankruptcy court recognized a minority LLC member's standing to contest an involuntary petition filed against the LLC by a petitioning creditor that was controlled by the same person who held a controlling stake in the LLC. *See In re Best Home Performance of CT, LLC*, 2019 Bankr. LEXIS 3682, at *19-20. The minority LLC member moved for permission to intervene for the limited purpose of contesting the involuntary petition and for dismissal of the involuntary petition, and the petitioning creditor objected on the grounds that the movant lacked standing to challenge the petition due to his status as a mere equity holder in the alleged debtor. *See id.* at *11-19. The court rejected the petitioning creditor's argument and determined that the

10

movant had standing, finding it appropriate to do so in situations "involving internal corporate feuding where the debtor would otherwise be rendered defenseless and its control party is utterly conflicted." *Id.* at *19-20.

21.    Here, too, the circumstances warrant the Court granting Weiss standing to controvert the Petition, given the conflicts of interest that make the managing member of Member LLC, YGWV, incapable of, or unwilling to, defend Fee Owner from being forced into an involuntary chapter 11 case. Indeed, YGWV is wholly owned and controlled by All Year, the primary obligor of the obligations under the Series C Notes, and the Petitioning Creditors' purported claims underlying the Petition arise from Fee Owner's Guaranty of those same obligations. Any recovery the Petitioning Creditors obtain from Fee Owner on account of the Guaranty will reduce All Year's obligations on a dollar-for-dollar basis, thus rendering YGWV (as an entity controlled by All Year), and, in turn, Member LLC, hopelessly conflicted such that it has no incentive to cause Fee Owner to challenge the Petition.

22.    On October 12, 2022, Weiss wrote to All Year—which purports to indirectly control Fee Owner through its interests in YGWV and Member LLC—to demand that it cause Fee Owner to object to the Petition. *See* Bassett Declaration, Ex. B. Weiss pointed out that, under the Member LLC Agreement, YGWV is prohibited from refusing to object to the Petition. *See id.* All Year's counsel responded two days later that they were "currently evaluating whether there are grounds upon which Fee Owner may contest the petition, and will determine what future actions to take in accordance with its fiduciary duties to all constituencies." *Id.* As of the filing of this Motion, however, Weiss has not received any further communication from All Year's counsel confirming their decision whether or not to direct Fee Owner to contest the Petition.

23.     This correspondence, including, in particular, counsel's silence on what All Year intends to do, only confirms that Weiss is the only member of Member LLC capable of zealously defending Fee Owner from an improper involuntary petition. However, even if Fee Owner— through YGWV and, ultimately, All Year—does file an answer or other responsive pleading, it would not cure All Year's conflict of interest and, therefore, would not obviate the need for the Court to find that Weiss has standing, or that Weiss should be permitted to intervene, to contest the Petition under the circumstances. The Court should, therefore, find that Weiss has standing to raise the challenges to the Petition asserted herein.

**B.     Weiss Either Has Standing to Seek Dismissal Under Section 1112(b) and/or Section 305(a) or Should Be Permitted to Intervene For Such Purpose**

24.     As discussed below, Weiss seeks dismissal of the involuntary petition under section 1112(b) of the Bankruptcy Code for cause and, alternatively, asks the Court to abstain and dismiss the case under section 305(a)(1) of the Bankruptcy Code. The relief set forth in these sections of the Bankruptcy Code is available to any party in interest. Although courts in this circuit have held that once- or twice-removed parties—such as a "creditor of a creditor"—who have only an indirect economic interest in a debtor generally do not qualify as parties in interest, Weiss submits that, under the circumstances of this case, where he is the 50% owner of Member LLC, which exists for no other purpose than to hold the sole membership interest in Fee Owner, he has a sufficiently direct interest in the outcome of this case to qualify as a party in interest for purposes of moving for relief under sections 1112(b) and 305(a)(1). *See In re New Era Co.*, 115 B.R. 41, 45 (Bankr. S.D.N.Y. 1990), *aff'd*, 125 B.R. 725 (S.D.N.Y. 1991) (in involuntary case, holding that "principal shareholder of original corporate partner, and . . . contributor to the capital structure of the partnership debtor, . . . may be regarded as holding an equity interest in the partnership sufficient to be recognized as a party in interest . . . even though he is not a partner of the debtor

because he has a stake in the outcome of this bankruptcy case . . . ."). In addition, Weiss holds

counterclaims against Fee Owner relating to an action Fee Owner filed against him and the

WV Complex lessee entity of which he is the member-manager in New York state court, including

claims resulting from Fee Owner's pursuit of frivolous claims against him in that litigation, that

he intends to assert at the appropriate time. As a direct creditor of Fee Owner, Weiss is

unquestionably a party in interest within the meaning of section 1109(b) of the Bankruptcy Code.

