**HERRICK, FEINSTEIN LLP**

Avery S. Mehlman
Stephen B. Selbst
Janice Goldberg
Two Park Avenue
New York, New York 10016
Tel: (212) 592-1400
Fax: (212) 592-1500

*Attorneys for Alleged Debtor Wythe Berry Fee Owner LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| **In re** | : **Chapter 11** |
| | : |
| **WYTHE BERRY FEE OWNER LLC,** | : **Case No. 22-11340 (MG)** |
| | : |
| **Debtor.** | : |
| | : |
| | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DECLARATION OF STEPHEN B. SELBST IN SUPPORT OF WYTHE BERRY FEE
OWNER LLC'S OBJECTION TO ZELIG WEISS'S MOTION (I) TO DISMISS
INVOLUNTARY PETITION AND (II) TO THE EXTENT NECESSARY, TO
INTERVENE AS AN INTERESTED ENTITY**

Under 28 U.S.C. § 1746, I, Stephen B. Selbst declare under penalty of perjury:

1.      I am an attorney admitted to practice before the Courts of the State of New York.

I am a partner at the law firm of Herrick, Feinstein LLP, attorneys for Alleged Debtor Wythe

Berry Fee Owner LLC ("**Fee Owner**") in the above-captioned proceedings. As such, I am fully

familiar with all of the facts and circumstances set forth herein.

2.      I submit this declaration in support of Fee Owner's Objection to Zelig Weiss's

Motion (I) to Dismiss Involuntary Petition and (II) to the Extent Necessary, to Intervene as an

Interested Entity.

3.      Attached hereto as Exhibit A is a true and correct copy of the Memorandum Opinion and Order Granting Defendants' Motion to Dismiss the Amended Complaint and Denying Plaintiff's Motion for Partial Summary Judgment entered October 4, 2022 in the matter of *Zelig Weiss v. All Year Holdings Ltd., et al.*, Adv. Proc. 22-01115 (Bankr. S.D.N.Y.) (Dkt. 52).

4.      Attached hereto as Exhibit B is a true and correct copy of the Memorandum Decision and Order Affirming the Bankruptcy Court's Decision entered December 12, 2022 in the matter of *Zelig Weiss v. All Year Holdings Ltd., et al.*, No. 22 Civ. 8867 (S.D.N.Y.) (Dkt. 14).

5.      Attached hereto as Exhibit C is a true and correct excerpt of a hearing transcript in the matter of *In re Kirwan Offices S.a.r.l.*, Case No. 16-22321 (Bankr. S.D.N.Y.) (Dkt. 49).

6.      Attached hereto as Exhibit D is a true and correct copy of the Decision and Order entered November 4, 2022 in the matter of *Wythe Berry Fee Owner LLC v. Wythe Berry LLC, et al.*, Index No. 514152/2021 (N.Y. Sup. Ct., Kings Cnty.) (NYSCEF 329).

7.      Attached hereto as Exhibit E is a true and correct copy of the Decision and Order on Motion entered December 7, 2022 in the matter of *Wythe Berry Fee Owner, LLC v. Wythe Berry, LLC, et al.*, Nos. 2021-09065, 2022-08977, and 2022-08979.

**-Remainder of page intentionally left blank-**

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: December 16, 2022
   New York, New York

             *By: /s/ Stephen B. Selbst*      
              Stephen B. Selbst

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x

|  |  |  |
|---|---|---|
| In re: | : | **FOR PUBLICATION** |
|  | : |  |
| ALL YEAR HOLDINGS LIMITED, | : | Chapter 11 |
|  | : |  |
| Debtor. | : | Case No. 21-12051 (MG) |
|  | : |  |

------------------------------------------------------------------------ x

|  |  |  |
|---|---|---|
| ZELIG WEISS, | : |  |
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
| v. | : | Adv. Proc. No. 22-01115 (MG) |
|  | : |  |
| ALL YEAR HOLDINGS LIMITED, YG WV LLC, | : |  |
|  | : |  |
| Defendants, and | : |  |
|  | : |  |
| WYTHE BERRY MEMBER LLC, | : |  |
|  | : |  |
| Nominal Defendant. | : |  |

------------------------------------------------------------------------x

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

*A P P E A R A N C E S :*

PAUL HASTINGS LLP
*Counsel for Plaintiff Zelig Weiss*
200 Park Avenue
New York, New York 10166
By:    Kristopher M. Hansen, Esq.
       Nicholas A. Bassett, Esq.
       Jason M. Pierce, Esq.
       Shlomo Maza, Esq.
       Will Clark Farmer, Esq.

WEIL, GOTSHAL & MANGES LLP
*Counsel for Defendant All Year Holdings Limited*
767 Fifth Avenue
New York, New York 10153
By:   Gary T. Holtzer, Esq.
       Matthew P. Goren, Esq.
       Robert S. Berezin, Esq.
       Richard D. Gage, Esq.
       Angelo G. Labate, Esq.

HERRICK, FEINSTEIN LLP
*Counsel for Defendant All Year Holdings Limited*
2 Park Avenue
New York, NY 10016
By:   Stephen B. Selbst, Esq.
       Avery S. Mehlman, Esq.
       Janice Goldberg, Esq.
       Rodger T. Quigley, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court are two motions.  All Year Holdings Limited ("All Year"), the

debtor in the main Chapter 11 case (Case No. 21-12051), along with its wholly-owned subsidiary

YG WV LLC ("YGWV"), and Wythe Berry Member LLC ("Member LLC," and together with

All Year and YGWV, the "Defendants,") have moved to dismiss all claims in the amended

complaint ("Complaint," ECF Doc. # 10)[1] filed by Plaintiff Zelig Weiss (the "Plaintiff").

("Motion to Dismiss," ECF Doc. # 21.)  Plaintiff opposes the Motion to Dismiss and has also

moved for partial summary judgment on Claim III of its Complaint.  ("Motion for Partial

Summary Judgment," ECF Doc. # 11.)

Claims I through III in the Complaint seek declaratory judgments that: (I) All Year's

transfer of interests in YGWV violates the Member LLC Agreement and Delaware Law

---

[1]     All references to the "Complaint" are to the Amended Complaint (ECF Doc. # 10) unless otherwise noted.

2

(Complaint, ¶¶ 86–101); (II) All Year's transfer of interests in YGWV violates the implied

covenant of good faith and fair dealing (*id.* ¶¶ 102–106); and (III) YGWV is dissolved and may

not effectuate the transfer of its interests or manage Member LLC. (*Id.* ¶¶ 107–125). Claim IV

seeks to enjoin Defendants from transferring All Year's interests in YGWV (*id.* ¶¶ 126–134);

and Claim V seeks to enjoin All Year and YGWV from acting as managers of Member LLC.

(*Id.* ¶¶ 135–142).

For the reasons explained below, the Court **GRANTS** Defendants' Motion to Dismiss

Plaintiff's Complaint. Accordingly, the Court **DENIES** Plaintiff's Motion for Partial Summary

Judgment on Claim III.

## I.    BACKGROUND

### A.  The Parties and Original William Vale Ownership

This action relates to a dispute between individuals and entities with direct and indirect

ownership interests in the William Vale, a luxury hotel property and community space in

Brooklyn (the "WV Complex"). (Compl. ¶ 2.) According to the Complaint, Plaintiff Zelig

Weiss originally conceived of and developed the WV Complex. (*Id.*) Weiss invited Yoel

Goldman ("Goldman"), former principal of All Year, to join him in the venture, and the two

became co-owners of Wythe Berry LLC ("WB LLC"). (*Id.* ¶ 24.) WB LLC operated and held

title to the WV Complex. Plaintiff and Goldman each owned 50% of WB LLC, and Plaintiff

served as the managing member. (*Id.* ¶ 24.)

According to Plaintiff, Goldman's only role in WB LLC was to provide and/or arrange

for its funding. (*Id.* ¶ 24.) In approximately September 2016, WB LLC required a refinancing

transaction as the WV Complex finished construction, and Goldman proposed raising the funds

needed by issuing bonds on the Israeli market. (*Id.* ¶ 25.) Goldman's proposal entailed using

and/or creating additional entities to execute the refinancing transaction. First, Goldman

3

proposed to use All Year to issue a bond series (the "Series C Bonds") tied exclusively to the

WV Complex. (*Id.* ¶ 27.) All Year then would cause the proceeds of the bond issuance to be

used to pay off/refinance an existing mortgage on the WV Complex and debts of WB LLC. (*Id.*)

Next, the proposed transaction involved transferring title of the WV Complex to a new entity,

Wythe Berry Fee Owner, LLC ("Fee Owner"), with Fee Owner leasing the WV Complex back to

WB LLC. (*Id.* ¶ 28.) Finally, Member LLC was created to become the exclusive owner of Fee

Owner, with Weiss and Goldman each owning 50% of Member LLC, either individually or

through other entities. (*Id.*)

### B. The Member LLC Agreement and Creation of YGWV

Today, Plaintiff holds his 50% interest in Member LLC directly. Goldman's 50%

interest in Member is owned by YGWV, which, in turn, is a wholly owned subsidiary of All

Year. (*Id.* ¶ 3.) YGWV is the managing member of Member LLC. (*See id.* ¶ 37.) In his

Complaint, Plaintiff explains that at earlier phases of the transaction, the parties first

contemplated Goldman holding his 50% in Member LLC through All Year. (*Id.* ¶ 31–32.)

Indeed, Plaintiff claims that All Year, through authorized representatives, negotiated the Member

LLC agreement, and that YGWV was created during negotiations to serve as an intermediary

and slotted into the draft Member LLC agreement in place of All Year. (*Id.* ¶ 32–38.) All Year

established YGWV on or about February 1, 2017, upon the filing of articles of organization with

the New York Secretary of State, and the YGWV LLC Agreement was executed on February 28,

2017. (*Id.* ¶ 88.) The Member LLC Agreement was executed that same day between YGWV

and Plaintiff. (*Id.* ¶ 40.)

Plaintiff alleges that, despite YGWV being the final signatory to the Member LLC

Agreement, all essential terms of the Member LLC Agreement were negotiated and agreed upon

between All Year and Plaintiff before the formation of YGWV, and that All Year conducted

4

these negotiations through its authorized representatives, including All Year's Chief Financial Officer, Yizhar Shimoni ("Shimoni"). (*Id.* ¶¶ 31, 38.) Plaintiff further alleges that, regardless of the ownership structure, Plaintiff and Goldman's intentions were to co-own and operate the WV Complex exclusively with one another. (*Id.* ¶ 4.)

### C. The Closing of the Refinancing Transaction

Following the creation of YGWV and the execution of the Member LLC Agreement, Goldman and Shimoni proceeded with the refinancing proposal, and Mishmeret Trust Company Ltd. ("Mishmeret"), as Trustee for the Series C Bondholders, eventually loaned the equivalent of $166,320,000 worth of New Israeli Shekels to All Year. (*Id.* ¶ 35.) All Year, in turn, loaned those funds (in dollars) to Fee Owner to be used for the payment of the debts of WB LLC, including the existing mortgage loan. (*Id.* ¶ 36.) Fee Owner issued to All Year a $166,320,000 promissory note and a mortgage against the WV Complex (respectively, the "Note" and "Mortgage"). All Year collaterally assigned the Note and Mortgage to Mishmeret to secure the Series C Bonds. (*Id.* ¶ 36.)

### D. Plaintiff's Attempts to Purchase YGWV and All Year's Bankruptcy

According to Plaintiff, he made an offer to purchase All Year's membership interest in YGWV on or about November 2, 2021, before All Year's filing of a voluntary Chapter 11 petition on December 14, 2021. *See In re All Year Holdings Ltd.*, Case No. 21-12051 (ECF Doc. # 1); (*Id.* ¶ 36.) Plaintiff continued to negotiate to purchase All Year's interest in YGWV, but the negotiations evolved into a draft Membership Interest Purchase Agreement (MIPA), whereby Plaintiff would purchase YGWV's interest in Member LLC, as opposed to All Year's interest in YGWV. (*Id.* ¶ 63–65.) After the MIPA was revised to require approval by this Court, Plaintiff claims that All Year and Plaintiff agreed on all terms of the revised MIPA and, with All Year's

knowledge and approval, Mishmeret published the revised MIPA as an exhibit to a filing it made

on the Tel Aviv Stock Exchange on or about March 27, 2022.  (*Id.* ¶ 69.)

### E.  The Switch to Paragraph and the Proposed Reorganization Plan

Plaintiff claims that All Year decided to abandon the transaction with him, and, instead,

in or about April 2022, agreed to sell All Year's interest in YGWV to Paragraph Partners LLC

("Paragraph") for essentially the same consideration offered by Plaintiff.  (*Id.* ¶ 69.)

All Year filed a Chapter 11 Plan of Reorganization (the "Plan") on May 31, 2022, with

Paragraph as the Sponsor.  *See In re All Year Holdings Ltd.*, Case No. 21-12051 (ECF Doc. #

123).  Under the Plan, All Year seeks approval of an Investment Agreement dated March 11,

2022, by and among All Year, Paragraph, and, solely with respect to certain specified sections,

Mishmeret, as trustee (the "Investment Agreement").  (*Id.* ¶ 77.)

Amendment 1 to the Investment Agreement provides that, if Paragraph closes on a

separate transaction to acquire the outstanding promissory note and mortgage related to the WV

Complex from Mishmeret, All Year will sell to Paragraph its membership interests in YGWV for

$200,000.  (*Id.* ¶ 78.)  Consistent with the Investment Agreement, the initial proposed disclosure

statement dated May 31, 2022 stated that the proposed Plan would "provide for the automatic

transfer of [All Year's] interests [in YGWV] to the Sponsor."  (*Id.* ¶ 79, n. 10.)

The Plan also contemplates All Year's possible transfer of the YGWV interests to Wind-

Down Co., a new entity to be managed by a plan administrator at the direction of Mishmeret, if

the Sponsor's agreement to acquire the note and mortgage does not close before the effective

date of the Plan.  (*Id.* ¶ 82.)  This is important because Plaintiff alleges that Sponsor and

Paragraph failed to close on its purchase of the note and mortgage by the July 24, 2022 outside

date under such agreement, and that Mishmeret has declared that Sponsor breached the
agreement.[2]  (*Id.*)

### F. Plaintiff's Allegations Regarding YGWV and the Transfer of All Year's Interests in YGWV

Plaintiff filed the operative Complaint seeking declaratory and injunctive relief to stop
the transfer of All Year's interest in YGWV, whether to Paragraph under the MLPSA, or to
Wind-Down Co. under the Plan, if the MLPSA does not close.  (*Id.* ¶ 80–82.)

The thrust of Plaintiff's Complaint is that a transfer of the interests in YGWV would
violate the Member LLC Agreement between Plaintiff and YGWV, which provides that "a
Member may not assign in whole or in part any interest in the Company without the written
consent of the other Members" and "[i]f a Member assigns an interest in the Company in
violation of this Section . . . , such assignment shall be null and void and such Member shall be
liable to the Company for breach of this Agreement."  ("Member LLC Agreement," ECF Doc. #
10-1, Ex. A to Compl. at § 8.1(a).)  Plaintiff alleges that he only permitted All Year's wholly-
owned subsidiary, YGWV, to become the titular Managing Member of Member LLC (which
effectively made All Year the manager of Fee Owner) in reliance on the fact that the Member
LLC Agreement would prohibit a transfer of YGWV's membership interests in Member LLC
without Plaintiff's consent.  (*Id.* ¶ 37.)  This provision was important to Plaintiff because he

---

[2]      The parties submitted letter briefs to the Court explaining the effect the purported failure to close on the
agreement—that they now refer to as the Mortgage Loan Purchase and Sale Agreement (or "MLPSA")—would
have on this proceeding.  *See In re All Year Holdings Ltd.*, Case No. 21-12051 (ECF Doc ## 201–204).  Paragraph
took the position that the MLPSA has *not* been terminated.  (*See* Ltr. on behalf of Paragraph Partners LLC, dated
Sept. 6, 2022, ECF Doc. # 202).
        In a recent development, at a Court hearing on September 29, 2022, the Debtor's counsel announced that a
proposed settlement has been reached in a mediation between the Debtor, the Sponsor and Mishmeret, resolving all
issues between those parties.  The proposed settlement will be described in an amended disclosure statement and
plan.  Weiss and his counsel participated in the mediation, but no settlement of Weiss' claims has been reached.

wanted to partner specifically with Goldman/All Year on the hotel project, as he had done for

years through WB LLC, and not anyone else.  (*Id.*)

To support his legal arguments regarding All Year's domination of YGWV, Plaintiff also

makes a series of allegations about the entities, including that: (a) "YGWV keeps no corporate

records" (*id.* ¶ 92), "YGWV keeps no minutes of meetings discussing or recording its corporate

affairs" (*id.* ¶ 56), "YGWV has never filed its mandatory biennial statement under New York's

Limited Liability Company Law" (*id.* ¶ 57), and "at all relevant times, YGWV did not observe

basic corporate formalities" (*id.*); (b) "YGWV has never had a bank account" (*id.* ¶ 52), "YGWV

does not receive revenue from operations (it has none), distribute monies to pay expenses, or

transfer funds within its corporate family" (*id.* ¶ 53), and "at all relevant times, All Year paid, or

arranged for All Year or an affiliate of All Year to pay, expenses incurred by YGWV" (*id.*); (c)

"YGWV has no assets other than its interest in Fee Owner" (*id.* ¶ 58), and "[a]t all relevant

times, YGWV was undercapitalized" (*id.* ¶ 54); (d) "[a]t all relevant times, YGWV has not had

its own office of employees" but, rather, "YGWV's business address, as admitted in [All Year]'s

schedules, and address for service of process is 199 Lee Ave., #693, Brooklyn, New York

11211—the location of All Year's principal offices" (*id.* ¶ 55); (e) "YGWV has no employees or

directors, and any agents of YGWV are not independent from All Year" (*id.* ¶ 92); (f) "at all

relevant times, All Year has made all decisions by YGWV regarding its interest in Member LLC,

Fee Owner, and the WV Complex," which "All Year made . . . for its own benefit, without

regard to YGWV's purported corporate separateness" (*id.* ¶ 59); (g) "[o]ther than holding [All

Year's] membership interest [in Member LLC], YGWV has never conducted any business and

has no operations" (*id.* ¶ 51); and (h) "all revenue generated by the WV Complex is paid directly

to All Year, not YGWV" (*id.* ¶ 93).

