**Hearing Dates: January 17–18, 2022 at 10:00 a.m. (Prevailing Eastern Time)**
**Response Deadline: December 16, 2022**

Michael Friedman
David T.B. Audley
Eric S. Silvestri
Helena Honig
CHAPMAN AND CUTLER LLP
1270 Avenue of the Americas
30th Floor
New York, NY  10020
(212) 655-6000
Fax: (212) 697-7210
mfriedman@chapman.com

*Counsel to Petitioning Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | |
| | Chapter 11 |
| WYTHE BERRY FEE OWNER LLC, | |
| | Case No. 22-11340 (MG) |
| Alleged Debtor. | |

**PETITIONING CREDITORS' RESPONSE TO ZELIG WEISS'S MOTION (I) TO DISMISS INVOLUNTARY PETITION AND (II) TO THE EXTENT NECESSARY, TO INTERVENE AS AN INTERESTED PARTY**

## TABLE OF CONTENTS

| SECTION | HEADING | PAGE |
|---|---|---|

PRELIMINARY STATEMENT .................................................................................................1

FACTUAL BACKGROUND ....................................................................................................3

ARGUMENT ........................................................................................................................9

I.     WEISS DOES NOT HAVE STANDING TO RAISE AN OBJECTION UNDER § 303 ..........................................................................................................10

II.    THE COURT SHOULD NOT GRANT WEISS SPECIAL STANDING UNDER § 303 ..........................................................................................................12

    A.    This Is Not a Shareholder Dispute Playing out in State Court .................12

    B.    The Alleged Debtor Was Able to Contest the Petition If It Felt It Had Grounds .....................................................................................13

    C.    The Alleged Debtor Is Not "Conflicted" ..................................................14

    D.    Rule 2018(a) Cannot Defeat the Clear Application of § 303 ...................16

III.    EVEN IF THE COURT GRANTED WEISS § 303 STANDING, HIS ARGUMENTS FAIL ................................................................................................17

    A.    Whether the Trustee Holds the Claim under the Guaranty or the Bondholders Hold Such a Claim, the Involuntary Petition Meets the Requirements of § 303(b) .........................................................19

    B.    Weiss's Nebulous "Belief" Is Not a Bona Fide Dispute ..........................20

IV.    THE INVOLUNTARY PETITION SHOULD NOT BE DISMISSED UNDER § 1112(B) ..........................................................................................................23

    A.    A § 1112(b) Challenge Is Premature and No Cause Exists to Dismiss in Any Event .............................................................................23

    B.    The Court Should Not Abstain under § 305 .............................................27

CONCLUSION ....................................................................................................................29

TABLE OF AUTHORITIES

**Cases**

*Bank of Am. Nat'l Tr. & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434 (1999) .................................................................................................18

*In re Automated Fin. Corp.*, No. 1:08-BK-14339-MT, 2011 WL 10502417 (Bankr. C.D. Cal. Jan. 25, 2011) .............................................................10

*In re Best Home Performance of CT, LLC*, No. 19-20688 (JJT) 2019 Bankr. LEXIS 3682 (Dec. 2, 2019 Bankr. D. Conn) .........................................12, 15

*In re BH S & B Holdings, LLC*, 439 B.R. 342 (Bankr. S.D.N.Y. 2010) ......................................24

*In re Euro-Am. Lodging Corp.*, 357 B.R. 700 (Bankr. S.D.N.Y. 2007)........................................22

*In re Federate Grp., Inc.*, 107 F.3d 730 (9th Cir. 1997) ................................................20

*In re Johns-Manville Corp.*, 552 B.R. 221 (Bankr. S.D.N.Y. 2016)............................................21

*In re Jr. Food Mart of Arkansas, Inc.*, 234 B.R. 420 (Bankr. E.D. Ark. 1999) ...........................11

*In re Jr. Food Mart of Arkansas, Inc.*, 241 B.R. 423 (Bankr. E.D. Ark. 1999) ...........................13

*In re Manolo Blahnik USA, Ltd.*, 619 B.R. 81 (Bankr. S.D.N.Y. 2020) ......................................23

*In re MarketXT Holdings Corp.*, 347 B.R. 156 (Bankr. S.D.N.Y. 2006).........................10, 17, 24

*In re Monitor Single Lift I, Ltd.*, 381 B.R. 455 (Bankr. S.D.N.Y. 2008) ................................28, 29

*In re Murray*, 543 B.R. 484 (Bankr. S.D.N.Y. 2016) *aff'd* 900 F.3d 53 (2d Cir. 2018)...........................................................................................24, 25, 26

*In re Newbury Operating LLC*, No. 20-12976-JLG, 2021 WL 1157977 (Bankr. S.D.N.Y. Mar. 25, 2021) .........................................................................25

*In re Peak Hotels & Resorts Grp. Ltd.*, No. 17-12811 (SCC), 2019 WL 1434316 (S.D.N.Y. Mar. 31, 2019) .........................................................11, 13

*In re RCM Glob. Long Term Cap. Appreciation Fund, Ltd.*, 200 B.R. 514 (Bankr. S.D.N.Y. 1996) .........................................................................................13

*In re Schur Mgmt. Co., Ltd.*, 323 B.R. 123 (Bankr. S.D.N.Y. 2005) ...........................................27

*In re Sponsor Realty Corp.*, 48 F. Supp. 735 (S.D.N.Y. 1943) ................................................20

*In re Taylor & Assocs., L.P.*, 191 B.R. 374 (Bankr. E.D. Tenn. 1996) ..................................11, 17

*In re Teligent, Inc.*, 640 F.3d 53 (2d Cir. 2011) .........................................................18

*In re TPG Troy, LLC*, 492 B.R. 150 (Bankr. S.D.N.Y. 2013).....................................19, 20, 22, 23

*In re Westerleigh Dev. Corp.*, 141 B.R. 38 (Bankr. S.D.N.Y. 1992) ...............................11, 12, 13

*Johnson v. Home State Bank*, 501 U.S. 78 (1991) ........................................................................21

*Key Mech. Inc. v. BDC 56 LLC (In re BDC 56 LLC)*, 330 F.3d 111 (2d Cir. 2003).........10, 17, 19

*Matter of Seatrain Lines, Inc.*, 21 B.R. 194 (Bankr. S.D.N.Y. 1982) ...........................................10

*Zelig Weiss v. All Year Holdings Ltd.*, Adv. Proc. No. 22-01115 (MG) (S.D.N.Y.) ......................1

**Statutes**

11 U.S.C. § 1109(b) ...................................................................................................................16

11 U.S.C. § 1112(b)(4) ...............................................................................................................22

11 U.S.C. § 303 ............................................................................................................................9

11 U.S.C. § 303(b) .....................................................................................................................17

11 U.S.C. § 303(b)(1) ..................................................................................................................8

11 U.S.C. § 303(b)(2) .................................................................................................................17

11 U.S.C. § 303(d).................................................................................................................10, 14

**Other Authorities**

Bankruptcy Rule 7024 ................................................................................................................16

Federal Rule of Bankruptcy Procedure 1011(a) .........................................................................10

Federal Rule of Civil Procedure 2018(a)....................................................................................16

### PRELIMINARY STATEMENT

Zelig Weiss ("*Weiss*") is no stranger to this Court. For two years he has squatted, rent free, on the Alleged Debtor's primary asset, the William Vale Hotel, and ignored virtually every contractual obligation he has and judicial order he has received as he wages a legal campaign to seize control of the Alleged Debtor for himself, using cash rightfully belonging to Alleged Debtor to fund those efforts.

