**Hearing Dates: January 17-18, 2023 at 10:00 a.m. (prevailing Eastern Time)**

Kristopher M. Hansen
Nicholas A. Bassett
Jason M. Pierce
Will Clark Farmer
**PAUL HASTINGS LLP**
200 Park Avenue
New York, New York 10166
Telephone: (212) 318-6000
Facsimile: (212) 319-4090
   krishansen@paulhastings.com
   nicholasbassett@paulhastings.com
   jasonpierce@paulhastings.com
   willfarmer@paulhastings.com

*Counsel to Zelig Weiss*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------x
              :
**In re:**           :  **Chapter 11**
              :
**WYTHE BERRY FEE OWNER LLC,**  :  **Case No. 22-11340 (MG)**
              :
    **Alleged Debtor.**   :  **Re: ECF Nos. 12, 40, 42**
              :
-------------------------------------------------------x

**REPLY (A) IN SUPPORT OF ZELIG WEISS'S MOTION
(I) TO DISMISS INVOLUNTARY PETITION AND (II) TO THE EXTENT
NECESSARY, TO INTERVENE AS AN INTERESTED ENTITY AND
(B) IN OPPOSITION TO THE OBJECTIONS THERETO**

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

RELEVANT BACKGROUND ............................................................................................... 4

    A.  All Year's Bond Defaults............................................................................................ 4

    B.  Fee Owner's Commencement of Litigation in New York State Court........................... 5

    C.  The All Year Case..................................................................................................... 7

    D.  Efforts to Consensually Resolve the Parties' Disputes.................................................. 8

ARGUMENT ...................................................................................................................... 9

  I.  Weiss Should Be Permitted to Contest the Petition............................................... 9

    A.  As the Only Non-Conflicted Owner of Fee Owner, Weiss Should Be Permitted
to Seek Dismissal Under Section 303 of the Bankruptcy Code ...................................... 9

    B.  Weiss Either Has Standing to Seek Dismissal Under Section 1112(b) and 305(a)(1)
as a Party in Interest or Should Be Permitted to Intervene for Such Purpose ............... 14

  II.  The Petition Should Be Dismissed ................................................................... 17

    C.  The Court Should Dismiss the Petition for "Cause" Pursuant to Section 1112(b)
of the Bankruptcy Code ............................................................................................. 17

    D.  The Court Should Abstain and Dismiss this Case Pursuant to Section 305(a)(1)
of the Bankruptcy Code Because Dismissal Would Better Serve the Interests of
Creditors and Fee Owner ........................................................................................... 19

CONCLUSION.................................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*In re AMC Realty Corp.*,
   270 B.R. 132 (Bankr. S.D.N.Y. 2001) ......................................................................... 19

*In re Ancona*,
   No. 14-10532, 2016 WL 7868696 (Bankr. S.D.N.Y. Nov. 30, 2016)...................................... 19

*In re Best Home Performance of Connecticut, LLC*,
   No. 19-20688, 2019 Bankr. LEXIS 3682 (Bankr. D. Conn. Dec. 2, 2019)................... 9, 13, 15

*In re C-TC 9th Avenue Partnership*,
   113 F.3d 1304 (2nd Cir. 1997) ..................................................................................... 18

*In re Forever Green Athletic Fields, Inc.*,
   804 F.3d 328 (3rd Cir. 2015) ....................................................................................... 19

*In re Globo Comunicacoes e Participacoes S.A.*,
   317 B.R. 235 (S.D.N.Y. 2004)..................................................................................... 20

*In re Ionosphere Clubs, Inc.*,
   101 B.R. 844 (Bankr. S.D.N.Y. 1989) ........................................................................... 15

*In re Metrogate, LLC*,
   No. 15-12593, 2016 WL 3150177 (Bankr. D. Del. May 26, 2016)......................................... 19

*In re Monitor Single Lift I, Ltd.*,
   381 B.R. 455 (Bankr. S.D.N.Y. 2008)........................................................................... 20

*In re Murray*,
   900 F.3d 53 (2nd Cir. 2018) ............................................................................... 15, 17, 18, 19

*In re New Era Co.*,
   115 B.R. 41 (Bankr. S.D.N.Y. 1990), *aff'd*, 125 B.R. 725 (S.D.N.Y. 1991) .......................... 14

*In re Public Service Company of New Hampshire*,
   88 B.R. 546 (Bankr. D.N.H. 1988)............................................................................... 15

*In re Silberkraus*,
   253 B.R. 890 (Bankr. C.D. Cal. 2000).......................................................................... 19

*In re St. Paul Self Storage Limited Partnership*,
   185 B.R. 580 (B.A.P. 9th Cir. 1995) ............................................................................ 19

*In re Synergistic Technologies, Inc.*,
   No. 07-31733, 2007 WL 2264700 (Bankr. N.D. Tex. Aug. 6, 2007)......................................... 9

*In re Taberna Preferred Funding IV, Ltd.*,
   594 B.R. 576 (Bankr. S.D.N.Y. 2018)........................................................................... 19

*In re Taylor & Associates, L.P.*,
   191 B.R. 374 (Bankr. E.D. Tenn. 1996) ........................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

*In re Westerleigh Development Corp.*,
   141 B.R. 38 (Bankr. S.D.N.Y. 1992) ................................................................... 9, 13

*In re WLB-RSK Venture*,
   296 B.R. 509 (Bankr. C.D. Cal. 2003) .................................................................... 19

*Kolmar Korea Co. v. Process Technologies & Packaging*,
   No. 19-cv-01651, 2020 WL 4783080 (M.D. Pa. Feb. 27, 2020) ............................. 13

*Maitland v. International Registries, LLC*,
   No. 3669-CC, 2008 Del. Ch. LEXIS 70 (Del. Ch. June 6, 2008) ........................... 12

*Wythe Berry Fee Owner LLC v. Wythe Berry LLC*,
   Index No. 514152/2021, 2021 WL 5780049 (N.Y. Sup. Ct. Dec. 1, 2021) ............. 6

## STATUTES

11 U.S.C. § 1109(b) ..................................................................................................... 16

11 U.S.C. § 305(a)(1) ................................................................................................... 20

Zelig Weiss ("Weiss"), by and through his undersigned counsel, hereby submits this reply

(this "Reply") (A) in support of *Zelig Weiss's Motion (I) to Dismiss Involuntary Petition and (II) to*

