**EXHIBIT B**

Page 1

1

2        IN THE UNITED STATES BANKRUPTCY COURT

3        FOR THE SOUTHERN DISTRICT OF NEW YORK

4

5   In re:
    WYTHE BERRY FEE OWNER LLC,    ) Chapter 11
6                                 )
              Alleged Debtor.     )No.22-11340 (MG)
7                                 )
    ------------------------------)
8

9

10

11

12    REMOTE VIDEOTAPED DEPOSITION OF RAMI KATZAV

13

14             Tuesday, January 3, 2023

15

16

17

18

19

20

21  Reported by:
    LISA M. MURACO
22  JOB NO. 221054

23

24

25

### Page 2

```
            Tuesday, January 3, 2023
                9:35 a.m. Eastern
             4:35 p.m., Tel Aviv, Israel


       REMOTE Deposition of RAMI KATZAV,
  held VIA ZOOM, before LISA M. MURACO, a
  Notary Public of the State of New York and
  Florida.
```

### Page 3

```
  A P P E A R A N C E S:
  (REMOTE)


        PAUL HASTINGS LLP
        Attorneys for Zelig Weiss
             2050 M Street, NW
             Washington, DC 20036
        BY:   NICHOLAS BASSETT, ESQ.
              WILL FARMER, ESQ.



        HERRICK, FEINSTEIN LLP
        Attorneys for Wythe Berry Fee Owner
             2 Park Ave
             New York, NY 10016
        BY:   JANICE GOLDBERG, ESQ.
              ZACHARY DENVER, ESQ.
```

### Page 4

```
  A P P E A R A N C E S:
  (REMOTE)

        CHAPMAN CUTLER LLP
        Attorneys for Witness
             320 South Canal Street
             Chicago, IL 60606
        BY:   DAVID AUDLEY, ESQ.
              ERIC SILVESTRI, ESQ.
              MICHAEL FRIEDMAN, ESQ.

  ALSO PRESENT:
  Legal Video Specialist, Jon Popham
  Zelig Weiss
  Jon Brook, ESQ., on Behalf of Zelig Weiss
  Osnat Tenenbaum, Bondholders
  Shlomy Ilany, General Counsel, Mishmeret
  Ephraim Diamond, Wythe
  Asaf Ravid, Wythe
```

### Page 5

```
            IT IS HEREBY STIPULATED AND AGREED
  by and between the attorneys for the
  respective parties herein, that filing and
  sealing be and the same are hereby waived.
            IT IS FURTHER STIPULATED AND AGREED
  that all objections, except as to the form
  of the question, shall be reserved to the
  time of the trial.
            IT IS FURTHER STIPULATED AND AGREED
  that the within deposition may be sworn to
  and signed before any officer authorized
  to administer an oath, with the same
  force and effect as if signed and sworn
  to before the Court.




                   - oOo -
```

Page 94

R. KATZAV
To my knowledge, they didn't?
I didn't hear the rest of your answer.
THE WITNESS: They didn't.
BY MR. BASSETT:
Q. Okay.
And then you're aware that the petitioning creditors have also filed a response to Mr. Weiss's motion to dismiss, correct?
A. You mean, Yelin, Phoenix, and -- and Klirmark?
Q. Well, Mishmeret is also a petitioning creditor. So I'm referring to those.
A. Okay. So what is it again?
Q. Well, the petitioning creditors also filed a response to Mr. Weiss's motion to dismiss.
You're aware of that, right?
A. Yes.
Q. Was that document shared with or discussed with the representatives of All Year and Fee Owner, to your knowledge?

