**EXHIBIT D**

# WYTHE BERRY LLC
266 BROADWAY, SUITE 301
BROOKLYN, NEW YORK, 11211

January 31, 2021

*Via Personal Delivery (Messenger)*
*and Overnight Courier (FedEx)*

Wythe Berry Fee Owner LLC
199 Lee Avenue, #693
Brooklyn, NY 11211

    Re:    Lease Agreement (the "Lease"), dated as of February 28, 2017, by and between Wythe Berry Fee Owner LLC ("Lessor") and Wythe Berry LLC ("Lessee") – <u>Notice of Abatement of Rent ("Notice")</u>

To Whom It May Concern:

    Pursuant to various provisions of the Lease (some of which are referenced in this Notice), and pursuant also to its rights at law and in equity, Lessee hereby notifies Lessor of the need to invoke its rights to an abatement of the Rent.

    As Lessor knows, Lessee's sole source of income is revenue generated by the Complex, the primary component of which is The William Vale Hotel ("TWVH") and its associated food and beverage operations ("FNB"). It is known universally COVID-19 has devastated the hotel and hospitality industry throughout the United States, and hit New York City especially hard. TWVH and FNB are among its casualties.

    Unlike many hotels in New York City, TWVH thankfully has managed to stay open for business, albeit with some intermittent closures due to COVID-19 and regulations relating to it. There is a drastic difference, however, between being open and being occupied. COVID-19 and the ensuing governmental orders intended to protect public health and safety have wreaked havoc on TWVH occupancy rates, which in turn has decimated revenue; indeed, the situation now resembles, at best, a prolonged "first year" of operation. Similarly, the governmental orders directed at restaurants and prohibiting indoor dining have all-but-eliminated revenue for FNB.

    Lessor no doubt understands the COVID-19 pandemic has fundamentally changed the circumstances under which Lessor and Lessee entered into the Lease. It is, therefore, impossible – and it would be inequitable – to ignore the COVID-19 pandemic in assessing the rights and obligations set forth in provisions of the Lease, including provisions of Lease that absolve Lessee of any obligation to pay Rent.

    For example, Section 2.1 of the Lease expressly states, "If at any time during the Lease Term the Rent is not fully collectible by reason of any Law (as hereinafter defined), Lessee shall enter into such agreements and take such other action as Lessor reasonably requests and which is not prohibited by any Law, to permit Lessor to collect the maximum permissible Rent (but not in excess of the Rent)."

# WYTHE BERRY LLC

Wythe Berry Fee Owner LLC
January 31, 2021
Page 2

     Section 3.2 defines "Law" broadly, and among other things includes "orders and directives of appropriate governmental and accrediting agencies." Certainly, the Executive Orders of the Governor of the State of New York (and the New York City counterparts) restricting travel, requiring quarantines, limiting hotel use and occupancy, prohibiting gatherings, and banning indoor dining during the COVID-19 pandemic fall within the definition of "Law." By reason of those Executive Orders and other Law, Lessee has suffered a devastating loss of revenue, which in turn means funds are not available to make Rent fully collectible. Of course, Lessee will abide by the balance of the quoted portion of Section 2.1; as, when, and if the Law reverts to its pre-pandemic state, Lessee will endeavor to pay the Rent now not fully collectible.

     By way of further example, Section 10.1 and 10.2 of the Lease speak to the need for equitable abatement of Rent in circumstances when, respectively, because of a casualty or government action, Lessee is unable to enjoy the use of the whole or part of the Leased Premises. The COVID-19 pandemic already is a judicially-recognized casualty, and the aforementioned Executive Orders and other "pandemic Law" no doubt constitute a temporary regulatory taking; accordingly, Lessee is entitled to an abatement of Rent commensurate with its inability to use the Leased Premises. In this instance, that abatement is absolute, as the limited use of the Leased Premises has failed to generate revenue sufficient to cover even other ordinary expenses.

     Of course, the Lease is not the only source that relieves Lessee during the pandemic of any obligation it may otherwise have to pay Rent. The doctrines of impossibility of performance, impracticality of performance, frustration of purpose, and unforeseen circumstances do the same. Accordingly, until the COVID-19 pandemic ends, Lessee has no obligation to pay Rent.

     Lessee looks forward to working with Lessor, pursuant to Section 2.1 and/or otherwise, to make sure both parties weather this unfortunate and unforeseeable storm.

     Nothing contained herein constitutes or shall be deemed a waiver by Lessee of any rights or remedies it may have, whether under the Lease, applicable law, in equity, or otherwise, all and any of which are expressly reserved. Capitalized terms not otherwise defined in this letter have the meaning set forth in the Lease.

                                                                 Very truly yours,

                                                                 WYTHE BERRY LLC

                                                                 By: _____
                                                                       ZELIG WEISS
                                                                       Managing Member

cc:    Yoel Goldman (via e-mail)