**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------x

In re:                                                    NOT FOR PUBLICATION

*Wythe Berry Fee Owner LLC,*                              Chapter 11
                                                          Case No. 22-11340 (MG)

                     Alleged Debtor.

-------------------------------------------------------------------------x

## MEMORANDUM OPINION DENYING ZELIG WEISS' MOTION TO DISMISS THE INVOLUNTARY PETITION

*A P P E A R A N C E S :*

PAUL HASTINGS LLP
*Counsel for Zelig Weiss*
200 Park Avenue
New York, New York 10166
By:    Kristopher M. Hansen, Esq.
        Nicholas A. Bassett, Esq.
        Jason M. Pierce, Esq.
        Will Clark Farmer, Esq.

CHAPMAN & CUTLER LLP
*Counsel for the Petitioning Creditors*
1270 Avenue of the Americas
New York, New York 10020
By:    Michael Friedman, Esq.
        David T.B. Audley, Esq.
        Eric Silvestri, Esq.
        Helena Honig, Esq.

HERRICK, FEINSTEIN LLP
*Counsel for the Alleged Debtor*
2 Park Avenue
New York, New York 10016
By:    Stephen B. Selbst, Esq.
        Avery S. Mehlman, Esq.
        Janice Goldberg, Esq.

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the motion filed by Zelig Weiss ("Weiss") to dismiss or abstain from hearing the Involuntary Bankruptcy Petition ("Petition," ECF Doc. # 1) filed against Wythe Berry Fee Owner LLC ("Alleged Debtor") by the Petitioning Creditors.[1] ("Motion to Dismiss," ECF Doc. # 12.)  The Motion to Dismiss also seeks, to the extent necessary, to permit Weiss to intervene as an interested entity.  (*See generally* Motion to Dismiss.)  The Alleged Debtor and Petitioning Creditors separately filed briefs in response to the Motion to Dismiss ("Debtor Opposition," ECF Doc. # 40; "Creditor Opposition," ECF Doc. # 42.)  Weiss filed a reply brief in further support of his Motion to Dismiss.  ("Reply," ECF Doc. # 45.)

The Court held an evidentiary hearing (the "Hearing") on the Motion to Dismiss on January 17, 2023.  At the conclusion of the Hearing, the Court denied the Motion on the record, and an Order for Relief was entered.  (*See* "Hr'g Tr.," ECF Doc. # 62 at 207:13–19.)  This Memorandum Opinion explains the Court's reasoning for its ruling.

## I.     BACKGROUND

### A.  The Relevant Entities & Ownership Structure

#### 1.  The Entities

The Alleged Debtor is the titular owner of a commercial real property complex located in Brooklyn, New York, that includes The William Vale Hotel (the "WV Complex").  (Motion to Dismiss ¶ 6.)  The Alleged Debtor is owned entirely by Wythe Berry Member LLC ("Member LLC").  (*Id.*)  In turn, Member LLC has two owners with 50% interests each—Weiss and

---

[1]    The Petitioning Creditors are defined as: Mishmeret Trust Company Ltd. (the "Trustee" or "Mishmeret"), Yelin Lapidot Provident Funds Management Ltd. ("PLP"), The Phoenix Insurance Company Limited ("Phoenix"), and Klirmark Opportunity Fund III L.P. ("Klirmark").

YGWV LLC ("YGWV").  (*Id.*)  YGWV is the managing member of Member LLC.  YGWV is a

wholly-owned, direct subsidiary of All Year Holdings Limited ("All Year"), the debtor in a

separate chapter 11 case pending before this Court.[2]

### 2.    Ownership and Operation of the WV Complex

The WV Complex was originally owned by a different entity, Wythe Berry LLC ("WB

LLC").  (*Id.* ¶ 7.)  Weiss and All Year's former principal, Yoel Goldman ("Goldman") each

owned 50% of WB LLC, and Weiss serves as the managing member.  (Creditor Opposition ¶ 7.)

As part of a refinancing in February 2017, the Alleged Debtor entity was formed and WB LLC

transferred title to the WV Complex to the Alleged Debtor.  (Motion to Dismiss ¶ 7.)  The

Alleged Debtor then began leasing the WV Complex to WB LLC pursuant to a lease (the

"Lease").  (*Id.*; Creditor Opposition ¶ 7.)

Following the February 2017 refinancing, the Alleged Debtor claims the rent payable to

the Alleged Debtor under the Lease was structured to be used to make the payments due on the

Amended and Restated Promissory Note in the principal amount of $166,320,000, dated as of

February 28, 2017 (the "Note"), which is secured by a mortgage on the WV Complex (the

"Mortgage").  (Answer, ECF Doc. # 9 ¶ 10; "Diamond Decl." ECF Doc. # 9-1 ¶ 10.)[3]  The Lease

required WB LLC, controlled by Weiss, to pay the Alleged Debtor two rent payments per year,

as further detailed *infra*.  (Answer ¶ 11.)

---

[2]    *See In re All Year Holdings Ltd.*, Case No. 21-12051.  Docket references to the *All Year* docket are stylized as (*All Year*, ECF Doc. # _ ); all other references to ECF documents refer to filings in this proceeding.

[3]    The assertions in the Alleged Debtor's Answer are generally supported by the assertions in the corresponding paragraph of the Diamond Declaration, and for that reason, parallel citations to the latter will be omitted unless independently relevant.

In turn, WB LLC has subleases with at least three different entities ("Sublessees") that operate a hotel, restaurant, and garage, respectively,[4] that are located in the WV Complex. Weiss and Goldman have a direct 50% ownership interest in each of the Sublessees. (*Id.*) Each of the Sublessees has a management agreement with an entity called Expresso Hospitality Management, LLC ("Expresso"). (*Id.*) Weiss owns 100% of Expresso, is its managing member, and currently manages the operations of the Sublessees. (*Id.*)

### 3. Alleged Debtor's Obligations from 2017 Refinancing

As part of the same February 2017 refinancing, All Year issued Series C Debentures (the "Series C Notes," and the holders thereof the "Series C Noteholders") in the original principal amount of NIS 617,970,000 pursuant to a Deed of Trust dated February 19, 2017 (the "Deed of Trust") between All Year and the Trustee, Mishmeret. (Answer ¶ 7; "Deed of Trust," Ex. A to Statement of Creditors, ECF Doc. # 2-1.)