*See* 11 U.S.C. § 1109(b) ("A party in interest, including the debtor, the trustee, a creditors'

committee, an equity security holders' committee, a creditor, an equity security holder, or any

indenture trustee, may raise and may appear and be heard on any issue in a case under this

chapter.").

      25.     Alternatively, to the extent the Court disagrees that Weiss presently has standing to

move to dismiss the Petition, Weiss respectfully seeks permission to intervene for the purpose of

contesting the Petition on behalf of Fee Owner pursuant to Bankruptcy Rule 2018(a). Bankruptcy

Rule 2018(a) provides that, "[i]n a case under the [Bankruptcy] Code, after hearing on such notice

as the court directs and for cause shown, the court may permit any interested entity to intervene

generally or with respect to any specified matter." FED. R. BANKR. P. 2018(a).[11] Although "cause"

is not defined in the Bankruptcy Code or Bankruptcy Rules, courts have construed the term to

mean "an economic or similar interest in the case or in one aspect of the case." *In re Ionosphere

Clubs, Inc.*, 101 B.R. 844, 853 (Bankr. S.D.N.Y. 1989) (quoting *In re Pub. Serv. Co. of N.H.*,

---

[11]    To the extent Federal Rule of Civil Procedure 24, as incorporated by Bankruptcy Rule 7024, governs intervention at this stage of the case, *see* FED. R. BANKR. P. 1018 (providing that Bankruptcy Rule 7024 applies in proceedings contesting an involuntary petition), Weiss also seeks intervention pursuant to such rule, the standard for which is substantially similar to the standard for intervention under Bankruptcy Rule 2018. *See Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 128-29 (2d Cir. 2001) ("To intervene as of right [under Federal Rule of Civil Procedure 24], a movant must: "(1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action.").

88 B.R. 546, 554 (Bankr. D.N.H. 1988)). In determining whether to permit an "interested entity"[12] to intervene in a bankruptcy case pursuant to Bankruptcy Rule 2018(a), courts consider (1) the extent to which the "intervenor's interests are already adequately represented" and (2) whether "intervention would result in undue delay or prejudice to the original parties." *Id.* (quoting *In re Pub. Serv. Co. of N.H.*, 88 B.R. at 551).

26.     As the 50% indirect owner of Fee Owner, Weiss clearly has an economic stake in this matter. Additionally, the factors courts consider in ruling on a request for permissive intervention pursuant to Bankruptcy Rule 2018(a) weigh in favor of permitting Weiss to intervene for purposes of contesting the Petition. As explained above, Member LLC's managing member, YGWV, is wholly owned and controlled by All Year, the primary obligor of the debt underlying the Petitioning Creditors' claims against Fee Owner, rendering YGWV and, in turn, Member LLC, utterly conflicted and incapable of adequately representing the interests of Fee Owner's stakeholders, including Weiss, by strenuously challenging the Petition.[13] Moreover, by filing and serving this Motion within the time prescribed for defenses and objections to the Petition to be presented pursuant to Bankruptcy Rule 1011(b), the Court's consideration of Weiss's request to permissively intervene will not result in any delay or prejudice to the original parties.[14]

---

[12]   The term "interested entity" encompasses individuals. *See* 11 U.S.C. § 101(15) ("The term 'entity' includes person, estate, trust, governmental unit, and United States trustee."); *see also id.* § 101(41) ("The term "person" includes individual . . . .").

[13]   Furthermore, prior to his appointment as an officer of All Year on March 4, 2021, All Year's Chief Executive Officer and Chief Restructuring Officer served as an official representative of the Series C Noteholders. *See Declaration of Assaf Ravid Pursuant to Local Bankruptcy Rule 1007-2 in Support of All Year Holdings Limited's Chapter 11 Petition,* [Docket No. 4], ¶ 1.