8

## II.  __LEGAL STANDARD__

### A.  Dismissal Under Fed. R. Civ. P. 12(b)(6)

Defendants moved to dismiss Claims I through V from the Complaint.  To survive a

motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable

here by Rule 7012 of the Federal Rules of Bankruptcy Procedure, a complaint need only allege

"enough facts to state a claim for relief that is plausible on its face."  *Vaughn v. Air Line Pilots*

*Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(emphasis removed)).  "Where a complaint pleads facts that are merely consistent with a

defendant's liability, it stops short of the line between possibility and plausibility of entitlement

to relief."  *Iqbal*, 556 U.S. at 678 (citation and internal quotation marks omitted).  Plausibility "is

not akin to a probability requirement," but rather requires "more than a sheer possibility that a

defendant has acted unlawfully."  *Id.* (citation and internal quotation marks omitted).

Courts use a two-prong approach when considering a motion to dismiss.  *Pension Benefit*

*Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717 (2d Cir. 2013) (stating that

the motion to dismiss standard "creates a 'two-pronged approach' . . . based on '[t]wo working

principles'") (quoting *Iqbal*, 556 U.S. at 678–79); *McHale v. Citibank, N.A. (In re the 1031 Tax*

*Grp., LLC)*, 420 B.R. 178, 189–90 (Bankr. S.D.N.Y. 2009).  First, the court must accept all

factual allegations in the complaint as true, discounting legal conclusions clothed in factual garb.

*See, e.g.*, *Iqbal*, 556 U.S. at 677–78; *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124

(2d Cir. 2010) (stating that a court must "assum[e] all well-pleaded, nonconclusory factual

allegations in the complaint to be true") (citing *Iqbal*, 556 U.S. at 678).  Second, the court must

determine if these well-pleaded factual allegations state a "plausible claim for relief."  *Iqbal*, 556

U.S. at 679 (citation omitted).

9

Courts do not make plausibility determinations in a vacuum; it is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). A claim is plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citation omitted). A complaint that pleads only facts that are "merely consistent with" a defendant's liability does not meet the plausibility requirement. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "The pleadings must create the possibility of a right to relief that is more than speculative." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (citation omitted). On a motion to dismiss, in addition to the complaint, a court may consider written instruments, such as a contract, that are either attached to the complaint or incorporated by reference. *See, e.g.*, FED. R. CIV. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Official Comm. of Unsecured Creditors v. Conseco Fin. Servicing Corp. (In re Lois/USA, Inc.)*, 264 B.R. 69, 89 (Bankr. S.D.N.Y. 2001) ("In addition to the complaint itself, a court may consider, on a motion to dismiss, the contents of any documents attached to the complaint or incorporated by reference . . . .").

### B. Summary Judgment Under Fed. R. Civ. P. 56(c)(1)(A)

Plaintiff has also moved for summary judgment on Claim III, pursuant to Federal Rule of Civil Procedure 56(c)(1)(A), which is applicable in this proceeding pursuant to Federal Rule of Bankruptcy 7056. To prevail on a motion for summary judgment, the movant must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant bears the burden of demonstrating the absence of a question of material fact. In making this determination, the Court must view all

facts "in the light most favorable" to the non-moving party. *Holcomb v. Iona Coll.*, 521 F.3d

130, 132 (2d Cir. 2008); *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

If the movant meets its burden, "the nonmoving party must come forward with

admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary

judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). "[A] party may

not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion

for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation

marks and citation omitted). Rather, the opposing party must establish a genuine issue of fact by

"citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); *see also*

*Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).

"Only disputes over facts that might affect the outcome of the suit under the governing

law" will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986). In determining whether there are genuine issues of material fact, a court is "required

to resolve all ambiguities and draw all permissible factual inferences in favor of the party against

whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012)

(quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)) (internal quotation marks omitted).

To survive a summary judgment motion, the opposing party must establish a genuine issue of

fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A).

Where the facts are not in dispute and the issues contested in a summary judgment

motion are legal issues, the court may decide the legal issues and rule accordingly on the

summary judgment motion. *See Official Comm. of Unsecured Creditors of Quebecor World*

*(USA) Inc. v. Am. United Life Ins. Co. (In re Quebecor World (USA) Inc.)*, 453 B.R. 201, 211

11

(Bankr. S.D.N.Y. 2011) (stating that because "the facts are not in dispute, . . . it is appropriate to

determine the legal issues under the summary judgment standard").

## III.  DISCUSSION

Claims I through III seek declaratory judgments that: (I) All Year's transfer of interests in

YGWV violates the Member LLC Agreement and Delaware Law; (II) All Year's transfer of

interests in YGWV violates the implied covenant of good faith and fair dealing; and (III) YGWV

is dissolved and may not effectuate the transfer of its interests or manage Member LLC.

Claim IV seeks to enjoin Defendants from transferring All Year's interests in YGWV,

and Claim V seeks to enjoin All Year and YGWV from acting as manager of Member LLC.

For the reasons explained below, Plaintiff fails to plead an adequate basis for relief in

Claims I through V, and accordingly Defendants' Motion to Dismiss is **GRANTED.**

Consequently, Plaintiff's Motion for Partial Summary Judgment on Claim III is also **DENIED**.

### A.  Claim I

Claim I of the Complaint seeks a declaratory judgment that any direct or indirect transfer

of all or any part of All Year's membership interests in YGWV without Plaintiff's express

consent is prohibited by the Member LLC Agreement and shall be null and void.  (*See*

Complaint ¶ 101.)  All Year, however, is not a signatory to the Member LLC Agreement.

Plaintiff argues that All Year is nevertheless bound by the Member LLC Agreement for two

independent reasons.[3]  First, Plaintiff argues that All Year is bound by the Member LLC

Agreement because YGWV is All Year's alter ego.  (Complaint ¶ 9.)  Second, Plaintiff argues

that All Year is also bound because All Year—through its principal at the time, Goldman—

extensively negotiated the Member LLC Agreement as Plaintiff's true counterparty and, thereby,

---

[3]      Claim I in the Complaint is sought against all Defendants, but the allegations (*see* Complaint ¶¶ 86-101),
and Plaintiff's argument (*see* Plaintiff Reply Brief ¶ 28), are actually only directed at All Year.

manifested All Year's intent to be bound by the agreement.  (*Id.* ¶ 8.)  Plaintiff fails to state a

claim under either theory, and as a result, Claim I must be dismissed.

       1.  <u>Plaintiff Does Not Adequately Plead an Alter Ego Theory</u>

Under New York law,[4] "a party who is not a signatory to a contract generally cannot be

held liable for breaches of that contract." *TransformaCon, Inc. v. Vista Equity Partners, Inc.*,

2015 WL 4461769, at *3 (S.D.N.Y. July 21, 2015).  As an exception to that general rule, a court

may "pierce the veil" and bind a non-signatory to a contract's terms where the non-signatory

"exercised complete control over a signatory and employed that domination to injure another

signatory to the agreement." *Boroditskiy v. European Specialties LLC*, 314 F. Supp. 3d 487, 494

(S.D.N.Y. 2018) (citation and internal quotation marks omitted).  Under New York law, "a court

may pierce the corporate veil where (i) 'the owner exercised complete domination over the

corporation with respect to the transaction at issue,' and (ii) 'such domination was used to

commit a fraud or wrong that injured the party seeking to pierce the veil.'" *Id.* (citing *Am. Fuel

Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997)).  New York courts generally

consider the following factors in determining whether domination by a non-signatory is present

under the first prong:

> (1) the absence of the formalities and paraphernalia that are part and
> parcel of the corporate existence, i.e., issuance of stock, election of
> directors, keeping of corporate records and the like, (2) inadequate
> capitalization, (3) whether funds are put in and taken out of the
> corporation for personal rather than corporate purposes, (4) overlap
> in ownership, officers, directors, and personnel, (5) common office
> space, address and telephone numbers of corporate entities, (6) the
> amount of business discretion displayed by the allegedly dominated
> corporation, (7) whether the related corporations deal with the
> dominated corporation at arms length, (8) whether the corporations
> are treated as independent profit centers, (9) the payment or

---

[4]      The parties agree that New York law controls the alter ego analysis because YGWV is organized under
New York law.  *See, e.g., Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995); (Motion to Dismiss at 7);
("Plaintiff Reply Brief," ECF Doc. # 35, at 13 n.11).

guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own.

*JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 386 F. Supp. 2d 461, 471–72 (S.D.N.Y. 2005) (quoting *Wm. Passalacqua Builders, Inc. v. Resnick*, 933 F.2d 131, 139 (2d Cir.1991)).

Specifically, a Plaintiff may bring a breach of contract claim against a counterparty-signatory's parent entity where the counterparty-signatory has been so dominated and "its separate identity so disregarded" that the counterparty-signatory "primarily transacted the dominator's business rather than its own and can be called the other's alter ego." *Walpert v. Jaffrey*, 127 F. Supp. 3d 105, 130 (S.D.N.Y. 2015) (quoting *Mazzola v. Roomster Corp.*, 849 F. Supp. 2d 395, 411 (S.D.N.Y. 2012)).

Here, Plaintiff alleges that All Year seeks to use its complete dominance and control of YGWV to perpetrate the alleged wrong challenged by Plaintiff—an "end run" around the Member LLC Agreement's transfer restrictions, via any transfer by All Year of its own interests in YGWV. (Plaintiff Reply Brief ¶ 34.) Plaintiff's allegations are insufficient to state a claim under an alter ego theory, however, as they do not allege that All Year dominated YGWV with respect to the transaction at issue, or that All Year "commit[ed] a fraud or wrong that injured the party seeking to pierce the veil." *MAG Portfolio Consult, GMBH v. Merlin Biomed Group LLC*, 268 F.3d 58, 63 (2d Cir. 2001) (quoting *Am. Fuel Corp.*, 122 F.3d at 134) (internal quotation marks omitted).

Plaintiff's Complaint contains a series of allegations with respect to the first factor—whether All Year exercised complete domination over YGWV, generally. To summarize, Plaintiff: (1) attacks YGWV's lack of record-keeping, filings, bank accounts, and other corporate

formalities; (2) alleges that YGWV does not receive revenue, make payments for expenses, have

adequate capitalization, or any assets/business besides the Member LLC interest; (3) claims that

YGWV does not have any unique personnel and that All Year exercises all decision-making for

the entity.[5]

Plaintiff includes sufficient allegations that All Year dominates YGWV as a general

matter.  Defendants point out that many of the allegations are made on information and belief,

and others appear to be conclusory recitations of the legal factors.  (Motion to Dismiss at 10.)

While they are right with respect to certain allegations, overall, Plaintiff's Complaint contains

allegations that cover most, if not all, of the relevant factors for any transaction that YGWV *was

allegedly involved in*, such that it could satisfy Federal Rule of Civil Procedure 8(a)'s liberal

pleading standard.  *See CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, 316 F. Supp. 3d 635,

647 (S.D.N.Y. 2018).

But there is a lingering problem with Plaintiff's allegations for the first prong.  As

Defendants observe, there are no allegations here regarding domination with respect to the

challenged transaction—the transfer of All Year's interest in YGWV to another entity.  And

based on the allegations in the Complaint, that makes sense because there is no ostensible role

for YGWV to play in that transaction.  Even if Plaintiff's general allegations regarding All

Year's control of YGWV could be construed as related to a transfer of interests in which YGWV

has no active role, Plaintiff suffers from pleading issues for the second prong that are also a

result of YGWV's lack of involvement in the transaction.

Plaintiff's allegations fail with respect to the second prong because they do not

adequately allege that an actionable "fraud or wrong" occurred or will occur as a result of the

---

[5]       *See* Plaintiff Reply Brief ¶ 32 (citing to Complaint ¶¶ 52-59; 92-93).

transfer of interests from All Year to another entity.  In Plaintiff's cited cases, the allegations

involved domination by a non-signatory affiliate that rendered the signatory entity

undercapitalized or unable to perform contractual obligations at the expense of its contractual

counterparties.[6]  As an initial matter, "it is well-established that an ordinary 'breach of contract,

without evidence of fraud or corporate misconduct, is not sufficient to pierce the corporate veil.'"

*Highland CDO Opportunity Master Fund, L.P. v. Citibank, N.A.*, 270 F. Supp. 3d 716, 732

(S.D.N.Y. 2017) (quoting *Am. Federated Title*, 126 F. Supp. 3d at 403).

Here, Plaintiff fails to allege a "fraud or wrong" that impairs YGWV's ability to conduct

business or make good on obligations at Plaintiff's expense in line with its cited cases.

Moreover, Plaintiff fails to allege that All Year even caused YGWV to breach contractual

obligations.  Section 8.1 of the Member LLC Agreement states that "a Member may not assign in

whole or in part any interest in the Company without the written consent of the other Members."

(Member LLC Agreement, § 8.1(a).)  Here, Plaintiff does not allege that YGWV plans to

transfer its interest in Member in violation of the agreement, let alone any other "fraud or

wrong."  *Cf. Maltz v. Union Carbide Chems. & Plastics Co., Inc.*, 992 F. Supp. 286, 303

(S.D.N.Y. 1998) (plaintiff pleaded a wrong where controlling entity sold controlled entity to an

unfit purchaser in "*in derogation* of a specific contractual term").

Plaintiff effectively argues that if he can plead general domination for the first prong, that

All Year's failure to adhere to any of YGWV's contractual obligations will then automatically

---

[6]     *See, e.g.*, *Cortlandt St. Recovery Corp. v. Bonderman*, 96 N.E.3d 191, 203-204 (N.Y. 2018) (controlling entity obtained proceeds of notes issued by controlled entity via fraudulent conveyances, leaving controlled entity unable to pay creditors); *Am. Federated Title Corp. v. GFI Mgmt. Servs., Inc.*, 39 F. Supp. 3d 516, 526-27 (S.D.N.Y. 2014) (controlling entity created shell company for purpose of leasing property, collecting sublease rents, deferring its own lease payments, and breaching lease after being made judgment proof by management fees paid to controlling entity); *JSC Foreign*, 386 F. Supp. 2d at 475-76 (controlling entity diverted funds to render the controlled entity judgment proof before it entered into a contract with obligations that it could not meet due to diverted funds).

constitute a "wrong."  But this is not sufficient to meet the second prong's requirements and the

"heavy burden" necessary to disregard the corporate form.  *TNS Holdings, Inc. v. MKI Sec.*

*Corp.*, 92 N.Y.2d 335, 339 (1998).

### 2.  Plaintiff Does Not Adequately Plead an "Intent to be Bound" Theory

Plaintiff argues that even if All Year is not the alter ego of YGWV, All Year is liable for

a breach of the Member LLC Agreement because it expressed an "intent to be bound" by the

Agreement.  (Complaint ¶ 90.)  Plaintiff argues that the "intent to be bound" theory is distinct

from the alter ego theory.  (Plaintiff Reply Brief ¶ 28.)  Plaintiff fails to plead a claim against All

Year under this theory as well.

It is a "basic tenant of contract law that the existence of a contract depends on whether

the parties intended to be bound, considering the 'objective manifestations of the intent of the

parties as gathered by their expressed words and deeds.'"  *MBIA Ins. Corp. v. Royal Bank of*

*Can.*, 706 F. Supp. 2d 380, 398 (S.D.N.Y. 2009) (quoting *Brown Bros. Elec. Contractors, Inc. v.*

*Beam Constr. Corp.*, 41 N.Y.2d 397, 393 N.Y.S.2d 350, 361 N.E.2d 999, 1001 (1977)).  Plaintiff

argues that a parent can be bound to a contract of its subsidiary, even when the parent is a non-

signatory, if the parent manifests an intent to be bound.  Specifically, Plaintiff appears to argue

that All Year and Goldman's involvement in the negotiation of the Member LLC Agreement on

YGWV's behalf demonstrates an intent to be bound by that Agreement.  There are multiple

issues with Plaintiff's argument.

 First, Plaintiff's leading New York case, *Horsehead Indus., Inc. v. Metallgesellschaft*

*AG*, does not lend clear support for Plaintiff's "intent to be bound" theory as distinct from the

alter ego theory.  657 N.Y.S.2d 632 (1st Dep't 1997).  While *Horsehead* proposes that a parent

entity's involvement in negotiations can evince an intent to be bound, *see id.* at 633, the cases it

cites for support qualify that is only the case "if the subsidiary is a dummy for the parent

17

corporation."[7]  Indeed, the case appears to have been decided on the basis that the plaintiff

successfully stated a claim under an alter ego theory.  *See Horsehead Indus.*, 657 N.Y.S.2d at

633.

Second, Plaintiff overstates the effect of the parents' presence during negotiations in

subsequent cases where courts found that parents manifested intent to be bound to their

subsidiaries' contracts.  Specifically, the cases cited by Plaintiff contained additional allegations

beyond the parents' involvement in negotiations that evinced an intent to be bound by the

subsidiaries' contracts.[8]  Inherent in each of these cases was a situation where, in each court's

view, it was objectively reasonable for a party to a contract to believe that a non-signatory was

bound due to the non-signatory's words or conduct.

Here, Plaintiff fails to make any allegations regarding All Year's words or conduct

evincing an intent to be bound by the Member LLC Agreement, beyond the fact that the same

personnel that represented All Year also represented YGWV.  More importantly, Plaintiff's own

allegations show that All Year made objective manifestations *not* to be bound, when it proposed

removing itself as a party from the draft Member LLC agreement and YGWV was included in its

place.[9]  (Complaint ¶ 32–38.)  This case is distinct from Plaintiff's cases where a parent's

involvement in and outside of negotiations objectively communicated some contractual

responsibility for the subsidiary.  More applicable here are New York cases refusing to find a

---

[7]      *Warnaco, Inc. v. VF Corp.*, 844 F. Supp. 940, 946 (S.D.N.Y. 1994) (citing to *A.W. Fiur Co. v. Ataka & Co.*, 71 A.D.2d 370, 373-74 (1st Dep't 1979)).

[8]      *See, e.g.*, *SHLD, LLC v. Hall*, 2016 WL 659109, at *8 (S.D.N.Y. Feb. 17, 2016) (parent executed collateral non-disclosure agreement with plaintiff in which it undertook obligations related to transaction); *Impulse Mktg. Grp. Inc. v. Nat'l Small Bus. All.*, 2007 WL 1701813 at *6 (S.D.N.Y. June 12, 2007) (parent assumed contract by informing plaintiff that it was the real party in interest and making direct payments to plaintiff).