Earlier this year, in the bankruptcy case for All Year Holdings Limited ("*All Year*"), Weiss filed an adversary proceeding[1] arguing (again) that he is the "real" manager of Wythe Berry Fee Owner LLC, the alleged Debtor in this proceeding (the "*Alleged Debtor*") and seeking control of the Alleged Debtor's business operations.[2] Now Weiss has returned, this time casting himself as the Alleged Debtor's controlling, innocent shareholder and savior. The Court should not be misled. As the Court is well aware, in addition to occupying the hotel and refusing to pay rent for the last two years, he has refused the even allow the Alleged Debtor access to the hotel despite his lease being validly terminated, and has flouted multiple court orders requiring the payment of use and occupancy and the delivery of documents and financial information regarding the Alleged Debtor's own property. Due to Weiss's actions, the Alleged Debtor's financial status and commercial operations are untenable. The William Vale Hotel is in increasing peril as lawsuits mount, including those filed by and against Weiss and his business entities. The Alleged Debtor additionally is in default on its promissory note and mortgage on the William Vale Hotel, presenting further issues that need to be resolved.

---

[1] *Zelig Weiss v. All Year Holdings Ltd.*, Adv. Proc. No. 22-01115 (MG) (S.D.N.Y.) (the *"All Year Adversary"*).

[2] This Court dismissed that theory as insufficiently pled and unsupported by law, a decision which the District Court for the Southern District of New York recently affirmed. *See* All Year ECF No. 52; Mem. and Order Affirm. Bankr. Ct. Dec., *In re All Year Holdings Ltd.*, 21-12051-mg, ECF No. 294.

The most efficient way to navigate these complex challenges is through a chapter 11 proceeding, which will permit not just the resolution of the obstacles manufactured by Weiss, but also maximize value for the Alleged Debtor's creditors.  Further, the Alleged Debtor, its 50% owner All Year, and the Trustee for the bondholders of All Year, whose collective interests are *all* aligned to maximize the value of the Alleged Debtor's assets, all agree that a chapter 11 bankruptcy proceeding will maximize value for the Alleged Debtor and all relevant stakeholders.  The only person who is truly conflicted and stands to lose from this efficient administration of the Alleged Debtor's affairs is Weiss, who seeks control of the Alleged Debtor and the William Vale only for himself.

As a threshold matter, Weiss is a shareholder of a shareholder of the Alleged Debtor.  The Bankruptcy Code plainly does not permit him to contest an involuntary bankruptcy petition.  Undeterred, Weiss asks the Court to grant him a rare and extraordinary exception to that rule.  But Weiss is not, as he claims, an unbiased champion of the Alleged Debtor's interests.  Quite the opposite, his deliberate and self-serving sabotage has, in the Alleged Debtor's own words, "embroiled [the Alleged Debtor] in multiple litigations and [led to] the prospect of imminent foreclosure with few means available other than proceeding as a chapter 11 debtor in possession."  Moreover, Weiss has very likely funded his multifaceted litigation campaign with funds he is diverting from the Alleged Debtor.  Rather than promoting fairness or efficiency, permitting Weiss to contest the involuntary petition would yield exactly what his participation has occasioned in every other courtroom—deliberate delay and meritless arguments.

The Court need not guess on this point—Weiss's Motion[3] demonstrates it.  Even assuming Weiss had standing to object, his arguments are groundless.  As more fully described below, no cause exists to dismiss the involuntary petition under § 303, § 305, or § 1112(b) of the Code, and

---

[3]    Zelig Weiss's Motion (I) to Dismiss Involuntary Petition and (II) to the Extent Necessary, to Intervene as an Interested Party is hereinafter referred to as the *"Motion."*

the Petitioning Creditors[4] have more than sufficiently described their undisputed, unsecured claims. Weiss should not be granted extraordinary dispensation to disrupt these proceedings. His Motion should be denied and an Order for Relief should be entered.

<p align="center">FACTUAL BACKGROUND</p>

**The Relevant Ownership Structure**

1.      All Year, the ultimate parent company in this structure, wholly owns a limited liability company called YG WV LLC (*"YGWV"*).[5] *See* Wythe Berry Fee Owner LLC's Answer to Involuntary Ch. 11 Petition [ECF No. 9] (*"Answer"*) ¶ 6; *see also* Declaration of Ephraim Diamond in Support of Answer [ECF No. 9-1] (*"Diamond Decl."*) ¶ 6.

2.      Weiss and YGWV each hold 50% of the membership interests in Wythe Berry Member LLC (*"Member LLC"*). Motion ¶ 6; Answer ¶ 1; Diamond Decl. ¶ 6. Member LLC is the owner and sole member of the Alleged Debtor. Motion ¶ 2; Diamond Decl. p. 1, ¶ 6.

3.      YGWV is the managing member of Member LLC. Motion ¶ 6; Diamond Decl. p. 1, ¶ 6. Thus, YGWV, as managing member of Member LLC, controls and directs the Alleged Debtor. Answer ¶¶ 1–6; Diamond Decl. ¶¶ 1–6; All Year ECF No. 52 at p. 4.[6]

**All Year Issues Bonds and the Alleged Debtor Guarantees Them on an Unsecured Basis**

4.      In February 2017, All Year issued Series C Debentures (the *"Series C Bonds,"* and the holders thereof the *"Series C Bondholders"*) in the original principal amount of

---

[4]      Petitioning Creditors are Mishmeret Trust Company Ltd. (the *"Trustee"*), Yelin Lapidot Provident Funds Management Ltd. (*"PLP"*), The Phoenix Insurance Company Limited (*"Phoenix"*), and Klirmark Opportunity Fund III L.P. (*"Klirmark"*).

[5]      For a visual breakdown of the ownership structure, see Exhibit C to the Disclosure Statement filed by All Year. All Year ECF No. 124, Ex. C.

[6]      Weiss disputes this and claims he is actually the managing and sole member of Member LLC. The Court dismissed this argument in his earlier adversary proceeding in the All Year Bankruptcy. All Year ECF No. 52.

NIS 617,970,000 pursuant to a Deed of Trust dated February 19, 2017 (the *"Deed of Trust"*) between All Year and the Trustee.  Answer ¶ 7; Diamond Decl. ¶ 7; Statement of Petitioning Creditors [ECF No. 2] (*"Statement of Creditors"*), Ex. A [ECF No. 2-1] (copy of the Deed of Trust).

5.      On February 28, 2017, the Alleged Debtor executed a Guaranty of Payment (the *"Guaranty"*) under which the Alleged Debtor guaranteed "prompt payment and performance of all debts, obligations, and liabilities [of All Year] … under the Bond Documents … and any and all sums of money … under the provisions of the Deed of Trust."  Answer ¶ 8; Diamond Decl. ¶ 8; Statement of Creditors, Ex. B (copy of the Guaranty).  The Guaranty was delivered specifically to secure the obligations to the Series C Bondholders (acting through the Trustee).  The delivery of the Guaranty was a condition to the closing of the Deed of Trust: "[The Alleged Debtor] shall deposit a guarantee with the Trustee pursuant to which [the Alleged Debtor] has an irrevocable commitment to uphold [All Year's] obligations towards the Debenture holders (Series C)."  Deed of Trust § 6.2.1.5.

**The William Vale Hotel and Its Lease to Weiss**

6.      The Alleged Debtor owns the William Vale Hotel (the *"William Vale"*), which was developed by Weiss and his business partner, Yoel Goldman (*"Goldman"*), who is also the sole owner of All Year.  Answer ¶ 4; Diamond Decl. ¶ 4.

7.      On February 28, 2017, the same day as All Year's bond issuance, the Alleged Debtor entered into a Ground Lease (the *"Lease"*) for the William Vale with Wythe Berry LLC (*"Lessee"*), a company owned by Weiss and Goldman, with Weiss serving as the manager of Lessee and therefore responsible for all business decisions made by Lessee.  Answer ¶ 9; Diamond Decl. ¶ 9.  The rent payable to the Alleged Debtor under the Lease was structured to be used to

service that certain Amended and Restated Promissory Note in the principal amount of $166,320,000, dated as of February 28, 2017 (the *"Note"*), which is secured by a mortgage against the William Vale.  Answer ¶ 10; Diamond Decl. ¶ 10.  The Lease requires Lessee, controlled by Weiss, to pay the Alleged Debtor $15 million in annual rent, split evenly into two payments of $7.5 million, which are due on February 1st and August 1st of each year.  Answer ¶ 11; Diamond Decl. ¶ 11.