*the Extent Necessary, to Intervene as an Interested Entity* [ECF No. 12][1] (the "Motion"),[2] and

(B) in opposition to the objections to the Motion filed by Fee Owner [ECF No. 40] ("Fee Owner's

Objection") and the Petitioning Creditors [ECF No. 42] (the "Petitioning Creditors' Objection"

and, together with Fee Owner's Objection, the "Objections"), and, in support hereof, respectfully

represents as follows:[3]

## PRELIMINARY STATEMENT

1.        The Objections demonstrate precisely why Weiss should be entitled to appear and

be heard in this involuntary case, and why the Petition should be dismissed. Bereft of legitimate

reasons to support the Petition, the Petitioning Creditors and Fee Owner use their Objections to

rehash—and, at times, reinvent—arguments and assertions made in the State Court Action

(defined below), in an attempt to falsely portray Weiss as a malfeasant operator of the

WV Complex who should have no voice in an involuntary bankruptcy case filed against an entity

of which he is the indirect 50% owner. These allegations are without merit—in fact, contrary to

the objectors' assertions, it was Weiss who successfully guided the WV Complex through the

COVID-19 pandemic, avoiding the fate of other properties that permanently closed during that

time—and they are also irrelevant. For present purposes, the issues in the State Court Action are

not before this Court and have no bearing on whether this involuntary case should proceed.

---

[1]    This Reply refers to docket entries in the above-captioned chapter 11 case as "ECF No. __" and docket entries in the All Year Case (defined below) as "All Year ECF No. __".

[2]    Capitalized terms not defined herein refer to those terms as used in the Motion or All Year Plan (defined below).

[3]    Additional evidence in support of the Motion and this Reply is set forth in the *Declaration of Nicholas A. Bassett in Support of Reply (A) in Support of Zelig Weiss's Motion (I) to Dismiss Involuntary Petition and (II) to the Extent Necessary, to Intervene as an Interested Entity and (B) in Opposition to the Objections Thereto* (the "Supplemental Bassett Declaration"), filed contemporaneously herewith and incorporated herein by reference.

2.      Once the Objections are stripped of their meritless attacks on Weiss, it is clear that the Petitioning Creditors filed the Petition—and Fee Owner now supports it—for the improper purpose of forum shopping in an effort to, among other things, transfer the pending State Court Action to this Court due to the objectors' apparent perception that it is a more favorable venue. Not only do the objectors candidly acknowledge this shared objective in their Objections, discovery has confirmed this to be the case. For example, shortly after the Petition was filed, the Trustee sent Fee Owner a term sheet proposal (the "DIP Term Sheet")[4] for the Trustee to lend Fee Owner up to $2 million in debtor-in-possession financing to fund the costs of administering Fee Owner's involuntary chapter 11 case, subject to various onerous covenants, milestones and events of default, including, among other things, that (i) the State Court Action will be removed to this Court, and (ii) this Court will grant the relief requested in the State Court Action, including by declaring the Lease (defined below) between Fee Owner and Wythe Berry LLC, the lessee entity managed and co-owned by Weiss ("WB Lessee"),[5] terminated and issuing an order evicting WB Lessee from the WV Complex.

3.      In an effort to distract the Court from their clear forum shopping, the objectors claim that a chapter 11 bankruptcy is necessary to resolve the "myriad financial and commercial issues" confronting Fee Owner, Petitioning Creditors' Obj. ¶ 24, and to centralize the "soup of lawsuits, legal issues, courts, and schedules" allegedly facing Fee Owner. *Id.* ¶ 61; *see also Wythe Berry Fee Owner LLC's Answer to Involuntary Petition* ¶ 3 [ECF No. 9] (the "Answer") (describing Fee Owner as "embroiled in multiple litigations"). But, in reality, there is no complicated "soup" of issues, claims and lawsuits facing Fee Owner; there is hardly even a broth.

---

[4]    A copy of the DIP Term Sheet is attached to the Supplemental Bassett Declaration as **Exhibit A**.

[5]    WB Lessee is 50% owned by Weiss and 50% owned by Yoel Goldman ("Goldman"), All Year's sole economic shareholder. *See* All Year ECF No. 157 (the "All Year Disclosure Statement"), at 8-9.

Witnesses for both Fee Owner and the Petitioning Creditors conceded in their depositions that the *only* claims against Fee Owner are the claims of the Series C Noteholders. They also conceded that, despite assertions to the contrary in their papers, the *only* lawsuit they knew about when they filed the Petition—with the alleged possible exception of one or two lawsuits relating to purported mechanic's liens unknown to the Petitioning Creditors when they filed their Petition[6]—is the State Court Action. This involuntary case is a classic two-party dispute that achieves litigation objectives, and nothing more.

4.      The Objections are also telling in what they do not discuss; namely, the chapter 11 case for All Year Holdings Limited ("All Year")—the ultimate parent entity of YGWV, the managing member in control of Fee Owner's direct parent entity, Member LLC—currently pending before this Court. *See In re All Year Holdings Ltd.*, No. 21-12051 (MG) (Bankr. S.D.N.Y.) (the "All Year Case"). In an apparent effort to obscure YGWV's conflicts of interest in relation to the Petition, neither the Petitioning Creditors nor Fee Owner discuss the All Year Case and its myriad connections to the parties involved in this case (as well as how it informs their motivations as they relate to this case). This is unsurprising given that such critical context would lay bare the alignment of interests between the Petitioning Creditors and Fee Owner (under the direction and control of YGWV) as well as Fee Owner's unwillingness and inability to adequately represent the interests of its equity holders in relation to the Petition; however, the objectors' lack of candor in this regard is further indicia of their lack of good faith in pursuing this involuntary case.

5.      Where, as here, an alleged debtor's controlling co-owner has conflicted interests that align with those of the petitioning creditors rather than those of the alleged debtor's other

---

[6]     The Petitioning Creditors concede that holders of mechanic's liens are not "creditors" of Fee Owner. *See* Petitioning Creditors' Obj. ¶ 61 n.12.

co-owner(s), courts have permitted the non-controlling co-owner to contest an involuntary petition filed against that alleged debtor. The Court should similarly permit Weiss—the only joint owner who is incentivized to take action to prevent the impairment (or extinguishment) of Fee Owner's equity value—to contest and seek dismissal of the Petition filed against Fee Owner. At a minimum, YGWV's conflicts of interest make clear that Weiss's economic interests in his capacity as an indirect 50% owner of Fee Owner are not adequately represented such that he should be permitted to intervene in this case for the purpose of seeking dismissal of the Petition.