Page 95

R. KATZAV
A. No.
Q. Mr. Katzav, if you look at Exhibit 1 to your deposition, which is the deposition notice.
I would -- I would now like to ask you some questions about topic number seven, which is your knowledge of claims and lawsuits involving the alleged debtor, which is Fee Owner, that could be resolved as part of the purported involuntary bankruptcy case.
Do you see that?
A. Just a second. Okay.
(Document review.)
A. Topic number?
Q. Seven.
A. Okay, okay.
Q. So, Mr. Katzav, can you -- can you tell me, to your knowledge, to the knowledge of the petitioning creditors, what are all of the claims that exist against Fee Owner?
A. What is the claims against Fee Owner?
Q. Yeah.
So you understand the concept of a

Page 96

R. KATZAV
creditor holding a claim against an entity, right?
A. Yeah.
Q. Well, what I'm asking you is for you to tell me your understanding of the entire universe of creditor claims that exist against Fee Owner.
A. Okay. I tell you what. I believe that in the involuntary bankruptcy, it will be more efficient to end up with multiple actions of claim. Otherwise, we would need to separate the actions.
And what are the actions, the foreclosure, the guaranty of the bond claim, the list default and the creation. And also the mechanic liens in the lawsuits.
As you know, there was mechanic liens that we found out about them -- after getting -- filing their motion.
And also, you know, according to now, the renter didn't pay the rent. They didn't pay also the use and occupant payments, although being ordered to do by the Court, and didn't share any information about the hotel.

Page 97

R. KATZAV
We're trying for almost two years, more than two years, to get information about the hotel.
And we didn't got any information. And so, this issues, I think we should handle them in this court.
Q. Okay.
So I -- I appreciate that. Thank you for that answer.
I was actually trying to ask -- I think it was a bit of a different or simpler question.
I'm just trying to understand at this time the universe of creditors and creditor claims that you're aware of that presently exist at Fee Owner.
So I think you mentioned somewhere in that response that there are claims that -- a claim that Mishmeret holds under the promissory note and mortgage that we defined on the record earlier.
Is that a claim that exists against Fee Owner that you're aware of?
A. You can question -- ask again.

### Page 98

```
 1                   R. KATZAV
 2          I didn't understand the question.
 3          Sorry.
 4     Q.   Well, is one of the creditor claims
 5  that you're aware of that exists against Fee
 6  Owner the claim that Mishmeret holds under the
 7  promissory note and mortgage?
 8     A.   What -- what is the -- sorry, I
 9  didn't understand the question.
10     Q.   Does Mishmeret hold a claim against
11  Fee Owner under the note and mortgage?
12     A.   Which claim?
13     Q.   Do you understand the promissory
14  note -- do you understand that Fee Owner is
15  obligated under the promissory note, correct?
16     A.   Yeah.
17          We have the mortgage, if that's what
18  you asked for.  I mean, we have some claims
19  about the mortgage.
20          THE REPORTER:  You're saying
21     mortgage, right?
22          THE WITNESS:  Yeah.
23  BY MR. BASSETT:
24     Q.   Okay.
25          And is it your understanding that
```

### Page 99

```
 1                   R. KATZAV
 2  the promissory note and mortgage were assigned
 3  to Mishmeret?
 4     A.   Sorry.  Again.
 5     Q.   The promissory note and mortgage
 6  were assigned to Mishmeret; isn't that right?
 7     A.   Yeah.
 8     Q.   Okay.
 9          And the promissory note involves a
10  claim for payment of that note against Fee
11  Owner, right?
12     A.   Yes.
13     Q.   So one of the claims that exists
14  against Fee Owner is the claim that Mishmeret
15  holds under the promissory note, right?
16     A.   Yes.
17     Q.   Okay.
18          Another claim which you have
19  mentioned in the papers that the petitioning
20  creditors filed with the Court is the claim
21  that Mishmeret, on behalf of the Series C
22  bondholders, holds against Fee Owner under the
23  guaranty; is that right?
24     A.   Yes.
25     Q.   Okay.
```

### Page 100

```
 1                   R. KATZAV
 2          And by the way, if a -- if a payment
 3  is made on the noted mortgage, or if the -- if
 4  Mishmeret, on behalf of the bondholders, is
 5  able to sell the noted mortgage for some value,
 6  that would reduce the outstanding principal
 7  amount owed to the Series C bondholders under
 8  the Series C bonds; is that right?
 9          MR. AUDLEY:  Object to the form.
10          But, Rami, please answer, if you
11     can.
12          THE WITNESS:  What do you mean, if I
13     can?
14          MR. AUDLEY:  If you understand the
15     question and are able to answer it, please
16     do so.
17          I was just objecting.
18     A.   If you can ask me again, Nicholas.
19     Q.   Sure.
20          So the -- the noted mortgage served
21  as collateral for All Year's obligations under
22  the Series C bonds, right?
23     A.   Yes.
24     Q.   So if Mishmeret, on behalf of the
25  bondholders, were to -- were to sell that
```