On February 28, 2017, the Alleged Debtor executed a Guaranty of Payment (the "Guaranty") under which the Alleged Debtor guaranteed "prompt payment and performance of all debts, obligations, and liabilities [of All Year] . . . under the Bond Documents . . . and any and all sums of money    under the provisions of the Deed of Trust." (Answer ¶ 8; Diamond Decl. ¶ 8; "Guaranty," Ex. B to Statement of Creditors, ECF Doc. # 2-2.) The Guaranty was delivered specifically to secure the obligations to the Series C Noteholders (acting through the Trustee). The delivery of the Guaranty was a condition to the closing of the Deed of Trust: "[The Alleged Debtor] shall deposit a guarantee with the Trustee pursuant to which [the Alleged Debtor] has an irrevocable commitment to uphold [All Year's] obligations towards the Debenture holders (Series C)." ( Deed of Trust § 6.2.1.5.)

---

[4]    Those entities are: (1) William Vale Hotel LLC; (2) William Vale FNB, LLC; (3) North 12th Parking, LLC. (*See* Hr'g Tr. 29:2–31:1.)

### B. Disputes & Defaults Since The Refinancing

Neither party offers any material factual allegations from the February 2017 refinancing through late 2020. In late 2020 and early 2021, however, certain events began to unfold that eventually led to the Alleged Debtor's bankruptcy. Specifically, All Year defaulted on certain obligations, and WB LLC stopped paying rent, resulting in a legal proceeding between the Alleged Debtor and WB LLC. Both series of events are detailed below.

#### 1. All Year Default

In November 2020, All Year, then under the control of Goldman, defaulted on its payment obligations under another series of bonds it had issued, which triggered cross-defaults under the Series C Notes as well as the Note and the Mortgage. (Hr'g Tr. 118:24-119:21.) Following the occurrence of the events of default, the Series C Noteholders declared a default by All Year on its obligations under the Deed of Trust as of February 17, 2021, and, pursuant to the Deed of Trust, all obligations thereunder were accelerated and became immediately due and payable. (Statement of Creditors ¶ 3.) In consideration for Trustee's willingness to forebear from the exercise of remedies, All Year assigned the collateral to the Trustee, including the Mortgage and Mortgage loan. (*Id.* ¶ 6.) As a result of the assignments, the Trustee became a creditor of the Alleged Debtor, holding a secured claim in the amount of the value of the WV Complex and an unsecured deficiency claim for the balance. (*Id.* ¶ 7.) It is undisputed that the Petitioning Creditors hold claims in excess of the statutory minimum amount of $18,600.00 under section 303(b)(1) of the Bankruptcy Code. (*Id.*)

2. <u>Rent Dispute</u>

a. *Rent Arrangement and Initial WB LLC Default*

The Lease between WB LLC and the Alleged Debtor required WB LLC, controlled by
Weiss, to pay the Alleged Debtor $15 million in annual rent, split evenly into two payments of
$7.5 million, which are due on February 1st and August 1st of each year. (Answer ¶ 11.) The
rent payments were intended to be used to cover All Year's payments due on the Series C Notes.
The WB LLC rent payment defaults directly caused All Year to default on payments due to the
Series C Noteholders.

On February 1, 2021, WB LLC failed to make its required rent payment under the
Lease with the Alleged Debtor. (*Id.* ¶ 13.) The Alleged Debtor provided notice of the default,
and after unsuccessfully insisting that WB LLC pay, served a Notice of Cancellation and
Termination of the Lease on Weiss and WB LLC on May 21, 2021. (*Id.* ¶¶ 19–20.) Weiss
neither paid rent nor vacated the leasehold after receiving the notice, and Weiss continued to
operate the WV Complex. (*Id.*)

b. *Alleged Debtor Sues WB LCC and Weiss*

The Alleged Debtor sued WB LLC and Weiss in state court in New York on June 11,
2021 (the "Rent Action"), seeking money damages for unpaid rent, a declaratory judgment that
the Lease was terminated, and an order directing WB LLC and Weiss to immediately produce all
books, records, and information regarding the physical condition and operation of the hotel and
offices. (*Id.*) After the litigation was commenced, Weiss again failed to pay rent on August 1,
2021, the day the second $7.5 million rent payment was due under the Lease. (*Id.*)

On December 6, 2021, the court in the Rent Action ordered WB LLC to make
semiannual use and occupancy payments of $7.5 million, the same amount due under the Lease

6

and on the same schedule as called for in the Lease. (*Id.* ¶ 21.) Shortly thereafter, the court also ordered certain Weiss-affiliated entities that he uses to manage the WV Complex, including Expresso and the Sublessees, to produce documents and financial information regarding their operations. (*Id.* ¶ 23.)

*c.    Weiss Fails to Comply and Challenges New York Court Orders*

Weiss testified at the Hearing that he made one use and occupancy payment in February 2022 pursuant to the court's order in the Rent Action, but that he did not make the next payment due on August 1, 2022. (*See* Hr'g Tr. at 79:23–80:25; *see also* Answer ¶ 26.)

Petitioning Creditors also claim that none of the Weiss-affiliated entities complied with any of the discovery orders in the Rent Action, and were found in contempt of court on September 29, 2022. (Answer ¶ 25.) The New York State court's contempt order required the Weiss-affiliated entities to produce the financial information by October 28, 2022, but they still have not done so to date. (*Id.*) Weiss has also refused to remit the $7.5 million use and occupancy payment that was due on August 1, 2022. (*Id.* ¶ 26.)