[14]   To the extent he is not permitted to be heard on the basis of this Motion, Weiss reserves his rights under Delaware law and the Bankruptcy Code to seek derivative standing *nunc pro tunc* to act on behalf of Member LLC to cause Fee Owner to contest the Petition. Indeed, the court in *Best Home Performance of Connecticut, LLC,* conducted a similar analysis in reaching its alternative holding that the equity holder of the debtor in that case (which was a Connecticut company) qualified for derivative standing under relevant Connecticut statues where the equity holder demanded the Debtor contest the petition and it unjustifiably refused to do so. *In re Best Home Performance of CT, LLC,* 2019 Bankr. LEXIS 3682, at *19-20.

14

## II.    THE PETITION SHOULD BE DISMISSED

### A.    The Court Should Dismiss the Petition for "Cause" Pursuant to Section 1112(b) of the Bankruptcy Code

27.    Section 1112(b) of the Bankruptcy Code authorizes dismissal of a chapter 11 case "for cause" after notice and a hearing if the Court finds that dismissal "is in the best interests of creditors and the estate." *See* 11 U.S.C. § 1112(b)(1). "Even if a petition meets the statutory requirements of Section 303 [of the Bankruptcy Code], . . . a bankruptcy court may dismiss it for cause . . . after notice and a hearing." *In re Murray*, 900 F.3d 53, 60 (2d Cir. 2018) (affirming the bankruptcy court's *sua sponte* dismissal of an involuntary chapter 7 petition for cause under section 707(a), the analogue of section 1112(b)). The list of circumstances constituting cause for dismissal set forth in section 1112(b) "is illustrative, not exhaustive." *In re C-TC 9th Ave. P'ship*, 113 F.3d 1304, 1311 (2d Cir. 1997). Indeed, the bankruptcy court has "broad equitable discretion to grant relief based upon the particular facts and circumstances of the case." *Lynch v. Barnard*, 590 B.R. 30, 36 (E.D.N.Y. 2018) (first citing *In re C-TC 9th Ave. P'ship*, 113 F.3d at 1311; and then citing *In re BH S & B Holdings, LLC*, 439 B.R. 342, 346 (Bankr. S.D.N.Y. 2010)).

28.    Whether cause for dismissal exists is thus a "fact-specific inquiry as to which a variety of factors may be relevant, including the purpose for which the petition was filed and whether state proceedings adequately protect the parties' interests." *In re Murray*, 900 F.3d at 60. Courts have dismissed petitions for cause "where the filing was the latest move in a two-party dispute that 'could be fully resolved in a non-bankruptcy forum' and . . . the primary function of the petition was to serve as a 'litigation tactic.'" *Id.* (citing *In re C-TC 9th Ave. P'ship*, 113 F.3d at 1309-10); *see also In re Newbury Operating LLC*, No. 20-12976, 2021 WL 1157977, at *9 (Bankr. S.D.N.Y. Mar. 25, 2021) (dismissing involuntary petition filed against parking garage operator by landlord for cause based on, among other things, the fact that it was "a two-party case,"

15

the landlord held over 98% of the debt and the two other creditors had not appeared in the case or sought any relief from the alleged debtor, there was "no need for *pari passu* distribution of estate assets among the creditors," and the landlord had not demonstrated that it will be "substantially prejudiced" by relying on its state court remedies). "Inappropriate use of the Bankruptcy Code may [also] constitute cause to dismiss . . . ." *In re Murray*, 900 F.3d at 60; *accord In re Taberna Preferred Funding IV, Ltd.*, 594 B.R. 576, 601 (Bankr. S.D.N.Y. 2018) (noting that a bankruptcy petition "must seek to create or preserve some value that would otherwise be lost," not just distributed to a different stakeholder, "outside of bankruptcy" (quoting *In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 129 (3d Cir. 2004))).

29.    In evaluating whether to dismiss an involuntary petition for cause, courts in this District have considered the following nine factors:

(1)    whether the bankruptcy court was the "most recent battlefield in a long-running, two-party dispute;"

(2)    whether the case was brought solely to enforce a judgment;

(3)    whether there are any "competing" creditors;

(4)    the need for *pari passu* distribution;

(5)    the extent to which the petitioner can obtain avoidance of fraudulent transfers in another forum;

(6)    whether the petitioner has adequate remedies under non-bankruptcy law;

(7)    whether the petitioner invoked the bankruptcy laws solely to secure a benefit that could not be obtained under non-bankruptcy law and without a creditor community to protect;

(8)    whether assets would be lost or dissipated in the event the bankruptcy case did not continue; and

(9)    the alleged debtor's "want or need [for] a bankruptcy discharge."