[9]      As Debtors observed during oral argument, other sections of the Member LLC Agreement, like Section 11.4, also militate towards a finding that the parties contemplated that All Year, as the lender, would be a distinct and separate entity from YGWV.  (*See* Member LLC Agreement, § 11.4).

parent liable where the negotiations themselves served to *clarify* the parent's lack of liability for the subsidiary's obligations.[10]

Finally, Plaintiff's arguments regarding the effect of a parent's involvement in negotiations under the "intent to be bound" theory cannot be squared with the caselaw regarding alter ego liability.  Under the alter ego caselaw "[a]llegations of complete ownership, common officers and personnel, and shared office space are, without more, insufficient" to impose contractual liability on a parent for its subsidiary.  *Vibes Int'l Inc., SAL v. Iconix Brand Grp.*, 2020 WL 3051768, at *8 (S.D.N.Y. June 8, 2020).  Under Plaintiff's "intent to be bound" theory, however, an overlap in ownership and personnel that necessarily results in the parent's involvement in its subsidiary's negotiations would always result in contractual liability for the parent.  This reading of the "intent to be bound" caselaw would completely swallow the alter ego theory that it serves as a purported alternative to.

## B.  Claim II

For Claim II, Plaintiff seeks a declaratory judgment that Defendants are violating the covenant of good faith and fair dealing.  This claim for breach is brought against both YGWV directly, as well as All Year, under Plaintiff's theories for alter ego and intent to be bound. Plaintiff fails to state a claim for the breach of implied covenant against both parties.

"Under Delaware law, an implied covenant of good faith and fair dealing inheres in every contract."  *Chamison v. HealthTrust, Inc. – The Hosp. Co.*, 735 A.2d 912, 920 (Del. Ch. 1999).

---

[10]     *See Skanska USA Bldg. Inc. v. Atlantic Yards B2 Owner, LLC*, 40 N.Y.S.3d 46, 54, 146 A.D.3d 1 (1st Dep't 2016) ("Nowhere in the complaint does plaintiff allege that it believed it was contracting with or had rights vis-à-vis [parent] or any entity other than [subsidiary].  Indeed, plaintiff could have negotiated for such rights.  Having failed to do so, plaintiff cannot now claim that it was tricked into contracting with [subsidiary] only and thus should be allowed to assert claims against [parent]."); *see also Spectra Secs. Software, Inc. v. MuniBEX.com, Inc.*, 307 A.D.2d 835, 763 N.Y.S.2d 313, 314–15 (1st Dep't 2003) (stating that "[t]he Definitive Agreement entered into between plaintiff and [subsidiary] was the product of substantial negotiations, which included discussions on the very issue of [subsidiary] executing the Definitive Agreement," as opposed to the parent entity).

To sustain a claim for a breach of the implied covenant, a plaintiff "must allege a specific

implied contractual obligation, a breach of that obligation by the defendant, and resulting

damage to the plaintiff." *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 888 (Del. Ch. 2009)

(quoting *Fitzgerald v. Cantor,* 1998 WL 842316, at *1 (Del. Ch. Nov.10, 1998)). "The implied

covenant of good faith and fair dealing embodies the law's expectation that 'each party to a

contract will act with good faith toward the other with respect to the subject matter of the

contract.'" *SerVaas v. Ford Smart Mobility LLC*, 2021 WL 3779559 at *8 (Del. Ch. Aug. 25,

2021) (quoting *Allied Capital Corp. v. GC-Sun Holdings, L.P.*, 910 A.2d 1020, 1032 (Del. Ch.

2006)). A claim for breach of the implied covenant will only lie "'in that narrow band of cases

where the contract as a whole speaks sufficiently to suggest an obligation and point to a result,

but does not speak directly enough to provide an explicit answer.'" *In re Zohar III, Corp.*, 631

B.R. 133, 202 (Bankr. D. Del. 2021) (quoting *Airborne Health, Inc. v. Squid Soap, LP*, 984 A.2d

126, 146 (Del. Ch. 2009)).

With respect to All Year, Plaintiff cannot assert a claim for a breach of the implied

covenant because, as discussed *supra*, All Year is not a party to the contract. *See Bandera

Master Fund LP v. Boardwalk Pipeline Partners, LP*, 2019 WL 4927053, at *21 (Del. Ch. Oct.

7, 2019).

Plaintiff also fails to make out a claim for breach of the implied covenant against YGWV,

as the agreement provides an explicit (and no implicit) answer on transfers in ownership. Here,

Plaintiff's alleges that by "agreeing to the YGWV Interest Transfer scheme, Defendants have

failed to deal honestly and fairly and will violate this implied covenant." (Complaint ¶¶ 105–

106.) The agreement in question, however, already contains explicit provisions that describe

YGWV's obligations with respect to assignments of YGWV's interests, and only speaks to

20

limitations on YGWV's—not its parent organization's—ability to transfer its interest.  (Member

LLC Agreement, § 8.1(a).)

Plaintiff cites authority for the proposition that the "goal" of the implied covenant is to

"preserve the economic expectations of the parties," *Glaxo Grp. Ltd. v. DRIT LP*, 248 A.3d 911,

919 (Del. 2021), and alleges that it was always his expectation that he "wanted to partner

specifically with Goldman/All Year on the hotel project, as he had done for years through WB

LLC, and not anyone else."  (Complaint ¶ 37.)  Plaintiff, however, overlooks the fact that this

authority also limits this to "instances when parties fail to foresee events not covered by their

agreement" and are "addressing gaps in their agreement." *Glaxo Grp. Ltd.*, 248 A.3d at 919.

A change in the ownership interests on YGWV's side of the LLC was clearly foreseen by

the parties.  This is evidenced not only by Section 8.1 of the Member LLC Agreement, but by

Plaintiff's own Complaint, which alleges that at one point in the negotiations All Year was

contemplated as the other member to the LLC Agreement, which would have comported with

Plaintiff's claimed "economic expectations."  (*See* Plaintiff Reply Brief at ¶ 46.)  Nevertheless,

Plaintiff allowed for the substitution of YGWV in place of All Year and executed the agreement.

(Complaint ¶ 3.)  A court "should not employ the implied covenant to re-write an agreement or

rebalance economic interests after events that could have been anticipated, but were not, later

adversely affect a party." *In re Zohar*, 631 B.R. at 201–202.[11]

---

[11]     At oral argument, Plaintiff identified *Oregon RSA No. 6, Inc. v. Castle Rock Cellular of Oregon Ltd.
P'Ship*, 840 F. Supp. 770 (D. Or. 1993)—a case not cited in the parties' briefs—as supportive.  The Court allowed
the parties to submit supplemental briefs on *Oregon RSA*, which they did on September 16, 2022.  Plaintiff is correct
that *Oregon RSA* presents a factually similar scenario, that involved the issue of a parent transferring its interests in a
subsidiary, where the subsidiary was restricted in transferring its own interests by an LLC agreement.  *Id.* at 774-75.
The court found that the transfer violated the covenant of good faith and fair dealing.  *Id.* at 776.  *Oregon RSA* does
not change the result here, however.  First, the court in *Oregon RSA* also disregarded the corporate form to hold the
parent liable, which the Court has not done here.  Second, the case's persuasive force is lacking considering that
Delaware courts have not followed the decision in the past thirty years, while in the meantime, controlling Delaware
precedent has cautioned that the covenant is "not an equitable remedy for rebalancing economic interests that could
have been anticipated." *Glaxo Grp. Ltd.*, 248 A.3d at 919 (quoting *Nemec v. Shrader*, 991 A.2d 1120, 1128 (Del.

Here, changes in ownership were expressly contemplated, rather than implied by the

Member LLC Agreement, and Plaintiff failed to negotiate for additional contractual protections

for his claimed economic expectations.  For that reason, Plaintiff fails to state a claim for breach

of the implied covenant against YGWV.

### C.  Claim III

Plaintiff's argument for Claim III proceeds in two steps, and he must succeed on both

steps for the claim to survive the motion to dismiss and succeed on summary judgment.  First,

Plaintiff argues that when All Year filed for bankruptcy, its membership in YGWV was

terminated by operation of two independent sections of the New York LLC Law.  *See* NY LLCL

§§ 603(a), 701(b).  Next, Plaintiff argues that, because All Year was the sole Member of YGWV,

the termination of All Year's membership necessarily also caused the dissolution of YGWV

under NY LLCL § 701(a)(4).

Plaintiff's legal theories regarding the termination of All Year's membership are

incorrect under the first step, and thus Plaintiff fails to state a claim under Claim III.  As a result,

it is unnecessary to consider whether YGWV was dissolved for lack of having at least one active

member under NY LLCL § 701(a)(4).

### 1.  All Year's Membership was Not Terminated by NYC LLCL Section 701(b)

Plaintiff argues that Section 701(b) of the NY LLC Law mandates termination of an LLC

member's membership interest upon that member's filing of a bankruptcy.  That statute reads:

> Unless otherwise provided in the operating agreement, the death,
> retirement, resignation, expulsion, bankruptcy or dissolution of any
> member or **the occurrence of any other event that terminates the
> continued membership** of any member shall not cause the limited
> liability company to be dissolved or its affairs to be wound up, and

---

2010)).  The Plaintiff cannot escape that according to his own complaint, drafts of the agreement quite literally
restricted All Year's ability to transfer its interests in Member LLC were rewritten by the parties after YGWV was
created and substituted in All Year's place.

> upon the occurrence of any such event, the limited liability company
> shall be continued without dissolution, unless within one hundred
> eighty days following the occurrence of such event, a majority in
> interest of all of the remaining members of the limited liability
> company or, if there is more than one class or group of members,
> then by a majority in interest of all the remaining members of each
> class or group of members, vote or agree in writing to dissolve the
> limited liability company.

NY LLCL § 701(b).

Plaintiff's interpretation of this section as mandating termination of All Year's interest in

YGWV is incorrect.  Plaintiff argues that the inclusion of bankruptcy in a list of "event[s] that

terminate[]" membership is a mandate that bankruptcy *must* result in termination for any member

in any LLC.  As an initial matter, it is worth nothing that Plaintiff cannot argue that bankruptcy

*always* terminates membership, given the first clause in NY LLCL § 701(b), which states that the

events purportedly result in termination "[u]nless otherwise provided in the operating

agreement."  *Id.*  Thus, the statute yields to anything contrary in an operating agreement.  For

their part, Defendants argue that a fairer reading of the statute is that bankruptcy is included in an

illustrative list of events that *may* result in an LLC member's termination, where included in the

operating agreement.  The narrower issue then becomes whether Section 701(b) mandates events

of termination when the operating agreement is silent on events of termination, explicitly, as it is

here.  *See generally* ("YGWV LLC Agreement," ECF Doc. # 10-2, Ex. B to Compl.)  The Court

concludes that it does not.

Starting with the statute itself, the obvious purpose of NY LLCL § 701(b) is to provide a

procedure to avoid dissolution if termination of a member occurs.  It is not clear under a reading

of the entire section that the legislature intended it to be an absolute authority on events that must

result in termination in the first instance.  And Plaintiff fails to cite any caselaw that supports

such a reading.  Meanwhile, Defendants at least draw some support, albeit indirect, from caselaw

interpreting NY LLCL § 701(b),[12] and by analogy to other termination events listed in NY LLCL § 701(b),[13] that generally suggests the list of events do not affirmatively create rights of termination independent of an operating agreement.

Importantly, Plaintiff's construction of NY LLCL § 701(b) also reaches results that are inconsistent with the remainder of Section 701 when applied to single-member LLCs. First, it is obvious that the list of events in the beginning of Section 701(b) contemplates the existence of other remaining members in the LLC. Finding that these are mandatory as opposed to illustrative would result in a lack of applicability to single-member LLCs, as certain termination events would make no sense (*e.g.*, expulsion) or would effectively spell dissolution for the LLC (*e.g.*, death, retirement, resignation, dissolution) as applied to single-member LLCs.

This highlights another logical inconsistency with Plaintiff's reading of the statute, as the result of his argument is that the events in the beginning of clause would not only trigger termination but would instantly result in dissolution in the context of a single-member LLC under NY LLCL § 701(a)(4). Section 701(b)—whose primary concern is not with definition of termination events, but to create a default rule *against* dissolution—cannot be construed as automatically dissolving an LLC by the occurrence of the listed termination events.

Plaintiff's reading of Section 701(b) as applied to single-member LLCs also conflicts with the statute's clear language deferring to the operating agreement on matters of termination *and* dissolution. First, the clause preceding the illustrative termination events in Section 701(b) prefaces that the remainder of the section takes effect "[u]nless otherwise provided in the

---

[12]    *See, e.g.*, *Man Choi Chiu v. Chiu*, 71 A.D.3d 646, 647 (2d Dep't 2010) (holding that Section 701(b)'s reference to expulsion does not create a basis for termination via expulsion unless provided for in the operating agreement).
[13]    For instance, All Year observes that there are no default rules in the NY LLC Laws for retirement, and that resignation is not permitted unless provided for in the operating agreement under NY LLCL § 606(a).

24

operating agreement." And while nothing in the Member LLC Agreement explicitly indicates

that the bankruptcy of a member triggers their termination (*see* YGWV LLC Agreement, Art. 7),

that is ultimately unsurprising, as the LLC Agreement was clearly written in contemplation that

the LLC would only have a single member. As a result, and unlike operating agreements for

multi-member LLCs, procedures for "terminating" its sole member would serve no conceivable

purpose.

Indeed, "termination" of a member in a single-member LLC would be akin to a

dissolution of the LLC itself. The statute, however, empowers the LLC to define its own

dissolution events, *see* NY LLCL § 701(a)(2), which the YGWV LLC Agreement does.

Bankruptcy is not a dissolution event in the Agreement. Nevertheless, Plaintiff's reading of NY

LLCL § 701(b) would create a hyper-technical requirement for single-member LLCs to delineate

both termination and dissolution in their LLC agreements, when there is no functional difference

between the two from their perspective. For single-member LLCs, this interpretation serves only

to conflict with Section 701(a)(2) and work needless forfeitures in the process.

For these reasons, the Court finds that the events in NY LLCL § 701(b) do not work an

automatic termination of a member's interest, at least in the context of a single-member LLC.

### 2. All Year's Membership was Not Assigned via NYC LLCL Section 603

Plaintiff next argues that filing of the bankruptcy petition constituted a "transfer" under

Section 541 of the Bankruptcy Code because it provides that an interest of the debtor in property

becomes property of the estate regardless of any agreement or non-bankruptcy law "that restricts

or conditions transfer of such interest by the debtor." 11 U.S.C. § 541(c)(1)(A). In turn, plaintiff

argues that this "transfer": (1) effectuated an assignment of All Year's economic interest in

YGWV to the bankruptcy estate; (2) stripped All Year of its non-economic rights (*i.e.*,

management) in YGWV; and (3) terminated All Year's membership in YGWV, all under NY

LLCL § 603(a).  The Court finds that neither a transfer under Section 541(c)(1)(A) of the

Bankruptcy Code nor an assignment under NY LLCL § 603(a) occurred for the reasons set forth

below.

> a.  *A Transfer Did Not Occur under Section 541 of the Bankruptcy Code When
> All Year Filed a Bankruptcy Petition*

First, both parties recognize the applicability of *N.L.R.B. v. Bildisco & Bildisco*, which

held that a debtor in possession and the pre-petition debtor are not legally distinct entities.  465

U.S. 513, 528 (1984).  Defendants argue that under *Bildisco*, there can be no "transfer" if the pre-

petition debtor and debtor in possession are the same entity.  Plaintiff counters that *Bildisco* only

addressed whether a debtor in possession was a new entity to determine whether the debtor was

bound by a prepetition bargaining agreement, not interpretation of whether a "transfer" occurs

under Section 541 of the Code.

With no controlling precedent on point, each party cites to a case addressing whether a

Chapter 11 filing and Section 541 effect a transfer under provisions of state law or operating

agreements that contain requirements for transfers of assets.  Plaintiff points to *In re Mid-South

Bus. Assocs., LLC*, 555 B.R. 565, 577 (Bankr. N.D. Miss. 2016), which held that it does, and

Defendants point to *In re Nw. Co.*, 2020 WL 2121269, at *4 (Bankr. S.D.N.Y. May 1, 2020),

which held that it does not.[14]  Defendants find more reasoned support in *Nw. Co.*

First, as Judge Wiles observed in *Nw. Co.*, the court in *Mid-South* failed to provide any

supporting citation, let alone address *Bildisco*, in holding that the filing of a bankruptcy petition

and Section 541 resulted in a "disposition" of assets under the relevant operating agreement,

---

[14]     *Compare Mid-South,* 555 B.R. at 577 (holding that filing of chapter 11 petition resulted in transfer of
debtor's assets requiring approval pursuant to LLC operating agreement) *with Nw. Co.*, 2020 WL 2121269, at *4
(ruling that "the mere filing of a chapter 11 petition and the creation of a chapter 11 estate automatically amounts to
a transfer or disposition of substantially all of the Debtor's property for purposes of other laws is simply wrong.")

triggering requirements for a membership vote. *See Nw. Co.*, 2020 WL 2121269, at \*3.

Additionally, it appears that *Mid-South*'s holding on that point was not vital to the decision, as

the court first held that the filing of bankruptcy was an event outside the ordinary course of

business under the operating agreement, which also required a member vote under the operating

agreement. *See Mid-South*, 555 B.R. at 577.

In contrast, the court in *Nw. Co.* observed, with support from multiple circuits, that

"courts generally reject the contention that a bankruptcy filing itself constitutes a transfer of

assets to a new entity." *See Nw. Co.*, 2020 WL 2121269, at \*3 (collecting cases). Critically,

Judge Wiles observed that cases that speak of the estate as separate from the debtor "are in fact

speaking metaphorically," to effectuate the rights created for the estate under the Bankruptcy

Code. *Id.* Thus, the view that a transfer occurs from the debtor to the estate was "simply wrong,

particularly where the debtor continues as a debtor-in-possession and continues to exercise

dominion and control over its businesses and properties." *Id.*

Since Defendants find general support in *Bildisco*, and a better reasoned on-point

decision in *Nw. Co.*, the Court finds that a "transfer" did not occur upon the filing of All Year's

bankruptcy petition for purposes of triggering NY LLCL § 603(a).

> b. *A "Transfer" under Section 541 of the Bankruptcy Code Would Not Necessarily Force Section 603(a) into Operation Here*

There are additional problems with Plaintiff's argument, as Plaintiff does not simply ask

the Court to render a binary decision on whether the filing of the bankruptcy effected a "transfer"

of all of All Year's interests to the bankruptcy estate, as in *Mid-South*. Plaintiff asks the court to

draw an even finer distinction and hold that such a "transfer" would actually only transfer All

Year's *economic* interests—but not its *managerial* interests—to the bankruptcy estate, while

simultaneously terminating All Year's membership, all under operation of NY LLCL § 603(a).

The Court holds that even if a "transfer" occurred under Section 541 of the Code, it would not necessarily have the result Plaintiff argues for under NY LLCL § 603(a).