**Weiss Refuses to Pay Rent or Deliver Financial Information**

8.      On February 1, 2021, Lessee failed to make its required rent payment.  Answer ¶ 13; Diamond Decl. ¶ 13.  On May 5, 2021, the Alleged Debtor served a Notice of Default on Lessee and Weiss, advising that the failure to pay the required $7.5 million in rent under the Lease was a default thereunder and that Lessee was further required to deliver financial reporting and other information regarding the William Vale's commercial operations.  Answer ¶ 19; Diamond Decl. ¶ 19.  Weiss, through Lessee, ignored the Alleged Debtor's demand.  Answer ¶ 20; Diamond Decl. ¶ 20.

9.      On May 21, 2021, the Alleged Debtor served a Notice of Cancellation and Termination on Weiss and Lessee, explaining that Alleged Debtor was exercising its option to terminate the Lease.  Answer ¶ 19; Diamond Decl. ¶ 19.  Weiss failed to vacate the William Vale and instead continued operating the hotel while not paying any rent whatsoever whatsoever and while refusing court orders to deliver financial information and report on the physical state of the William Vale Hotel to the Alleged Debtor, as required under the Lease.  Answer ¶¶ 19–20; Diamond Decl. ¶¶ 19–20.

**The Alleged Debtor Sues Weiss for Breach and Termination of the Lease**

10.     Given the defaults under the Lease, the Alleged Debtor sued Lessee and Weiss in New York State Court on June 11, 2021, seeking money damages for unpaid rent, a declaratory judgment that the Lease was terminated, and an order directing Lessee/Weiss to immediately produce all books, records, and information regarding the physical condition and operation of the hotel and offices.  *Id*.

11.     On August 1, 2021, the day the second $7.5 million rent payment was due under the Lease, Weiss again failed to pay rent.  Answer ¶ 20; Diamond Decl. ¶ 20.  Accordingly, on December 6, 2021, the New York State Court ordered Lessee to make semiannual use and occupancy payments of $7.5 million, the same amount due under the Lease and on the same schedule as called for in the Lease.  Answer ¶ 21; Diamond Decl. ¶ 21.

12.     The New York State Court then, on January 13, 2022, ordered the Weiss-affiliated entities that he uses to manage the William Vale to produce documents and financial information regarding the operation of the William Vale.  Answer ¶ 23; Diamond Decl. ¶ 23.

**Weiss Fails to Pay Use and Occupancy, and His Entities Are Held in Contempt**

13.     Neither Lessee, Weiss, nor his affiliated entities have complied with any of those orders by the New York State Court, and were found in contempt of court on September 29, 2022. Answer ¶ 25; Diamond Decl. ¶ 25.  The New York State Court's contempt order required the Weiss-affiliated entities to produce the financial information by October 28, 2022.  They still have not done so.  *Id*.

14.     Compounding his disregard for the state court's orders, Weiss refused to remit the $7.5 million use and occupancy obligation on August 1, 2022.  Answer ¶ 26; Diamond Decl. ¶ 26. On November 4, 2022 the New York State Court ordered Weiss to either remit a $45 million bond

on his appeal of the use and occupancy order or pay the required $7.5 million use and occupancy obligation by November 14, 2022.

15.    Weiss had sought further delay in the state court litigation by essentially appealing every order entered against him or his companies and requesting a stay of enforcement of those orders pending those appeals.  However, on December 7, 2022 the Second Department of New York's Appellate Division denied all of those various stay requests, dismissed the Weiss-controlled operating companies' appeal of their contempt order, and required, as did the trial court, that Weiss post a $45 million bond in order to appeal the use and occupancy order.  *See Wythe Berry Fee Owner, LLC v. Wythe Berry, LLC*, Case No. 2021-09065, M286355 (N.Y. Sup. App. Div. Dec. 7, 2022); *Wythe Berry Fee Owner, LLC v. Wythe Berry, LLC*, 2022-00306, M286356 (N.Y. Sup. App. Div. Dec. 7, 2022); *Wythe Berry Fee Owner, LLC v. Wythe Berry, LLC*, 2021-09065, M286358 (N.Y. Sup. App. Div. Dec. 7, 2022).

16.    In sum, Weiss illegally deprived the Alleged Debtor of millions in rental income through his refusal to pay rent for nearly two years which, in turn, caused the Alleged Debtor to default on its obligations under the Note and Guaranty, directly resulting in this bankruptcy proceeding.  Meanwhile, Weiss has used, and continues to use, those ill-gotten gains to wage a legal campaign to wrest control of the business away from the Alleged Debtor, YGWV, All Year, and its creditors.  In fact, in his Motion Weiss states that he intends to sue the Alleged Debtor "at the appropriate time" for having the temerity to have sued him for overdue rent.  Motion ¶ 24.  It is in this context that Weiss now asks the Court to confer upon him special standing as the only party capable of "zealously defending" the Alleged Debtor.  Motion ¶ 23.

**Petitioning Creditors File an Involuntary Bankruptcy Petition**

17.     On October 6, 2022, Petitioning Creditors filed the Chapter 11 Involuntary Bankruptcy Petition initiating this case (the *"Involuntary Petition"*).  [ECF No. 1].  Pursuant to the Guaranty, which is attached to the Statement of Creditors filed together with the Involuntary Petition, the Petitioning Creditors each have a claim for "the prompt payment and performance of all debts, obligations, and liabilities of every kind and character of [All Year]."  [ECF No. 2-2].  Statement of Creditors ¶ 2.  The failure to pay rent constituted an Event of Default under the Deed of Trust.  Answer ¶ 13; Diamond Decl. ¶ 13.

18.     Following the occurrence of certain Events of Default under the Deed of Trust, on or about February 18, 2022, All Year's obligations were accelerated and became immediately due and payable.  The Trustee served notice of the default and acceleration on All Year and the Alleged Debtor on the same day.  Statement of Creditors ¶ 2; Ex. D.  On September 21, 2022, the Trustee delivered a Demand for Payment under the Deed of Trust dated February 19, 2017, and Guaranty dated February 28, 2018.  Statement of Creditors ¶ 3; Ex. E.  The obligations under the Guaranty are unsecured and total no less than NIS 667,758,000, the equivalent of $188,739,000 in U.S. dollars as of October 6, 2022.  Statement of Creditors ¶ 3.

19.     Accordingly, pursuant to the Guaranty, Mishmeret and the Series C Bondholders have unsecured claims against the Alleged Debtor for the entirety of the amount due on the Series C Bonds.  The claim of each Series C Bondholder under the Guaranty is equal to its pro rata share of the total claims of all Series C Bondholders under the Guaranty.  Statement of Creditors ¶ 3; Schedule A.  Thus, each Series C Bondholder that is a Petitioning Creditor holds an unsecured claim against the Alleged Debtor under the Guaranty that exceeds the minimum amount of $18,600 required under § 303(b)(1) of the Bankruptcy Code.

20.     The Alleged Debtor investigated the legal bases for the Involuntary Petition and determined that it was "immaterial" whether each of the Petitioning Creditors held a separate claim under the Guaranty or if only the Trustee held the claim, because in either case there would be no basis to contest the Involuntary Petition.[7]  Answer ¶ 31, Exs. B–C; Diamond Decl. ¶¶ 29–31.