6.      For the reasons set forth in the Motion and this Reply, Weiss respectfully requests that this Court follow this established precedent and exercise its direction in dismissing the Petition pursuant to section 303, 305(a)(1) and/or 1112(b) of the Bankruptcy Code.

## RELEVANT BACKGROUND[7]

### A.      All Year's Bond Defaults

7.      In November 2020, All Year, then under the control of Goldman, defaulted on its payment obligations under the Series D Notes, which triggered cross-defaults under the Series C Notes as well as the Note and the Mortgage. *See* Katzav Dep. Tr. 165:19-66:15.[8] Thereafter, Goldman was divested of control over All Year's management and operations and various restructuring professionals, including Ephraim Diamond, were appointed and empowered to manage All Year and its non-debtor subsidiaries, including YGWV, the entity in control of Fee Owner's direct parent entity, Member LLC. YGWV does not have—and never has had—any

---

[7]    Weiss's Motion sets forth relevant background facts pertaining to the ownership and capital structure of Fee Owner and the WV Complex. Weiss respectfully refers the Court to the Motion for a comprehensive recitation of these facts.

[8]    Relevant excerpts of the transcript of the deposition of Rami Katzav taken on January 3, 2023 are attached to the Supplemental Bassett Declaration as **Exhibit B**.

employees or other individuals specifically charged with making decisions on its behalf, including in the event its interests may conflict with those of All Year. *See* Diamond Dep. Tr. 12:15-15:17.[9]

### B.    Fee Owner's Commencement of Litigation in New York State Court

8.     In January 2021, due to the ongoing effects of the COVID-19 pandemic, WB Lessee wrote to Fee Owner invoking its right to an abatement of any rent obligation under the lease agreement between Fee Owner, as lessor, and WB Lessee, as lessee (the "Lease").[10] Rather than respecting WB Lessee's reasonable request for temporary rent abatement relief (and potentially obtaining a forbearance of its own indebtedness under its mortgage loan with All Year (or, later, the Trustee)), Fee Owner opted to declare the Lease in default and, ultimately, commence litigation against WB Lessee, Weiss, and Goldman in New York Supreme Court, Kings County (the "New York State Court"). *See generally Wythe Berry Fee Owner LLC v. Wythe Berry LLC,* Index No. 514152/2021 (N.Y. Sup. Ct.) (the "State Court Action").

9.     In the State Court Action, Fee Owner has alleged that WB Lessee has caused defaults under the Lease based on alleged failures to pay rent and share financial information under the Lease; that Fee Owner cancelled and terminated the Lease, effective as of May 20, 2021, and WB Lessee has failed to vacate the WV Complex; and that Weiss and Goldman, as guarantors under the Lease, are liable to Fee Owner for alleged damages under the Lease. *See* State Court Action, NYSCEF No. 2. WB Lessee and Weiss strongly dispute each of these claims,[11] and the

---

[9]     Relevant excerpts of the transcript of the deposition of Ephraim Diamond taken on January 4, 2023 are attached to the Supplemental Bassett Declaration as **Exhibit C**.

[10]    A copy of the notice of WB Lessee's request for rent abatement is attached to the Supplemental Bassett Declaration as **Exhibit D**.

[11]    Goldman has neither moved to dismiss nor answered the claims asserted against him in the State Court Action. Instead of zealously pursuing a default judgment against Goldman, Fee Owner has for more than eighteen months stipulated (numerous times) to extend Goldman's time to respond to Fee Owner's complaint, most recently up to and including February 3, 2023. *See* State Court Action, NYSCEF No. 338. Prior to these extensions, Goldman twice was in default—once from October 5, 2021 through October 3, 2022—and Fee Owner never moved for entry of a default judgment against him.

5

New York State Court has not ruled in Fee Owner's favor on any of them. If anything, it has done the opposite. Although not mentioned by Fee Owner in its Objection or Answer, in December 2021, the New York State Court *denied* Fee Owner's request for a preliminary injunction preventing WB Lessee from advertising, building out new tenant space, and taking other action to increase the revenue of the WV Complex, because Fee Owner had not demonstrated a likelihood of success on its claims either for eviction of WB Lessee or that the Lease was properly cancelled and terminated, which the court described as having "numerous factual and legal questions." *Wythe Berry Fee Owner LLC v. Wythe Berry LLC*, Index No. 514152/2021, 2021 WL 5780049, at *7 (N.Y. Sup. Ct. Dec. 1, 2021). The New York State Court also noted that "[Fee Owner] ha[d] failed to demonstrate" whether actual harm even existed, much less that any harm was imminent. *Id.* at *8.

10.     Fee Owner also makes much of its allegation that WB Lessee has improperly failed to provide certain reporting and financial information as required by the Lease, and that its lack of access to such information has prevented Fee Owner from selling the WV Complex or refinancing its Note and Mortgage. *See Declaration of Ephraim Diamond in Support of Wythe Berry Fee Owner LLC's Answer to Involuntary Chapter 11 Petition* ¶ 35 [ECF 9-1] (the "Diamond Declaration"). Conspicuously absent from Fee Owner's Answer or Objection is any mention of the fact that, prior to its commencement of the State Court Action, Weiss had fully negotiated with Fee Owner's former counsel a non-disclosure agreement ("NDA"), through which Fee Owner would have received the information sought. *See* Diamond Dep. Tr. 80:24-81:19. Fee Owner never executed that NDA, however, and instead hired new counsel (Herrick, Feinstein LLP) to commence the State Court Action. *See id.* 81:21-86:6.