### Page 101

```
 1                   R. KATZAV
 2  collateral --
 3     A.   Okay.
 4     Q.   -- that would reduce by whatever is
 5  received, the bond debt, correct?
 6     A.   Correct.
 7     Q.   So the two claims that we've so far
 8  talked about and identified is the claim under
 9  the promissory note and mortgage.
10          And then there was the claim under
11  the guaranty of the Series C bonds against Fee
12  Owner.
13          Other than those two claims, are you
14  aware of any claims of any kind that any
15  creditor holds against Fee Owner?
16     A.   As I told you before, I told you
17  about a couple of claims that we have.
18     Q.   What other claims, other than the
19  claim under the promissory note and the claim
20  under the guaranty, do you have against Fee
21  Owner?
22     A.   In general, as I told you, we have a
23  problem with the mechanic liens and lawsuits
24  that we find -- we found out about them.  And
25  also the lease default and the -- (inaudible.)
```

Page 162

R. KATZAV

role that --

(Multiple speakers.)

A. This is -- your question is very -- it's very big. Events. There was a lot of events. I don't know what events happened between them, between of them.

Q. Well, do you have a view as to whether or not Mr. Goldman has any responsibility for the claims alleged in the lawsuit?

A. We see Zelig as the renter and he was supposed to pay our rent. His relationship with Goldman is between of them.

Q. Okay.

So you don't know of anything that Mr. Goldman may have done that led to the nonpayment of rent alleged in the lawsuit?

A. No, no. Maybe Zelig can say because All Year collapse in November '20. He did it so he didn't need to pay the rent.

I tell you, this is between of them.

Q. Okay.

A. We are in 8 o'clock. It's okay to make a break?

Page 163

R. KATZAV

You want to more, it's okay from my side, too. If you want ten minutes more or something like that.

But if we want a break so -- which will be nice that we can order a meal. Until now, I didn't order something to eat.

Q. Yeah, no, I think -- I just wanted to make sure I didn't have another question that was --

A. What I -- what I told earlier, you know, you must remember that the Court ruled that Zelig needs to pay the rent. And although the Court ruled that, Zelig is still not paying the rent.

And, you know, dishonor, to my opinion, the decision of Court.

Q. Have you, Mr. Katzav, had any discussions ever with Mr. Goldman?

A. Yeah.

Q. When were those -- is it frequently?

A. When?

I discuss with Mr. Goldman before -- I think in -- we had connection with Goldman between February to October '20. Something

Page 164

R. KATZAV

like this.

And after the collapse, two month or one month after that, we had some conversation, I think.

MR. BASSETT: Okay. Let's take a break now.

THE WITNESS: Okay. How much time?

MR. BASSETT: How much time would you like for dinner?

THE WITNESS: It depends on work. But if it's a half-hour or 40 minutes, I think we will be able to order and eat.

MR. BASSETT: Okay. Well, I mean, 45 is fine, if you need more time.

THE WITNESS: 45, it's okay.

MR. BASSETT: Okay.

THE WITNESS: I have the time for work and all of that.

MR. BASSETT: And if you don't get to eat within that time, just let us know.

THE WITNESS: No problem.

MR. BASSETT: Okay.

THE VIDEOGRAPHER: We're going off the record at 8:04 p.m.

Page 165

R. KATZAV

This marks the end of media three.

(Recess is taken.)

THE VIDEOGRAPHER: We are back on the record at 8:53 p.m.

This marks the beginning of media four.

BY MR. BASSETT:

Q. Mr. Katzav, welcome back. I hope you got something to eat.

So, Mr. Katzav, are you aware of whether the -- strike that.

Mr. Katzav, All Year has defaulted under the Series C bonds.