The New York State court ordered Weiss to either remit a $45 million bond on his appeal of the use and occupancy order or pay the required $7.5 million use and occupancy obligation by November 14, 2022. (Creditor Opposition ¶ 13.) Petitioning Creditors claim that Weiss has essentially appealed every adverse ruling and requested stays pending each appeal. (*Id.*) On December 7, 2022 the Second Department of New York's Appellate Division denied all of those various stay requests, dismissed the Weiss-controlled operating companies' appeal of their contempt order, and required, as did the trial court, that Weiss post a $45 million bond in order to appeal the use and occupancy order. (*Id.*)

To date, Weiss has failed to pay approximately $22.5 million in rent and use and occupancy payments, having only made one $7.5 million payment in the span of two years where $30 million was due in total.

d.    *WV Complex Operations During Rent Dispute*

Weiss testified during the Hearing that his management company, Expresso, earned an approximate average in management fees of $1.2 million per year in 2021 and 2022.  (Hr'g Tr. at 31:2–31:10.)  Other than the management fees to Expresso, the remainder of the money generated by the Sublessees was generally funneled to WB LLC during the same period and not subject to any other distributions.  (*Id.* at 35:4-36:7.)  That money was held in accounts in the name of WB LLC or other entities for which Weiss has signing control.  (*Id.*)  Weiss estimated that the account(s) containing that money have approximate totals over $10 million, and likely closer to $20 million.  (*Id.*)

## C.    All Year Bankruptcy

On December 14, 2021, approximately one year after its default and during the pendency of the Rent Action above, All Year filed a voluntary Chapter 11 petition.  (*All Year*, ECF Doc. # 1.)  All Year filed its first proposed plan of reorganization on May 31, 2022.  (*All Year*, ECF Doc. # 123.)  The plan was amended multiple times in the following months until All Year filed its third amended plan of reorganization on December 9, 2022.  ("Third Amended Plan," *All Year*, ECF Doc. # 289.)  On January 31, 2023, this Court entered an Order confirming All Year's Third Amended Plan.  ("Confirmation Order," *All Year*, ECF Doc. # 352.)

## D.    Alleged Debtor Defaults and Bankruptcy

The Petitioning Creditors and the Alleged Debtor claim that Weiss' failure to pay rent or comply with any of the court's orders in the Rent Action caused the Alleged Debtor to wind up in this bankruptcy case.  (*See* Creditor Opposition ¶ 16; Debtor Opposition ¶ 5.)  It is undisputed

that the Alleged Debtor's obligations under the Guaranty were triggered when All Year defaulted

on the Series C Notes in November 2020.  (Hr'g Tr. 118:24–119:21.)

Weiss first failed to pay rent on February 1, 2021.  On February 17, 2021, the Series C

Noteholders declared All Year to be in default.  (Statement of Creditors ¶ 3.)  The following

month, All Year assigned the Mortgage and related loan documents to the Trustee in

consideration for the Trustee's forbearance from exercising remedies under the Deed of Trust.

(*Id.* ¶ 6.)  The Trustee delivered a Demand for Payment under the Deed of Trust and Guaranty

(the "Demand Letter") to Alleged Debtor on September 21, 2022.  (*Id.* ¶ 3.)

Weiss' continued failures to pay rent since February 2021 negatively impacted the

Alleged Debtor's ability to resolve the consequences from All Year's default, ultimately leading

to the Alleged Debtor's involuntary bankruptcy case, commenced by the Petitioning Creditors on

October 6, 2022.  (*See* Petition.)

On October 12, 2022, Weiss informed Alleged Debtor that he did not consent to the

Petition and asked the Alleged Debtor to contest the Petition.  ("Pretrial Order," ECF Doc. # 54 ¶

29.)  Member LLC is the sole managing member of the Alleged Debtor.  In turn, YGWV is the

managing member of Member LLC and half-owner alongside Weiss.  The Member LLC

organizational documents restrict YGWV from consenting to bankruptcy proceedings against the

Alleged Debtor without Weiss' consent.  (*See* "Member LLC Agreement," Ex. A to Bassett

Decl., ECF Doc. # 13 §§ 5.2.5, 5.2.10.)

On October 14, 2022, the Alleged Debtor informed Weiss that it was evaluating whether

there were grounds upon which Alleged Debtor may contest the Petition, in accordance with

Alleged Debtor's fiduciary duties to its constituencies.  (*Id.* ¶ 30.)  The Alleged Debtor filed its

Answer to the Petition on October 27, 2022, but did not consent to the entry of an order for relief.

### E.  The Motion to Dismiss

Weiss filed his Motion to Dismiss on October 27, 2022, on the same day that the Alleged Debtor filed its Answer.  The Court entered a scheduling order establishing a briefing schedule, discovery deadlines, and a January 17–18, 2023 date for the Hearing on the Motion to Dismiss. ("Scheduling Order," ECF Doc. # 39.)

On December 16, 2022, the Alleged Debtor and Petitioning Creditors filed their responses to the Motion to Dismiss.  The Alleged Debtor made clear that it had no ability to consent to the bankruptcy proceedings without Weiss' consent, but did state that it considered bankruptcy to be the most favorable course of action for the business.  (Debtor Opposition ¶ 2.) On January 6, 2023, Weiss filed a reply brief in further support of his Motion to Dismiss.  In parallel, the parties completed a brief discovery period, and after the close of discovery and briefing, submitted a joint pretrial order to the Court which was entered on January 13, 2023. (*See generally* Pretrial Order.)

The Hearing on the Motion to Dismiss was held on January 17, 2023.  (*See* Hr'g Tr. at 207:13-19.)  Three witnesses testified during the Hearing: (1) Mr. Zelig Weiss, who filed the Motion to Dismiss; (2) Mr. Rami Katzav, the Trustee's representative; and (3) Ephraim Diamond, the Associate Restructuring Officer for All Year.  (Pretrial Order, at 6–7.)

## II.   LEGAL STANDARD

### A.  STANDING

The Petitioning Creditors argued that Weiss does not have standing to contest the Involuntary Petition.  Weiss argues that he has three independent bases for standing to bring his

Motion to Dismiss. Those bases are pursuant to: (1) section 303(d) of the Code; (2) section

1109(b) of the Code; and (3) Bankruptcy Rule 2018.

      1.  <u>Section 303</u>

Weiss argues that he has standing under section 303(d) of the Code, which states that:

"The debtor, or a general partner in a partnership debtor that did not join in the petition, may file

an answer to a petition under this section." 11 U.S.C. § 303(d).