*See In re Murray*, 543 B.R. 484, 492 (Bankr. S.D.N.Y. 2016), *aff'd*, 565 B.R. 527 (S.D.N.Y. 2017), *aff'd*, 900 F.3d 53 (2d Cir. 2018); *In re Newbury Operating LLC*, 2021 WL 1157977, at *9-10 (applying the *Murray* factors).

30.     Although the Petitioning Creditors do not hold a judgment against Fee Owner and this Court is not merely another stop in a long-running dispute among the parties, application of the remaining relevant *Murray* factors supports dismissal of the Petition for cause. The Petitioning Creditors appear to have filed the Petition to collect on the Guaranty, which is akin to enforcement of a judgment (*Murray* factor 2). Moreover, although Fee Owner has a number of other creditors, their claims pale in comparison to the amount of obligations purportedly due under the Guaranty, and, upon information and belief, many of such creditors hold claims secured by mechanics liens, obviating the need for *pari passu* distribution (*Murray* factors 3-4). The Petitioning Creditors have adequate remedies under state law to enforce the Guaranty, and, to the extent applicable, they can assert fraudulent transfer actions in state court (*Murray* factors 5-6). Given that Fee Owner's primary asset is the WV Complex, which substantially consists of real property and improvements, there is little to no risk of Fee Owner's assets being lost or dissipated if the Petition is dismissed (*Murray* factor 8). Though Weiss has sought (but not yet obtained) discovery from the Petitioning Creditors in an effort to understand their objectives, the timing of the filing—long after All Year defaulted on the Series C Notes, and in the weeks leading up to All Year's confirmation hearing as well as the weeks just following the Trustee's withdrawal from (and resulting premature termination of) mediation—suggests that the Petitioning Creditors filed the Petition to obtain some tactical advantage or benefit of the bankruptcy laws as it relates to the WV Complex or the All Year chapter 11 case that could not have been obtained outside of bankruptcy (*Murray* factor 7).

17

31.    What is clear is that, in filing the Petition, the Petitioning Creditors are forum shopping to obtain relief (payment of an obligation) from the Bankruptcy Court that could, and should, instead be sought elsewhere, such as from a non-bankruptcy court in Brooklyn or Israel, as contemplated by the Guaranty.[15] Prosecution of the Petition "will not promote the Bankruptcy Code's goal of ensuring fair distributions of assets among creditors." *In re Newbury Operating LLC*, 2021 WL 1157977, at *10 (citations omitted). To the contrary, it undermines the bankruptcy process by permitting the Trustee to "exploit[] the bankruptcy system for non-bankruptcy-related reasons," which will, in turn, "encourage other, similarly situated creditors to seek the same type of relief – to the detriment of the bankruptcy process." *Id.* (citations omitted). As the foregoing demonstrates, cause exists to dismiss the Petition pursuant to section 1112(b) of the Bankruptcy Code, and dismissal would be in the best interests of Fee Owner and its estate.[16]

---

[15]    As discussed below, the Guaranty contains a forum selection clause identifying state and federal courts in Brooklyn, New York and courts in Israel as fora in which the Trustee may institute legal action. *See* Petitioning Creditors' Statement, Ex. B ¶ 27.