To begin, Plaintiff does not cite to any cases that hold filing a bankruptcy petition effects an assignment under NY LLCL § 603. Instead, Plaintiff cites to a string of non-binding cases supporting the proposition that filing of a bankruptcy constitutes an assignment of strictly economic (as opposed to managerial) interests under what Plaintiff considers to be similar statutes.[15] Notably, Defendants and Plaintiff only discuss these cases in the preemption context, and seem to both presume that *if* the filing of the bankruptcy petition effects a "transfer" under the precedents above, that it will also automatically effect an assignment under NY LLCL § 603(a). It is worth considering, however, the applicability of NY LLCL § 603(a) in the instant case before jumping to the preemption analysis, as there are multiple interpretive issues that weigh against Plaintiff's argued application of Section 603(a) here.

First, each of the cases cited by Plaintiff for the applicability of NY LLCL § 603 here involved state statutes and/or operating agreements with clear language stating that a member's bankruptcy filing would result in assignee status.[16] As discussed in Section III.C.1, the LLC agreement here suggests that is not the case, and the New York LLC Laws do not explicitly state that an LLC member's bankruptcy terminates their membership, let alone that a member terminated for that reason acts as a voluntary assignor.

---

[15]    *See Milford Power Company, LLC v. PDC Milford Power, LLC*, 866 A.2d 738, 758-62 (Del. Ch. 2004); *In re Garrison- Ashburn, L.C.*, 253 B.R. 700, 708 (Bankr. E.D. Va. 2000); *Nw. Wholesale, Inc. v. Pac Organic Fruit, LLC*, 357 P.3d 650, 656-59 (Wash. 2015).

[16]    As discussed *supra*, Section II.C.1, the NY LLC Laws do not explicitly state that a bankrupt member is terminated, let alone that a member terminated because of bankrupt status has the rights of a party that has assigned away its interest. *Cf. Milford Power*, 866 A.2d at 742 (operating agreement stated that "[a] Member shall be deemed to have withdrawn from the Company . . . upon the occurrence of any of the following events: (a) Immediately if any Member shall (i) voluntarily file with a Bankruptcy Court a petition seeking an order for relief under the Federal bankruptcy laws . . ."); *Garrison- Ashburn, L.C.*, 253 B.R. at 704 (interpreting Virginia statute at issue, VA. CODE ANN. § 13.1–1040.1(6)(a), which states that "a member is dissociated from a limited liability company upon the occurrence of any of the following events: . . . (6) The member's: (a) Becoming a debtor in bankruptcy . . . ").

Without clearer statutory language equating a bankrupt LLC member to an assignor, there is an absence of legal justification for finding that an "assignment" has occurred. Indeed, an "assignment" is a legal term of art, and "although no particular formula is needed to create an assignment under New York law, there is a need for some 'act or words' that manifest an intent to assign." *Property Asset Mgt., Inc. v Chicago Tit. Ins. Co., Inc.*, 173 F.3d 84, 87 (2d Cir 1999) (quoting *Miller v. Wells Fargo Bank Int'l Corp.*, 540 F.2d 548, 557 (2d Cir.1976)). "In order for an assignment to be valid, the assignor must be 'divested of all control over the thing assigned.'" *In re Stralem*, 303 A.D.2d 120, 758 N.Y.S.2d 345, 347 (2d Dep't 2003) (quoting *Coastal Commercial Corp. v. Kosoff & Sons*, 10 A.D.2d 372, 376 (4th Dep't 1960)). Thus, even if the Court adopts Plaintiff's argument that a "transfer" occurs to the bankruptcy estate, there is still no basis in statute to equate that transfer by operation of law to an assignment, and there are no allegations in the Complaint that All Year intended to divest itself of its interest in YGWV by proceeding as a debtor in possession in bankruptcy.

Additionally, Plaintiff's arguments for applicability of NY LLCL § 603 are weakened by the fact that Plaintiff's cases applying similar statutes all occurred in the context of multi-member LLCs with one member filing for bankruptcy. Application of statutes like NY LLCL § 603 makes sense on those facts, given that the provisions of the NY LLC Law (and similar statutes) seem to be particularly concerned with assignments in the context of multi-member LLCs.[17] The Court is aware of other cases, however, that have rejected arguments regarding applicability of provisions like NY LLCL § 603 that restrict and qualify the ability of a member

---

[17]     The NY LLC Laws certainly contemplate the possibility of remaining members admitting an assignee as a member. *See* NY LLCL § 603(c) ("Unless otherwise provided in an operating agreement and except to the extent assumed by agreement, until the time, if any, *that an assignee of a membership interest becomes a member*, the assignee shall have no liability as a member solely as a result of the assignment."); § 604(a) ("Except as provided in the operating agreement, an assignee of a membership interest may not become a member without the *vote or written consent of at least a majority in interest of the members . . . .*") (emphasis added).

29

to assign their interest to single-member LLCs in bankruptcy.[18]  In fact, the court in *Modanlo*

distinguished Plaintiff's lead case, *Milford Power*, and reasoned that the Delaware LLC statute

failed to address single-member LLCs, as evidenced by its references to consent by *other*

*members* to transfer of management rights to assignees.  *See* 412 B.R. at 728–30.  The court also

noted that applying the statute to restrict the exercise of management rights by the bankruptcy

estate would lead to the absurd result of having no entity entitled to vote the corporate shares

owned by the LLC.  *Id.*

  These same issues are present here, and the Court finds the reasoning of cases like

*Modanlo* more applicable in this context.  In other words, even if the Court adopted Plaintiff's

argument that Section 541 effects a "transfer," there is no basis to find that such a transfer

necessarily effects the type of assignment described in NY LLCL § 603 on these facts.

  3. Federal Law Preempts NY LLCL §§ 603 and 701 to the Extent They Terminate or
    Assign All Year's Interest Here by Operation of Law

  As discussed, the filing of a bankruptcy petition does not result in termination or partial

assignment of All Year's economic and/or managerial interests under the best reading of NY

LLCL §§ 701, 603, and the YGWV LLC Agreement in this case.  In any event, even if the Court

were to find that those statutes worked a termination and/or partial assignment as an interpretive

matter, the Court finds that those statutes would be preempted by provisions of the federal

Bankruptcy Code.

  Under the Supremacy Clause, Article VI, Clause 2 of the Constitution, federal law

prevails when it conflicts with state law.  *Arizona v. United States*, 567 U.S. 387 (2012).  Under

the implied preemption doctrine, state laws are "pre-empted to the extent of any conflict with a

---

[18] *See In re Modanlo*, 412 B.R. 715 (Bankr. D. Md. 2006), *aff'd*, 266 Fed. Appx. 272 (4th Cir. 2008); *In re Albright*, 291 B.R. 538 (Bankr. D. Colo. 2003).

federal statute.  Such a conflict occurs . . . when [ ] state law stands as an obstacle to the

accomplishment and execution of the full purposes and objectives of Congress." *Deutsche Bank*

*Tr. Co Ams. v. Large Priv. Beneficial Owners (In re Tribune Co. Fraudulent Conveyance Litig.)*,

946 F.3d 66, 81 (2d Cir. 2019) (citations and quotation omitted).  "The key to the preemption

inquiry is the intent of Congress."  *N.Y. SMSA Ltd. P'ship v. Town of Clarkstown*, 612 F.3d 97,

104 (2d Cir. 2010) (citations omitted).

There is a presumption against preemption when Congress legislates in an area

traditionally recognized as being one of state law.  *See Hillman v. Maretta*, 569 U.S. 483, 490

(2013) (stating that because "[t]he regulation of domestic relations is traditionally the domain of

state law . . . [t]here is [ ] a presumption against pre-emption") (internal quotation marks and

citation omitted).  However, the present context is not such an area.  To understate the

proposition, the regulation of creditors' rights has "a history of significant federal presence."

*United States v. Locke*, 529 U.S. 89, 90 (2000).

The federal law at issue here is Section 541 of the Bankruptcy Code.  In relevant part,

Section 541(a) states the commencement of a bankruptcy case creates an estate that is comprised

of "all legal or equitable interests of the debtor in property as of the commencement of the case."

11 U.S.C. § 541(a)(1).  Section 541(c)(1) is also relevant to the analysis, and states that:

> [A]n interest of the debtor in property becomes property of the
> estate . . . notwithstanding any provision in an agreement, transfer
> instrument, or applicable nonbankruptcy law—
>
> (A) that restricts or conditions transfer of such interest by the debtor;
> or
>
> (B) that is conditioned on the insolvency or financial condition of
> the debtor, on the commencement of a case under this title, or on the
> appointment of or taking possession by a trustee in a case under this
> title or a custodian before such commencement, and that effects or
> gives an option to effect a forfeiture, modification, or termination of
> the debtor's interest in property.

11 U.S.C. § 541(c)(1).

Plaintiff argues for applications of New York law that would, upon filing of a bankruptcy petition: (1) "terminate" All Year's interest in Member LLC under NY LLCL § 701; and (2) strip All Year of its managerial interest in Member LLC, and as a result, terminate All Year's membership under NY LLCL § 603. These applications are in clear conflict with Section 541 of the Bankruptcy Code.

To begin, neither party cites to any in-circuit cases addressing the preemptive effect of Section 541 on the purported termination or modification of LLC interests via state law. With no controlling precedent, Defendants find more support in the caselaw in arguing that Section 541 preempts here. Namely, Defendants cite to one persuasive case, *In re Prebul*, which held that an older version of NY LLCL § 701 was preempted by Section 541. *See* 2012 WL 5997927, at *10–11 (E.D. Tenn. Nov. 30, 2012). As Plaintiff correctly observes, an LLC member's bankruptcy filing triggered *dissolution* (as opposed to mere termination of the member) under that former version of § 701. *Id.* But the fact that the consequence of bankruptcy has been softened somewhat from dissolution to termination by recent amendment of NY LLCL § 701 does not alter the conclusion, given that Section 541 plainly prevents "termination" of a debtor's rights as a result of bankruptcy in any event. Defendants also cite an additional string of bankruptcy cases finding other state laws mandating the dissociation/dissolution upon the happening of bankruptcy preempted by Section 541.[19] With respect to NY LLCL § 701, the Court finds that these cases are directly applicable because, as is the case here, the result of

---

[19] *See In re Dixie Mgmt. & Inv., Ltd. Partners*, 474 B.R. 698, 701 (Bankr. W.D. Ark. 2011) (holding same regarding Arkansas statute and clause in operating agreement, and noting that debtor was "permitted the use and benefit of its interest in the LLC and has the right to continue as a member of the LLC"); *In re Daugherty Constr., Inc.*, 188 B.R. 607, 611-12 (Bankr. D. Neb. 1995) (holding same regarding Nebraska statute because "[u]nder section 541(c)(1), debtor's membership in the two LLCs continues to exist, and it constitutes property of the bankruptcy estate"); *In re Klingerman*, 388 B.R. 677, 678 (Bankr. E.D.N.C. 2008) (holding same regarding North Carolina statute).

dissociation/dissolution is unavoidably in conflict with the clear text of Section 541, which

prevents not only "termination" but even the milder "modification" of a debtor's interests.  This

conclusion is bolstered by the fact that Plaintiff has not cited to any case where a similar

dissociation/dissolution statute has survived a preemption analysis.

The analysis is closer with respect to NY LLCL § 603, because at least under Plaintiff's

theory, it is conceivably the "transfer" under state law, and not the filing of the bankruptcy *per

se*, that triggers an assignment that steers clear of Section 541.  However, this overly technical

argument does not hold up under a preemption analysis that requires this Court to determine

whether the "state law 'stands as an obstacle to the accomplishment and execution of the full

purposes and objectives'" of the Bankruptcy Code.  *Hillman*, 569 U.S. at 490 (quoting *Hines v.

Davidowitz*, 312 U.S. 52, 67 (1941)).

The first glaring issue is that Plaintiff's interpretation of NY LLCL § 603 ultimately

terminates All Year's membership interest, albeit only after the estate receives the economic

portion of that interest.  There is clearly a conflict between this result and Section 541's clear

language prohibiting a "termination" as a result of bankruptcy.  Plaintiff is even harder pressed to

explain how the division of the interest does not work an impermissible "modification."  Plaintiff

finds superficial support in *Milford Power*, which held that an admittedly similar Delaware law

was not preempted by the provisions of the Bankruptcy Code, because it still allowed the

debtor's economic interests to flow to the bankruptcy estate.  *Milford Power*, 866 A.2d at 758–

62.[20]  Closer inspection of the case reveals that the Court should not reach the same result here.

---

[20]     In discussing *Milford Power*, *Zachman* held that the Delaware statute in question was "not preempted by
the Bankruptcy Code to the extent that they divest members who file for bankruptcy of the right to participate in the
management of the company but not of their economic rights."  *Zachman v. Real Time Cloud Servs. LLC*, 251 A.3d
115 (Del. 2021).  Even a terminated member under state law retains the ability to recover the economic interest.

First, Plaintiff misconstrues *Milford Power*'s application of the preemption doctrine.
Plaintiff praises *Milford Power*'s reasoning as "the better approach . . . that balances the
competing interests of state law and the Bankruptcy Code to arrive at a middle ground of partial
preemption." (Plaintiff Reply Brief, at 11.) This misapprehends the objective of a proper
preemption analysis. Indeed, the preemption analysis is rooted in the Supremacy Clause, and the
entire purpose is to determine whether federal law overrides state law. The court in *Milford
Power* recognized that it was "duty-bound not to ignore an 'explicit' congressional preemption
of state law or an 'unavoidable conflict' between the Bankruptcy Code and Delaware law."
*Milford Power*, 866 A.2d at 756 (quoting *Integrated Solutions, Inc. v. Service Support
Specialties, Inc.*, 124 F.3d 487, 491–92 (3d Cir.1997)). The court did not reach a "middle
ground" as a means of resolving a perceived conflict, as Plaintiff argues.

Of course, as Plaintiff observes, the caselaw is full of principles to apply when the
preemption analysis implicates interpretive issues or federalism concerns, but such concerns do
not change the analysis here.[21] Aside from the language above, the decision in *Milford Power*
provides little citation for its preemption analysis, and while it may have reached an analytical
"middle ground" according to Plaintiff, doing so is not necessarily the hallmark of a well-
reasoned preemption analysis.

Second, even if the Court assumes the balancing of state and federal interests was a
proper as a matter of preemption in *Milford Power*, the Court is not faced with the same state
interests here that were driving the court's interpretation in that case. In *Milford Power*, the

---

[21]     Plaintiff states that there is "a strong presumption against preemption," especially in an "ambiguous case."
*Nw. Wholesale, Inc. v. Pac Organic Fruit, LLC*, 357 P.3d 650, 654 (Wash. 2015) (citations omitted). As discussed
above, this is neither an ambiguous case given the plain meaning of the state and federal statutes, nor one where
Congress has legislated in an area traditionally recognized as being one of state law, warranting a strong
presumption against preemption. *See Hillman*, 569 U.S. at 490.

court stated that the state law in question "expressly recognize[d] the unique relationship that exists among members of LLCs and protects solvent members from being forced into relationships they did not choose that result from the bankruptcy of one of their chosen co-investors." *Milford Power*, 866 A.2d at 754.  As *Modanlo* pointed out, this concern is much weaker when the member filing for bankruptcy proceeds as a debtor in possession, and non-existent in the context of a single-member LLC.  *See Modanlo*, 412 B.R. at 727.[22]

Third, the federal interest in *Milford Power* was also much weaker because the preemption analysis there involved a different section of the Code with limitations on its own preemptive effect.  As discussed above, *Milford Power* held that the LLC Agreement in question was an executory contract, and thus Section 365 of the Code would control the fate of debtor's management interest.  *Milford Power*, 866 A.2d at 750–51.  The court recognized that section 365, like Section 541, generally prevents *ipso facto* clauses from divesting the rights received by the bankruptcy estate.  *Id.*  Section 365 preserves a trustee's ability to assume executory contracts.  *Id.*  Critically, however, the court observed that Sections 365(e)(2) and 365(c)(1) created exceptions to this rule, which were "an expression of Congress's recognition that certain types of executory contracts to which debtors are parties (e.g., personal services contracts) should not be assumable by a Bankruptcy Trustee in circumstances when state law would not require the non-debtor parties to accept substitute performance."  *Id.* at 751–52.

Section 541 does not make any similar exceptions to its own preemptive effect.  And in the absence of express limitations in the federal statute, this Court must "respect Congress's

---

[22]    In any event, the distinction made in *Milford Power* between the transfer of economic (as opposed to management) rights and termination of an interest is less compelling when considering that the NY LLC Laws also give terminated members a right to recoup their economic interests, because the "powers of that member may be exercised by its legal representative or successor."  NY LLCL § 608.  Surprisingly, Defendants did not brief the applicability of this section.

desire to avoid having property interests of debtors divested simply because the debtors filed for

bankruptcy," as the court recognized in *Milford Power*. *Id.* at 762.  Plaintiff, however, seems to

be arguing for this very result, and with no countervailing state interests in support.[23]

In sum, Plaintiff's readings of NY LLCL § 603 and § 701, even if correct, would be

preempted by federal law, and thus would not effect a termination or assignment as a result of

All Year's bankruptcy filing.

4.  YGWV was not dissolved due to a lack of members

On the facts alleged, All Year's interest in YGWV was neither terminated nor assigned

by operation of New York law.  As a result, Plaintiff's claims that YGWV has been dissolved by

operation of NY LLCL § 701(a)(4) are incorrect.

**D.  Claims IV and V**

Claims IV and V of the Amended Complaint seek injunctive relief but are predicated on

the same bases as Claims I through III for declaratory relief.  Specifically, Claim IV seeks to

enjoin a transfer of All Year's interest in YGWV on the both the basis that it violates the

Member LLC Agreement, Delaware Law, and the implied covenant of good faith as alleged in

Claims I and II and because YGWV has dissolved under New York law, rendering All Year

unable to transfer the interest as alleged in Claim III.  Claim V seeks to enjoin All Year and

YGWV from directly or indirectly managing Member LLC, based on Claim III's allegations that

YGWV has dissolved under New York Law.