21.     Predictably, Weiss sought to leverage his position as 50% owner of Member LLC to instruct the Alleged Debtor to contest the Involuntary Petition, but the Alleged Debtor determined Weiss was "motivated by self-interest and stems from Weiss's desire to obtain sole control of the William Vale for himself, not from any intention to act in the best interests of [the Alleged Debtor]."  Answer ¶ 33; *see also* Diamond Decl. ¶¶ 32–36.   Nevertheless, due to restrictions in the Operating Agreement for Member LLC, the Alleged Debtor determined that it could not consent to the Involuntary Petition.   Answer ¶¶ 32–33, Diamond Decl. ¶ 34. Accordingly, the Alleged Debtor concluded that "there is no legitimate basis to object to the Involuntary Petition.  But because of Weiss's objection and its contractual obligations under the LLC Agreement, [the Alleged Debtor] does not consent nor object to, the Involuntary Petition." Answer ¶ 38; *see also* Diamond Decl. ¶ 33.

## ARGUMENT

22.     As a threshold matter, Weiss has no standing to bring this Motion as § 303 of the Bankruptcy Code, which describes who may object to an involuntary petition, plainly excludes him.  Even if the Court were to entertain the Motion, his legal arguments are deeply flawed,

---

[7]     As the Debtor pointed out in its Answer, one of two things is true, either: (1) the Trustee holds the entire claim under the Guaranty above the $18,600 threshold amount and the Debtor would therefore have fewer than twelve unsecured creditors, or (2) the Series C Bondholders share in that claim on a pro rata basis, such that in either event the Involuntary Petition is permitted under § 303(b).

deficiencies that are compounded by the fact that Weiss has clearly brought this Motion in yet another effort to disrupt the Alleged Debtor's affairs.

23.     First, the Petitioning Creditors' claims, which the Alleged Debtor itself does not dispute, are well in excess of the statutory threshold.  Further, the notion that the Court should abstain under § 305 or that "cause" exists under § 1112(b) to dismiss the Involuntary Petition is legally misplaced and belied by the facts.

24.     Moreover, as recognized by the Alleged Debtor, a chapter 11 proceeding is the most efficient way to address the Alleged Debtor's myriad financial and commercial issues such as its outstanding $166 million mortgage/promissory note obligation, its $188 million in bond obligations owing to the Series C Bondholders, the diversion of its assets by Weiss, and the mounting liens on its primary asset, the William Vale (which appear to be caused by Weiss's misconduct).   Answer ¶¶ 2–3, 27, 40.[8]   As the Alleged Debtor summarized in its Answer, "reorganization under Chapter 11 is the best way to break the gridlock imposed by Weiss for the benefit of all other stakeholders."  Answer ¶ 46.  Accordingly, the Court should deny Weiss's Motion in its entirety and enter an Order for Relief permitting the Alleged Debtor and its creditors, to, long last, move forward.

I.     **WEISS DOES NOT HAVE STANDING TO RAISE AN OBJECTION UNDER § 303**

25.     Involuntary chapter 11 petitions are governed by § 303 of the Bankruptcy Code. 11 U.S.C. § 303; *In re Automated Fin. Corp.*, No. 1:08-BK-14339-MT, 2011 WL 10502417, at *2 (Bankr. C.D. Cal. Jan. 25, 2011) ("Section 303 governs involuntary cases"); *Matter of Seatrain Lines, Inc.*, 21 B.R. 194, 195 (Bankr. S.D.N.Y. 1982) (same).  Section 303 is jurisdictional in

---

[8]     A review of the King's County Recorder's Office reflects multiple recent mechanic's lien filings against the William Vale, of which this Court may take judicial notice.

nature and is therefore the gating statute from which the Court's powers to administer the involuntary bankruptcy proceeding flow. *See Key Mech. Inc. v. BDC 56 LLC (In re BDC 56 LLC)*, 330 F.3d 111, 118 (2d Cir. 2003); *In re MarketXT Holdings Corp.*, 347 B.R. 156, 161 (Bankr. S.D.N.Y. 2006). Given that objections thereunder are subject to strict time limitations, § 303 is the primary lens through which objections to an involuntary petition are examined. *In re MarketXT Holdings Corp.*, 347 B.R. at 161.

26.    Under the plain language of § 303, the Alleged Debtor is the only entity permitted to contest the Involuntary Petition.  *See* 11 U.S.C. § 303(d).  Federal Rule of Bankruptcy Procedure 1011(a) reenforces this point: "Who May Contest Petition: the debtor named in an involuntary petition may contest the petition."  Weiss does not dispute this, conceding that § 303 provides "no express authority" for anyone but the Alleged Debtor to challenge the Involuntary Petition.  Motion ¶ 17.  As discussed below, Weiss glosses over this statutory inconvenience by describing himself as an "equity holder" entitled to an exception to § 303, but it is undisputed that Weiss is not an "equity holder" of the Alleged Debtor.

27.    There is one equity holder of the Alleged Debtor—Member LLC.  Weiss holds equity in a company that holds equity in the Alleged Debtor, and to Petitioning Creditors' knowledge no bankruptcy court in any District, at any time, **has ever** held that such a party has standing to challenge an involuntary petition under § 303.  Accordingly, Weiss's effort to contest the Involuntary Petition should fail on the basis of the plain language of § 303 and complete dearth of authority whatsoever supporting his standing argument.  *See In re Jr. Food Mart of Arkansas, Inc.*, 234 B.R. 420, 421 (Bankr. E.D. Ark. 1999) ("[O]nly the debtor may contest the involuntary petition."); *In re Taylor & Assocs., L.P.*, 191 B.R. 374, 378 (Bankr. E.D. Tenn. 1996) (same).

II.    THE COURT SHOULD NOT GRANT WEISS SPECIAL STANDING UNDER § 303

28.    Although having never permitted "shareholders of shareholders" standing to contest an involuntary proceeding under § 303, in rare circumstances bankruptcy courts have permitted certain **direct shareholders of debtors** to do so when: (1) the petition was brought by a fellow shareholder seeking advantage over the other; (2) when the debtor was unable to contest the petition; and/or (3) when the debtor was "conflicted" from acting in its own interests. *See, e.g.*, *In re Westerleigh Dev. Corp.*, 141 B.R. 38, 39 (Bankr. S.D.N.Y. 1992); *In re Peak Hotels & Resorts Grp. Ltd.*, No. 17-12811 (SCC), 2019 WL 1434316 (S.D.N.Y. Mar. 31, 2019); *In re Best Home Performance of CT, LLC*, No. 19-20688 (JJT) 2019 Bankr. LEXIS 3682 (Dec. 2, 2019 Bankr. D. Conn.).  Despite the uncontested fact that Weiss is not a shareholder of the Alleged Debtor, Weiss nevertheless argues that his § 303 challenge should be permitted on the basis of those decisions.  As set forth below, Weiss's reliance on that authority is entirely misplaced.

A.    **This Is Not a Shareholder Dispute Playing Out in State Court**

29.    When an involuntary petition is filed by a shareholder of the alleged debtor to gain an advantage in a state court dispute with a fellow shareholder, and that petitioning creditor leverages its control over the alleged debtor to prevent it from contesting the petition, this Court has, on one occasion, permitted another shareholder to contest the petition under § 303.  *In re Westerleigh Dev. Corp.*, 141 B.R. 38, 40 (Bankr. S.D.N.Y. 1992).

30.    In *Westerleigh*, the alleged debtor was defunct due to an internal dispute between its two shareholders. *Id.* at 39.  While each was suing the other for control over the alleged debtor's assets, one of the shareholders, using his wholly-owned corporation as a petitioning creditor, filed an involuntary chapter 11 against the alleged debtor. *Id.* at 40.  The non-petitioning shareholder sought standing to contest the involuntary petition under § 303, arguing that the petitioning shareholder was abusing the bankruptcy code by leveraging the fact that the alleged debtor could

not contest the petition without the petitioning shareholder's cooperation. *Id.* at 39–41. On those

facts, the court granted the non-petitioning shareholder standing under § 303. *Id.* at 41. The cases

interpreting *Westerleigh* have limited its reach to circumstances in which the same "shareholder

dispute" is present. *See, e.g., In re RCM Glob. Long Term Cap. Appreciation Fund, Ltd.*, 200 B.R.