C.      **The All Year Case**

11.      On December 14, 2021, All Year voluntarily commenced the All Year Case in this Court. *See* Motion ¶ 9. On December 9, 2022, following months of negotiations, disputes, and reconciliations between All Year, Paragraph Partners, LLC (the "Sponsor"), and the Trustee— serving as the representative for All Year's principal creditor constituents—All Year filed the latest (and ostensibly final) iteration of its proposed chapter 11 plan [All Year ECF No. 289] (the "All Year Plan"). The All Year Plan contains only one impaired class of creditors entitled to vote thereon, All Year Plan § 3.2, and that class—Class 4 Remaining Unsecured Claims—is predominated by (if not entirely comprised of) the Petitioning Creditors and the other holders of notes issued by All Year.[12] Significantly, the only sources of recovery for the Petitioning Creditors and other holders of Class 4 Remaining Unsecured Claims under the All Year Plan consist of (i) cash funded by the Sponsor in the aggregate amount of approximately $43.5 million (less certain deductions), and (ii) amounts recovered, if any, from the "Excluded Assets" that All Year is contributing to Wind-Down Co for the benefit of the holders of Class 4 Remaining Unsecured Claims, including (in large part, if not primarily) All Year's claimed equity interests in YGWV. *See id*. § 4.4. In other words, one of the primary sources of recovery for the Petitioning Creditors and All Year's other noteholders is the indirect 50% ownership interest in Fee Owner, through YGWV, being transferred to Wind-Down Co under the All Year Plan.

12.      The Petitioning Creditors and Fee Owner conveniently fail to provide any of this important context in their Objections, presumably because it would further highlight the entanglements between Fee Owner and the Petitioning Creditors, and their ulterior motives in

---

[12]  *Compare* All Year Disclosure Statement, Ex. H, at 5 (stating that estimated Class 4 Remaining Unsecured Claims total approximately $545 million), *with* All Year Disclosure Statement at 9 (stating that All Year's Noteholder Claims total approximately $565 million).

supporting entry of an order for relief against Fee Owner and contesting Weiss's Motion at all

costs. The objectors likely eschew discussion of the All Year Case because it would call attention

to the fact that: (i) the fate of the All Year Plan likely depends on the support of the Series C

Noteholders, who may very well have a blocking position in Class 4; (ii) this case was filed to

benefit ***All Year's*** creditors, rather than Fee Owner's creditors (and certainly not its equity

owners);[13] and (iii) this case was cynically filed as part of a forum shopping tactic in an effort to

gain perceived litigation advantages vis-à-vis the Petitioning Creditors options in a more

appropriate venue—the New York State Court.

### D.      Efforts to Consensually Resolve the Parties' Disputes

13.      For more than two years, Weiss has endeavored to broker a consensual,

commercial, resolution of the parties' various disputes for the benefit of all parties, including by

offering to purchase the Note and Mortgage at least four times, including offers to buy-out those

obligations in full. Ultimately, however, Fee Owner and the Trustee decided instead to pursue

litigation.[14] Notwithstanding the ongoing New York State Court litigation, Weiss continues to

---

[13]   The servile extent to which Fee Owner—at the direction of YGWV—acts at the behest of, and in deference to, the Trustee is demonstrated by a letter sent by Fee Owner's counsel to the Trustee's counsel on October 25, 2022, in which counsel to Fee Owner asks the Trustee's counsel to advise them "whether the holders of [the] Series B, D, and E Notes believe it is in the best interests of Fee Owner to contest the validity of the . . . Petition, or whether such holders believe it is in the best interests of Fee Owner not to oppose the . . . Petition." Supp. Bassett Decl. Ex. E (FEE_0000561). Fee Owner's solicitation of the views of the Series B Noteholders, Series D Noteholders and Series E Noteholders on the propriety of this involuntary case filed against Fee Owner is perplexing (and troubling) given that those noteholders are creditors of All Year without any ostensible connection to Fee Owner or this case.

The Series C Noteholders acknowledged this glaring structural conflict, going so far as to threaten the removal of the Trustee and its counsel, as the Trustee attempted to balance its competing duties to "secured [Series C] and unsecured [Series B, D, and E] creditors" and delayed filing the Petition. Supp. Bassett Decl. Ex. F (PETCRED000017) (reminding the Trustee and counsel "that you have a fiduciary obligation to the Series C bondholders and we are concerned that your representation of both the secured and unsecured creditors is unfairly impacting our position").

[14]   The Petitioning Creditors attached to their statement in support of the Petition a demand for payment under the Guaranty that the Trustee sent Fee Owner on September 21, 2022. *See* Petitioning Creditors' Statement, ECF No. 2, Ex. E. However, Fee Owner never sent this demand to Weiss and, thus, Weiss did not have the opportunity to offer a response to the demand or otherwise attempt to resolve the issue.

believe an out-of-court resolution remains achievable (with Weiss or a third-party—indeed, as the Court is aware, the Trustee had a binding agreement with the Sponsor last year that would have resolved the Trustee's claims under the Note and Mortgage but for its failure to close in July 2022—and would provide far better outcomes for Fee Owner's stakeholders than more litigation.

14.     If an out-of-court solution cannot be reached, the parties will continue and eventually litigate the State Court Action to conclusion in the New York State Court, where it belongs. It is not necessary (or appropriate) to commence an involuntary bankruptcy case in this Court for the purpose of litigating the State Court Action in a different forum.

## ARGUMENT

## I.    WEISS SHOULD BE PERMITTED TO CONTEST THE PETITION

### A.    As the Only Non-Conflicted Owner of Fee Owner, Weiss Should Be Permitted to Seek Dismissal Under Section 303 of the Bankruptcy Code[15]

15.     Notwithstanding that section 303 of the Bankruptcy Code does not expressly permit an alleged debtor's equity holders to challenge an involuntary petition, courts have permitted an equity holder to contest an involuntary petition where the alleged debtor is unable or unwilling to do so due to a governance deadlock or the equity holder in control of the alleged debtor is "utterly conflicted." Motion ¶ 17 (quoting *In re Best Home Performance of CT, LLC*, No. 19-20688, 2019 Bankr. LEXIS 3682, at *19-20 (Bankr. D. Conn. Dec. 2, 2019)); *see also In re Synergistic Techs., Inc.*, No. 07-31733, 2007 WL 2264700, at *5 (Bankr. N.D. Tex. Aug. 6, 2007); *In re Westerleigh Dev. Corp.*, 141 B.R. 38, 40 (Bankr. S.D.N.Y. 1992). Weiss respectfully submits that the Court should similarly permit him to contest and seek dismissal of the Petition given Fee Owner's

---

[15]    After taking discovery, Weiss has determined not to press his challenges to the Petition on the grounds that the Petitioning Creditors have failed to establish that (i) they satisfy the numerosity requirements of section 303(b)(1) of the Bankruptcy Code and/or (ii) their claims are not the subject of a bona fide dispute as to amount.

debilitating conflicts of interest arising from All Year's competing obligations to other creditors,

including the Series C Noteholders, whose support is important to the success of the All Year Plan.