Is that your understanding?

A. The Series C and all of the other series.

Q. Right, right.

And do you know when All Year first defaulted on the Series C bonds?

A. There is a cross-default in all of the series. So in November '20, All Year didn't pay, if I remember correct, and Series D. So actually, there was a cross-default from this moment.

### Page 166

```
                      R. KATZAV
    Q.   Okay.
         Were there -- well, let me ask:  Did
that -- did that default -- are you aware
whether that default also led to a
cross-default under the note and mortgage?
    A.   To my understanding, it's a
cross-default on -- this is the date for the
cross-default on the mortgage.
    Q.   Okay.
         And that was in November 2020?
    A.   Correct.
    Q.   Okay.
    A.   It's actually a default by the note.
I told you about the mortgage also.
    Q.   Right, right.
         So let me -- can you turn to
Exhibit 3, which is -- and I'll give you the
tab reference.
         It's going to be Tab 2.
    A.   Tab 2.  Yes, of course.
         Give me a second.
         Tab number two, I open it.  Yeah.
    Q.   And then if I could direct your
attention to --
```

### Page 167

```
                      R. KATZAV
    A.   Just a second.  Just a second.
         It's getting open.  Yeah, okay.
Yeah.
    Q.   Paragraph 16.
    A.   Paragraph 6?
    Q.   16.
    A.   Oh, 16.  Okay.
         Okay.  I see paragraph 16.
    Q.   Okay.
         And I'm going to direct your
attention to the first line which says (as
read):  In sum, Weiss illegally deprived the
alleged debtor in millions of rental income
through his refusal to pay rent for nearly two
years, which, in turn, caused the alleged
debtor to default on its obligations under the
note and guaranty, directly resulting in this
bankruptcy proceeding.
         Do you see that?
    A.   Yeah.
    Q.   So in the -- is it your
understanding that the alleged rent default
occurred in February of 2021, when there was a
rent payment that was not made?
```

### Page 168

```
                      R. KATZAV
    A.   I think it was on a -- on
February '21, yes.  This is also a cause to
default, of course.
    Q.   Okay.
         So -- but, in fact, prior to
February 2021, there had already been a default
under the note, correct?
    A.   As I said there was a cost default.
And also under the note, yeah.
    Q.   And was there also a default under
the guaranty?
    A.   In 2021?
    Q.   Yes.
    A.   You're asking if in November of
2020, this was also a default on the guaranty?
    Q.   That's what I'm asking.
    A.   In 2020, November 2020, there was a
cost default because it didn't pay, because
Olil (phonetic) didn't pay for one of the
series.  So it's also a default in the pledge
and in the note.
    Q.   Okay.
    A.   It's -- it's on top.  And in
February '21, unfortunately, Zelig didn't pay
```