      2.  <u>Section 1109</u>

Weiss also claims that he has standing pursuant to section 1109(b) of the Code, which

states that: "A party in interest, including the debtor, the trustee, a creditors' committee, an equity

security holders' committee, a creditor, an equity security holder, or any indenture trustee, may

raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. §

1109(b).

      3.  <u>Rule 2018</u>

Finally, Weiss claims that the Court should grant him standing pursuant to Bankruptcy

Rule 2018(a), "Permissive Intervention," which states that: "In a case under the Code, after

hearing on such notice as the court directs and for cause shown, the court may permit any

interested entity to intervene generally or with respect to any specified matter." FED. R. BANKR.

P. 2018(a).

**B. DISMISSAL**

Weiss argues that dismissal and/or abstention are warranted under two different sections

of the Code: (1) section 1112(b)(1); and (2) section 305(a)(1).

1.   Section 1112(b)(1)

First, Weiss argues that dismissal is warranted under Section 1112(b)(1) of the Code,

which states that:

> Except as provided in paragraph (2) and subsection (c), on request of a party
> in interest, and after notice and a hearing, the court shall convert a case
> under this chapter to a case under chapter 7 or dismiss a case under this
> chapter, whichever is in the best interests of creditors and the estate, for
> cause unless the court determines that the appointment under section
> 1104(a) of a trustee or an examiner is in the best interests of creditors and
> the estate.

11 U.S.C. § 1112(b)(1).[5]

In evaluating whether to dismiss an involuntary petition for cause, courts in this Circuit

consider the following nine factors:

(1)   whether the bankruptcy court was the "most recent battlefield in a long-running, two-party dispute;"
(2)   whether the case was brought solely to enforce a judgment;
(3)   whether there are any "competing" creditors;
(4)   the need for *pari passu* distribution;
(5)   the extent to which the petitioner can obtain avoidance of fraudulent transfers in another forum;
(6)   whether the petitioner has adequate remedies under non-bankruptcy law;
(7)   whether the petitioner invoked the bankruptcy laws solely to secure a benefit that could not be obtained under non-bankruptcy law and without a creditor community to protect;
(8)   whether assets would be lost or dissipated in the event the bankruptcy case did not continue; and
(9)   the alleged debtor's "want or need [for] a bankruptcy discharge."

*See In re Murray*, 543 B.R. 484, 492 (Bankr. S.D.N.Y. 2016), *aff'd*, 565 B.R. 527 (S.D.N.Y. 2017),

*aff'd*, 900 F.3d 53 (2d Cir. 2018).

---

[5]   No party has raised the applicability of the exceptions referenced in paragraph (2) or subsection (c).

2. <u>Section 305(a)(1)</u>

Weiss next seeks dismissal and abstention pursuant to section 305(a) of the Code, which

permits a court to abstain from hearing, and dismiss, any bankruptcy case when "the interests of

creditors and the debtor would be better served by such dismissal . . . ." 11 U.S.C. § 305(a)(1).

A court's determination whether to abstain and dismiss pursuant to section 305(a)(1) is a

fact-intensive inquiry that entails consideration of the totality of the circumstances. *In re*

*Monitor Single Lift I, Ltd.*, 381 B.R. 455, 464 (Bankr. S.D.N.Y. 2008). This Court and others

have considered the following seven factors in making this determination:

(1)    the economy and efficiency of administration;
(2)    whether another forum is available to protect the interests of both parties or there is already a pending proceeding in a state court;
(3)    whether federal proceedings are necessary to reach a just and equitable solution;
(4)    whether there is an alternative means of achieving an equitable distribution of assets;
(5)    whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case;
(6)    whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and
(7)    the purpose for which bankruptcy jurisdiction has been sought.

*See id.* at 464–65 (citations omitted).

## III.    <u>DISCUSSION</u>

At the conclusion of the Hearing, the Court concluded that even if Weiss had standing to

bring the Motion to Dismiss, he failed to show that dismissal and/or abstention are warranted

under sections 305 and 1112 of the Bankruptcy Code. As a result, the Court **DENIED** the

Motion to Dismiss.

### A.  Standing

Weiss raises multiple, purportedly independent, bases for standing, including: (A) section

303(d) of the Code; (B) section 1109(b) of the Code; and (C) Bankruptcy Rule 2018. The Court

concluded that Weiss failed to establish cause for dismissal even if he has standing here. Therefore, it is unnecessary to determine whether any of the bases offered by Weiss actually provide him with standing.  Weiss' standing is assumed for purposes of this Opinion.

### B.  Dismissal

Weiss seeks dismissal and/or abstention pursuant to two different sections of the Code: (A) section 1112; and (B) section 305.  Weiss fails to prove that dismissal or abstention are warranted under either section.

### 1.  Dismissal Pursuant to Section 1112(b)

Weiss first seeks dismissal pursuant to section 1112(b)(1) of the Code, which permits dismissal "for cause."  11 U.S.C. 1112(b)(1).  Weiss does not argue that any of the examples of cause in section 1112(b)(4) are applicable, and instead focuses on the broader notion of "cause" in the context where an involuntary petition is filed by a creditor.  (*See* Motion to Dismiss ¶¶ 27–29; Hr'g Tr. 189:13–191:12.)

In evaluating whether to dismiss an involuntary petition for cause, courts in this Circuit consider the following nine factors:

(1)    whether the bankruptcy court was the "most recent battlefield in a long-running, two-party dispute;"

(2)    whether the case was brought solely to enforce a judgment;

(3)    whether there are any "competing" creditors;

(4)    the need for *pari passu* distribution;

(5)    the extent to which the petitioner can obtain avoidance of fraudulent transfers in another forum;

(6)    whether the petitioner has adequate remedies under non-bankruptcy law;

(7)    whether the petitioner invoked the bankruptcy laws solely to secure a benefit that could not be obtained under non-bankruptcy law and without a creditor community to protect;

(8)    whether assets would be lost or dissipated in the event the bankruptcy case did not continue; and

(9)    the alleged debtor's "want or need [for] a bankruptcy discharge."

*See In re Murray*, 543 B.R. 484, 492 (Bankr. S.D.N.Y. 2016), *aff'd*, 565 B.R. 527 (S.D.N.Y. 2017),

*aff'd*, 900 F.3d 53 (2d Cir. 2018).