[16]    Although section 1112(b) expressly permits any "party in interest" to seek dismissal for cause, some courts—relying on the text of section 303(d), which provides that only the debtor, or a general partner in a partnership debtor that did not join in the petition, may contest an involuntary petition—have held that a creditor or other party in interest cannot move to dismiss an involuntary case for cause under section 1112(b) until after an order for relief has been entered. *See, e.g., In re MarketXT Holdings Corp.*, 347 B.R. 156, 160 & n.4 (Bankr. S.D.N.Y. 2006) (noting that only the debtor may contest an involuntary petition filed against it, but that "[t]here are, of course, grounds on which parties in interest may seek dismissal of any Chapter 11 case *after an order for relief has been entered*, including motions to dismiss or abstain pursuant to 11 U.S.C. §§ 1112 and 305(a)" (emphasis added)); *In re Jr. Food Mart of Ark., Inc.*, 234 B.R. 420, 422 (Bankr. E.D. Ark. 1999) (concluding that, although creditors of the alleged debtor could not contest the involuntary petition within the meaning of section 303 and, therefore, an order for relief is appropriate, the creditors were not precluded from subsequently filing or prosecuting a motion to dismiss). Weiss respectfully submits that observing such procedural niceties under the circumstances, where the issues have been briefed and submitted, would be at odds with the principle of judicial economy and should not be done. However, in the event that the Court finds that Weiss's Motion to dismiss for cause is premature, Weiss reserves the right to renew the Motion and arguments after an order for relief has been entered (if any).

**B.     Alternatively, the Court Should Abstain and Dismiss the Petition Pursuant to Section 305 of the Bankruptcy Code**

32.     Section 305(a) of the Bankruptcy Code permits the court to abstain from hearing, and dismiss, any bankruptcy case when "the interests of creditors and the debtor would be better served by such dismissal . . . ." 11 U.S.C. § 305(a)(1). As set forth above, the Petitioning Creditors seek to improperly use the involuntary chapter 11 process as a debt collection mechanism and/or to obtain certain tactical advantages not available outside of bankruptcy. These objectives violate the fundamental policies of the Bankruptcy Code and support abstention and dismissal of the Petition pursuant to section 305(a)(1).

33.     A court's determination whether to abstain and dismiss pursuant to section 305(a)(1) is a fact-intensive inquiry that entails consideration of the totality of the circumstances. *In re Monitor Single Lift I, Ltd.*, 381 B.R. 455, 464 (Bankr. S.D.N.Y. 2008). Courts have considered the following seven factors in making this determination:

(1)     the economy and efficiency of administration;

(2)     whether another forum is available to protect the interests of both parties or there is already a pending proceeding in a state court;

(3)     whether federal proceedings are necessary to reach a just and equitable solution;

(4)     whether there is an alternative means of achieving an equitable distribution of assets;

(5)     whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case;

(6)     whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and

(7)     the purpose for which bankruptcy jurisdiction has been sought.

*See id.* at 464-65 (citations omitted). Significantly, although all factors are considered, "not all are given equal weight in every case." *Id.* The last consideration—the purpose for which bankruptcy

jurisdiction has been sought—is regarded as "the most important factor." *In re Persico Contracting & Trucking, Inc.*, No. 10-22736, 2010 WL 3766555, at *4 (Bankr. S.D.N.Y. Aug. 20, 2010).

34.     Here, too, the focus is on whether the involuntary bankruptcy process is essentially being used as a "debt collection tool," rather than for the benefit of all stakeholders. *Id.*; *see also In re Mountain Dairies, Inc.*, 372 B.R. 623, 635 (Bankr. S.D.N.Y. 2007) (abstaining from considering an involuntary bankruptcy case that was "essentially a two-party dispute for which the parties have adequate remedies in state court" because "[t]he bankruptcy court is not a collection agency"). This factor alone warrants abstention and dismissal of the Petition under section 305(a)(1), but the other considerations also weigh in favor of dismissal. As explained below, the only Petitioning Creditor with a right to payment under the Guaranty—and, thus, a claim for purposes of section 303(b)(1)—is the Trustee, so there is in fact only one Petitioning Creditor. Regardless, the Petitioning Creditors are *acting* as a "sole petitioning creditor" and have not filed the Petition as part of a "joint effort of the creditor body or a large number of creditors." *See In re Persico Contracting & Trucking, Inc.*, 2010 WL 3766555, at *4. Consequently, the Petitioning Creditors are seeking to satisfy obligations they are purportedly owed instead of promoting the public policy objectives of chapter 11 of the Bankruptcy Code, including the maximization of value for all stakeholders and affording debtors an opportunity for a "fresh start."