---

[23]     As a final note, Plaintiff's own authorities come out differently in answering whether LLC Agreements are executory contracts such that Section 365 of the Code applies.  *Compare Milford Power Company, LLC v. PDC Milford Power, LLC*, 866 A.2d 738, 758-62 (Del. Ch. 2004) (holding that Section 365 applied to the LLC agreement), *with Garrison-Ashburn, L.C.*, 253 B.R. 700, 708 (Bankr. E.D. Va. 2000) (holding that Section 365 did not apply to LLC Agreement).  Neither party here posits that Section 365 applies here, and with good reason, considering that the definition "generally includes contracts on which performance remains due to some extent on *both sides*."  3 COLLIER ON BANKRUPTCY ¶ 365.02[2][a] (16th ed.2022) (quoting Countryman, Executory Contracts in Bankruptcy, 57 Minn. L. Rev. 439, 446 (1973)).  With only one member to the LLC Agreement here, the contract is not executory.

As Defendants correctly observe, an "[i]njunction is not a separate cause of action; it is a

remedy." *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 407 (S.D.N.Y. 2010) (citations

omitted); *see also Trodale Holdings LLC v. Bristol Healthcare Invs., L.P.*, 2017 WL 5905574, at

*11 (S.D.N.Y. Nov. 29, 2017).  Because Plaintiff's other claims that support the basis for

injunctive relief fail, the claims for permanent injunctions cannot stand alone and must be

dismissed.  *See Hauptman v. Interactive Brokers, LLC*, 2018 WL 4278345, at *9 (S.D.N.Y. June

12, 2018) ("Because all of Plaintiffs' underlying claims fail, their request for declaratory and

injunctive relief is also dismissed"); *Smith v. New Line Cinema*, 2004 WL 2049232, at *5

(S.D.N.Y. Sept. 13, 2004).

## IV.  <u>CONCLUSION</u>

For the reasons stated above, Defendants' Motion to Dismiss Plaintiff's Complaint is

**GRANTED**.  Accordingly, the Plaintiff's Motion for Partial Summary Judgment on Claim III is

**DENIED**.

**IT IS SO ORDERED.**

Dated:    October 4, 2022
          New York, New York

*Martin Glenn*
_____
MARTIN GLENN
Chief United States Bankruptcy Judge

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————————————————— x

In re:

      ALL YEAR HOLDINGS LIMITED,                21-12051 (MG)

           Debtor.

—————————————————————————————— x

      ZELIG WEISS,

           Appellant,

    -against-                                      22 Civ. 8867 (CM)

      ALL YEAR HOLDINGS LIMITED,
      YGWV LLC, and WYTHE BERRY
      MEMBER LLC,

           Appellees.

—————————————————————————————— x

# MEMORANDUM DECISION AND ORDER AFFIRMING THE BANKRUPTCY COURT'S DECISION

## INTRODUCTION

McMahon, J.:

    This case comes before the court on an expedited appeal by Zelig Weiss, who filed a

complaint in Appellee All Year's chapter 11 case against All Year and an affiliated entity,

YGWV, only to have his case dismissed by the bankruptcy court (Glenn, B.J.). After considering

the parties briefs and arguments, the Bankruptcy Court's order is AFFIRMED – largely on the

opinion below.

1

The facts pertinent to this appeal are recited fully in Judge Glenn's thoughtful and thorough opinion and will not be repeated in detail here. Appellant Weiss, through various entities, operates the luxury William Vale Hotel in Brooklyn. He is also a 50% owner of the hotel, by virtue of his membership in an entity known as Wythe Berry Member LLC. The other 50% owner of Member LLC Appellee YGWV; YGWV also serves as the managing member of Member LLC. Appellee All Year owns a 100% interest in YGWV.

YGWV and Appellant executed, and are the only parties to, a Member LLC Limited Liability Company Agreement (the "Member LLC Agreement"). That agreement contains a provision that prohibits either Member (YGWV or Appellant) from transferring its membership interest in Member LLC absent the other party's consent. All Year is not a party to the Member LLC Agreement; it is specifically identified in that Agreement as the Lender to the LLC – not as a Member of Member LLC – and as a third-party beneficiary of certain specified provisions of the Member LLC Agreement. (A121 §§ 11.1–11.2; Dkt. No. 7).[1] Other provisions of the Agreement make it clear that All Year and YGWV are separate entities, notwithstanding the fact that All Year created and wholly owns YGWV; Weiss signed the Member LLC Agreement with full knowledge that All Year had been removed as a Member.

All Year filed for chapter 11 protection in December 2021 and has continued to operate its business as a debtor-in-possession. Pursuant to its proposed chapter 11 plan of reorganization (the "Plan"), All Year's interests will vest on the effective date of the Plan in a wind-down entity to be formed for the benefit of, and controlled by, All Year's impaired creditors ("Wind Down Co."). As part of that transaction, All Year's interest in YGWV is being sold to a third-party

---

[1] All references to the "A–" are to Plaintiff-Appellant's Bankruptcy Record Appendix (Dkt. No. 7) and the Appendix's original pagination unless otherwise noted.

2

entity, Paragraph Partners LLC ("Paragraph"); this arrangement was made after negotiations between All Year and Weiss to sell All Year's interest in YGWV to Weiss failed to result in a final signed agreement.

In his complaint, Weiss alleges that All Year's transfer of its interest in YGWV to Paragraph without Weiss' consent violates the Member LLC Agreement. He argues that All Year should be deemed a party to the Member LLC Agreement – despite the fact that the Agreement is between Weiss and YGWV and specifically acknowledges that All Year cannot be equated with its wholly-owned subsidiary – either because All Year negotiated the Member LLC Agreement, or because YGWV is the alter ego of All Year. Weiss alleges that both All Year and YGWV have violated both the literal terms of the contract and the covenant of good faith and fair dealing by agreeing to transfer All Year's interest in YGWV to Paragraph; he seeks to enjoin the proposed transaction.

Weiss further alleges that, as a matter of New York law, All Year's chapter 11 filing automatically and immediately terminated its membership interest in YGWV, which in turn automatically resulted in YGWV's dissolution. Appellant seeks a declaration to that effect, as well as an order allowing him to assume management control of Member LLC and the entity that owns the William Vale Hotel.

In a well-reasoned and thorough decision (the "Order"), the Bankruptcy Court dismissed Appellant's complaint on multiple independently sufficient grounds. The Bankruptcy Court properly rejected Appellant's attempt to bind a non-party (All Year) to the Member LLC Agreement; dismissed his contention that the New York Limited Liability Company Law ("NYLLCL") mandates the automatic termination of an LLC when any member declares bankruptcy; and held that Weiss' reading of Sections 701(b) and 603(a) of the NYLLCL would

3

in any event be preempted by the Bankruptcy Code. Seeing no error in the learned Bankruptcy

Judge's reasoning, this court affirms Judge Glenn's order.

## STATEMENT OF THE CASE

As this is an appeal from a motion to dismiss a complaint, the well-pleaded non-

conclusory factual allegations of the amended complaint are presumed true. The Bankruptcy

Court's conclusions of law are reviewed de novo. See *In re Belmonte*, 931 F.3d 147, 152 (2d Cir.

2019).

The relevant contract (the Member LLC Agreement) contains a Delaware choice of law

provision, so it governed by Delaware law. In his reply brief, Weiss asserts that any contract

claims should be governed by New York law, but he made no such argument in the court below,

so even if it had merit (and it does not), he cannot so assert on this appeal.

YGWV is a limited liability corporation organized under the law of the State of New

York. As a result, New York law governs claims against it that do not arise out of any alleged

breach of the Member LLC Agreement. See, e.g., *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d

Cir. 1995).

## I.    Factual Background

### A.    *Ownership of the William Vale Hotel*

Appellant's claims involve his indirect ownership interest in the William Vale Hotel in

the Williamsburg neighborhood of Brooklyn, New York. Appellant originally held partial title to

the William Vale indirectly through an entity called Wythe Berry LLC ("WB LLC"), in which he

held a 50 percent membership interest. Yoel Goldman (All Year's former principal) held the

remaining 50 percent membership interest and served as managing member. (A77–78, 83 ¶¶ 2,

24). Appellant currently owns his indirect interest in the William Vale through Member LLC.

4

In approximately September 2016, Goldman proposed a refinancing transaction to close out the William Vale's construction loan. (A83–84 ¶ 25). Under Goldman's proposal, All Year issued a bond series (the "Series C Bonds") and the proceeds of the bond issuance would refinance the William Vale's existing mortgage and WB LLC's corresponding debts. (A84 ¶ 27). As part of the refinancing, WB LLC transferred title to the hotel to a new entity—Wythe Berry Fee Owner, LLC ("Fee Owner"). (A84 ¶ 28). WB LLC then leased the William Vale from Fee Owner. (A84 ¶ 28). Member LLC, a newly created special-purpose vehicle, would own Fee Owner. (A84, 86 ¶¶ 28, 33).

During the early discussions regarding the refinancing, Appellant and Goldman were both going to own Member LLC as 50 percent co-members. (A84 ¶ 28).

Although Appellant owned his 50 percent membership interest in his individual capacity, Goldman chose to own his membership interest indirectly through another entity. (A84–85 ¶¶ 30-31). Initially, this entity was going to be All Year. (A85–86 ¶¶ 31–32). But in late January 2017, Goldman informed Appellant that a new entity, YGWV, needed to act as manager of the special-purpose vehicle Member LLC instead of All Year, as originally contemplated. (A86 ¶ 33). Appellant accepted Goldman's proposal, and Debtor formed YGWV shortly before closing on the refinancing solely to hold the 50 percent membership interest in Member LLC and act as Member LLC's manager. (A86 ¶ ¶ 29, 34).

As the core of the refinancing, Mishmeret Trust Company Ltd., the Trustee for the Series C bondholders, loaned over $165 million to All Year pursuant to the Series C Bonds. (A86 ¶ 35). All Year in turn loaned the bond proceeds to Fee Owner pursuant to a promissory note between All Year and Fee Owner that was secured by a mortgage against the William Vale. (A86 ¶ 36). Member LLC also guaranteed the Series C Bonds pursuant to a guarantee in favor of Mishmeret,

5

and All Year conditionally assigned the note and mortgage to Mishmeret as security for the Series C Bonds. (A86 ¶ 36). Fee owner used the loan to pay WB LLC's debts, including the mortgage on the William Vale. (A86 ¶ 36).

### B.    The Member LLC Agreement

YGWV and Appellant are the only signatories to the Member LLC Agreement. (A113). YGWV and Appellant chose Delaware law to govern the Member LLC Agreement. (A121 § 10.4). The parties also agreed to an integration clause providing that the Member LLC Agreement "constitutes the entire agreement between the parties hereto with respect to the subject matter hereof, and supersedes all prior understandings or agreements between the parties." (A121 § 10.3).

Several other provisions of the Member LLC Agreement are relevant to Appellant's claims.

> • Section 8.1 is the anti-assignment provision, which provides that a "Member"— defined in the Agreement as only YGWV and Appellant — "may not assign in whole or in part any interest in [Member LLC] without the written consent of the other Members." (A119 § 8.1).

> • Section 5.3 specifically acknowledges that YGWV, Appellant, and any of their affiliates (*e.g.*, All Year) "may engage in or possess an interest in other business ventures of every kind." (A117 § 5.3).

> • Section 11.3 requires that the managing member of Member LLC (i.e., YGWV) "shall be a corporation or limited liability company whose sole asset is its interest in the Company." (A123–24 § 11.3(o)).

> • Sections 11.1, 11.3 and 11.4 further (i) provide for recognition of All Year as lender under the Security Agreement, A121 § 11.1; (ii) provide that All Year is a third party beneficiary of the provisions of Article 11 (which is titled "Single Purpose Provisions"), A121 § 11.2; and (iii) acknowledge that All Year is "a wholly separate and distinct Person" from YGWV and that no claim against YGWV "shall give rise to any claims or defenses" against All Year "in its capacity as lender *or otherwise.*" (A124-25 § 11.4 (emphasis added)).

On the same day they executed the Member LLC Agreement, YGWV and Appellant also entered into a Unanimous Written Consent on behalf of Member LLC, which states that Fee Owner would borrow funds from All Year. (A129–32).

6

YGWV and Appellant then authorized Member LLC, as guarantor, and Fee Owner, as borrower, to enter into the loan with All Year, as lender. (A130). Further, they resolved that Goldman would be the authorized signatory on behalf of Member LLC, as guarantor, and Fee Owner, as borrower, to execute the loan from All Year, as lender. (A130–31).

In his complaint Weiss pleads that it was his intention to do business only with Goldman, which is why he insisted on the restriction on YGVW's ability to transfer its interest in Member LLC. (A86–87 ¶ 37). However, no provision in the Member LLC Agreement mentions Goldman.

### C.  *Appellant's Domination and Control Allegations*

Appellant's pleading alleges that YGWV is All Year's alter ego. As Judge Glenn found, the Amended Complaint contains factual allegations that would support such a conclusion. All Year owns 100 percent of YGWV, and thus is YGWV's sole and managing member. (A90 ¶ 50). As managing member, All Year effectively makes all decisions for YGWV. (A91 ¶ 59). The Debtor created YGWV solely to hold All Year's membership interest in the special-purpose vehicle Member LLC, and YGWV thus does not conduct any business and only generates revenue from its indirect interest in Fee Owner. (A90 ¶ 51). Consequently, YGWV does not have its own office or employees, and does not observe corporate formalities such as keeping minutes of meetings. (A90–91 ¶¶ 55–57).

YGWV also does not have its own bank account, and therefore cannot receive, distribute, or transfer funds. (A90 ¶ 52). Similarly, YGWV does not pay expenses it incurs because All Year pays (or arranged an affiliate to pay) them. (A90 ¶ 53).

### D.  *The Challenged Transaction*

Approximately six weeks before All Year filed its chapter 11 petition, Appellant offered to purchase All Year's membership interest in YGWV. (A91 ¶ 60). After All Year filed for chapter

7

11 protection on December 14, 2021, All Year and Appellant continued to discuss a sale of All Year's membership interest in YGWV. Weiss presented All Year with a draft agreement to that effect around January 14, 2022. (A91–92 ¶¶ 61–62). Three days later, All Year informed Appellant that it would not sell All Year's interest in YGWV but would instead sell YGWV's interest in Member LLC. (A92 ¶63). The Debtor and Appellant then negotiated a Membership Interest Purchase Agreement ("MIPA"), whereby, among other things, YGWV would sell its membership interest in Member LLC to Weiss. (A92 ¶ 65).

Around March 9, 2022, All Year informed Appellant that, although YGWV was not in bankruptcy, it had concluded that the bankruptcy court approval would have to approve the sale of YGWV's interest in Member LLC. (A92 ¶ 66). All Year revised the MIPA to incorporate such a requirement. (A92 ¶ 66).

On March 14, 2022, Appellant asked to change the structure of the deal so that he could buy All Year's interest in YGWV instead of YGWV's interest in Member LLC – in other words, the deal he originally proposed. (A92–93 ¶ 67). The Debtor rejected Appellant's proposed deal structure. (A93 ¶ 68). Per the Amended Complaint, negotiations nonetheless continued, and a revised version of the MIPA was, with All Year's knowledge and approval, attached by Mishmeret to a filing that it (not All Year) made on the Tel Aviv stock exchange on or about March 27, 2022. (A93 ¶ 69). However, the parties did not sign the MIPA.

In April 2022, All Year signed an agreement to sell its interest in YGWV to Paragraph (the "Plan Sponsor"). Although Weiss alleges that this sale was for essentially the same consideration that Weiss was prepared to pay, (*Id.*), Paragraph in fact agreed to acquire the rest of All Year's real estate portfolio – not simply to purchase its interest in YGWV. (A93 ¶¶ 71–72).

On May 31, 2022, All Year filed its Plan. (A94 ¶ 76). The Plan contemplated that All

8

Year's interest in YGWV would be disposed of to Paragraph ("the Plan Sponsor"), as indicated in the April 2022 agreement. It further provided that, if the Plan Sponsor failed to meet certain conditions precedent to closing the deal contemplated in the April 2022 agreement, All Year's interest in YGWV (along with its other real estate holdings) would be transferred to Wind-Down Co., a new entity to be managed by a plan administrator. (A95–96 ¶ 82).

The deal between All Year and Paragraph has not, in fact, closed. When he wrote his decision, Judge Glenn understood that disputes between the parties had been resolved. However, in its brief to this court, All Year advises that, on November 9, 2022 (i.e., after the Bankruptcy Court's decision), All Year served a notice of default on the Paragraph, alleging a failure by the Plan Sponsor to comply with its contractual obligations under the parties' Investment Agreement. (Appellee Brief 19 n.2; Dkt. No. 8). All Year takes the position that, if the Plan Sponsor's breach is not cured within the time provided by the Investment Agreement, All Year may seek to terminate the Investment Agreement and propose a different plan of reorganization. These issues post-date the filing of the instant adversary proceeding and are not the subject of this appeal.

## II.    Procedural Background

On July 5, 2022, Appellant initiated an adversary proceeding by filing his initial complaint. (A9–75). On August 4, 2022, Appellant filed his now-operative Amended Complaint. (A76–144). On the same day he filed the Amended Complaint, Appellant also filed a motion for partial summary judgment along with a motion for a preliminary injunction (which was withdrawn). (A145–93). On August 18, 2022, Defendants filed their motion to dismiss the Amended Complaint. (A641–85). On September 1, 2022, Appellant filed his joint brief opposing the motion to dismiss and in reply to his motion for summary judgment. (A789–820).

On September 13, 2022, Chief Bankruptcy Judge Martin Glenn heard oral argument on

9

Appellant's motion for summary judgment and Defendant's motion to dismiss. (A821–918). At the Bankruptcy Court's request, the parties submitted supplemental briefing. (A919–935). The Bankruptcy Court entered its Order dismissing the Amended Complaint in its entirety on October 4, 2022. (A936–72).

On October 7, 2022, Appellant filed his notice of appeal. (A973–1018).

## III.  The Bankruptcy Court Properly Dismissed Appellant's Claims I & IV for Breach of the Member LLC Agreement's Anti-Assignment Provision

In Claim I of the Amended Complaint, Weiss seeks a declaratory judgment that the Member LLC Agreement prohibits All Year from transferring its interest in YGWV absent his consent. In Claim IV, Weiss seeks to enjoin any such transfer. (A99 ¶ 101).[2]

Weiss asserts these claims against both All Year and YGWV. As against YGWV, the claim is easily disposed of: YGWV cannot possibly have breached the Member LLC Agreement because it is not alleged to have agreed to transfer its interest in Member LLC to anyone else. Section 8.1 of the Member LLC Agreement provides that a Member— defined only as YGWV and Appellant—"may not assign in whole or in part any interest in [Member LLC] without the written consent of the other Members." (A119 § 8.1). Appellant nowhere alleges YGWV has or will assign *its* interest in Member LLC.