514, 525 (Bankr. S.D.N.Y. 1996) ("Here [unlike in *Westerleigh*], no such dispute or infighting led

to the Debtor's current financial distress."); *In re Jr. Food Mart of Arkansas, Inc.*, 241 B.R. 423,

426 (Bankr. E.D. Ark. 1999) (citing *Westerleigh*).

31.     *Westerleigh* is plainly inapplicable here. First and foremost, this is not a one-on-one

shareholder dispute. None of the four Petitioning Creditors are shareholders of the Alleged Debtor.

Unlike in *Westerleigh*, the Petitioning Creditors have no relationship whatsoever to the Alleged

Debtor, other than as unsecured creditors, and they are not using bankruptcy to gain an advantage

in a state court lawsuit because no such lawsuit exists.

### B.     The Alleged Debtor Was Able to Contest the Petition If It Felt It Had Grounds

32.     Here, the Alleged Debtor has the power to contest the Involuntary Petition, which

was not the case in other circumstances in which courts granted standing to shareholders under

§ 303. *See, e.g., In re Peak Hotels & Resorts Grp. Ltd.*, No. 17-12811 (SCC), 2019 WL 1434316,

at *11 (S.D.N.Y. Mar. 31, 2019) (permitting "a shareholder to answer an involuntary petition and

stand in the shoes of a debtor that could not respond for itself.").

33.     To be sure, Weiss has forced the Alleged Debtor into "an untenable position." *See*

Answer at p. 1. But that does not mean the Alleged Debtor is *unable* to contest the Involuntary

Petition. Weiss himself urged the Alleged Debtor to contest the Involuntary Petition; an implicit

admission that the Alleged Debtor has the power to do so. Motion ¶ 21; Bassett Decl. Ex. B. The

fact that the Alleged Debtor, after performing diligence, chose not to contest the Involuntary

Petition once it determined both that (1) a chapter 11 proceeding would be in the best interests of Alleged Debtor, and (2) under any scenario it had no argument to object to the Involuntary Petition, does not place this case outside the normal operation of § 303 and grant extraordinary standing to Weiss to challenge the Involuntary Petition.

34.    As the Alleged Debtor concluded, a chapter 11 proceeding is in the best interests of the Alleged Debtor and will maximize value for its creditors.  The proceedings will consolidate and more efficiently administer the many disputes surrounding the Alleged Debtor, All Year, Weiss, and the William Vale, and offer the most efficient path to administer the various lawsuits involving Weiss (both existing and in the future), resolve the defaults under the mortgage/loan, resolve the unsecured claims of the Series C Bondholders, and provide a forum for resolution of any mechanic's lien or similar *in rem* claims involving the Alleged Debtor's real estate assets. This will result in the best possible recovery for creditors and a path forward for the Alleged Debtor, goals that Weiss has obstructed for over a year.

### C.    The Alleged Debtor Is Not "Conflicted"

35.    Weiss argues that the Alleged Debtor is somehow "conflicted" such that it is "incapable of, or unwilling to, defend [the Alleged Debtor] from being forced into an involuntary chapter 11 case."  Motion ¶¶ 20–22.  In support of his "conflicted" theory of standing under § 303, Weiss cites a single case: *In re Best Home Performance of CT, LLC*, Case No. 19-20688 (JJT) 2019 Bankr. LEXIS 3682 (Dec. 2, 2019 Bankr. D. Conn.).  That case, like *Westerleigh*, is wholly inapplicable here.  Just as in *Westerleigh*, in *Best Home Performance* the petitioning creditor's controlling shareholder was also a shareholder of the alleged debtor, and was engaged in "a vicious dispute among family members," each of whom had ownership interests in both the alleged debtor and the petitioning creditor.  *Id*. at *2.  The controlling shareholder of the petitioning creditor chose

22-11340-mg   Doc 42   Filed 12/16/22   Entered 12/16/22 21:12:36   Main Document
Pg 19 of 34

to file an involuntary petition rather than sue in state court. *Id*. at *3–5. That controlling shareholder then used her position to prevent the alleged debtor from contesting the petition. *Id*. at *11. The court granted a non-controlling shareholder of the alleged debtor standing to challenge the petition under § 303(d) because "the debtor would otherwise be rendered defenseless and its control party is utterly conflicted." *Id*. at *17. Stressing the limited applicability of its ruling, the court in *Best Home* cautioned against applying it to cases that did not concern a shareholder dispute: "[i]n the context of an involuntary bankruptcy proceeding where the petitioning creditor and the debtor are not owned by the same person, **there is no real issue with respect to who can contest the petition under 11 U.S.C. § 303(d) or what can be advanced as a bona fide defense**." *Id*. at *20 (emphasis added). In other words, the court recognized how parties like Weiss might try to warp the analysis of *Best Home* and specifically cautioned against it.

36.     Clearly none of the circumstances in *Best Home* are present here. The Petitioning Creditors cannot force the Alleged Debtor not to contest the Involuntary Petition. Rather, the Petitioning Creditors have presented uncontested facts and posited persuasive legal arguments in support of the Involuntary Petition which the Alleged Debtor has now acknowledged. *See* Answer ¶¶ 30–31; Ex. C. That is not illegal, improper, or even particularly unusual. Weiss nonetheless avers that because All Year's obligations will be reduced should the Petitioning Creditors collect on the Guaranty from the Alleged Debtor, it means that "Member LLC [is] hopelessly conflicted such that it has no incentive to cause [the Alleged Debtor] to challenge the Petition." Motion ¶ 21. That argument defies common sense.

37.     Shareholders like All Year are always incentivized to maximize the value of their assets, including the Alleged Debtor and its interests in the William Vale. That incentive is not altered if All Year and the Alleged Debtor share an obligation to the Series C Bondholders. Rather,

- 15 -

All Year's and the Alleged Debtor's interests *are aligned* in maximizing the value of the assets available to satisfy that obligation, to the extent any exist, dividend any excess value to equity holders (including Weiss and All Year).  All Year would gain nothing by forcing the Alleged Debtor into an action likely to harm the value of the Alleged Debtor.  In fact, the opposite is true. Were All Year to sabotage the value of the Alleged Debtor or the William Vale, All Year and its creditors would be left holding the proverbial bag on its shared obligation under the Guaranty and the Series C Bonds.

38.     In reality, the conflicted party here is *Weiss*, not All Year.  Weiss is the only party who faces a worse position in bankruptcy proceedings, because those proceedings would bring to an end his illicit campaign to divert the Alleged Debtor's rent income and obfuscate and obstruct his way to a rent-free luxury hospitality business at the expense of the Alleged Debtor and its creditors.

39.     Moreover, if true, Weiss's "conflicted co-obligor" theory would mean that parent companies would be conflicted out of control over their subsidiaries in every bankruptcy case in which a parent and a subsidiary were co-obligors—a structure that is quite commonplace.  That absurd result is sufficient on its own to dismiss Weiss's argument, and tellingly Weiss cites no authority for this proposition.  *See* Motion ¶ 21–23.  In any event, Weiss's theory does not remotely approach the circumstances in either *Best Home, Westerleigh*, or other cases in which courts granted shareholders an exception to the normal operation of § 303.

### D.     Rule 2018(a) Cannot Defeat the Clear Application of § 303

40.     Federal Rule of Civil Procedure 2018(a), made applicable through Bankruptcy Rule 7024, provides a mechanism by which parties may intervene in proceedings.  Acknowledging the weight of authority against his § 303 standing, Weiss seeks to alternatively proffer these

arguments as an intervenor, but that too is impermissible and, if allowed, would be an exception that swallowed a rule. As discussed above, both the Second Circuit and this Court have explained that it is § 303, the jurisdictional statute for the commencement of an involuntary bankruptcy proceeding, that governs who may challenge a petition. *See In re BDC 56 LLC*, 330 F.3d at 118; *In re MarketXT Holdings Corp*., 347 B.R. at 161). As such, parties are not permitted to use Rule 2018 as an end-run around § 303. *See In re Taylor & Assocs*., *L.P*., 191 B.R. 374, 381 (Bankr. E.D. Tenn. 1996) ("The court finds no reason to allow [a potential creditor] to circumvent the restrictions of § 303 and Rule 1011 through the use of Rule 2018(a)").