16.      The Petitioning Creditors and Fee Owner raise several challenges to Weiss's

request for standing under section 303, but none are availing. The objectors begin by arguing that

Fee Owner is not conflicted by virtue of the fact that All Year (as issuer) and Fee Owner

(as guarantor) are co-obligors under the Series C Notes because their "interests *are aligned* in

maximizing the value of the assets available to satisfy that obligation, to the extent any exist, [and]

dividend any excess value to equity holders (including Weiss and All Year)." Petitioning

Creditors' Obj. ¶ 37; *see also* Fee Owner's Obj. ¶ 15. However, under the All Year Plan, All Year's

interest in YGWV—and, by extension, YGWV's indirect 50% interest in Fee Owner—will be

transferred to Wind-Down Co for the benefit of the Series C Noteholders and the holders of the

various other series of notes issued by All Year (and other All Year creditors) on the plan's

effective date. As such, All Year will have no continuing economic interest in Fee Owner and,

thus, is indifferent to Fee Owner's future equity value.[16] This fact gives rise to Weiss's and

All Year's divergent interests in respect of Fee Owner: if the WV Complex were sold for a price

less than the aggregate amount of obligations outstanding under the Guaranty, Weiss and YGWV

would both receive nothing on account of their indirect ownership interests in Fee Owner, but—

as YGWV's restructuring officer acknowledged—All Year would still benefit from the

concomitant dollar-for-dollar reduction of its obligations under the Series C Notes. *See* Diamond

Dep. Tr. 155:6-58:7. As a consequence, All Year lacks any incentive to direct YGWV to safeguard

---

[16]   This is substantiated by the fact that the All Year Plan does not obligate All Year to ensure that the YGWV
interests being transferred to Wind-Down Co will have a value in excess of some threshold amount, or, indeed,
any value at all. *See Third Supplement to Second Amended Disclosure Statement for Chapter 11 Plan of
Reorganization of All Year Holdings Limited* at 4 n.3 [All Year ECF No. 290] (identifying this proposed
chapter 11 case as a "risk factor" that could affect the value of the assets transferred to Wind Down Co).

the equity value of Fee Owner by seeking dismissal of the improper involuntary Petition filed

against it. On the other hand, All Year has every incentive to do the bidding of the Series C

Noteholders in light of the fact that the support of holders of Class 4 claims is critical to the

viability of the All Year Plan and the possibility that the Series C Noteholders hold a "blocking

position" in that class capable of rendering the plan unconfirmable. *See id.* 154:11-55:5.

17.    The objectors also argue that Weiss's "conflicted" theory of standing fails because

there is no ownership overlap between the Petitioning Creditors and Fee Owner's managing

member, YGWV. *See* Fee Owner's Obj. ¶ 17; Petitioning Creditors' Obj. ¶ 35. Although it is

technically true that there is currently no ownership overlap between the Petitioning Creditors and

YGWV, the Petitioning Creditors are beneficiaries of Wind-Down Co under the All Year Plan,

and Wind-Down Co will become the owner of YGWV on the effective date of that plan. *See*

All Year Plan § 5.3. The Trustee will then have consent and approval rights over **all** Plan

Administrator actions concerning Wind-Down Co., including those related to the YGWV interests.

*See Notice of Filing of Plan Supplement in Connection with Third Amended Chapter 11 Plan of*

*Reorganization of All Year Holdings Limited* [All Year ECF No. 312], Ex. A, § 3.1. As such, there

will soon be an effective ownership nexus between the Petitioning Creditors and YGWV,

assuming the All Year Plan is confirmed and becomes effective.

18.    The objectors further argue that there is no actual governance deadlock preventing

Fee Owner from contesting the Petition and, therefore, the cases in which courts have granted an

alleged debtor's equity holder standing to contest an involuntary petition are distinguishable. *See*

Fee Owner's Obj. ¶ 19; Petitioning Creditors' Obj. ¶¶ 32-33. However, this is non-responsive to

the central thesis of Weiss's argument, which is that YGWV's conflicts of interest incentivize it

to support entry of an order of relief against Fee Owner instead of contesting the Petition as the

managing member of an alleged debtor ordinarily would to protect its equity holders (the only constituents to whom an LLC's managing member typically owes fiduciary duties, if any).

19.    This is not just a hypothetical concern. Indeed, in the Answer and Fee Owner's Objection, YGWV (as the entity in control of Fee Owner's direct parent and sole member, Member LLC) has made clear that it is supportive of the Petition, notwithstanding that the Member LLC Agreement *expressly prohibits* YGWV from taking such a position. For this reason, the Court should disregard Fee Owner's filings. As Fee Owner acknowledges, section 5.2.5 of the Member LLC Agreement provides that Member LLC may not cause any subsidiary (*i.e.*, Fee Owner), without unanimous consent of Member LLC's members, to (i) "consent to the institution [of] bankruptcy or insolvency proceedings against it," (ii) "admit in writing its inability to pay its debts generally as they come due,"[17] or (iii) "take company action in furtherance of any such action." Bassett Declaration [ECF No. 13], Ex. A, § 5.2.5. Notwithstanding this restriction, Fee Owner is *affirmatively supporting* the Petition and asking entry of an order for relief. *See, e.g.*, Fee Owner's Obj. ¶¶ 2, 7 n.4, 21, 41, 46; *see also* Nov. 17, 2022 Hr'g Tr. 18:23-19:17 [ECF No. 44] (counsel to Fee Owner: "we'd respectfully ask [the Court] to enter the order for relief. . . . It would actually be quite a benefit to the alleged debtor to have the order for relief entered"). Fee Owner's witness, Ephraim Diamond, acknowledged Fee Owner is "supporting" the Petition, Diamond Dep. Tr. 20:3-8, and also conceded that "support" is within the definition of "consent," *id.* 38:19-39:4. By taking these "company action[s]" in support for the Petition, Fee Owner is plainly violating section 5.2.5 of the Member LLC Agreement, and therefore its filings should not be considered.[18]

---

[17]    In its Objection, Fee Owner states that it is not generally paying its debts as they come due, breaching the Member LLC Agreement and incorrectly (and predictably) ascribing all blame to Weiss. *See* Fee Owner's Obj. ¶ 41 ("Fee Owner has not paid its bondholders and is otherwise unable to restructure its debts.").