### Page 169

```
                      R. KATZAV
the rent.
         So it's also a default of Olil, that
she can get the money.
    Q.   And when you said Zelig didn't pay
the rent, I mean, Zelig was not obligated to
pay rent, right?
    A.   The company that didn't pay the
rent.
    Q.   So you mean Wythe Berry LLC?
    A.   I mean, Wythe Berry LLC, yeah.  But
the money didn't get up from Fee Owner.
    Q.   Okay.
         And also in paragraph 16, it says --
there's again the reference to the default on
Fee Owner's obligations under the note and
guaranty.
         And then it says that, quote,
directly resulted in this bankruptcy
proceeding.
         Do you see that?
    A.   Which line?
    Q.   It's going to be line 3.  The end of
line 3 into 4.
    A.   End of line 3.
```

```
                                                              Page 326
1                    R. KATZAV
2         THE VIDEOGRAPHER:  This concludes
3     the testimony of Rami Katzav.
4         We're going off the record at 12:40
5     a.m.
6         This also concludes media six.
7         (Time Noted:  12:40 a.m.)
8
9
10              ---------------------
11                  RAMI KATZAV
12
13  Subscribed and sworn to before me
14  this      day of            2023.
15
16  --------------------------------------
```

```
                                                              Page 327
1                  C E R T I F I C A T E
2
3
4   STATE OF NEW YORK    )
5                       ) ss.:
6   COUNTY OF NEW YORK   )
7
8         I, LISA M. MURACO, a Notary Public
9     within and for the State of New York and
10    Florida, do hereby certify:
11        That RAMI KATZAV, the witness whose
12    deposition is hereinbefore set forth, was
13    duly sworn by me and that such deposition
14    is a true record of the testimony given by
15    such witness.
16        I further certify that I am not
17    related to any of the parties to this
18    action by blood or marriage; and that I am
19    in no way interested in the outcome of this
20    matter.
21        IN WITNESS WHEREOF, I have hereunto
22    set my hand this 3rd day of January, 2023.
23
24    _____
25              LISA M. MURACO
```

```
                                                              Page 328
1
2                    I N D E X
3
4   WITNESS                                PAGE
5   RAMI KATZAV
6   MR. BASSETT                              8
7
8              E X H I B I T S
9   DESCRIPTION                            PAGE
10  Katzav Exhibit 1, Exhibit C, Notice of  34
    Deposition
11
12
    Katzav Exhibit 2, Tab 1, Petitioning    73
13  Creditor's Statement in Support of the
    Petition
14
15
    Katzav Exhibit 3, Tab 2, Petitioning    74
16  Creditor's Response to Mr. Weiss's
    Motion to Dismiss
17
18
    Katzav Exhibit 4, Tab 16, Bates Number  112
19  FEE_0000036 to 37, William Vale Hotel
    Title Report
20
21
    Katzav Exhibit 5, Tab 3, Affirmation of 137
22  Rami Katzav
```

```
                                                              Page 329
1
2    I N D E X   O F   E X H I B I T S(Cont'd.)
3   DESCRIPTION                            PAGE
4   Katzav Exhibit 6, 2021-05-06 Letter ZW  194
    Offer PDF
5
6
    Katzav Exhibit 7, Tab 12, Madison Offer 211
7
8
    Katzav Exhibit 8, Document P 1352060,   224
9   Offer Made by Madison Capital and
    Meadow Partners
10
11
    Katzav Exhibit 9, October 2021 Offer by 230
12  Mr. Weiss
13
14  Katzav Exhibit 10, Tab 13, Bates Number 259
    PET CRED 01, E-mail
15
16
    Katzav Exhibit 11, Tab 14, Bates Number 280
17  Ending 18, DIP Proposal
18
19  Katzav Exhibit 12, Tab 17, October 25,  299
    2022, Letter from Eric to Michael
20  Friedman
21
22  Katzav Exhibit 13, Letter from Mr.      300
    Friedman of Chapman to Herrick
23
24
    Katzav Exhibit 14, Document Number ECF  314
25  43, Declaration
```

```
                                          Page 330
 1
 2
 3   QUESTIONS INSTRUCTED NOT TO ANSWER
 4         Page     Line
 5         53       25
           312      20
 6
 7
 8
 9
10
...
25
```

```
                                          Page 331
 1
 2       ERRATA SHEET FOR THE TRANSCRIPT OF:
 3   Case Name: In Re:
            Wythe Berry Fee Owner LLC
 4   Dep. Date:     TUESDAY, JANUARY, 2023
     Deponent:      RAMI KATZAV
 5
                  CORRECTIONS:
 6
     Pg. Ln.  Now Reads     Should Read    Reason
 7   ___ ___  _____   _____    _____
 8   ___ ___  _____   _____    _____
 9   ___ ___  _____   _____    _____
10   ___ ___  _____   _____    _____
11   ___ ___  _____   _____    _____
12   ___ ___  _____   _____    _____
13   ___ ___  _____   _____    _____
14   ___ ___  _____   _____    _____
15   ___ ___  _____   _____    _____
16   ___ ___  _____   _____    _____
17   ___ ___  _____   _____    _____
18
19                        _____
20                        Signature of Deponent
21   SUBSCRIBED AND SWORN BEFORE ME
22   THIS____DAY OF_____, 2023.
23
24   _____
25   (Notary Public)  MY COMMISSION EXPIRES:_____
```