The parties agree that these are the relevant factors for the analysis here.

### a.      Factors 1 & 2

Weiss concedes that factors one and two are technically not present here.  Weiss attempts

to expand factor two, however, by arguing that the Petitioning Creditors seek to collect on the

Guaranty, which is akin to enforcement of a judgment.  Weiss cites no support for this expansive

application of factor two, and the Court finds no persuasive reason to equate Petitioning

Creditors' potential claim on the Guaranty with a judgment.  Many creditors are likely to have

claims that are capable of being reduced to an enforceable judgment, but that is not the purpose

behind factor two's inquiry.  Indeed, in *Murray*, the Second Circuit's focus was whether

creditors were using bankruptcy as a "judgment enforcement device," when other fora are better-

suited to that purpose.  *See In re Murray*, 900 F.3d at 61.  The Petitioning Creditors do not have

a judgment they are seeking to enforce.  In sum, factors one and two do not weigh in favor of

dismissal.

### b.      Factors 3 & 4

The parties widely differ in their positions on the extent of competing creditors and the

need for *pari passu* distribution, which are factors three and four.

The Petitioning Creditors allege that there are at least three groups of creditors (or

potential claimants) that are relevant to these factors.  First, they identify creditors relating to the

Series C Notes, including the Trustee and Series C Noteholders,[6] the latter of which are entitled to

---

[6]      Counsel for the Petitioning Creditors represented at the Hearing that there are twenty-nine Series C
Noteholders.  (Hr'g Tr. 205:25–206:9.)

their *pro rata* share of the Guaranty obligation, which requires *pari passu* distribution. Second,

they claim that Weiss himself purports to be a creditor; indeed, the Court agrees that this is

accurate based on Weiss' representations about possible claims against the Alleged Debtor.[7]

Third, the Petitioning Creditors note that Weiss acknowledges "a number of other creditors,"

which may include mechanic's lien claimants, whose claims have resulted from Weiss' failure to

pay vendors in operating the WV Complex. (Creditor Opposition ¶ 60.) Evidence from the

Hearing shows that there are approximately seven mechanic's liens claims against the WV

Complex, asserted for approximately $7 million total. (Hr'g Tr. at 67:16–68:22.) One of the

liens is the subject of a suit that has been asserted against both the Alleged Debtor and WB LLC

for approximately $1.4 million. (*Id.*)

      In his Reply, Weiss argues that the Petitioning Creditors have not identified any

additional creditors of the Alleged Debtor apart from the Trustee and the Series C Noteholders.

Weiss fails to acknowledge the full extent of creditors and claimants detailed above.

      First, Weiss has abandoned his argument that the Trustee is the only potential creditor on

behalf of the Series C Noteholders, and thus implicitly recognizes that there are at least dozens of

creditors with respect to that obligation alone. (*See* Reply, at 9 n. 5) Second, Weiss utterly

---

[7]    (*See* Motion to Dismiss ¶ 24.) This is also relevant to the extent that status as a "creditor" provides Weiss
with his only possible explicit basis for standing under the provisions of the Bankruptcy Code, pursuant to section
1109. *See* 11 U.S.C. § 1109(b) ("A party in interest, including the debtor, the trustee, a creditors' committee, an
equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may
appear and be heard on any issue in a case under this chapter.")

      While the Court makes no determination regarding standing, Weiss' other arguments depend on his
claimed status as a shareholder-of-a-shareholder of the Alleged Debtor. Neither the plain language in section 303
nor section 1109 provide standing based on such status, and as a result, Weiss' arguments to establish standing
under those provisions are novel at best, and unsupported at worst. Furthermore, Weiss' purported non-statutory
basis for standing under Bankruptcy Rule 2018 depends on two factors that weigh against him here, regardless of
whether he is a creditor or some other type of interested entity. *See In re Ionosphere Clubs, Inc.*, 101 B.R. 844, 853
(Bankr. S.D.N.Y. 1989) (observing that when determining whether to allow an interested entity to intervene
pursuant to Bankruptcy Rule 2018(a), courts consider (1) the extent to which the "intervenor's interests are already
adequately represented" and (2) whether "intervention would result in undue delay or prejudice to the original
parties") (citation omitted).

failed to provide any legal or factual explanation for how his own status as an alleged creditor affects the third and fourth factors. Third, Weiss observes that the Petitioning Creditors concede that the mechanic's liens claimants are not technically the Alleged Debtor's creditors at present moment, but he fails to acknowledge that those claims still bear on the Alleged Debtor's assets and may have some intersection with the bankruptcy proceeding. (*See* Creditor Opposition ¶ 61 n. 12.) And while Weiss states that any other creditor claims like the mechanic's liens will "pale in comparison to the amount of obligations purportedly due under the Guaranty" (Motion to Dismiss ¶ 30), the amount of competing creditor claims is not part of the determination under the *Murray* factors. The Court considers it uncontroversial that small and large claims alike may warrant protection in bankruptcy proceedings.

In sum, the Court finds that there are likely multiple competing creditors, and that a *pari passu* distribution will be necessary with respect to certain creditors, such that factors three and four weigh against dismissal.

> c.    *Factors 5 & 6*

Under factors five and six, Weiss argues that the Petitioning Creditors have adequate remedies under state law to enforce the Guaranty, and, to the extent applicable, they can assert fraudulent transfer actions in state court. The Petitioning Creditors do not actually appear to dispute the adequacy of the relief non-bankruptcy courts would be able to provide for Petitioning Creditors' own claims or possible fraudulent transfers. Thus, factors five and six weigh in favor of dismissal.

> d.    *Factor 7*

Like factors five and six, the seventh factor compares the adequacy of relief in bankruptcy and non-bankruptcy courts. Unlike the former two factors, however, the seventh

factor looks more widely at the Alleged Debtor's potential bankruptcy proceeding beyond just the Petitioning Creditors' claims and remedies. *See In re Murray*, 543 B.R. at 492 (asking whether, under the seventh factor, the petitioning creditor "is seeking bankruptcy solely to secure a benefit that it does not have under nonbankruptcy law, without a creditor community to protect whose needs might justify the invocation of bankruptcy law").