35.     Moreover, there is no question that adequate, alternative fora are available to adjudicate the Petitioning Creditors' claims. Indeed, the Trustee bargained for a choice-of-venue provision in the Guaranty that precludes Fee Owner from objecting to suits, actions or proceedings initiated by the Trustee in any federal or state court located in Kings County, New York, or in any competent court in Tel Aviv-Jaffa, Israel, based on improper venue and/or forum non conveniens grounds, which suggests that the parties intended that any disputes relating to the Guaranty would

20

be brought to these fora for adjudication. *See* Petitioning Creditors' Statement, Ex. B ¶ 27. These

factors, in addition to the considerations discussed in Section II.A above, all weigh in favor of

abstention and dismissal under section 305(a)(1).

**C.     The Court Should Dismiss the Petition Pursuant to Section 303 of the Bankruptcy Code and Rule 12(b)(6) of the Federal Rules of Civil Procedure Because the Petitioning Creditors Fail to State a Claim Upon Which Relief May Be Granted**

36.     The Petition should be dismissed pursuant to section 303 of the Bankruptcy Code

and Rule 12(b)(6) of the Federal Rules of Civil Procedure, incorporated by reference through

Bankruptcy Rule 1011, for the independent reason that the Petitioning Creditors fail to state a

claim upon which relief may be granted.

37.     Section 303(b)(1) of the Bankruptcy Code provides:

> [a]n involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title . . . by three or more entities, each of which is [a] holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount . . . if such noncontingent, undisputed claims aggregate at least $[18,600] more than the value of any lien on property of the debtor securing such claims held by the holders of such claims.

11 U.S.C. § 303(b)(1). Section 303(b)(2) further provides that, "if there are fewer than 12 such

holders, excluding any employee or insider or such person and any transferee of a transfer that is

voidable under section 544, 545, 547, 548, 549, or 724(a) of this title, by one or more of such

holders that hold in the aggregate at least $[18,600] of such claims . . . ." *Id.* § 303(b)(2). Thus,

"[section] 303(b) permits a single creditor to file an involuntary petition only if the debtor has

fewer than twelve creditors. If the debtor has twelve or more creditors, at least three creditors must

file the petition." *In re Fox*, No. 93 C 5773, 1994 WL 484596, at *1 (N.D. Ill. Sept. 2, 1994). The

Petitioning Creditors have the burden of showing their compliance with the statutory requirements

of section 303 of the Bankruptcy Code. *In re A & J Quality Diamonds, Inc.*, 377 B.R. 460, 463

(Bankr. S.D.N.Y. 2007). Here, the Petitioning Creditors have failed to meet their burden of establishing that (i) they satisfy the "three creditor" requirement of section 303(b)(1) and (ii) their claims are not the subject of a bona fide dispute as to amount.

38.    The Petitioning Creditors have taken the position that they each hold an independent claim against Fee Owner under the Guaranty. *See* Petitioning Creditors' Statement ¶ 3 ("The claim of each Series C Noteholder under the Guaranty is equal to its pro rata share (calculated as the amount of Series C Notes held by such Series C Noteholder divided by the total amount of Series C Notes) of the total claims of all Series C Noteholders under the Guaranty."). Section 303(b)(1) of the Bankruptcy Code requires that an involuntary petition filed against a debtor with twelve or more creditors must be filed by *at least three* entities, each of which must hold a claim that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount. *See* 11 U.S.C. § 303(b)(1). "Generally, the courts have held that joint holders of an obligation constitute a single creditor for purposes of § 303(b)." *In re T.P. Herndon & Co.*, 87 B.R. 204, 205 (Bankr. M.D. Fla. 1988) (first citing *In re Averil, Inc.*, 33 B.R. 562 (Bankr. S.D. Fla. 1983); and then citing *In re McMeekin*, 16 B.R. 805 (Bankr. D. Mass. 1982)). The determinative issue is whether each Petitioning Creditor has a separate "right to payment" and, thus, a separate claim. *See In re McMeekin*, 16 B.R. at 809 (concluding that joint payees of promissory note constituted one holder for purposes of section 303(b) because the note embodied a "single right to payment, which may be shared jointly by the payees, and which may be enforced only by both payees").

39.    The Guaranty is made by Fee Owner in favor of the Trustee. The Noteholder Petitioning Creditors are neither a party to the Guaranty nor an express third-party beneficiary, and the Guaranty is silent as to the Noteholder Petitioning Creditors' right to enforce the Guaranty.