The challenged transaction is a transaction between All Year and the Plan Sponsor, pursuant to which All Year is transferring its interest in YGWV to Paragraph. If that transaction is consummated, YGWV will still retain its interest in Member LLC There is, therefore, no basis whatsoever to declare that YGWV is in violation of its contractual duty to obtain Weiss' consent

---

[2] Injunction is a form of relief, not a separate cause of action. *NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd.*, 262 F. Supp. 2d 134, 149 (S.D.N.Y. 2003). Counts I and IV are essentially identical.

to a transfer of YGWV's interest, and the claim as against YGWV must be dismissed.

Weiss also asserts that All Year – which is not only a non-signatory to the Member LLC Agreement, but which is specifically identified in that agreement as a third-party beneficiary of certain of its terms – is nonetheless bound by the Agreement, either because YGWV is its alter ego theory, (A80 ¶ 9), or because All Year manifested an intent to be bound to the Member LLC Agreement, (A79 ¶ 8). The Bankruptcy Court correctly rejected both of these theories.

### A. The Bankruptcy Court Correctly Held Appellant Failed to Adequately Plead that All Year Dominated YGWV to Commit a Fraud or Wrong

"It is fundamental that a parent is considered a legally separate entity from its subsidiary, and cannot be held liable for the subsidiary's actions based solely on its ownership of a controlling interest in the subsidiary." *N.Y. State Elec. & Gas Corp. v. FirstEnergy Corp.*, 766 F.3d 212, 224 (2d Cir. 2014). However, under New York law, a court may pierce the corporate veil where (1) "the owners exercised complete domination of the corporation in respect to the transaction attacked"; and (2) "such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury." *EED Holdings v. Palmer Johnson Acquisition Corp.*, 387 F. Supp. 2d 265, 273 (S.D.N.Y. 2004).

There is no question that Weiss pleaded facts from which the first prong of the alter ego test can be inferred. Judge Glenn so held, and All Year does not challenge that conclusion. That being so, Appellant argues that his motion to dismiss should not have been denied, could not be denied, because motions to dismiss alter ego claims raise questions of fact that cannot be resolved on such motions.

But in both of the cases Appellant cites in support of this assertion, the parent denied that it sufficiently dominated and controlled a subsidiary. *Sphere Digital, LLC v. Armstrong, 2020*

11

*WL 6064156*, at *5 (S.D.N.Y. Oct. 14, 2020); *Advanced Video Techs., LLC v. HTC Corp.*, 2019

WL 4198769, at *14 (S.D.N.Y. Aug. 12, 2019).

That issue is not in dispute here.

Rather, the issue presented by this case -- as Judge Glenn correctly recognized -- is

whether All Year's domination and control of YGWV, which is presumed to exist on a motion to

dismiss, is of any import as a matter of law. The precise issue before the Bankruptcy Court was

whether the Amended Complaint contains factual allegations that, if proved, would allow a trier

of fact to infer that All Year's domination and control of YGWV was used to perpetrate a wrong

against Weiss – specifically, the alleged wrong of All Year's transferring its interest in YGWV

without obtaining Weiss' consent. Courts properly grant motions to dismiss alter ego claims

when a complaint fails to allege that the parent's alleged domination and control of the

subsidiary either is not exercised in connection with the transaction at issue or was not used to

perpetrate a fraud or some other wrong against the plaintiff. See, e.g., *Steadfast Ins. Co. v. T.F.*

*Nugent Inc.*, 513 F. Supp. 3d 419, 425 (S.D.N.Y. 2021); *VariBlend Dual Dispensing Sys. LLC v.*

*Crystal Int'l (Grp.) Inc.*, 2019 WL 4805771, at *19 (S.D.N.Y. Sept. 30, 2019)/

Judge Glenn did not err in concluding that the Amended Complaint, fairly read, did not

allege facts from which one could infer that the second prong of the alter ego test could be met.

> i. *All Year's Alleged Domination and Control of YGWV Is Not With Respect*
> *To All Year's Purported Transfer of Its Interest in YGWV under the Plan*

As the Bankruptcy Court correctly noted, the Amended Complaint alleges All Year

dominated and controlled YGWV generally, but fails to plausibly allege that such domination

and control occurred in, "respect to the challenged transaction—the purported transfer of All

Year's interest in YGWV to another entity," pursuant to the Plan. (Glenn Order, A993). This is

not surprising, since a parent corporation can transfer its own shares in a subsidiary without the

12

latter's involvement or assent. Assuming the proposed transaction with Paragraph goes forward, All Year alone will transfer its interest in YGWV pursuant to its Plan; YGWV will do nothing at all. The Amended Complaint does not allege otherwise. This is fatal to Weiss' alter ego claim.

Appellant argues that All Year used YGWV as a "pawn," (Appellant Brief 34, Dkt. No. 6; Hearing Transcript 23),[3] in its dealings with Weiss. But significantly, Appellant does not allege that All Year has or will, directly or indirectly, cause YGWV to assign its interest in Member LLC – an allegation that, if proven, might support a conclusion that YGWV was All Year's "pawn." Instead, the only pleaded fact tending to support the "pawn" argument is that All Year caused YGWV to decline Appellant's offer to buy most of YGWV's interest in Member LLC. (Appellee Br. at 27; A93 ¶¶ 68–71).

Unfortunately for Appellant, the Amended Complaint contains no allegation that YGWV was required to accept an offer from Weiss – which is understandable, because nothing in the Member LLC Agreement required YGWV to accept Appellant's offer (it was not). Nor does the Amended Complaint seek an injunction that would require YGWV to consummate any transaction with Weiss. The only transaction challenged as wrongful in the Amended Complaint is All Year's transfer of its interest in YGWV pursuant to the Plan. Accordingly, as the Bankruptcy Court correctly recognized, All Year's allegedly causing YGVW to decline Weiss' offer to purchase does not demonstrate abuse of the corporate form in connection with the challenged transaction – the transaction whereby All Year plans to sell its own interest in YGWV to a third party. That allegation thus does not prevent the amended complaint from being insufficient as a matter of law on an alter ego theory. (A950–52).

---

[3] The official transcript for the oral argument held on December 1, 2022, has not yet been filed on the Southern District of New York's ECF docket for this case.

13

In sum, this court cannot see any reason why Judge Glenn's decision on this issue should be overturned.

ii.    *Alleged Domination and Control by All Year of YGWV Was Not Used To Commit a Fraud or Actionable Wrong*

Judge Glenn also concluded that Appellant failed plausibly to allege that All Year's domination and control of YGWV caused a fraud or other actionable wrong against Weiss. Again, he was correct.

A parent corporation does not cause its subsidiary to breach its contract by selling the parent's interest in the subsidiary where, as here, the contract limits only the subsidiary's right to sell its own interest in yet another entity. However, even if Appellant had plausibly alleged that YGWV breached its contract, it is hornbook law (as Chief Judge Glenn correctly held) that a breach of contract is not the type of "fraud or wrongful act" that will support an alter ego claim. (Glenn Order, A993–94). *Mirage Entm't, Inc. v. FEG Entretenimientos S.A.*, 326 F. Supp. 3d 26, 34 (S.D.N.Y. 2018); *World Wide Packaging, LLC v. Cargo Cosmetics, LLC*, 193 A.D.3d 442, 443 (1st Dep't 2021); *TMCC, Inc. v. Jennifer Convertibles, Inc.*, 176 A.D.3d 1135, 1136 (2d Dep't 2019); *see also* 2 N.Y. Prac., Com. Litig. in New York State Courts § 8:74 (5th ed.).

But breach of contract – specifically, breach of YGWV's contractual obligation not to sell its interest in Member LLC without Weiss' consent – is the only wrong against All Year that is alleged in the complaint. The cases cited by Weiss all involve allegations that a parent exercised domination and control over a subsidiary in some way that perverted the corporate form. There is no allegation in Weiss' complaint that All Year has exercised its domination and control over YGWV in a way that will cause YGWV to be stripped of its assets or render YGWV incapable of paying its bills or making good on its own obligations. There is no allegation in Weiss' complaint that All Year's transfer of its interest in YGWH to Paragraph or

14

Wind-Down Co. will cause YGWV to transfer its interest in Member LLC. And there is no

allegation in Weiss' complaint that Paragraph or Wind-Down Co. will cause YGWV to transfer

its interest in Member LLC or breach any of its contractual obligations. The lack of any such

allegations renders the Amended Complaint fatally deficient. See, e.g., *Mirage Entm't*, 326 F.

Supp. 3d at 34; *TMCC*, 176 A.D.3d at 1136.

Weiss argues on appeal, as he argued below, that he insisted on the restriction on transfer

in the Member LLC Agreement because he had owned the hotel in partnership with Goldman

and he only wanted to be partners with Goldman. (Appellant Br. 43–44, A86–87 ¶ 37). But the

fact is, Weiss signed a contract that never once mentions Goldman, and that does not restrict

Goldman from doing anything. Goldman is not a member and there is no express requirement

that Goldman be involved in the business of the Members. And of course, only Members are

prohibited from transferring their interest in the business without consent.

If Weiss had wanted to ensure that Goldman would remain on the hook, he could have

included language to that effect in the contract. As it stands, the contract's integration clause bars

Weiss from arguing an intention that is not reflected in the terms of the contract itself. The

Agreement is clear on its face and parol evidence about Weiss' intentions or desires cannot be

relied on to vary the terms of Section 8.1 (A121 ¶¶ 10.3, 10.5).

Appellant's alter ego cases are distinguishable. For example, *Brown v. Kinross Gold,*

*U.S.A., Inc.*, 531 F. Supp. 2d 1234 (D. Nev. 2008), applied Nevada's more lenient standard

where a "wrongful purpose" need not be shown, and a mere breach resulting in an inequitable

result could suffice (which is contrary to New York law). *Brown*, 531 F. Supp. 2d at 1242. And

the alleged domination and control of the corporation in that case caused a breach, and

shareholder losses for which they had no other recourse. *Id.* at 1243. In contrast, here the parent

15

(All Year) is allegedly transferring its own asset (its interest in YGWV), and its alleged

domination and control of YGWV will not cause a breach of the Member LLC Agreement.

Appellant's other cases involved more than a mere breach of contract for the alleged

wrong. For example, in *District Council No. 9 v. APC Painting, Inc.*, 272 F. Supp. 2d 229

(S.D.N.Y. 2003), the principal dominated and controlled an entity (e.g., causing it to dissolve) to

frustrate enforcement of a properly issued arbitration award. The court in *Hutchins v.*

*Conciliation & Appeals Bd.*, 480 N.Y.S.2d 684 (Sup. Ct. N.Y. Cnty. 1984), likewise involved a

corporate tenant established to exploit for commercial purposes rent stabilization laws through a

subleasing operation. And *PanAmerican Mineral Servs., Inc. v. KLS Enviro Res.*, Inc., 916 P.2d

986 (Wyo. 1996), confined its alter ego analysis to whether the allegations were sufficient for

personal jurisdiction purposes and did not consider whether the allegations would be sufficient

for liability under the contract.

### B.     The Bankruptcy Court Correctly Held Appellant Failed to Adequately Plead that All Year Manifested an Intent to Be Bound by the Member LLC Agreement

As an alternative to alter ego, Appellant alleged that All Year, while not a signatory to the

Member LLC agreement, nonetheless manifested an intent to be bound by the Agreement.

Appellant's argument that a non-signatory to a contract can nonetheless be bound by it as a

matter of contract law, even if it is not the alter ego of a signatory, (Appellant Br. 36), finds no

support in Delaware law, which, per Section 10.4, is the governing law chosen by the signatories

to the contract. (A121). Under Delaware contract law, "only a party to a contract may be sued for

breach of that contract." *Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*, 817 A.2d

160, 172 (Del. 2002) (parent corporation could not be held liable for wholly-owned subsidiary's

breach of limited partnership agreement because parent corporation was not party to the

agreement); *see also In re Teekay Offshore Partners L.P. Common Unitholders Litig.*, 2021 WL

1227415, at *9 (S.D.N.Y. Mar. 31, 2021); *Bandera Master Fund LP v. Boardwalk Pipeline Partners, LP*, 2019 WL 4927053, at *21 (Del. Ch. Oct. 7, 2019).

 The mere fact that a parent was involved in negotiations that lead to a contract between one of its subsidiaries and some other party – which is what the Member LLC Agreement is -- does not render the parent liable under a contract it did not execute as a matter of Delaware law. If a non-signatory to a contract, including a parent corporation, is to be bound by the terms of that Agreement, the "contract itself . . . must contemplate that non-signatories may adopt it." *Ninespot, Inc. v. Jupai Holdings Ltd.*, 2019 WL 1650065, at *4 (D. Del. Apr. 17, 2019) (affiliates of signatory to contract were not bound by the terms of the agreement because (i) affiliates were non-signatories and (ii) contract did not contemplate adoption by non-signatories).

 Otherwise, parol evidence bars consideration of extrinsic evidence to alter, modify or contradict the terms of a fully integrated agreement. *See, e.g.*, *Marina View Condo. Ass'n of Unit Owners v. Rehoboth Marina Ventures*, LLC, 2019 WL 3770215, at *4 n.38 (Del. Ch. Aug. 12, 2019); *see also Allied Capital Corp. v. GC-Sun Holdings, L.P.*, 910 A.2d 1020, 1030 (Del. Ch. 2006). This is particularly true where, as here, the agreement (A121 § 10.3) has an integration clause. *See Levy Family Invs., LLC v. Oars + Alps LLC*, 2022 WL 245543, at *9 (Del. Ch. Jan. 27, 2022); *see also Highlands Ins. Grp., Inc. v. Halliburton Co.*, 2001 WL 287485, at *8 (Del. Ch. Mar. 21, 2001), aff'd, 801 A.2d 10 (Del. 2002).

 Here, the Member LLC Agreement is utterly unambiguous on the question of All Year's lack of intent to be a party to that agreement, or to be bound by its terms. Indeed, as Chief Judge Glenn found, Plaintiff's own allegations make it crystal clear that All Year affirmatively manifested an intent not to the bound by the contract – and Weiss acceded to that manifestation. Consider:

17

(1)     The contract by its terms is by and between Appellant and YGWV. Each is identified as a "Member" and together they are the "Members." (A113). No one else is identified in the Agreement as a party to the Agreement. All Year was originally to be Weiss' counterparty to the Agreement but removed itself from that role during the negotiation and drafting of the LLC Agreement.

(2)     Section 8.1, which contains the restriction on transfer, is expressly limited to "Members," which is a defined term in the Member LLC Agreement – defined as Weiss and YGWV.

(3)     Section 11.1 of the Member LLC Agreement identifies All Year as the "lender" to the LLC, and Section 11.2 specifically makes it a third-party beneficiary of a limited number of provisions in the Member LLC – a status inconsistent with a finding that All Year intended to be bound by the contract.

(4)     In Section 11.4 of the Member LLC Agreement, the LLC acknowledges that Lender (All Year) is "a wholly separate and distinct Person from .....YGWV LLC, a New York limited liability company, and Wythe Berry LLC, a New York limited liability company" and agrees that "no claims of any kind of nature against the Company (Wythe Berry LLC) or any Wythe Entity....shall give rise to any claims or defenses against the Lender in its capacity as lender or otherwise...."

In short, every single objective manifestation in the actual contract indicates in no uncertain terms that All Year did not wish to be a party to the contract and refused to be bound by the terms of the contract. As Chief Judge Glenn correctly recognized, this distinguishes our case from cases in which a parent corporation objectively manifested and communicated its intent to be contractually responsible for its subsidiary's obligations. (Glenn Order, A996).

Appellant relies on cases decided under New York law for the proposition a parent's participation in negotiations binds it to its subsidiary's contract. (Appellant Br. 29–32). To the extent that these cases recognize a theory that is not recognized under Delaware law, they are irrelevant and should not even be discussed.

However, I agree with the learned Chief Bankruptcy Judge that the New York case on which Appellant relies most heavily, *Horsehead Industries v. Metallgesellschaft AG*, 239 A.D.2d 171, 171 (N.Y. 1st Dep't 1997), does not support Appellant's argument that a parent not deemed

18

to be the alter ego of a subsidiary can still manifest an "intent to be bound" – a theory that, as explained above, the Bankruptcy Court appropriately rejected. (Glenn Order, A995). Other courts have recognized that *Horsehead*'s "intent to be bound" theory required satisfaction of alter ego requirements. See, e.g., *Vibes Int'l Inc., SAL v. Iconix Brand Grp., Inc.*, 2020 WL 3051768, at \*8 n.4 (S.D.N.Y. June 8, 2020); *World Trade Ctrs. Ass'n, Inc. v. Port Auth. of N.Y. & N.J.*, 2018 WL 6628840, at \*14 n.15 (S.D.N.Y. Dec. 18, 2018), on reconsideration, 2019 WL 2250338 (S.D.N.Y. May 23, 2019).

And, as the Bankruptcy Court correctly noted, (Glenn Order, A995-96), this limitation is also apparent from the short memorandum decision in *Horsehead Industries*, which framed its analysis on the condition "if, as alleged, defendant[s] . . . were alter egos." 239 A.D.2d 171, 171 (N.Y. 1st Dep't 1997). I also agree with Chief Judge Glenn that the facts pleaded in Weiss' complaint place it squarely within the line of New York cases that reject the argument that a parent is bound to the terms of a subsidiary's contract when the negotiations themselves clarify the parent's lack of intent to be bound.

Finally, as Chief Judge Glenn concluded, the upshot of Appellant's argument is that a parent involved in a subsidiary's contract negotiations – a not uncommon occurrence – would always be deemed a party to the contract, despite the usual rule that a parent is not liable for its subsidiary's obligations. It would stand the law of alter ego liability on its head to reach such a conclusion, since under alter ego law, "allegations of complete ownership, common officers and personnel, and shared office space are, without more, insufficient" to impose a subsidiary's contractual liability on its parent. Appellant's suggested interpretation of the law is particularly inappropriate in contracts executed by a single-purpose subsidiary, given the inevitable overlap in, for example, officers shared with its parent.

19

Appellant relies on cases that are markedly different from the allegations in, and

operative documents attached to, the Amended Complaint. In *RUS, Inc. v. Bay Indus., Inc.*, 2004

WL 1240578 (S.D.N.Y. May 25, 2004), the parent "manifested an unequivocal intent to be

bound" by a stock purchase agreement, including by introducing itself as the buyer, and in light

of admissions that the parent was bound to close the transaction, and where the shell company

was set up for internal purposes to buy the company. *RUS*, 2004 WL 1240578, at *21.

Additionally, the parent caused the shell company to breach its contract, which is exactly what

did not happen here.