41.     Moreover, Weiss provides no reason to treat him as a "party in interest" entitled to intervene under Rule 2018, and his status as a shareholder of a shareholder does not resolve the question. "Party in interest" includes the debtor, the trustee, creditor committees, an equity security holders committee, a creditor, an equity security holder, and any indenture trustee. 11 U.S.C. § 1109(b); *In re Teligent, Inc*., 640 F.3d 53, 60 (2d Cir. 2011). While Weiss may have an indirect financial stake in these proceedings, whether someone is a party in interest must be read against the purposes of Chapter 11, which is aimed at "preserving going concerns and maximizing property available to satisfy creditors." *Bank of Am*. *Nat'l Tr*. & *Sav*. *Ass'n v*. *203 N*. *LaSalle St*. *P'ship,* 526 U.S. 434, 453 (1999); *see also In re Teligent, Inc*., 640 F.3d at 61. Weiss, having sought at every turn to financially cripple the Alleged Debtor so that he can wrest control of it from his business partner, does not mitigate in favor of his participation here.

### III.     EVEN IF THE COURT GRANTED WEISS § 303 STANDING, HIS ARGUMENTS FAIL

42.     Even if the Court were persuaded to grant Weiss the standing he seeks to challenge the Involuntary Petition under § 303, the Petitioning Creditors have stated a *prima facie* case for the filing of an involuntary bankruptcy under § 303 and Federal Rule of Civil Procedure 12(b)(6).

This is true regardless of whether the Trustee is the sole holder of the claim under the Guaranty or if the Petitioning Creditors share that claim on a *pro rata* basis.  Section 303(b) of the Bankruptcy Code provides, in pertinent part:

> An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—
>
> **(1)** by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount, or an indenture trustee representing such a holder, if such noncontingent, undisputed claims aggregate at least $18,600 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;
>
> **(2)** if there are fewer than 12 such holders, excluding any employee or insider of such person and any transferee of a transfer that is voidable under section 544, 545, 547, 548, 549, or 724(a) of this title, by one or more of such holders that hold in the aggregate at least $18,600 of such claims[.]

43.     When three or more creditors seek to file an involuntary bankruptcy proceeding, they must satisfy a two-prong test under § 303(b): (1) the claim must not be subject to a bona fide dispute either as to liability or amount, and (2) the claim must be more than $18,600 after taking into account the value of any lien on property of the debtor.  *In re TPG Troy, LLC*, 492 B.R. 150, 159 (Bankr. S.D.N.Y. 2013).  A single creditor may also initiate an involuntary bankruptcy proceeding under § 303 if the alleged debtor has fewer than twelve holders of such claims as described in § 303(b)(1).  11 U.S.C. § 303(b)(2).

44.     In determining whether there is a "bona fide dispute" under § 303(b)(1), the court "must determine whether there is an objective basis for either a factual or a legal dispute as to the validity of the debt."  *Key Mech. Inc. v. BDC 56 LLC (In re BDC 56 LLC),* 330 F.3d 111, 117 (2d Cir. 2003); *see also In re TPG Troy, LLC*, 492 B.R. at 159.  Once a *prima facie* case for the filing

of an involuntary bankruptcy has been established, the burden shifts to the putative debtor to demonstrate the existence of a bona fide dispute.  *In re TPG Troy, LLC*, 492 B.R. at 159.

45.     Weiss does not dispute the legal validity or enforceability of the Guaranty.  Rather, he makes two narrow arguments: (1) he disputes that the claim under the Guaranty belongs to the Series C Bondholders and (2) he disputes the amount owed under the Guaranty, although he offers nothing other than his "belief" that it is wrong.  Motion ¶ 42.  Both of these arguments fail.

### A.     Whether the Trustee Holds the Claim under the Guaranty or the Bondholders Hold Such a Claim, the Involuntary Petition Meets the Requirements of § 303(b)

46.     It is fundamental that the Series C Bondholders have the right to assert claims under the Guaranty as the holders of the Series C Bonds, and neither the Guaranty, Deed of Trust, nor the Trustee's appointment and enforcement authority abrogate those rights.  *See, e.g., In re Federate Grp., Inc*., 107 F.3d 730 (9th Cir. 1997) (bondholders holding right to payment under indenture were appropriate involuntary petitioning creditors); *see also In re Sponsor Realty Corp*., 48 F. Supp. 735, 738 (S.D.N.Y. 1943) (same).  The contractual language of the Alleged Debtor's agreements confirms as much.  The Guaranty promises "prompt payment and performance of all debts, obligations, and liabilities [of All Year] … **under the Bond Documents** … and any and all sums of money … under the provisions of the Deed of Trust."  Guaranty § 2 (emphasis added).  To argue that the Guaranty is solely in favor of the Trustee and not for the Bondholders ignores the entire point of appointing a trustee in the first place.  Mishmeret did not bargain for the Guaranty to protect itself.  Rather, the Guaranty was delivered **precisely** to secure the Alleged Debtor's obligations to the Series C Bondholders: "[The Alleged Debtor] shall deposit a guarantee with the Trustee pursuant to which the [The Alleged Debtor] has an irrevocable commitment to uphold the [All Year's] obligations **towards the Debenture holders (Series C).**"  Deed of Trust

§ 6.2.1.5 (emphasis added).[9]  This is partly why the Trustee, the Series C Bondholders, and the

Alleged Debtor are all before the Court in agreement that there is no viable objection under §

303(b) to the Involuntary Petition.[10]

47.     Even so, the Court should not lose sight of the fact that this debate is academic.

The Alleged Debtor has (correctly) concluded that the question of whether the claim under the

Guaranty belongs to one creditor or three or more creditors is "immaterial."  The Alleged Debtor

has stated unequivocally, and through sworn declaration, that it "has fewer than 12 creditors" in

the event only the Trustee is able to assert the claims under the Guaranty and the Bondholders do

not have separate claims.  Answer ¶ 31; Diamond Decl. ¶ 31.  Accordingly, even if Weiss is correct

and the claim under the Guaranty belongs only to the Trustee, the Involuntary Petition nonetheless

alleges with particularity and documentary evidence an unsecured claim held by the Trustee in

excess of $18,600 for an alleged debtor with fewer than twelve creditors, which satisfies the

requirements of § 303(b)(2).  As the Debtor itself explained, under either scenario, whether the

obligation belongs solely to the Trustee or pro rata among the Series C Bondholders, the

Involuntary Petition is permitted under § 303(b).  Answer ¶ 31; Diamond Decl. ¶ 31.

**B.     Weiss's Nebulous "Belief" Is Not a Bona Fide Dispute**

48.     As to the presence of a "bona fide dispute" on the Guaranty claim, the Alleged

Debtor and Weiss again disagree.  The Alleged Debtor admits that "[c]laimants against [the

---

[9]     The Supreme Court has explained that Congress intended "to adopt the broadest available definition of 'claim'" under § 101(5), and that § 101(5)'s use of the language "right to payment" "means nothing more nor less than an enforceable obligation."  *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991); *see also In re Johns-Manville Corp.*, 552 B.R. 221, 231 (Bankr. S.D.N.Y. 2016).

[10]    As explained in its Answer, the Debtor is contractually prohibited from consenting to the Involuntary Petition, but does not object.

Alleged Debtor] under the Guaranty hold claims for the full amount owed by All Year to the Series C Bondholders which, as of All Year's filing, was equal to NIS 641,606,871" (further pointing out that All Year itself acknowledged this same unsecured claim in the exact same amount in its own voluntary petition). *See* Answer ¶¶ 22, 31, 43.