[18]    A court has authority to strike a filing that is not authorized by a Delaware LLC agreement. *See Maitland v. Int'l Registries, LLC*, No. 3669-CC, 2008 Del. Ch. LEXIS 70, at *8 (Del. Ch. June 6, 2008) (granting motion to strike answer improperly filed by a LLC member where operating agreement required majority LLC member approval

20.    The Petitioning Creditors additionally argue that the decisions cited by Weiss in support of his request for standing under section 303 are distinguishable because they all involved situations where a ***direct*** shareholder of an alleged debtor was permitted standing to contest an involuntary petition, and Weiss, by contrast, indirectly holds equity in Fee Owner. *See* Petitioning Creditors' Obj. ¶¶ 27-28. However, where, as here, Weiss and YGWV indirectly hold their 50% interests in Fee Owner through Member LLC—a pass-through holding company that merely serves as the investment vehicle for their co-ownership—the result is functionally indistinguishable from a structure where they are both direct shareholders in the alleged debtor. Looking through the Member LLC shell, the two co-owners have dramatically different interests, just as the direct shareholders did in the cases cited by Weiss. *See* Motion ¶¶ 18-20; *see also In re Westerleigh Dev. Corp.*, 141 B.R. at 39-40; *In re Best Home Performance of CT, LLC*, 2019 Bankr. LEXIS 3682, at *19-20. Now that YGWV's interests are subservient to those of the Series C Noteholders given the importance of their support in obtaining confirmation of the All Year Plan, Weiss is entitled to be heard to ensure that his ownership interests in Fee Owner are not impaired or altogether extinguished through an improper involuntary bankruptcy case that only serves the interests of the Petitioning Creditors.[19]

---

to act); *see also Kolmar Korea Co. v. Process Techs. & Packaging*, No. 19-cv-01651, 2020 WL 4783080, at *1 (M.D. Pa. Feb. 27, 2020) (granting motion to strike answer filed by LLC member that was not properly authorized under LLC's operating agreement).

[19]    The objectors' characterization of Weiss as the conflicted party is a red herring. *See* Petitioning Creditors' Obj. ¶ 38; Fee Owner's Obj. ¶ 14. As the entity in control of Fee Owner and the positions it takes in response to the Petition, it is YGWV's (not Weiss's) conflicts that are at issue for purposes of determining whether Weiss should be permitted standing or to intervene because his interests would otherwise be run roughshod over. In any event, it is perplexing how Weiss's co-ownership of WB Lessee constitutes a conflict of interest for purposes of ruling on the Motion, given that he and WB Lessee remain defendants in the State Court Action regardless of how the Court rules on the Motion.

**B.**    **Weiss Either Has Standing to Seek Dismissal Under Section 1112(b) and 305(a)(1) as a Party in Interest or Should Be Permitted to Intervene for Such Purpose**

21.    As set forth in his Motion, Weiss's request for dismissal of the Petition under section 1112(b) or, alternatively, section 305(a)(1) of the Bankruptcy Code may be made by any "party in interest." *See* Motion ¶ 24. Although under ordinary circumstances a party with an indirect interest in a debtor—such as a "creditor of a creditor" of the debtor—may not constitute a "party in interest" within the meaning of section 1109(b) of the Bankruptcy Code, in light of the fact that Weiss holds an indirect 50% equity interest in Fee Owner through a pass-through holding company that exists solely as the investment vehicle through which Weiss and YGWV hold their respective ownership interests in Fee Owner, he has a sufficiently direct interest in the outcome of this case such that he constitutes a party in interest for purposes of seeking its dismissal. *See id.* In *New Era*, a bankruptcy court in this district permitted a principal shareholder of a corporate partner of the debtor (*i.e.*, the equivalent of an equity holder of an equity holder) to appear and be heard in respect of a motion for relief from the automatic stay filed in the partnership debtor's involuntary bankruptcy case, finding that he was a party in interest "even though he is not a partner of the debtor because he has a stake in the outcome of this bankruptcy case and in the motion for relief from the automatic stay." *In re New Era Co.*, 115 B.R. 41, 45 (Bankr. S.D.N.Y. 1990), *aff'd*, 125 B.R. 725 (S.D.N.Y. 1991). Fee Owner purports to distinguish this holding on the grounds that the indirect shareholder in *New Era* was a "contributor to the capital structure of the partnership debtor," Fee Owner's Obj. ¶ 31; however, the only reason the shareholder was a "contributor to the capital structure" of the debtor was by virtue of his ***indirect*** equity interest, which the court found "sufficient [for him] to be recognized as a party in interest within the meaning of 11 U.S.C. § 1109(b)," *In re New Era Co.*, 115 B.R. at 45 (emphasis added).

14

22.     Alternatively, in the event that the Court disagrees that Weiss is presently a party in interest with the right to seek dismissal pursuant to sections 1112(b) and 305(a)(1) of the Bankruptcy Code, Weiss respectfully submits that he should be permitted to intervene for cause as an "interested entity" under Bankruptcy Rule 2018(a), on the grounds that his interests are not already "adequately represented" and intervention would not result in "undue delay or prejudice" to the original parties. *See, e.g.*, *In re Ionosphere Clubs, Inc.*, 101 B.R. 844, 853 (Bankr. S.D.N.Y. 1989) (citations omitted); *In re Pub. Serv. Co. of N.H.*, 88 B.R. 546, 551 (Bankr. D.N.H. 1988).[20]

23.     As set forth in the Motion, Weiss demonstrably meets these requirements. First, as the indirect owner of 50% of Fee Owner, Weiss clearly has an economic interest in this matter. More specifically, Weiss faces impairment of the value of his ownership interest in Fee Owner if an order for relief is entered in this case. Second, if Weiss is not permitted to intervene (to the extent the Court determines he otherwise lacks standing), his interests in relation to the Petition would not be represented at all, let alone "adequately represented." Indeed, Fee Owner—at the direction of YGWV—has made it abundantly clear in its Answer and Objection that it has abdicated its responsibility to protect the interests of its equity owners, instead opting to acquiesce to the Petition under the misguided belief that this involuntary case is in Fee Owner's best interests because Fee Owner believes it would maximize value for "all stakeholders." Fee Owner's Obj. ¶¶ 2, 46. In the words of the Second Circuit, however, the argument that an involuntary case would "maximiz[e] the value of a bankruptcy estate puts the cart before the horse" when the "proposed estate should not be in bankruptcy court to begin with," as Weiss contends is the case here. *In re Murray*, 900 F.3d 53, 62 (2nd Cir. 2018). In any event, given the administrative expenses and

---

[20]    To the extent he is not permitted to be heard to seek the relief requested in the Motion, Weiss reserves his rights to seek derivative standing *nunc pro tunc* to act on behalf of Member LLC and cause Fee Owner to contest the Petition. *See In re Best Home Performance of CT, LLC*, 2019 Bankr. LEXIS 3682, at *19-20.

relatively slow cadence of a typical chapter 11 case, it is not clear how an involuntary case would be value-maximizing to Fee Owner, especially when nothing is preventing Fee Owner from resolving its issues either in state court or through a commercial resolution.