Here, the Petitioning Creditors argue that the benefits sought in the bankruptcy court are tied to the legitimate purposes of the bankruptcy system, and are not an "improper exploitation of the bankruptcy system." *Id.* at 484. Specifically, the Petitioning Creditors argue that in the absence of a bankruptcy proceeding, there would be: (1) a foreclosure action in state court on the Mortgage; (2) a need to resolve the Alleged Debtor's obligations under the Guaranty; (3) a need to resolve the mechanic's liens that would affect estate assets; (4) the Alleged Debtor's existing lawsuits against Weiss; and (5) additional claims filed by the Alleged Debtor against Weiss based on his conduct. This does not include Weiss' own hypothetical claims against the Alleged Debtor, should he bring them. Petitioning Creditors claim that the benefit sought—consolidating litigation involving, and claims against, the Alleged Debtor—is consistent with the benefit of the judicial and economic advantages offered by a chapter 11 proceeding. (Creditor Opposition ¶ 61.) The Court agrees.

Weiss does not offer any persuasive countervailing arguments. The Court considers that the issues with Weiss' arguments on this factor become more apparent when the factor is broken down into its two parts: (i) existence of a creditor community to protect; and (ii) whether bankruptcy is sought to secure a benefit that is not obtainable outside bankruptcy.

i.    Existence of a Creditor Community

As discussed above in the context of factors one and three, the Petitioning Creditors describe a number of disputes involving the Alleged Debtor. These disputes involve various potential claims against the Alleged Debtor by multiple creditors, and thus make out the existence of a creditor community. Weiss does not meaningfully contest that such a community exists. Instead, he attacks the need for protection by attempting to minimize the complexity of the disputes to make them seem more amenable to non-bankruptcy resolution. These arguments lack merit.

First, with respect to the existence of a creditor community, Weiss claims that only one of the disputes described—the state court litigation regarding rent under WB LLC's lease— involves pending litigation. Nothing in the caselaw cited by the parties constrains consideration of creditors' claims or disputes affecting the estate to those that are the subjects of active litigation.

Second, Weiss attempts to minimize the numerosity of creditors and diversity of interests in the creditor community. He characterizes the disputes between himself and the Alleged Debtor, on the one hand, and between the Alleged Debtor, Noteholders, and Trustee, on the other, as constituting a single dispute. He claims that the involuntary case is:

> a collection mechanism in what is essentially a two—or at most, three—party dispute and as an exercise in tactical forum shopping, based on the Petitioning Creditors' apparent frustration with progress in the State Court Action.

(Reply ¶ 28.)

Two assertions here cut against Weiss' arguments. First, Weiss' suggestion that the Petitioning Creditors filed the Petition as a means to circumvent the state court litigation overlooks that the Petitioning Creditors are not even parties to that litigation. Furthermore,

Weiss says nothing about whether the foreclosure action or an action on the Guaranty obligations could be resolved in the pending state court litigation between Weiss and Alleged Debtor.  The Court finds it likely that they could not, as the Petitioning Creditors suggest.

Second, Weiss ultimately recognizes that there is a three-party dispute playing out here between Weiss, the Alleged Debtor, and the Noteholders.  A three-party dispute is already more than is required under *Murray*, which recognized that even a two-party dispute might be fit for a bankruptcy case.  *See Murray*, 543 B.R. at 493 ("[T]he existence of a two-party dispute does not, by itself, warrant dismissal of a case where there are other legitimate bankruptcy objectives to achieve.").

Moreover, the disputes here are among *at least* three parties (not *at most* three, as Weiss claims) and implicate important bankruptcy objectives.  As already mentioned, Weiss has recognized that the Noteholders consist of many different creditors, and do not constitute a single party.  (*See* Reply, at 9 n. 5.)  More importantly, even if the Noteholders and Trustee are counted as one "party" for the purposes of the potential disputes, this three-party dispute between a debtor and two distinct creditor factions poses impediments to resolving their claims in one forum and making orderly distributions on those claims.  Those are impediments the bankruptcy system is meant to overcome, and the reason why factors one and three ask whether the bankruptcy is part of a two-party dispute or whether there are competing creditors.  Of course, the Court has already resolved those particular factors in Petitioning Creditors' favor.

Ultimately, what Weiss minimizes as barely more than a two-party dispute actually describes at least two creditor groups with different claims against the same insolvent debtor that cannot bring those claims in the same forum or litigation—a situation that generally benefits

from the protections of bankruptcy.  Moreover, this discussion does not even count the

mechanic's lien claims or any other potential claims.

The Petitioning Creditors have established that the creditor community justifies the

protections of the bankruptcy court in this case.  Instead of contesting those facts, Weiss

effectively argues that the case only contains a handful of disputes, and is relatively

uncomplicated beyond the resolution of the Noteholders' claims.  That is not a meritorious

response on the seventh factor or any other factor.

ii.    <u>Reason Bankruptcy is Sought</u>

Without a strong argument to deny the existence of a creditor community, Weiss devoted

most of his argument to the seventh factor, focusing on the Petitioning Creditors' reasons for

filing the Petition.  Nevertheless, Weiss fails to show that the Petitioning Creditors filed for an

impermissible reason, such that factor seven would tilt in his favor.

Weiss failed to show that the Petitioning Creditors had an impermissible motive for

filing.  Weiss claims that Petitioning Creditors "remain motivated to seek opportunistic ways to

increase their recoveries."  (Motion to Dismiss ¶ 10.)  Presumably every creditor that files an

involuntary petition does so to maximize their chances for a recovery; but that, standing alone, is

not impermissible.  Weiss does not explain what "opportunistic ways" the Petitioning Creditors

are seeking to use the bankruptcy system.  Weiss also claimed that the timing and circumstances

of this filing in relation to the All Year bankruptcy case "suggests that the Petitioning Creditors

filed the Petition to obtain some tactical advantage or benefit of the bankruptcy laws."  (*Id.* ¶ 30.)

But again, Weiss did not explain what that advantage was or why it was impermissible.

Weiss claimed to need discovery to understand the extent of Petitioning Creditors'

motives (*see id.*), but did not make any better showings of impermissible motive at the Hearing.