Based on the plain language of the Guaranty, the Noteholder Petitioning Creditors have no separate right to payment under the Guaranty. Their rights under the Guaranty are derivative of those of the Trustee. Consequently, the Petitioning Creditors cannot establish that they have satisfied the numerosity requirement of section 303(b)(1), and they have not alleged that Fee Owner has less than twelve creditors.

40.    The Petitioning Creditors also have not established that their claims are not subject to a bona fide dispute as to liability or amount. Section 303(b) of the Bankruptcy Code was amended in 2005 to make clear that a claim is disqualified if it is subject to dispute as liability "or to amount." *See In re Mountain Dairies, Inc.*, 372 B.R. at 624 ("[D]isputes as to amount – not just liability – are sufficient to create a bona fide dispute."); *In re Persico Contracting & Trucking, Inc.*, 2010 WL 3766555, at *2 ("I agree with my colleagues in the Southern District that if, in fact, an amount is in dispute even though an amount is not in dispute, the code as amended renders the petitioning creditor ineligible to commence-or to seek the commencement of an involuntary case."). Thus, a petitioning creditor cannot commence or join an involuntary petition if such creditor's claim is disputed in part.

41.    Although the Bankruptcy Code does not define the term "bona fide dispute," the test adopted by the Second Circuit asks whether an objective basis for either a factual or legal dispute exists. *See In re BDC 56 LLC*, 330 F.3d 111, 117-18 (2d Cir. 2003), *abrogated on other grounds by In re Zarnel*, 619 F.3d 156 (2d Cir. 2010). The Second Circuit's burden-shifting framework "requires, first, that the petitioning creditor establish a prima facie case that no bona fide dispute exists. Once a prima face case has been established, the burden shifts to the debtor to demonstrate the existence of a bona fide dispute." *Id.* at 118 (citations omitted).

42.     As set forth above, the Noteholder Petitioning Creditors do not have separate claims under the Guaranty, and the amount of the Trustee's asserted claim against Fee Owner is anything but clear. The Petitioning Creditors' Statement indicates that the Trustee's claim under the Guaranty "is no less than NIS 667,758,000, which as of the date hereof is equivalent to $188,739,000, inclusive of all interest accrued prior to the date hereof . . . , plus all fees and expenses accrued prior to the [date hereof]." Petitioning Creditors' Statement ¶ 3. Weiss does not agree with the Petitioning Creditors' calculation of the amounts allegedly owing on the Guaranty and believes such claim is subject to a bona fide dispute as to its amount. Weiss is not, however, presently able to identify the specific errors in the Petitioning Creditors' calculation, because the Petitioning Creditors have not provided any information as to how they performed it—for example, they have not identified the relevant dates and interest rates for their purported interest figures, have not tied such calculations to the governing legal documents, and have not provided any backup for the fees and expenses purportedly included in their calculation. Weiss sought this information in his discovery requests, but the Petitioning Creditors refused to respond to them. Weiss reserves the right to seek the information prior to any hearing on the Petition.

43.     In light of the foregoing, the Petitioning Creditors have, at present, failed to establish that they have complied with the statutory requirements of section 303(b) of the Bankruptcy Code, and the Petition should therefore be dismissed for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## **RESERVATION OF RIGHTS**

44.     Weiss respectfully reserves all rights with respect to the subject matter of this Motion and the Petition, including, without limitation, the right to amend or supplement the Motion or the arguments made herein at any hearing the Court schedules on the Motion, to assert other and/or additional defenses to the Petition, and to seek to recover fees, costs and other damages.

## **CONCLUSION**

For the foregoing reasons, Weiss respectfully requests that this Court (i) find that Weiss has standing to contest the Petition or, alternatively, permit Weiss to intervene for the purpose of contesting the Petition on the grounds set forth herein, (ii) dismiss the Petition, and (iii) grant Weiss such other and further relief as this Court deems just and proper.

Dated: October 27, 2022
      New York, New York

*/s/ Nicholas A. Bassett*

Kristopher M. Hansen
Nicholas A. Bassett
Jason M. Pierce
Will Clark Farmer
**PAUL HASTINGS LLP**
200 Park Avenue
New York, New York 10166
Telephone: (212) 318-6000
Facsimile:  (212) 319-4090
Email: krishansen@paulhastings.com
      nicholasbassett@paulhastings.com
      jasonpierce@paulhastings.com
      willfarmer@paulhastings.com

*Counsel to Zelig Weiss*