Likewise, in *Warnaco Inc. v. VF Corp.*, 844 F. Supp. 940 (S.D.N.Y. 1994), the parent

corporation, which had set up a shell to acquire a licensee, expressly agreed to be bound to

promote products bearing licensed trademarks under an agreement signed by its shell company,

and then proceeded to violate the contract and Latham Act. *Warnaco Inc.*, 844 F. Supp. at 944,

946.

For these reasons, the Bankruptcy Court did not err, and this Court should therefore

affirm the dismissal of Claims I and IV as against both YGWV and All Year.

## IV. The Bankruptcy Court Properly Dismissed Appellant's Claim II for Breach of the Implied Covenant of Good Faith and Fair Dealing

In Claim II, Appellant asserts All Year and YGWV breached the implied covenant of

good faith and fair dealing under Delaware law.

As against All Year, dismissal of the alter ego breach of contract claim mandates

dismissal of this "implied covenant" claim as well. Because the alter ego claim failed, All Year,

a non-signatory to the Member LLC Agreement, is not bound by the Agreement – including any

implied in law terms -- as a matter of Delaware contract law. See *In re Encore Energy Partners*

20

*LP*, 2012 WL 3792997, at \*14 (Del. Ch. Aug. 31, 2012); *Allen v. El Paso Pipeline GP Co.*, 113 A.3d 167, 178 (Del. Ch. 2014).

YGWV, by contrast, was a party to the Agreement, and so is bound by an implied covenant of good faith and fair dealing. However, Chief Judge Glenn correctly concluded that the complaint fails to state a claim against YGWV on that theory.

It is true that, under Delaware law, an implied duty of good faith and fair dealing inheres in every contract. *Chamison v. HealthTrust Inc.*, 735 A.2d 912, 920 (Del Ch.1999). However, as Judge Glenn found, the implied covenant can be invoked "only in that narrow band of cases where the contract as a whole speaks sufficiently to suggest an obligation and point to a result, but does not speak directly enough to provide an explicit answer. In the Venn diagram of contract cases, the area of overlap is quite small." *In re Zohar III Corp.*, 631 B.R. 133, 202 (Bankr. D. Del. 2021). Delaware law does not permit a party to a contract to rely on the implied duty of good faith and fair dealing in ways that effectively re-write or add additional terms not obtained at the bargaining table. *Allied Capital*, 910 A.2d at 1035; *Zohar*, 631 B.R. at 201–02.

So where the parties addressed the subject matter in the agreement and did not agree to impose the obligation sought to be implied, the law will not alter the contract on the basis of the covenant of "good faith and fair dealing." Indeed, in *Glaxo Grp. Ltd. v. DRIT LP*, 248 A.3d 911, 920 (Del. 2021), the Delaware Supreme Court described the implied covenant as "a limited and extraordinary legal remedy and not an equitable remedy for rebalancing economic interests that could have been anticipated," and held that the covenant "cannot be invoked when the contract addresses the conduct at issue." See also, *Allied Capital*, 910 A.2d at 1032 ("implied covenant analysis will only be applied when the contract is truly silent with respect to the matter at hand").

21

As Chief Judge Glenn correctly found, that rule disposes of Count II as against YGWV. The Member LLC Agreement expressly addressed the extent to which interests in the Member LLC could be assigned to third parties in Section 8.1. As repeatedly noted above, that section unambiguously applies only to a Member (Appellant and YGWV) and to an assignment of member interest in the Member LLC. It imposes no transfer restriction on a Member's parent; neither does it impose any obligation that any particular individual be the transferee or remain involved in the business. (See A119 § 8.1(a)).

Appellant points out that, in *Glaxo*, the Delaware Supreme Court commented that the "goal" of the implied covenant of good faith and fair dealing is to "preserve the economic expectations of the parties," *Glaxo*, 248 A. 3d at 919, and avers that it was always Weiss' expectation that he would "partner specifically with Goldman/All Year on the hotel project." (A86–87, ¶37). But as Chief Judge Glenn correctly held, the possibility that there might be a change of ownership interest in YGWV was foreseen by the parties – not only in Section 8.1 of the Agreement, but also (as per Weiss' complaint) by the fact that All Year was originally contemplated to be Weiss' counterparty and partner in the LLC – and arrangement that "would have comported with [Appellant's] claimed 'economic expectations.'" (Order, A956). However, Plaintiff agreed that YGWV could be substituted in place of All Year in the Member LLC Agreement, and further agreed to restrict only YGWV's ability to transfer its (direct) interest in the LLC – not All Year's ability to transfer its (indirect) interest in Member LLC by selling its interest in YGWV.

Weiss argues that, in the only case on all fours with the facts before the Bankruptcy Court, the court found that a non-party parent company was still bound to a partnership agreement's transfer restriction based on the implied covenant of good faith and fair dealing. In

22

*Oregon RSA No. 6, Inc. v. Castle Rock Cellular of Oregon Ltd. P'Ship*, 840 F. Supp. 770 (D. Or.

1993) ("Oregon RSA"), *aff'd in part, rev'd in part on other grounds*, 76 F.3d 1003 (9th Cir.

1996), three telephone utilities owned equal shares of a limited partnership. The partnership

agreement gave each partner a right of first refusal if one partner wished to transfer its interest.

However, the grandparent company of one limited partner agreed to sell its ownership interest in

one limited partner to the parent company of another limited partner without providing right of

first refusal.

 Plaintiff general partner brought an action against the limited partner being sold, its

parent corporation, and the parent corporation buyer to establish the right of first refusal to

purchase limited partner's interest. The defendants argued that plaintiff did not have a right of

first refusal since the buyer was not purchasing the limited partner's "interest" but rather was

purchasing the limited partner itself. Even though neither of the partners subject to the

partnership agreement was involved in the transaction, the Court disregarded the corporate form

and held the sale of the limited partner without offering the right of first refusal to plaintiff

violated the covenant of good faith and fair dealing implied in the agreement.

 *Oregon RSA* is readily distinguishable from this case despite the similarity in facts.

Unlike here, the partnership agreement in *Oregon RSA* indicated an intent by all partners to

restrict the indirect transfer of a partnership interest without offering the right of first refusal.

While the partner transfer restriction did not explicitly restrict upstream transfers, the *Oregon

RSA* court found the sale violated the implied covenant because the clear *intent* of the restriction

was to limit all transfers of interest, except to subsidiaries, without offering the right of first

refusal. *Oregon RSA No. 6, Inc*, 840 F. Supp. at 774. However, the *Oregon RSA* transfer

restriction was broadly written, and the court believed its terms indicated an intent by the

23

partners to apply the transfer restriction to both direct *and* indirect transfers of interest, i.e., a
partner transferring an interest and a partner's interest being transferred. 840 F. Supp. at 773; *see
also In re Huber*, No. 11-41013, 2013 WL 6184972, at *4 (Bankr. W.D. Wash. Nov. 25, 2013),
*aff'd*, No. 14-5083BHS, 2014 WL 3404964 (W.D. Wash. July 10, 2014). The court was willing
to disregard the corporate form and hold the parent company liable for breach of the implied
covenant to effect the intent of the parties to restrict *all* transfers.

Section 8.1 is not broadly written. As already discussed, it is clear that the restriction was
only intended to restrict direct transfers of interest, not indirect transfers. Unlike in *Oregon RSA*,
there would be no basis for concluding that the implied covenant in the Member agreement
barred an indirect transfer of YGWV's member interest.

If Appellant wanted the protection, he now claims was an essential part of the deal, he
could have bargained for restrictions on indirect transfers of YGWV's member interest or
transfers of All Year's interest in YGWV. It did not do so. I thus agree with Chief Judge Glenn
that a 30-year-old Oregon decision– a case never followed in Delaware – is not persuasive
authority, notwithstanding any factual similarity to the case at bar. The Bankruptcy Court
correctly declined to re-write that restriction via an implied duty.

In addition, the implied covenant claim must be dismissed because it is duplicative of
Claim I, in that it arises from the same facts and seeks identical relief. Where an implied
covenant claim "involv[es] the same conduct as [a] breach of contract claim," it should be
dismissed as duplicative. *Affy Tapple, LLC v. ShopVisible, LLC*, 2019 WL 1324500, at *4–5
(Del. Super. Ct. Mar. 7, 2019); *CIBC Bank USA v. JH Portfolio Debt Equities*, 2021 WL
2230976, at *13 (Del. Super. Ct. June 2, 2021). Here, Appellant makes the same factual
allegations for both its declaratory judgment and implied covenant claims, compare A98 ¶¶ 94–

24

97, with A99 ¶¶ 103–04, so therefore the implied covenant claim must also be dismissed as duplicative.

## V.    The Bankruptcy Court Properly Dismissed Appellant's Claims III and V for a Declaratory Judgment that YGWV Dissolved Upon All Year's Filing for Bankruptcy And To Enjoin All Year From Managing Member LLC

Finally, Appellant contends that All Year's chapter 11 filing automatically stripped it of its membership interest in YGWV by operation of sections 603 and 701 of New York's Limited Liability corporations Law. He further alleges that this resulted in the automatic dissolution of the LLC.

Chief Judge Glenn dismissed this claim for two reasons: he deemed Appellant's reading of sections 603 and 701 to be erroneous; and if it was not, then he deemed those sections preempted by Section 541 of the Bankruptcy Code. Both grounds are correct.

### A.    The Bankruptcy Court Correctly Held that New York Limited Liability Company Law Did Not Mandate Termination of All Year's Membership Interest in YGWV Upon Filing for Chapter 11 Protection

NYLLCL Section 701(b), entitled "Dissolution," provides as follows:

> Unless otherwise provided in the operating agreement, **the death, retirement, resignation, expulsion, bankruptcy or dissolution of any member** or the occurrence of any other event that terminates the continued membership of any member shall not cause the limited liability company to be dissolved or its affairs to be wound up, and upon the occurrence of any such event, the limited liability company shall be continued without dissolution, unless within one hundred eighty days following the occurrence of such event, a majority in interest of all the remaining members of the limited liability company or, if there is more than one class or group of members, then by a majority in interest of all the remaining members of each class or group of members, vote or agree in writing to dissolve the limited liability company.

(Emphasis added).

Section 701 was inserted into the New York Limited Liability Corporations Law so that a limited liability company would not automatically dissolve when a member ceased to be a

member. Section 701(b)'s sole purpose is to make preservation, rather than dissolution, of a limited liability company the default rule (unless overridden by the express terms of the operating agreement). Its purpose is not to enumerate the situations in which membership interests will necessarily terminate. Properly construed, Section 701(b) provides, if any event occurs that would result in termination of a member's interest as per its operating agreement, the LLC shall not dissolve unless the remaining members vote affirmatively to do so. The law expressly includes the bankruptcy of a member as one event that will not automatically result in dissolution of the LLC "unless otherwise provided in the operating agreement." This section was placed into the law to contravene the longstanding principle of partnership law that the death, withdrawal or termination of one partner from the partnership resulted in the dissolution of the partnership.

Appellant's theory is that All Year's bankruptcy caused its membership interest in YGWV to terminate -- and that, because it was the only member of YGWV, YGWV automatically dissolved per Section 701(a)(4).

Appellant's theory is wrong.

Per section 701(b), All Year's bankruptcy is not an event that automatically triggers YGWV's dissolution, unless otherwise specified in the operating agreement. But that operating agreement does not identify All Year's bankruptcy as a dissolution event. Instead, YGWV's LLC agreement provides that YGWV will only dissolve if (i) All Year decides to dissolve it or (ii) a judicial decree of dissolution is entered. (A130 § 7.1). Neither of those things has occurred, so YGWV has not dissolved.

But Weiss argues that because bankruptcy is specifically mentioned as an event that could result in termination of membership, the bankruptcy of the only partner leaves YGWV

26

without a member, thereby resulting in its automatic termination under 701(a)(4).

Weiss is wrong for three reasons.

First, courts have long understood the opening clause of section 701(b) to refer to events that could terminate a member's interest in an LLC if the operating agreement so provided – not as listing events that would automatically terminate a member's interest in an LLC. *See Man Choi Chiu v. Chiu*, 71 A.D.3d 646, 647 (2d Dep't 2010); *Goyal v. Vintage India NYC, LLC*, 2018 WL 3756882, at *3 (Sup. Ct. N.Y. Cnty. Aug. 8, 2018). They are, as Chief Judge Glenn correctly concluded, simply examples of "any other event that terminates the continued membership of any member," assuming the operating agreement so provides.

The second reason that Weiss' argument must be rejected is that it is preempted by the Bankruptcy Code itself. Section 608 of the NYC LLC Law states that where a member is a corporation and is terminated, the powers of that member may be exercised by its successor. NYCLLC § 608. As will be seen, *infra.*, when a member of an LLC declares bankruptcy, the Bankruptcy Code provides that estate shall succeed to its interests. By Appellant's own admission, All Year's estate succeeded to All Year's membership, A102 ¶¶ 115-16, so automatic dissolution would not be triggered for lack of members.

Finally, Appellant's construction would require single-member LLCs to dissolve automatically upon the passage of any of the listed events; a result that would entirely frustrate 701(b)'s default rule against dissolution unless the operating agreement so provides. Indeed, it would frustrate the intention of All Year, the sole member of YGWV, because the result for which Weiss argues would contravene the terms of the YGWV operating agreement. The Bankruptcy Court correctly concluded the Section 701(b) does not mandate dissolution of a single-member LLC when the member files for chapter 11 protection.

27

**B.** **The Bankruptcy Court Correctly Held that the Chapter 11 Filing Did Not Effectuate an Assignment or Transfer of All Year's Membership Interest in YGWV to the Estate**

Appellant also argued that All Year's chapter 11 filing resulted in the assignment or transfer of its membership interest in YGWV to the bankruptcy estate and, therefore, All Year was stripped of its membership interest in YGWV by operation of section 603(a) of the NYLLCL, which terminates a member's membership interest when a member assigns or transfers its membership interest. (Appellant Br. 43–47).

But the Bankruptcy Court correctly held that All Year's chapter 11 filing was not a transfer or assignment because (1) under *N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 528 (1984), a pre-petition debtor and a post-petition debtor in possession are not legally distinct entities, (A1004-1005); and (2) NYLLCL § 603's reference to assignment should not be applicable to a member filing for bankruptcy, especially when it continues to operate the debtor and is a single-member LLC (and thus no other member is impacted by the bankruptcy estate even if it were a new entity). (A1005–1008). For the reasons articulated by the learned Chief Bankruptcy Judge, I agree.

In *N.L.R.B. v. Bildisco & Bildisco*, the Supreme Court held that the debtor-in- possession and the pre-petition debtor are not legally distinct entities, but one in the same. 465 U.S. at 528; see also *In re Ontario Locomotive & Indus. Ry. Supplies (U.S.) Inc.*, 126 B.R. 146, 147 (Bankr. W.D.N.Y. 1991). Accordingly, as the pre-petition debtor and the post-petition debtor in possession are the same legal entity, there is no transfer or assignment of any property upon the commencement of a chapter 11 case.

*In re Nw. Co.*, 2020 WL 2121269 (Bankr. S.D.N.Y. May 1, 2020), thoroughly analyzed this issue in the context of whether a North Carolina statute concerning transfer of an LLC's

28

assets applies to a bankruptcy filing, ruling that "the mere filing of a chapter 11 petition and the creation of a chapter 11 estate automatically amounts to a transfer or a disposition of substantially all of the Debtor's property for purposes of other laws is simply wrong." Id. at *4. As the *Nw. Co.* court noted, Bildisco resolved this issue by holding that a "debtor-in-possession who takes charge of an estate is not a legally distinct entity from the pre-bankruptcy debtor." Id. at *2. Additionally, the court observed that "there is nothing in the Bankruptcy Code itself that supports the notion that a transfer to a new legal entity takes place when an estate is created." Id. at *3. The court further explained that this is especially so if the debtor, as here, maintains possession "and continues to exercise dominion and control over its businesses and properties." Id. at *4. Here, All Year remains in control as a debtor-in-possession and no assignment or transfer from the prepetition Debtor to the estate occurred as a matter of bedrock bankruptcy law.

Appellant next attempts to distinguish *Bildisco* by limiting it to rejection or acceptance of executory contracts, arguing that section 541(c) of the Bankruptcy Code supports this interpretation. Br. at 45-47. But *Nw. Co.* applied *Bildisco* outside the context of executory contracts and Plaintiff cites no authority cabining *Bildisco*'s holding in that way. Also, the full text of section 541(c) contradicts Plaintiff's reading as it does not provide for the transfer or assignment of an interest to the estate; rather, "an interest of the debtor in property becomes property of the estate . . . notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law." 11 U.S.C. § 541(c) (emphasis added). Further, it would make little sense for the Supreme Court to hold the debtor-in-possession and prepetition debtor must be the same entity to avoid rendering Bankruptcy Code sections governing acceptance and rejection of executory contracts superfluous (as a new, separate legal entity "would not be bound by such contracts in the first place," *Bildisco*, 465 U.S. at 528), yet not apply that same principle to

29

interests created by a prepetition contract such as an LLC operating agreement.

In the face of *Bildisco* and the reasoned opinion in *Nw. Co.*, Appellant cites *Crawford v.*
*Franklin Credit Mgmt. Corp. and Gebert v. Transp. Admin. Servs.* (out-of-circuit), which
concerned whether a post-emergence debtor could pursue unscheduled claims or whether those
claims were estate property for the benefit of pre-emergence creditors. 2011 WL 1118584, at *13
(S.D.N.Y. Mar. 23, 2011); *Gebert*, 260 F.3d 909, 913 (8th Cir. 2001); Appellant Br. at 44–45.
First, neither of these cases involved a chapter 11 debtor in possession—*Crawford* was an
individual chapter 13 case and *Gebert* was a chapter 7 liquidation. In addition, neither case
analyzes or involves the issue of whether a transfer or assignment occurs upon the filing of a
bankruptcy; rather, those cases concern the effect of a debtor's emergence from bankruptcy and
the vesting of a debtor's property rights post- emergence. Each case refers, without analysis of
applicable bankruptcy precedent, and in conclusory terms, to the transfer of debtor's assets to the
bankruptcy estate. *Crawford*, 2011 WL 1118584, at *13; *Gebert*, 260 F.3d at 913; see also *Nw.*
*Co.*, 2020 WL 2121269, at *3 ("Decisions that speak of the estate as being separate from the
debtor are in fact speaking metaphorically.").8

In addition, as the Bankruptcy Court noted, section 603 does not by its terms equate a
voluntary assignment with a member's bankruptcy filing and there is an insufficient legal basis
to conclude that the statutory language encompasses a bankruptcy filing that creates an estate
under the Bankruptcy Code. (A1007–1008). The Bankruptcy Court correctly reasoned that an
assignment implies an intention to transfer or divest all control over the thing assigned, and the
Amended Complaint contains no allegations that All Year intended any such thing. (A964)
("[T]here are no allegations in the Complaint that All Year intended to divest itself of its interest
in YGVV by proceeding as a debtor in possession in bankruptcy."). Moreover, Section 603 is

concerned with multi-member limited liability companies and protecting the other members from

sharing co-membership with a new entity. YGWV is a sole member limited liability company

and therefore Appellant incorrectly asserts that its interest as a member in a different Delaware

limited liability company is of any legal consequence. (A1007-1008).