49.     Weiss alleges the amounts due and owing under the Guaranty are subject to a bona fide dispute because he "does not agree" with them and "believes such claims" are subject to dispute.  Motion ¶ 42.  He offers nothing more in support of this argument, which is not supported by a declaration.  Instead, he insists the Petitioning Creditors must first provide the "information as to how they performed [the calculations]" and then he will be able to point out the errors.  *Id*. This is an obvious attempt to reverse-engineer an objection and completely inverts the burden of demonstrating such a dispute, which, given the Petitioning Creditors' *prima facie* case confirmed by the Alleged Debtor and All Year, is **Weiss's burden.**  *In re TPG Troy, LLC*, 492 B.R. at 159.

50.     But even putting aside the fact that both All Year and the Alleged Debtor have confirmed the amount due and owing under the Guaranty (Answer ¶¶ 22, 31, 43), potential disagreements over minute calculations are not what is meant by a "bona fide dispute" under the Bankruptcy Code.  Rather, a "bona fide" dispute exists where "there is an objective basis for either a factual or a legal dispute as to the validity of the debt."  *In re Euro-Am. Lodging Corp.*, 357 B.R. 700, 714 (Bankr. S.D.N.Y. 2007).  The Second Circuit has not resolved the question of whether a dispute of the small portion of the amount that is otherwise agreed renders a claim subject to a "bona fide" dispute for the purposes of § 303.  *In re Manolo Blahnik USA, Ltd*., 619 B.R. 81, 92 (Bankr. S.D.N.Y. 2020) (assembling cases and examining views across circuits).  But just as in *Manolo Blahnik*, it is unnecessary for the Court to reach this question here because the amount of

the Guaranty claim has been: (1) confirmed by the Alleged Debtor itself; (2) confirmed by All Year in its public filings; and (3) is a calculable sum derived from simple arithmetic.

51.    Pursuant to public filings by All Year,[11] the Series C Bonds were issued in the original principal amount of NIS 617,970,000 on February 19, 2017, and were issued bearing a regular interest rate of 3.95% per annum. *See* Declaration of David T.B. Audley (*"Audley Decl."*) Ex. 1.

52.    On September 6, 2020 the interest rate increased by .5% to 4.45%, and increased again on November 30, 2020 by .5% to 4.95%. Audley Decl. Ex. 1.

53.    Additionally, as of February 17, 2021, the day the amounts due and owing under the Series C Bonds were accelerated, a default interest rate of 3% was imposed on the then-outstanding principal and interest accrued, Audley Decl. Ex. 1.

54.    Taking the principal amount of the Series C Bonds outstanding as of August 31, 2020, which was NIS 579,347,000, and applying the applicable rates as of those dates (*i.e.*, 3.95% from August 31, 2020 through September 5, 2020, 4.45% from September 6, 2020 through November 29, 2020, 4.95% from November 30, 2020 through February 16, 2021 and 7.95% from February 17, 2021 through October 6, 2022) yields NIS 667,758,000, which, as of October 6, 2022 was the equivalent of $188,739,000—exactly what is alleged in the Involuntary Petition. *Compare* Audley Decl. Ex. 1 *with* Statement of Creditors ¶ 3.

---

[11]    All Year filed reports on the MAYA system, a public website operated by the Tel Aviv Stock Exchange ("TASE") to display the reports of all companies that have securities trading on the TASE.

55.     Weiss cannot overcome rote math by blithely proclaiming "I do not believe these amounts are correct" because such a tactic could never satisfy his burden to demonstrate "either a factual or legal dispute as to to the validity of the debt." *In re TPG Troy, LLC*, 492 B.R. at 159.

## IV.    THE INVOLUNTARY PETITION SHOULD NOT BE DISMISSED UNDER § 1112(B)

56.     Apart from his unavailing arguments under § 303, Weiss throws the kitchen sink at the Court with § 1112(b) and § 305, neither of which is a primary statute governing challenges to the filing of involuntary petitions.  Nevertheless, his arguments on those grounds are equally flawed.

### A.    A § 1112(b) Challenge Is Premature and No Cause Exists to Dismiss in Any Event

57.     A § 1112(b) motion seeks dismissal of a bankruptcy proceeding "for cause." *In re MarketXT Holdings Corp.*, 347 B.R. 156, 160 n.4 (Bankr. S.D.N.Y. 2006).  As a logical matter, prior to an order for relief on an involuntary petition, there is no proceeding for the court to dismiss, and thus § 1112(b) motions are only appropriate "after an order for relief has been entered." *Id*. Admitting (in a footnote) that this is the state of the law, Weiss urges the Court to nonetheless dispense with these mere "procedural niceties," but he provides no authority to support that idea. *See* Motion ¶ 131 n.16.  Accordingly, Weiss's § 1112(b) motion to dismiss is premature.

58.     But even assuming a § 1112(b) motion was timely at this point in the proceedings, Weiss would have the burden of demonstrating that cause for dismissal exists, *i.e.*, "is in the best interests of both the creditors and the estate." *In re BH S & B Holdings, LLC*, 439 B.R. 342, 346 (Bankr. S.D.N.Y. 2010).  Section 1112(b)(4) contains examples of events that may constitute cause, all of which are examples of events that substantially harm *creditors* and not events that would prevent a 50% shareholder of a sole member from seizing control of the alleged debtor in order to enrich himself at the expense of those creditors.

59.     In considering dismissal for cause under § 1112(b), this Court has looked to a variety of factors memorialized in *In re Murray*, 543 B.R. 484 (Bankr. S.D.N.Y. 2016) *aff'd* 900 F.3d 53 (2d Cir. 2018).  Weiss pays lip services to these factors but misapplies them, substituting the required focus on the "best interest of the creditors and the estate" for his own interests.  As an initial matter, Weiss admits that the Involuntary Petition was not brought to enforce a judgment and is not "another stop in a long-running dispute among the parties" (the first two *Murray* factors).  Motion ¶ 30.  As for the remaining *Murray* factors, each of them mitigates against dismissal.

60.     As for factors three and four, which examine the number of creditors and accompanying need for *pari passu* distribution, those also mitigate in favor of bankruptcy.  First, there are multiple creditors in the form of the Series C Bondholders, who are each entitled to their *pro rata* share of the Guaranty obligation, which requires *pari passu* distribution.  Second, Weiss himself purports to be a creditor, which would place him in conflict with other creditors and would presumably require the bankruptcy court's involvement to sort through competing claims, to the extent Weiss's purported claims are valid.  Finally, Weiss writes that the Alleged Debtor has "a number of other creditors," though he fails to identify any of them and mistakenly characterizes mechanic's lien claimants as creditors of the Alleged Debtor.  Motion ¶ 30.

61.     Factors five, six, and seven—which ask whether the petitioning creditors could obtain avoidance of fraudulent transfers in other forums, whether the petitioning creditors have adequate remedies under non-bankruptcy law, and whether the petitioning creditors are using the bankruptcy process to secure a benefit they could not otherwise obtain—are focused on whether the facts reveal an "improper exploitation of the bankruptcy system."  *In re Murray*, 543 B.R. 484 (Bankr. S.D.N.Y. 2016) *aff'd* 900 F.3d 53 (2d Cir. 2018); *see also In re Newbury Operating LLC*, No. 20-12976-JLG, 2021 WL 1157977, at *8 (Bankr. S.D.N.Y. Mar. 25, 2021).  Here, the

Involuntary Petition was filed because the Petitioning Creditors determined that the Alleged Debtor was mired in defaults and disputes that, but for bankruptcy proceedings, would be prosecuted and/or defended in multiple forums, at both the trial and appellate levels. Consolidation of these disputes under a bankruptcy proceeding is thus clearly in the best interests of the Alleged Debtor and its creditors. If Weiss's request were granted and the Court dismissed the Involuntary Petition, it would very likely trigger a mortgage foreclosure action in state court, which would force the Alleged Debtor to defend such action while separately prosecuting its lawsuits against Weiss, likely in a different forum. In addition, the Alleged Debtor's obligations under the Guaranty would still need to be resolved. In fact, it now appears that, due to Weiss's failure to pay vendors he engaged as Lessee of the William Vale, and for which payment he is solely liable, he is causing mechanic's liens to be filed against the property, which further endanger the value of the Alleged Debtor's primary asset.[12]   Finally, it seems likely, given his conduct, that the Alleged Debtor would prosecute claims against Weiss and having those claims consolidated in the bankruptcy court would further benefit the judicial and economic advantages of a chapter 11 proceeding. There is simply no way to characterize that soup of lawsuits, legal issues, courts, and schedules as being more efficient than a centrally administered chapter 11 proceeding.