24.    Finally, permitting Weiss to intervene for the purpose of seeking dismissal pursuant to sections 303, 1112(b) and/or 305(a)(1) of the Bankruptcy Code would not result in undue delay or prejudice to the Petitioning Creditors or Fee Owner. The parties' arguments on the propriety of the Petition have been fully briefed and discovery has been completed such that all that remains is for the Court to hear oral argument and issue a ruling.

25.    The Petitioning Creditors argue Weiss should not be permitted to intervene because intervention pursuant to Bankruptcy Rule 2018(a) cannot be used "as an end-run around § 303." Petitioning Creditors' Obj. ¶ 40. However, they only cited one case in support of this argument, *Taylor & Associates*, where the court denied a proposed intervenor's request to intervene in an involuntary chapter 7 case under Bankruptcy Rule 2018(a) on the ground that it has "questionable application to a Chapter 7 bankruptcy case" because Bankruptcy Rule 2018(a) implements sections 1109 and 1164 of the Bankruptcy Code, which are only applicable in chapter 11 cases. *In re Taylor & Assocs., L.P.*, 191 B.R. 374, 381 & n.5 (Bankr. E.D. Tenn. 1996). That holding has no applicability to Weiss's request to intervene in this chapter 11 case and, therefore, *Taylor & Associates* is inapposite.[21]

---

[21]    The Petitioning Creditors also appear to argue that only a "party in interest" is eligible to seek permissive intervention pursuant to Bankruptcy Rule 2018(a). *See* Petitioning Creditors' Obj. ¶ 41. This argument is nonsensical because it would render Bankruptcy Rule 2018(a) superfluous given that a "party in interest" is already entitled to "appear and be heard on ***any issue*** in a case." 11 U.S.C. § 1109(b) (emphasis added).

## II.    THE PETITION SHOULD BE DISMISSED

### C.    The Court Should Dismiss the Petition for "Cause" Pursuant to Section 1112(b) of the Bankruptcy Code

26.    If the Court considers Weiss's argument (as it should), there is little doubt that the Petition should be dismissed for "cause" pursuant to section 1112(b). As discussed in the Motion, "[c]ause is a fact-specific inquiry as to which a variety of factors may be relevant, including the purpose for which the petition was filed and whether state proceedings adequately protect the parties' interests." *In re Murray*, 900 F.3d at 60; *see* Motion ¶ 29 (describing the nine factors, known as the "Murray Factors" often considered by Second Circuit courts). As set forth in the Motion, application of the *Murray* Factors supports the conclusion that this case should be dismissed for cause pursuant to section 1112(b) of the Bankruptcy Code, and neither the Petitioning Creditors nor Fee Owner have put forth any convincing argument as to why the claims and other issues confronting Fee Owner require resolution through the bankruptcy process. Weiss's position has only strengthened as a result of information obtained in discovery.

27.    In their Objection, the Petitioning Creditors dubiously assert that they filed the Petition after determining that Fee Owner "was mired in defaults and disputes that, but for bankruptcy proceedings, would be prosecuted and/or defended in multiple forums, at both the trial and appellate levels," and that "[c]onsolidation of [such] disputes [in bankruptcy] is . . . clearly in the best interests of . . . [Fee Owner] and its creditors." Petitioning Creditors' Obj. ¶ 61. Moreover, they add, dismissal of the Petition would likely result in an action to foreclose on the Mortgage being brought in state court, which Fee Owner would be faced with defending, "likely in a different forum," while concurrently prosecuting the State Court Action to conclusion. *Id.* The Petitioning Creditors also say that Fee Owner's obligations under the Guaranty would "still need to be resolved," in addition to mechanic's liens filed against Fee Owner's property. *Id.*

28.    These are all transparent post hoc justifications for the Petition that only corroborate Weiss's argument for dismissal. As an initial matter, the Petitioning Creditors have not identified *any* additional creditors of Fee Owner apart from the Trustee and the Series C Noteholders.[22] The Petitioning Creditors (and Fee Owner) attempt to portray Fee Owner as subject to myriad pending lawsuits, but the reality is that there is only *one* pending litigation involving Fee Owner—the State Court Action—which has been pending since June 2021.[23] This case is an archetypical example of involuntary bankruptcy being used for improper purposes, including as a collection mechanism in what is essentially a two—or at most, three—party dispute and as an exercise in tactical forum shopping, based on the Petitioning Creditors' apparent frustration with progress in the State Court Action. As noted above, the DIP Term Sheet's conditions requiring Fee Owner to remove the State Court Action to this Court and obtain orders granting relief sought in that action reveal the true motive of the Petitioning Creditors to file the Petition as a mere litigation tactic.[24]

29.    Significantly, the Second Circuit has affirmed dismissal of an involuntary case for cause under circumstances where "the filing was the latest move in a two-party dispute that 'could be fully resolved in a non-bankruptcy forum' and where the primary function of the petition was to serve as a 'litigation tactic.'" *In re Murray*, 900 F.3d at 60 (quoting *In re C-TC 9th Ave. P'ship*, 113 F.3d 1304, 1309-10 (2nd Cir. 1997)). The Second Circuit and courts in other jurisdictions have also recognized that "[i]nappropriate use of the Bankruptcy Code may constitute cause to dismiss,

---

[22]    *See* Katzav Dep. Tr. 96:5-97:7. The Petitioning Creditors and Fee Owner have referred to a handful of holders of alleged mechanic's liens on Fee Owner's assets. *See, e.g.*, Petitioning Creditors' Obj. ¶ 24 n.8; Diamond Dep. Tr. 53:4-17. However, they were not aware of these liens at the time they filed the Petition or Answer, as applicable, and the Petitioning Creditors have conceded that any mechanic's lien holders are not creditors of Fee Owner. *See* Petitioning Creditors' Obj. ¶ 61 n.12.