For example, Weiss claimed in briefing that the recited series of disputes involving the Alleged Debtor were "transparent post hoc justifications" by the Petitioning Creditors. (Reply ¶ 28.)

Weiss elicited testimony from Trustee's representative, Mr. Rami Katzav, that the Trustee was not aware of the mechanic's liens until after the Trustee filed the Petition. (Hr'g Tr. at 154:14–15.) But that does not suggest an impermissible motive. First, and as the Court has already explained, proceeding in the bankruptcy court could be appropriate even in a three-sided dispute absent these mechanic's liens. Moreover, the fact that the Petitioning Creditors developed additional justifications for their case after the Petition was filed is not probative of a lack of valid reason in bringing the Petition in the first place, which is what Weiss seems to suggest. The existence of the liens only helps to support the Petitioning Creditors' arguments, regardless of when they learned of those liens.

Weiss also tried to show improper motive by eliciting testimony from Mr. Katzav that after the Petition was filed in this case, the Trustee sent the Alleged Debtor a term sheet proposal for debtor-in-possession financing that included an agreement by the Alleged Debtor to remove the Rent Action to this Court. (Hr'g Tr. 112:21–113:2.) But the Trustee's desire that the dispute between Weiss and the Alleged Debtor be resolved in this Court is not some impermissible ulterior motive—indeed, the Trustee and Mr. Katzav were quite clear that they wished to see all disputes involving the Alleged Debtor resolved in a single forum.[8] This is a permissible reason to commence a voluntary or involuntary bankruptcy case.

Weiss misconstrues factor seven's subjective aspects relating to the Petitioning Creditors' motives for filing the Petition. His argument confuses the simple fact that the Petitioning

---

[8]     *See id.* 116:17-13 (Mr. Katzav testified that "we want to handle the foreclosure, the guaranty of the bond claim, the lease and default and any lawsuits, these things we think, under this roof, we'd like to end. Otherwise, we'll have a lot of issues, and then we'll need a lot of time to prove. So, these are the issues we need to administer under the Code. Maybe there is more, I don't know, but according to now, this is what I know.")

Creditors had an objective in filing an involuntary bankruptcy case as being an improper motive.

A desire to achieve the benefits of the bankruptcy process is not disqualifying where the case is

otherwise appropriately filed in a bankruptcy court.  *See In re RCM Global Long Term Capital*

*Appreciation Fund, Ltd.*, 200 B.R. 514, 522 (Bankr. S.D.N.Y. 1996) (holding that where a party

"file[s] for chapter 11 relief to take advantage of certain provisions of the Bankruptcy Code, this,

in and of itself, does not constitute bad faith" rising to the level of "cause" for dismissal under

section 1112(b)).

In sum, the seventh factor weighs against dismissal.

> e.    *Factor 8*

With respect to the eighth factor, Weiss argues that no assets are at risk of being

dissipated or lost because Alleged Debtor's primary asset is the WV Complex, which consists of

real property and improvements.  (Motion to Dismiss ¶ 30.)  While "loss" of real property itself

may be less of concern, Weiss provides no support for the assertion that real property—or

improvements on real property—are less susceptible to dissipation, by definition.

The Petitioning Creditors oppose Weiss on this point.  They claim that Alleged Debtors

themselves have no insight into the physical state or financial condition of the WV Complex,

because as lessee, Weiss has failed to provide required and necessary information about the WV

Complex or its finances.  (Creditor Opposition ¶ 63.)  This was supported by evidence at the

Hearing showing that the Weiss-affiliated entities have failed to provide information about the

operations at the WV Complex pursuant to a court order in the Rent Action.

Therefore, Petitioning Creditors claim it is unclear how Weiss' activities are affecting the

value of the asset.  Weiss' testimony admitted that the property has generated substantial revenue

that Weiss has used to pay himself management fees and his attorneys' fees, but has not been

used to pay rent, giving rise to the payment default to the Petitioning Creditors. The Petitioning
Creditors observe that the oversight available in bankruptcy cases would help to remedy this
issue. Petitioning Creditors make the more compelling argument.

Thus, the eighth factor weighs against dismissal.

###### f.    Factor 9

Weiss does not address the ninth factor—the alleged debtor's want or need for a
bankruptcy discharge. While the Alleged Debtor may not be able to consent to the bankruptcy
proceeding, it is clear from the Alleged Debtor's submissions that the benefits of the bankruptcy
case, including a potential discharge, would be welcomed in its current circumstances. (*See*
Debtor Opposition ¶ 46.)

* * *

In sum, the only *Murray* factors that weigh in favor of dismissal are factors four and five.
The Court considers that the remaining factors eclipse those two in showing that there is no
cause to dismiss this bankruptcy proceeding for cause under section 1112 of the Code.

Weiss' real gripe is with the Petitioning Creditors' involvement in All Year's bankruptcy
case. In light of the very substantial payment defaults it would, indeed, be shocking if the
Petitioning Creditors were not actively involved in both cases. There is nothing inherently
wrong with the same creditor participating in the bankruptcies of two related entities to protect
its interests in each case. To the extent that Weiss has claims against the Alleged Debtor, those
claims too can be raised in this case.

### 2.    Dismissal Pursuant to Section 305(a)(1)

Weiss next seeks dismissal and abstention pursuant to section 305(a) of the Code, which
permits the Court to abstain from hearing, and dismiss, any bankruptcy case when "the interests

of creditors and the debtor would be better served by such dismissal . . . . " 11 U.S.C. §

305(a)(1).

A court's determination whether to abstain and dismiss pursuant to section 305(a)(1) is a

fact-intensive inquiry that entails consideration of the totality of the circumstances.  *In re*

*Monitor Single Lift I, Ltd.*, 381 B.R. 455, 464 (Bankr. S.D.N.Y. 2008).  This Court and others

have considered the following seven factors in making this determination:

(1)   the economy and efficiency of administration;
(2)   whether another forum is available to protect the interests of both parties or there is already a pending proceeding in a state court;
(3)   whether federal proceedings are necessary to reach a just and equitable solution;
(4)   whether there is an alternative means of achieving an equitable distribution of assets;
(5)   whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case;
(6)   whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and
(7)   the purpose for which bankruptcy jurisdiction has been sought.