### C.    The Bankruptcy Court Correctly Held that Appellant's Reading of the NYLLCL Was Preempted by Section 541 of the Bankruptcy Code

Finally, Chief Judge Glenn correctly held that, even if Appellant's reading of sections

603 and 701 were correct, Section 541(c) of the Bankruptcy Code would preempt that reading.

The subject matter here, the legal consequence of a company filing for chapter 11,

naturally implicates one of the quintessential areas where Congress legislates to preempt state

laws. Indeed, the ability to establish "uniform Laws on the subject of Bankruptcies throughout

the United States" is a power expressly granted by the United States Constitution. U.S. Const.

art. I, § 8. Based on this authority "the Bankruptcy Code constitutes a wholesale preemption of

state laws regarding creditors' rights." *In re Tribune Co. Fraudulent Conveyance Litig.*, 946 F.3d

66, 82 (2d Cir. 2019). Moreover, where, as here "the statute contains an express pre-emption

clause, we do not invoke any presumption against pre-emption but instead focus on the plain

wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive

intent." *Puerto Rico v. Franklin California Tax- Free Tr.*, 579 U.S. 115, 125 (2016) (internal

quotes omitted).

Appellant's reading of sections 603 and 701 of the NYLLCL squarely conflict with the

plain words of Section 541(c) of the Bankruptcy Code. Section 541(c) of the Bankruptcy Code

commands that a debtor's interest in property becomes property of the estate "notwithstanding

any provision in . . . applicable nonbankruptcy law" that either (A) "restricts or conditions

transfer of such interests by the debtor" or (B) "is conditioned . . . on the commencement of a

31

case under this title . . . and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property." 11 U.S.C. § 541(c)(1) (emphasis added); see also *In re S.W. Bach & Co.*, 435 B.R. 866, 877 (Bankr. S.D.N.Y. 2010) ("An interest of a debtor is property of the estate despite any 'provisions in an agreement, transfer instrument, or applicable nonbankruptcy law— (A) that restricts or conditions transfer of such interest by the debtor,' with some exceptions not relevant here."). It is hard to imagine language that more clearly and expressly preempts Appellant's reading of the NYLLCL to restrict the transfer of All Year's membership interest and require "forfeiture, modification, or termination" of the membership interest solely because of All Year's filing for bankruptcy. See, e.g., *In re Thorpe Insulation Co.*, 677 F.3d 869, 889 (9th Cir. 2012) (holding that Section 541(c) expressly preempted contract rights). Thus, as the Bankruptcy Court held, not only is there is no presumption against preemption in matters concerning bankruptcy, but Section 541(c) expressly preempts conflicting state laws.

Indeed, Bankruptcy Courts reviewing a prior version of NYLLCL section 701 and similar state laws have held that such laws cannot be read to terminate or modify LLC membership interests solely due to a bankruptcy filing, as the law would then act to "deprive the trustee of that interest." See *In re Prebul*, 2012 WL 5997927, at *10-11 (E.D. Tenn. Nov. 30, 2012) (finding that the trustee succeeded to all of debtor's rights "including those as a member" of an LLC, that section 701 "was rendered inapplicable here because it would modify or terminate" the debtor's interest in an LLC, and that, therefore, section 541 of the Bankruptcy Code "renders inapplicable termination or modification of an interest solely due to a debtor's bankruptcy"); see also *In re Dixie Mgmt. & Inv., Ltd. Partners*, 474 B.R. 698, 701 (Bankr. W.D. Ark. 2011); *In re Daugherty Constr., Inc.*, 188 B.R. 607, 611-12 (Bankr. D. Neb. 1995); In re Klingerman, 388

32

B.R. 677, 678 (Bankr. E.D.N.C. 2008). This is exactly how Appellant's reading of the statute would operate, as All Year's membership interest would be terminated, ipso facto, solely due to its chapter 11 filing. As Section 541(c) squarely precludes that result, the Bankruptcy Code must prevail over Appellant's reading of NYLLCL.

Further, as the Bankruptcy Court correctly reasoned, even if there was a presumption against preemption, there is no compelling state interest weighing against preemption because YGWV is a single-member LLC. A1011-14. Both before the Bankruptcy Court and on appeal, Appellant relied on *Milford Power Co. v. PDC Milford Power, LLC*, 866 A.2d 738 (Del. Ch. 2004), and *Nw. Wholesale, Inc. v. Pac Organic Fruit*, LLC, 357 P.3d 650 (Wash. 2015), to argue that the Bankruptcy Code only "partially preempts" state LLC laws. But *Nw. Wholesale* specifically recognized that its analysis of the preemption issues might be different when analyzing a single-member LLC. 357 P.3d at 657–58. Similarly, one of *Milford Power*'s key considerations was that the Delaware law "expressly recognizes the unique relationships that exist among members of LLCs and protects solvent members from being forced into relationships they did not choose that result from the bankruptcy of one of their chosen co-investors." 866 A.2d at 754. Here, there is no need to balance the rights of other members because YGWV only has one member: the Debtor All Year. *See In re Modanlo*, 412 B.R. 715, 727 (Bankr. D. Md. 2006), aff'd, 266 F. App'x 272 (4th Cir. 2008).

Also, the federal interest in Section 541(c) of the Bankruptcy Code, which is at issue here, is notably different for preemption purposes than Section 365 of the Bankruptcy Code, which was at issue in *Milford Power* and *Nw. Wholesale*. Section 365, for example, does not permit assumption of personal services executory contracts.13 In that regard, the *Milford Power* court concluded that Section 365 was "an expression of Congress's recognition that certain types

of executory contracts . . . (e.g., personal services contracts) should not be assumable by a

Bankruptcy Trustee. . . when state law would not require the non-debtor parties to accept

substitute performance." 866 A.2d at 752. Likewise, *Nw. Wholesale* also concluded that under

Section 365, "applicable law excuses a party, other than the debtor [, i.e., the nondebtor

members], . . . from accepting performance from or rendering performance to . . . an assignee."

357 P.3d at 662. As explained above, those Section 365 considerations are not present here

because YGWV is a single-member LLC, and Section 541 vests in the bankruptcy estate all legal

and equitable interests of the debtor (which includes membership interests).

## VI.    The Bankruptcy Court Properly Dismissed Appellant's Claims IV and V to Enjoin All Year From Transferring its Interest in YGWV And From Managing Member LLC

As the Bankruptcy Court held, Counts IV and V, which seek injunctive relief, cannot

stand alone if Appellant's other claims are dismissed. (A1014–15). In fact, injunction is a

remedy, not a cause of action. *NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd.*, 262 F. Supp. 2d

134, 149 (S.D.N.Y. 2003). Dismissal of any substantive claim that could be remediated by

injunction necessarily results in dismissal of a "claim" for injunctive relief.

## CONCLUSION

For the foregoing reasons, the order of the Bankruptcy Court is affirmed.

Dated: December 12, 2022

_____

U.S.D.J.

TO ALL PARTIES BY ECF

# EXHIBIT C

Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 16-22321-rdd

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5

6    In the Matter of:

7

8    KIRWAN OFFICES S.a.r.l.,

9

10                  Debtor.

11

12   - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

13

14                   United States Bankruptcy Court

15                   300 Quarropas Street

16                   White Plains, New York

17

18                   June 17, 2016

19                   11:00 a.m.

20

21

22

23   B E F O R E :

24   HON ROBERT D. DRAIN

25   U.S. BANKRUPTCY JUDGE

                                                                Page 2

1     Hearing on Involuntary Petition

2

3     Notice of Hearing Motion for Abstention Under Section 305,

4     Motion to Dismiss Case, Motion to Dismiss Involuntary

5     Petition, Motion to Compel, Motion to Intervene, Motion of

6     Stephen P. Lynch for Intervention and Dismissal, Abstention

7     or Stay of Bankruptcy Proceeding filed by David Y. Wolnerman

8     on behalf of Stephen P. Lynch (related document(s)8)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sherri L. Breach, CERT*D-397

Page 30

1    shareholders as opposed to creditors, then I think that all

2    the shareholders basically have, unless they act

3    unanimously, have bound their hands not to dispute a

4    petition that's filed involuntarily.

5               So I -- you know, I don't -- I just don't think he

6    should have standing under 303(d).

7               MR. WHITE:  Now when you said a tag team, I don't

8    know if there's more to add from Mr. Rothstein, but are

9    there are some points based on the experts that you believe

10   are appropriate at this juncture?

11              MR. ROTHSTEIN:  I'm not sure that there's anything

12   that comes under, in the form that we want it to address

13   that comes under intervention exclusively.  So I think we

14   could move on.

15              THE COURT:  Okay.  All right.  I'm going to grant

16   -- I think this is the right procedural context for this.

17   I'm going to grant the petitioner's objection to the motion

18   to the extent that the motion seeks relief under Section

19   303(h) to contest the petition or to answer it in the words

20   of 303(d) of the Bankruptcy Code.

21              The plain language of that code limits the parties

22   who may file an answer to a petition, an involuntary

23   petition under Section 303, to the debtor or a general

24   partner or a partnership debtor that did not join in the

25   petition.  Clearly, Mr. Lynch is neither the debtor nor a

Page 31

1    general partner, this not being a general partnership.

2           Frankly, I think that the plain language is the

3    end of it, but there are a couple of cases which have held

4    in unusual situations or at least in dicta stated that in

5    unusual situations where the debtor is precluded from acting

6    by a shareholder dispute, or where there has been fraud in

7    connection with a, or misconduct in connection with an

8    involuntary debtor by the debtor's controlling parties, that

9    a shareholder may be allowed to contest the petition.

10          The broader language that I've just used frankly

11   stems from cases that predate the Bankruptcy Code and that

12   rely on different language for who may contest an

13   involuntary petition.  As far as I can see, and I don't

14   think anyone has cited any other cases beyond them, there

15   are only two cases that consider giving standing to a

16   shareholder positively in the context of 303(d).

17          The first one is by Judge Schwartzberg whose

18   portrait hangs behind you, In re: Westerly Development

19   Corp., 141 B.R. 38, (Bankr. SDNY 1992).  In that case Judge

20   Schwartzberg found that there was a complete inability of

21   the debtor to act because its shareholders were in

22   intractable conflict with each other and they were each 50

23   percent shareholders.  So he said in dicta that one of those

24   shareholders could dispute the involuntary petition which

25   the other shareholder supported as a matter of the holding.

 1          The Court dismissed the petition, but he could

 2    have just as easily dismissed the case, not based on grounds

 3    under Section 303(h), which are the grounds by which one may

 4    controvert an involuntary petition, but rather under Section

 5    305(a)(1) of the Bankruptcy Code which contemplates

 6    abstention if in the interest of creditors and the debtor

 7    would -- if the interest of creditors and the debtor would

 8    be better served by such dismissal or suspension.

 9          The other case In Re: Synergistic Technologies,

10    Inc., 2007 Bankruptcy Lexus 2660, Bankruptcy N.D. Texas,

11    August 1, 2007, considered the Westerly case, noted the

12    general rule that shareholders do not have standing and

13    found that the shareholders that sought to contest the

14    petition there were, in fact, the controlling shareholders

15    in the case and should be allowed to speak for the debtor

16    because, as a matter of corporate governance, they did speak

17    for the debtor.

18          Congress -- I'm sorry.  I believe congress

19    carefully considered who may contest the petition,

20    recognizing that contesting involuntary petitions should not

21    turn into an opportunity for various other parties in

22    interest who generally have the opportunity to appear and be

23    heard and intervene in various contested matters and

24    adversary proceedings in Chapter 11 cases, including

25    creditors and shareholders and limited partners, should not

Page 33

1    have the opportunity to involve themselves in a contest over

2    an involuntary petition given the opportunity for mischief

3    if they were allowed to do so, recognizing, of course, that

4    they would have all the other rights of parties in interest

5    with respect to the case including invoking Section 305,

6    abstention and dismissal under 1112 of the Bankruptcy Code.

7           The legal treatise states that the better rule is

8    that equity holders cannot answer the involuntary petition,

9    although it does add citing only Westerly as well as cases

10   that follow the general rule, "assuming that there's been no

11   fraud or other misconduct by the involuntary debtor," 2

12   Collier on Bankruptcy, paragraph 303.20(1)(b)[16th Edition

13   2016].

14          I believe that language is too loose; that the

15   proper remedy for disgruntled shareholders who believe that

16   their debtor has been acting improperly because of improper

17   corporate governance in this context, not in the context of

18   whether it should have contested the involuntary petition,

19   is to pursue their rights under applicable state law in the

20   nature of breach of fiduciary duty claims, but that congress

21   did not want to turn the contest over an involuntary

22   petition into shareholder litigation.

23          So I'll grant the objection on standing.

24          The next issue is the issue of whether the Court

25   should dismiss the case for forum non conveniens and/or

Page 34

1    should abstain from hearing the case pursuant to Section 305

2    of the Bankruptcy Code, although as we clarified at the

3    beginning of this hearing the abstention point is really

4    limited, I think, correct me if I'm wrong, to the tenuous

5    nature of the case to the United States, right, not --

6              MR. WHITE:  Yes.

7              THE COURT:  -- not to issues of bad faith or two

8    party dispute or anything like that, except to the extent

9    that the facts pertaining to the two party dispute go to the

10   location of the case.

11             MR. WHITE:  Yes.  That's correct, Your Honor.

12             THE COURT:  Okay.

13             MR. WHITE:  So I think abstention is a recognized

14   remedy, particularly in the context of involuntary

15   petitions.  Our main purpose being that it should not --

16   that involuntaries should not be filed for the purposes of

17   essentially allowing one party to a dispute to leverage that

18   dispute with another party.

19             And in this case we have a shareholders' agreement

20   that was carefully drafted at the beginning of the

21   investment to protect the Class C shareholder rights that my

22   client possesses, and not only for the purpose of protecting

23   my --

24             THE COURT:  I'm sorry.  Can I --

25             MR. WHITE:  -- client --

# EXHIBIT D

At an IAS Commercial Term Part 12 of the
Supreme Court of the State of New York,
held in and for the County of Kings, at the
Courthouse, located at 360 Adams Street,
Borough of Brooklyn, City and State of New
York on the 3rd day of November 2022.

P R E S E N T:
Honorable Reginald A. Boddie
Justice, Supreme Court
-------------------------------------------------------------------x

WYTHE BERRY FEE OWNER LLC.,                          Index No. 514152/2021

                    Plaintiff,                       Cal. No. 30 and 31 (MS 9, 10)

        -against-                                    **DECISION AND ORDER**

WYTHE BERRY LLC., et al.,

                    Defendants.
-------------------------------------------------------------------x


E;filed papers considered on this motion          Numbered
MS 9                                              Docs. No. 263-327
MS 10                                             Docs. No. 278-327

        Upon the foregoing, defendants' motion (MS 9) for an order determining the proposed
undertaking for an appeal, extending the time for Wythe Berry to comply with the obligations
imposed by the Use and Occupancy Order, and awarding attorney fees and plaintiff's motion
(MS 10) for an order of ejectment are as follows:

        To the extent Wythe Berry LLC seeks to appeal and the Appellate Division is inclined to

accept the appeal as timely, Wythe Berry LLC shall post an undertaking in the amount of 45

million dollars within ten days hereof. This amount is reasonable in light of the annual use and

occupancy past due of 7.5. million and the amount likely to be incurred of 7.5 million bi-

annually, on August 1 and February 1, through conclusion of the appeal. Alternatively, Wythe

Berry LLC may cure its alleged default within ten days hereof, by making the August 1, 2022

1

payment due to plaintiff in the amount of 7.5 million. Accordingly, Wythe Berry LLC's motion

is granted to the extent herein and otherwise denied.

Plaintiff, Wythe Berry Fee Owner's motion for ejectment shall be held in abeyance to

permit compliance herewith. Accordingly, MS 10 is adjourned to December 8, 2022, to be heard

virtually.

ENTER:

Hon. Reginald A. Boddie
Justice, Supreme Court

HON. REGINALD A. BODDIE
J.S.C.

# EXHIBIT E

# Supreme Court of the State of New York
# Appellate Division: Second Judicial Department

M286358
AFA/

VALERIE BRATHWAITE NELSON, J.P.
ANGELA G. IANNACCI
WILLIAM G. FORD
BARRY E. WARHIT, JJ.

_____

2021-09065                                DECISION & ORDER ON MOTION

Wythe Berry Fee Owner, LLC, respondent-appellant,
v Wythe Berry, LLC, et al., appellants-respondents,
et al., defendant.

(Index No. 514152/2021)

_____

2022-08977

Wythe Berry Fee Owner, LLC, respondent,
v Wythe Berry, LLC, et al., defendants;
William Vale Hotel, LLC, et al., nonparty-appellants.

(Index No. 514152/2021)

_____

2022-08979

Wythe Berry Fee Owner, LLC, respondent,
v Wythe Berry, LLC, et al., appellants, et al.,
defendant.

(Index No. 514152/2021)

_____

Appeal and cross appeal from an order of the Supreme Court, Kings County, dated December 1, 2021, and appeals from two orders of the same court dated September 29, 2022, and November 3, 2022, respectively. Joint motion by Wythe Berry, LLC, Zelig Weiss, William Vale Hotel, LLC, William Vale FNB, LLC, North 12 Parking, LLC, Espresso Hospitality Management, LLC, and A. Kahan CPA, P.C., to stay all proceedings in the above-entitled action, pending hearing and determination of the appeal and cross appeal from the order dated December 1, 2021, or, in the alternative, to stay enforcement of the orders dated September 29, 2022, and November 3, 2022,

December 7, 2022                                             Page 1.
WYTHE BERRY FEE OWNER, LLC v WYTHE BERRY, LLC

pending hearing and determination of the appeals from those orders, and for an award of costs and attorney's fees.

Upon the papers filed in support of the motion and the papers filed in opposition thereto, it is

ORDERED that the motion is denied.

BRATHWAITE NELSON, J.P., IANNACCI, FORD and WARHIT, JJ., concur.

ENTER:

*Maria T. Fasulo*

Maria T. Fasulo
Clerk of the Court