62.     The only person who would benefit from dismissing the Involuntary Petition is Weiss, who would benefit from that chaos and be further empowered to continue sabotaging the

---

[12]   Mechanic's lien claims on the William Vale are not claims against the Debtor, but rather are *in rem* actions that nonetheless may affect the value of the Debtor's assets. Therefore, mechanic's lien claimants are not "creditors" of the Debtor, but they are nonetheless a factor to consider as the Court examines what is in the best interests of the Debtor and its creditors.

Alleged Debtor's business and squatting on its property while pocketing the revenue and refusing to pay rent.  As the Alleged Debtor explained:

> [R]eorganization under chapter 11 is the best way to break the gridlock imposed by Weiss for the benefit of all other stakeholders. More than just allowing [the Alleged Debtor] to reorganize its debts, a chapter 11 proceeding would provide [the Alleged Debtor] with powerful tools to maximize the value of its estate via the rights entrusted to a debtor in possession, including the right to seek discovery of the William Vale Hotel's books and records.

Answer ¶ 46.

63.    The remaining two *Murray* factors ask whether assets would be lost or dissipated if the bankruptcy did not continue and whether the debtor desires or needs a bankruptcy discharge. Again, each factor favors bankruptcy proceedings.  Neither the Petitioning Creditors nor the Alleged Debtor has any insight whatsoever into the the physical state or financial operations of the William Vale because Weiss has steadfastly refused to provide any access or disclose a single page of financial information even in the face of a contempt finding.  It is therefore unclear whether Weiss is taking actions that will reduce the value of the Alleged Debtor's most important asset. At this moment, whatever revenue generated from the William Vale is very likely being converted into payments to Weiss's attorneys.  Given that the William Vale is the primary and essentially only revenue-producing asset for the Alleged Debtor, it stands to reason that Weiss is dissipating revenues from the hotel as he proceeds with his legal campaign to seize control of the hotel and offices while defending against the Alleged Debtor's efforts to put an end to his squatting on the property.  While it is impossible to say for certain where those revenues are being directed, that uncertainty has been purposefully engineered by Weiss, as he is operating without the oversight and reporting a bankruptcy proceeding would provide.  Finally, the Alleged Debtor recognizes its need to reorganize and restructure its debt in addition to the tools provided to a debtor in possession

in a chapter 11 proceeding in order to deal with Weiss and his misconduct.  Answer ¶ 46.  For all
these reasons, and even assuming that Weiss has standing to raise the issue, dismissal under
§ 1112(b) is imprudent and uncalled for in this case.

      **B.**      **The Court Should Not Abstain under § 305**

      64.      As with dismissal under § 1112(b), a Court examining a challenge under § 305 asks
"whether both the debtor and the creditors would be better served by [bankruptcy proceedings]."
*In re Schur Mgmt. Co., Ltd.*, 323 B.R. 123, 129 (Bankr. S.D.N.Y. 2005).  For all the same reasons
as explained above regarding dismissal under § 1112(b), dismissing the Involuntary Petition would
leave every party except Weiss in a worse and less certain position.

      65.      Analysis of a request that the Court abstain under § 305 is made on a case-by-case
basis and broadly considers seven factors: (1) the economy and efficiency of administration;
(2) whether another forum is available to protect the interests of both parties or there is already a
pending proceeding in state court; (3) whether federal proceedings are necessary to reach a just
and equitable solution; (4) whether there is an alternative means of achieving an equitable
distribution of assets; (5) whether the debtor and the creditors are able to work out a less expensive
out-of-court arrangement which better serves all interests in the case; (6) whether a non-federal
insolvency has proceeded so far in those proceedings that it would be costly and time consuming
to start afresh with the federal bankruptcy process; and (7) the purpose for which bankruptcy
jurisdiction has been sought.  *In re Monitor Single Lift I, Ltd.*, 381 B.R. 455, 464 (Bankr. S.D.N.Y.
2008).  Weiss's Motion ignores the majority of these factors, but each of them favors bankruptcy.
Motion ¶¶ 33–35.

      66.      First, and as explained above, the Petitioning Creditors and the Alleged Debtor
agree that bankruptcy proceedings are the most efficient and economic method of "break[ing] the

gridlock imposed by Weiss." Answer ¶ 46. Not only that, but the proceedings present the best route to deal with the many other issues surrounding the Alleged Debtor's financial and commercial status, including the mortgage on the William Vale, any mechanic's liens that may affect the value of that asset, and the amounts owed under the Alleged Debtor's guaranty of the Series C Bonds.

67.    Second, other forums have proven ineffective at resolving Weiss's misconduct.

68.    Third, and related to the second factor, these federal bankruptcy proceedings are necessary to reach a just result because reorganization would empower the Alleged Debtor with tools not only to end Weiss's diversions of its assets and occupation of its property, but also to resolve the debt owed under the mortgage and note securing it, address any liens or other legal issues affecting the value of the William Vale, and address all claims under the guaranty of the Series C Bonds.

69.    Fourth, there are no more efficient means of achieving equitable distribution of assets than a bankruptcy proceeding, which will gather all creditors and all claims (including those Weiss claims he has) under a single judicial roof for efficient resolution.

70.    Fifth, given the years-long litigation campaign and parties' failure to achieve a settlement through earnest mediation in the All Year bankruptcy, it is unfortunately clear that an out-of-court solution is out of reach at this time.

71.    Sixth, there is no parallel non-federal insolvency proceeding such that these proceedings would be akin to "starting afresh." *In re Monitor Single Lift I, Ltd*., 381 B.R. 464–65.

72.    Seventh, the purpose of this bankruptcy, which has already been described above, is not to employ the Court for "debt collection." Motion ¶ 32. Rather, it is to at last resolve the

issues that have plagued the Alleged Debtor since Weiss began his rent-free occupation of the William Vale, which has dramatically harmed all creditors of the Alleged Debtor.

## CONCLUSION

For the foregoing reasons, Petitioning Creditors request that the Court deny Zelig Weiss's Motion (I) to Dismiss the Involuntary Petition and (II) to the Extent Necessary, to Intervene as an Interested Party in its entirety and further request that the Court enter an Order for Relief.

Dated: December 16, 2022
      New York, New York

<div style="margin-left:40%">

/s/ Michael Friedman
CHAPMAN AND CUTLER LLP
1270 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 655-6000
Facsimile: (212) 697-7210
Michael Friedman
David T. B. Audley

*Counsel to the Petitioning Creditors*

</div>

## CERTIFICATE OF SERVICE

Plaintiff's attorneys hereby certify that on the 16th day of December, 2022 a copy of **PETITIONING CREDITORS' RESPONSE TO ZELIG WEISS'S MOTION (I) TO DISMISS INVOLUNTARY PETITION AND (II) TO THE EXTENT NECESSARY, TO INTERVENE AS AN INTERESTED PARTY** was served via the ECF system on parties that have consented to the same in accordance with applicable Federal Rules of Civil Procedure and the Local Rules of the U.S. Bankruptcy Court for the Southern District of New York.  Parties may access this filing through the Court's system.


/s/ Michael Friedman
                              Michael Friedman