[23]    *See* Diamond Dep. Tr. 55:13-56:21 ("Q. So you're aware of that mechanic's lien litigation, the New York State Court litigation, and this involuntary. Is there any other litigation that Fee Owner is involved in? A. Well, there was an adversary proceeding. . . but that's been resolved in our favor. Q. Anything else? A. Not that I can recall.").

[24]    *See* Supp. Bassett Decl. Ex. A, at 11 (FEE_0000028).

and courts that consider bad faith to be cause to dismiss often classify such inappropriate use as evidence of bad faith." *Id.* (citations omitted); *see also In re WLB-RSK Venture*, 296 B.R. 509, 515 (Bankr. C.D. Cal. 2003) (noting that "bad faith may be found under § 1112(b) where the debtor has filed bankruptcy as a litigation tactic, e.g., forum shopping" (first citing *In re St. Paul Self Storage Ltd. P'ship*, 185 B.R. 580, 583 (B.A.P. 9th Cir. 1995); and then citing *In re Silberkraus*, 253 B.R. 890, 902-03 (Bankr. C.D. Cal. 2000))). Although "[i]t is well-settled that the filing of a bankruptcy petition in bad faith constitutes 'cause' for dismissal . . . of a case under Bankruptcy Code section 1112(b)," *In re Ancona*, No. 14-10532, 2016 WL 7868696, at *3 (Bankr. S.D.N.Y. Nov. 30, 2016) (collecting cases),[25] a finding of bad faith is not necessary to dismiss a case for cause under section 1112(b), *see, e.g.*, *In re Taberna Preferred Funding IV, Ltd.*, 594 B.R. 576, 601 (Bankr. S.D.N.Y. 2018) (citing *In re Murray*, 900 F.3d at 60); *In re AMC Realty Corp.*, 270 B.R. 132, 140 (Bankr. S.D.N.Y. 2001). These cases fully support dismissal here.[26]

**D.    The Court Should Abstain and Dismiss this Case Pursuant to Section 305(a)(1) of the Bankruptcy Code Because Dismissal Would Better Serve the Interests of Creditors and Fee Owner**

30.    Alternatively, the Court should exercise its discretion and dismiss this case under section 305(a)(1) of the Bankruptcy Code because the "interests of creditors *and the debtor* would

---

[25]    Many courts have held that section 303 of the Bankruptcy Code provides an independent basis for a court to dismiss an involuntary case that was filed in bad faith. *See, e.g.*, *In re Forever Green Athletic Fields, Inc.*, 804 F.3d 328, 334 (3rd Cir. 2015) ("We see no reason why the [Bankruptcy] Code would permit the imposition of damages (including punitive damages) for bad-faith filings but not allow the same conduct—such as using involuntary bankruptcy as a litigation tactic in pending proceedings—to provide a basis for dismissing the petition. The better view is that, by including an express reference to bad faith in § 303, Congress intended for bad faith to serve as a basis for both dismissal and damages."); *In re Metrogate, LLC*, No. 15-12593, 2016 WL 3150177, at *17 (Bankr. D. Del. May 26, 2016) (dismissing an involuntary case under section 303 where the alleged debtor satisfactorily established that "the primary, if not sole, purpose for filing the Involuntary Petition was to engage in the bad faith litigation tactic of forum shopping").

[26]    The Petitioning Creditors suggest that Weiss's request for dismissal under section 1112(b) should be denied because it is premature prior to entry of an order for relief. Assuming *arguendo* that this is correct, rejecting Weiss's Motion as premature would absurdly elevate form over substance and constitute an inefficient use of judicial resources, as Weiss would simply renew his Motion immediately after an order for relief has been entered against Fee Owner, leading the parties to rehash their arguments and duplicate all the work done to date.

be better served by such dismissal . . . ." 11 U.S.C. § 305(a)(1) (emphasis added). As set forth more fully in the Motion and this Reply, the factors supporting dismissal of the case for cause under section 1112(b) all similarly weigh in favor of the Court dismissing this case under section 305(a)(1). As this Court has recognized, "[g]ranting an abstention motion pursuant to § 305(a)(1) requires more than a simple balancing of harm to the debtor and creditors; rather, the interests of both the debtor and its creditors must be served by granting the requested relief." *In re Monitor Single Lift I, Ltd.*, 381 B.R. 455, 462 (Bankr. S.D.N.Y. 2008) (citing *In re Globo Comunicacoes e Participacoes S.A.*, 317 B.R. 235, 255 (S.D.N.Y. 2004)). After disregarding or discounting the compromised and duplicitous views on the alleged debtor's "best interests" espoused by Fee Owner in its Answer, the Diamond Declaration and Fee Owner's Objection, as the Court should, Weiss respectfully submits that the interests of Fee Owner are better served by dismissing the Petition and this case. By contending that Fee Owner's interests are better served by entry of an order for relief because a chapter 11 case would maximize value for All Year's creditors, the Petitioning Creditors and Fee Owner discredit themselves as having no sense of the proper focus of the involuntary bankruptcy process (which is to restructure the obligations of the alleged debtor, not other entities) or the interests of an alleged debtor in not being subjected to an expensive, potentially lengthy, and ultimately improper bankruptcy proceeding.

<u>**CONCLUSION**</u>

For the foregoing reasons and as set forth in the Motion, Weiss respectfully requests that this Court (i) find that Weiss has standing to contest and seek dismissal of the Petition or, alternatively, permit Weiss to intervene for the purpose of contesting and seeking dismissal of the Petition on the grounds set forth herein and in the Motion, (ii) dismiss the Petition, and (iii) grant Weiss such other and further relief as this Court deems just and proper.

Dated: January 6, 2023          */s/ Nicholas A. Bassett*
      New York, New York          Kristopher M. Hansen
                                Nicholas A. Bassett
                                Jason M. Pierce
                                Will Clark Farmer
                                **PAUL HASTINGS LLP**
                                200 Park Avenue
                                New York, New York 10166
                                Telephone: (212) 318-6000
                                Facsimile:  (212) 319-4090
                                Email: krishansen@paulhastings.com
                                      nicholasbassett@paulhastings.com
                                      jasonpierce@paulhastings.com
                                      willfarmer@paulhastings.com

                                *Counsel to Zelig Weiss*