*See id.* at 464–65 (citations omitted).

Weiss leans heavily on the seventh factor going to subjective intent.  Courts in this

district have observed it is "the most important factor," because the bankruptcy process should

not be used as a "debt collection tool."  (Motion to Dismiss ¶ 33 (quoting *In re Persico*

*Contracting & Trucking, Inc.*, No. 10-22736, 2010 WL 3766555, at *4 (Bankr. S.D.N.Y. Aug.

20, 2010)).)  The *Persico* court explained:

> With regard to the last factor which again is often stated as the most important factor *although not dispositive*, it is frequently recognized that an involuntary Chapter 11 case *particularly where that involuntary appears to be a two-party dispute*; i.e., the petitioning creditors on the one hand and the debtor on the other, should not be used as a debt collection tool.

*Persico Contracting & Trucking*, 2010 WL 3766555 at *4 (emphasis added).  Weiss glosses over

the emphasized portions.

First, the final factor it is not, in any event, dispositive. Second, the concerns about bankruptcy being used as a debt collection tool are clearly motivated by disputes that are between two parties, which is not the case here. As discussed in the section 1112(b) analysis, Weiss fails to acknowledge the full extent of parties and disputes in this case. Moreover, just because the petitioning creditors' claims against an alleged debtor may be characterized as part of a *two-sided* dispute, that obviously does not mean that administration of the bankruptcy case will be limited solely to resolution of that dispute. *See, e.g.*, *Monitor Single Lift*, 381 B.R. at 458 (denying motion to abstain and dismiss under section 305 where petitioning creditors consisted solely of bondholders and bondholder trustee). Thus, the purpose for which bankruptcy jurisdiction has been sought is not impermissible based on the concerns for that factor in the caselaw.

Weiss only addresses one other section 305(a)(1) factor in cursory fashion—factor two, which asks whether another forum is available to protect the interests of the parties. Weiss observes that there is a choice-of-venue provision in the Guaranty that precludes the Alleged Debtor from objecting to suits, actions or proceedings initiated by the Trustee in any federal or state court located in Kings County, New York, or in any competent court in Tel Aviv-Jaffa, Israel. (Motion to Dismiss ¶ 35 (citing Guaranty ¶ 27).) Thus, Weiss argues, there is an adequate forum to protect the parties' interests.

This is not persuasive. First, Weiss contends that factor two is satisfied because suit could be brought on the Guaranty claims in other contractually recognized forums. This ignores that factor two focuses on the *adequacy* of other forums, and must be considered alongside the remaining factors that similarly compare the relative advantages and disadvantages to the creditors and debtor in alternative forums. Indeed, if the mere existence of other fora were

sufficient, this Court could have skipped much of its analysis in *Monitor Single Lift*, where the

parties acknowledged that insolvency proceedings were possible in two other countries.  *See*

*Monitor Single Lift*, 381 B.R. at 460–62.

Moreover, Weiss' continued myopic focus on the Guaranty claims misses another point.

Because even if he is right that there are alternative *and* adequate fora for resolving the Guaranty

claims, that is not the entirety of the inquiry.  Resorting again to *Monitor Single Lift* as the parties

do, comparative determinations about litigation in other fora under the section 305 factors are not

made solely with respect to the debtor and one of its creditors.  Instead, determinations on the

relevant factors are made with respect to the debtor and all relevant creditors.

Indeed, *Monitor Single Lift* involved objectors who argued that this Court should have

abstained given the possibility of liquidation proceedings in the United Kingdom or Cayman

Islands.  *Id.*  Such liquidation proceedings would have been broad in scope and able to resolve a

multitude of claims against the debtor beyond those of the petitioning creditors.  In contrast,

Weiss does not argue that there is another forum equipped to resolve all or even most claims

against the estate.  Instead, the result he argues for is resolution of claims in a fractured series of

actions in various courts against an entity that is alleged to be insolvent—a textbook scenario

where bankruptcy proceedings often provide appropriate relief.

While Weiss only engages with the second and seventh factors, the Petitioning Creditors

engaged with the remaining factors.  Under the first and third factors, the Petitioning Creditors

argue that the proceedings present the best route to deal with issues regarding the Alleged

Debtor's financial and commercial status, including the mortgage on the WV Complex, any

mechanic's liens that may affect the value of that asset, and the amounts owed under the Alleged

Debtor's Guaranty of the Series C Bonds.  Moreover, they contend that this will also be

beneficial in resolving disputes with Weiss.  The Court agrees that providing a consolidated forum for these issues promotes "economy and efficiency of administration," and indeed, may be "necessary to reach a just and equitable solution," under the first and third factors.  *See Monitor Single Lift*, 381 B.R. at 464–65.

For the fourth factor, the Petitioning Creditors claim that there are no more efficient means of achieving equitable distribution of assets than a bankruptcy proceeding, which will "gather all creditors and all claims (including those Weiss claims he has) under a single judicial roof for efficient resolution."  (Creditor Opposition ¶ 69.)

For the fifth factor, the Petitioning Creditors argue that given the years-long litigation campaign and parties' failure to achieve a settlement through earnest mediation in the All Year bankruptcy, it is unfortunately clear that an out-of-court solution is out of reach at this time.  (*Id.* ¶ 70.)

For the sixth factor, the Petitioning Creditors claim that there is no parallel non-federal insolvency proceeding such that these proceedings would be akin to "starting afresh."  *Monitor Single Lift*, 381 B.R. 464–65.

Nothing in Weiss' arguments or in the record controverts that factors one, three, and four through six support denying the motion to abstain.  Weiss' arguments on the second and seventh factors are not persuasive.  Neither abstention nor dismissal are warranted pursuant to section 305(a)(1) of the Code.

## IV.    <u>CONCLUSION</u>

For the reasons explained above, Weiss' Motion to Dismiss the Petition was **DENIED**

and the Order for Relief was entered.

Dated: February 6, 2023
New York, New York

*Martin Glenn*
_____
MARTIN GLENN
Chief United States Bankruptcy Judge
