**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------x
In re:                                                                   NOT FOR PUBLICATION

    WYTHE BERRY FEE OWNER LLC,                           Chapter 11

                                         Debtor.            Case No. 22-11340 (MG)
------------------------------------------------------------------------x

**MEMORANDUM OPINION**
**GRANTING THE USE OF CASH COLLATERAL**

*A P P E A R A N C E S:*

HERRICK, FEINSTEIN LLP
*Proposed Counsel to the Debtor*
Two Park Avenue
New York, New York 10016
By:    Stephen B. Selbst, Esq.
         Avery S. Mehlman, Esq.
         Janice Goldberg, Esq.
         Zachary Denver, Esq.

PAUL HASTINGS LLP
*Counsel to Zelig Weiss*
200 Park Avenue
New York, New York 10166
By:    Kristopher M. Hansen, Esq.
         Nicholas A. Bassett, Esq.
         Jason M. Pierce, Esq.
         Will Clark Farmer, Esq.

CHAPMAN AND CUTLER
*Counsel to Mishmeret Trust Company, Ltd.; Klirmark Opportunity Fund III L.P, Yelin Lapidot Provident Funds Management Ltd. and The Phoenix Insurance Company Limited,*
320 South Canal Street, 27th Floor
Chicago, Illinois 60606
By:    Eric S. Silvestri, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court was a motion (the "Cash Collateral Motion," ECF Doc. # 72) filed by Wythe Berry Fee Owner LLC (the "Debtor" or "Fee Owner") seeking entry of an order (the "Cash Collateral Order"), pursuant to sections 105, 361, 362, 363, 503 and 507(b) of the Bankruptcy Code and Rules 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure, (a) authorizing the Debtor's use of cash collateral; (b) granting adequate protection to Mishmeret Trust Company Ltd., solely in its capacity as Trustee of the Series C Bonds ("Mishmeret" or the "Trustee"), pursuant to Bankruptcy Code sections 105, 361, 362, 363, and 507; (c) vacating and modifying the automatic stay arising under section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the Cash Collateral Order; and (c) granting related relief.

Also pending before the Court was the Stipulation, Agreement and Order Regarding Consent to Removal of Certain State Court Litigation (the "Removal Stipulation," ECF Doc. # 83), which seeks as a condition of the consensual Cash Collateral Motion to remove the Debtor's state court action (Index No. 514152/2021) against Zelig Weiss ("Weiss"), his partner, Yoel Goldman ("Goldman"), and WB LLC to this Court. The Debtor submitted an amended cash collateral order (the "Amended Order"), which reflects certain changes to the Cash Collateral Order.

The Court held a hearing on the Cash Collateral Motion on March 2, 2023. That same day the Court entered an order (ECF Doc. # 91) approving the Cash Collateral Motion and entered the Removal Stipulation (ECF Doc. # 90.) The Court writes separately here to explain its reasoning for approving the Cash Collateral Motion and the Removal Stipulation.

## I. BACKGROUND

### A. General Background

On October 6, 2022, Mishmeret, Yelin Lapidot Provident Funds Management Ltd., The Phoenix Insurance Company Limited, and Klirmark Opportunity Fund III L.P. (each a "Petitioning Creditor" and together the "Petitioning Creditors") filed an involuntary petition (the "Involuntary Petition") seeking an Order for Relief pursuant to section 303 of the Bankruptcy Code against the Debtor. (Cash Collateral Motion ¶ 3.) On January 18, 2023, the Court entered an Order for Relief (ECF Doc. # 57) against the Debtor. (*Id.* ¶ 4.) The Debtor continues in possession of its property and continues to operate and manage its business, to the extent required, as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. (*Id.* ¶ 7.) No trustee or committee has been appointed in this case. (*Id.* ¶ 8.)

Fee Owner is the owner of the William Vale Hotel, which was developed by Weiss and his partner Goldman and completed in 2016. (*Id.* ¶ 9.) Fee Owner's sole asset is the William Vale Hotel and its surrounding complex, and Fee Owner's sole business is to lease that asset. (*Id.* ¶ 17.) In 2017, Goldman and Weiss refinanced the mortgage on the William Vale Hotel in a transaction in which: (1) All Year Holdings Limited ("All Year") issued bonds on the Tel Aviv Stock Exchange; (2) All Year loaned the proceeds from the bond issuance to Fee Owner, which loan was secured by a mortgage on the William Vale Hotel; and (3) Fee Owner leased the William Vale Hotel to Wythe Berry LLC (the "Lessee"), an entity owned by Weiss and Goldman,. (*Id.* ¶ 9.)

In connection with the refinancing, Goldman and Weiss incorporated several limited liability companies to hold their respective interests in the William Vale Hotel. (*Id.* ¶ 10.) Fee Owner, which has title to the William Vale Hotel, is solely owned and managed by Wythe Berry

3

Member LLC ("Member LLC"). (*Id.*) Member LLC has two owners, Weiss, and YG WV LLC (the "Managing Member"). (*Id.*) The Managing Member is wholly owned by All Year. (*Id.*) All Year was founded in 2014 as a British Virgin Islands Company; it operates as a holding company that, through its direct and indirect subsidiaries—including Managing Member, Member LLC, and Fee Owner—focuses on the development, construction, acquisition, leasing, and management of residential and commercial income-producing properties in Brooklyn, New York. (*Id.* ¶ 11.)

In February 2017, All Year issued Series C Debentures (the "Series C Bonds" and the holders thereof the "Series C Bondholders") in the original principal amount of NIS 617,970,000 under a Deed of Trust dated February 19, 2017 (the "Deed of Trust") between All Year and Mishmeret. (*Id.* ¶ 12.) In connection with the issuance of the Series C Bonds, on February 28, 2017, Fee Owner executed an unsecured Guaranty of Payment (the "Guaranty") in favor of the Trustee with respect to the Series C Bonds. (*Id.* ¶ 13.)

On February 28, 2017, Fee Owner, as lessor, the Lessee, Weiss and Goldman entered into a Lease Agreement (the "Lease") for the William Vale Hotel. (*Id.* ¶ 14.) Weiss and Goldman are guarantors of the Lessee's obligations under the Lease. (*Id.*) Weiss and Goldman are the sole members and owners of the Lessee. (*Id.*) Weiss is the manager of the Lessee and is responsible for all business decisions made by the Lessee. (*Id.*)

The rent payable under the Lease was structured to enable Fee Owner to service the Amended and Restated Promissory Note, dated as of February 28, 2017 (the "Note"), in the original principal amount of $166,320,000, which is secured by a mortgage against the William Vale Hotel (the "Mortgage"). (*Id.* ¶ 15.) The Note and the Mortgage were originally held by All Year. (*Id.*)

4

On March 16, 2021, by an assignment, the Trustee acquired all right, title, and interest in the Note and Mortgage from All Year. (*Id.* ¶ 16.)

### B.     The Cash Collateral

On February 1, 2021, the Lessee breached the Lease when it failed to make the $7.5 million rent payment when due. The Lessee's failure to make its rent payment was also an Event of Default under the Deed of Trust. (*Id.* ¶ 18.) On May 5, 2021, the Debtor served a Notice of Default on the Lessee and Weiss, advising them that the Lessee was in default of its obligations to (1) pay $7.5 million in rent due on February 1, 2021, and (2) provide the Debtor with the financial reporting due under the Lease. (*Id.* ¶ 22.) On May 20, 2021, the Debtor served a Notice of Cancellation and Termination on the Lessee. (*Id.* ¶ 23.)

On June 11, 2021, the Debtor commenced a state court action against Weiss, the Lessee, and Goldman in the Supreme Court, Kings County (the "State Court"), seeking money damages for unpaid rent by the Lessee. (*Id.* ¶ 24.) On December 6, 2021, the State Court entered an order (the "Payment Order") directing the Lessee to make semi-annual use and occupancy payments of $7.5 million to the Debtor starting February 1, 2022. (*Id.* ¶ 25.) On February 1, 2022, the Lessee complied with the Payment Order and paid the Debtor $7.5 million, which was paid directly to Trustee. (*Id.* ¶ 26.) But on August 1, 2022, the Lessee failed to comply with the Payment Order and did not make the $7.5 million payment owed to the Debtor.

On January 26, 2023, the Lessee made a $7.5 million payment to the Debtor pursuant to the Payment Order that had become due on August 1, 2022 (the "First Post-Petition Payment"). (*Id.* ¶ 27.) On February 1, 2023, the Lessee made another $7.5 million payment to the Debtor (the "Second Post-Petition Payment" together with the First Post-Petition Payment, the "Post-

5

Petition Payments") pursuant to the Payment Order and a Stipulation entered into on January 26, 2023, between the Debtor, the Lessee, and Weiss. (*Id.* ¶ 28.)

All cash in the Debtor's possession or control as of the Petition Date (the "Pre-Petition Collateral") and all cash coming into the Debtor's possession after the Petition Date, including the Post-Petition Payments, rents, and other revenue received, including any funds paid to the Debtor from any source, is cash collateral of the Trustee within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral"). (*Id.* ¶ 29.)

### C. Proposed Use of the Cash Collateral

The Debtor argues that it requires immediate access to liquidity to ensure that it can continue to operate its business during this Chapter 11 Case, preserve the value of its estate for the benefit of all parties in interest, and, most importantly, maximize value for all constituents in this Chapter 11 proceeding. (*Id.* ¶ 32.) Other than the Cash Collateral, the Debtor avers that it does not, at this time, have access to funds sufficient to prosecute this Chapter 11 Case. (*Id.*) The Debtor, therefore, seeks approval to use the Cash Collateral in accordance with the Cash Collateral Order and the Budget. (*Id.*)

### D. Relief Requested

To preserve the Debtor's business and assets for the benefit of its creditors, the Debtor requested that the Court (i) enter a final order, substantially in the form of the Cash Collateral Order, authorizing the Debtor to use the Cash Collateral; (ii) grant adequate protection to pre-petition secured parties; and (iii) grant relief from the automatic stay. (*Id.* ¶ 31.)

The Cash Collateral Order provides, among other things, that the Debtor will be entitled to use the Cash Collateral in accordance with and subject to the terms and conditions set forth therein. (*Id.* ¶ 31.) Generally, the proposed use of Cash Collateral will be consistent with and

6

for the purposes described in the Budget. (*Id*.) The Debtor also requested approval of the Removal Stipulation, which contemplated the removal of the state court action.

Other key provisions of the Cash Collateral Order are as follows:

1. Adequate Protection

As adequate protection, the Debtor will pay to Mishmeret an amount equal to $12.5 Million representing (i) the Cash Collateral held by the Debtor in its pre-petition accounts ("Deposit Accounts") as of the date hereof, less (ii) the amount contained in the Budget (the "Cash Collateral Payment"), which payment the Trustee will apply in accordance with the terms of the Mortgage, reducing the amounts due thereunder, subject to Mishmeret's rights under paragraph 12 of the Cash Collateral Order. (*Id*.) In addition, as adequate protection, the Trustee is granted a post-petition claim (the "Adequate Protection Claim") against the Debtor's estate and: (i) Adequate Protection Liens, (ii) a Section 507(b) Claim, and (iii) Information and Right to Access, all as described more fully in paragraph 8 of the Cash Collateral Order. (*Id*. ¶ 35.)

2. Carve-Out

Under paragraph 9 of the Cash Collateral Order, the Trustee expressly agrees that the Debtor's obligations to the Trustee, and the liens, mortgages, and security interests granted therein to secure the Adequate Protection Claim[1], will be subject in all respects and subordinate to a Carve-Out, which is the sum of the items set forth in paragraph 9. (*Id.* ¶ 36.) The carve-outs include i) UST Fees, ii) all reasonable fees and expenses up to $50,000 incurred by a chapter 7 trustee, iii) any allowed professional fees (subject to certain restrictions if they exceed the budgeted amounts). (Cash Collateral Order ¶ 9.)

---

[1] All capitalized terms used but not defined shall have the meanings ascribed to them in the Cash Collateral Motion.

7

3. <u>Post-Petition Interest and Fees</u>

Under paragraph 10 of the Cash Collateral Order, the Trustee has the right to accrue all unpaid post-petition interest at the rate(s) set forth in the Mortgage and all fees and costs due and payable under the Loan Documents, but only to the extent the value of the Trustee's Collateral exceeds the Pre-Petition Obligations. (*Id.* ¶ 37.) To the extent Trustee's claims under the Prepetition Loan Documents are later found to be under-secured, it will not be entitled to the accrual of any post-petition interest, fees and costs, and any payments made to the Trustee on account of post-petition interest will be re-allocated to payment of principal or accrued and unpaid prepetition interest of the Pre-Petition Obligations. (*Id.*)

4. <u>Limitations on Use of Cash Collateral</u>

Pursuant to paragraph 11 of the Cash Collateral Order, no Pre-Petition Collateral, Cash Collateral, or the Carve-Out may be used by the Debtor to (a) object, contest, or raise any defense to the validity, perfection, priority, extent, or enforceability of any amount due under the Cash Collateral Order, the Loan Documents, or the liens, or claims granted under the Cash Collateral Order or the Loan Documents, (b) assert any Claims and Defenses (as defined in the Cash Collateral Order) or causes of action against Trustee or its respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys, or advisors, (c) seek to modify any of the rights granted to Trustee under the Loan Documents, without prior consent, or (d) pay any amount on account of any claims arising before the Petition Date. (*Id.* ¶ 38.)

5. <u>Payment of Certain Expenses of Trustee</u>

Pursuant to paragraph 12 of the Cash Collateral Order, the Trustee may pay the costs, fees, charges, and expenses (including without limitation the fees and expenses of its counsel and other professionals and advisors the Trustee retains or employs) which would otherwise be

8

applied to pay down prepetition debts without further application to the Court or notice to any person or entity. (*Id.* ¶ 39.)

6. Perfection of Post-Petition Replacement Liens and Lift of Stay

Paragraph 14 of the Cash Collateral Order vacates and modifies the automatic stay provisions of section 362 of the Bankruptcy Code to permit the Debtor and the Trustee to undertake and perform all acts and take all actions necessary to implement the Cash Collateral Order and to allow the Debtor to create, and the Trustee to perfect, any liens, mortgages, and security interests granted thereunder; provided, however, that the Trustee will not be required to file or record UCC financing statements, patent filings, trademark filings, copyright filings, mortgages, notices of lien, or other instruments with any other filing authority to perfect any lien, mortgage, or security interest granted by the Cash Collateral Order or take any other action to perfect such liens, mortgages, and security interests. (*Id.* ¶ 40.) If, however, the Trustee elects for any reason to file, record, or serve any such financing statements or other documents with respect to such liens and security interests, the Debtor will execute same upon request. (*Id.*) The filing, recording, or service thereof (as the case may be) will be deemed to have been made at the time and on the Petition Date. (*Id.*)

7. Termination Events

Under paragraphs 15 and 16 of the Cash Collateral Order, Termination Events set forth therein terminate the Debtor's ability to use the Cash Collateral upon written notice by the Trustee to the Debtor's counsel. (*Id.* ¶ 41.)

8. Reports, Books, and Records

Pursuant to paragraph 17 of the Cash Collateral Order, the Debtor will provide the Trustee with the requested written reports. (*Id.* ¶ 44.) In connection with that responsibility, the

9

Debtor will keep its books and records as set forth in the Cash Collateral Order. (*Id.*) Trustee and its professional advisors will have the right, at any time to inspect, audit, examine, check, make copies of, or extract from the books, accounts, checks, orders, invoices, bills of lading, correspondence, and other records of the Debtor, and the Debtor will make all of same available to Trustee and its representatives, for such purposes. (*Id.*)

        9. <u>Section 522</u>

The Debtor represents, acknowledges, stipulates, and agrees that the Trustee will be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the "equities of the case" exception under section 552(b) of the Bankruptcy Code will not apply to Trustee with respect to proceeds, products, offspring, or profits of any of the Pre-Petition Collateral. (*Id.* ¶ 45.)

        10. <u>Section 506(c) Claims</u>

Under paragraph 20 of the Cash Collateral Order, except to the extent of the Carve-Out, as a further condition of the authorization to use the Cash Collateral, no costs or expenses of administration of the Debtor's Chapter 11 Case or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, will be charged or assessed against or recovered from the Trustee or the Cash Collateral under section 506(c) of the Bankruptcy Code or any similar principle of law. (*Id.* ¶ 46.) No action, inaction, or acquiescence by the Trustee, including permitting the use of Cash Collateral, will be construed as consent to a charge, lien, assessment, or claim against, or in respect of, the Cash Collateral under section 506(c) of the Bankruptcy Code or otherwise. (*Id.*)

E.     **Removal Stipulation and Amended Order**

The Removal Stipulation provides that the state court action will be removed to this Court and stayed until April 30, 2023, provided that Weiss responds to the document requests attached to the Removal Stipulation. (Removal Stipulation ¶¶ 2,5.) The Removal Stipulation also provides that Weiss will not object to the Debtor's engagement of LW Hospitality Advisors ("LWHA") to serve as the Debtor's hospitality advisor. (*Id.* ¶ 4.) In addition, the Amended Order makes certain changes to resolve a potential objection of Weiss to the Cash Collateral Motion. The Amended Order (1) provides that the Trustee is only entitled to unpaid post-petition interest if it is over-secured, not just fully secured, and (2) provides an opportunity for parties in interest to object to the payment of post-petition interest. (Amended Order ¶ 10.)

## II.     LEGAL STANDARD

Parties who have an interest in cash collateral are entitled to adequate protection. *See* 11 U.S.C. § 363(e). A debtor may provide adequate protection in various forms, including payment of adequate protection fees, payment of interest, or grant of replacement liens or administrative claims. Thus, what constitutes adequate protection is decided on a case-by-case basis. *See, e.g.*, *In re Mosello*, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996) ("The determination of adequate protection is a fact specific inquiry. 'Its application is left to the vagaries of each case.'") (citation omitted); *In re Realty Sw. Assocs.*, 140 B.R. 360 (Bankr. S.D.N.Y. 1992); *In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986) (finding that the application of adequate protection "is left to the vagaries of each case, but its focus is protection of the secured creditor from diminution in the value of its collateral during the reorganization process") (citation omitted). The critical purpose of adequate protection is to guard against the diminution of a secured creditor's collateral during the period when the debtor-in-possession is using the

11

collateral. *See In re 495 Cent. Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) ("The goal of adequate protection is to safeguard the secured creditor from diminution in the value of its interest."); *accord In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986); *In re Hubbard Power & Light*, 202 B.R. 680, 685 (Bankr. E.D.N.Y. 1996).

Section 363(c) of the Bankruptcy Code governs a debtor's use of a secured creditor's cash collateral. Section 363(c) provides, in pertinent part, that:

> The trustee may not use, sell, or lease cash collateral . . . unless—
>
> > (A) each entity that has an interest in such cash collateral consents; or
> >
> > (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section [363].

11 U.S.C. § 363(c)(2).

Further, section 363(e) provides that "on request of an entity that has an interest in property . . . proposed to be used, sold or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). Section 362(d)(1) of the Bankruptcy Code provides for adequate protection of interests in property due to the imposition of the automatic stay. *See, e.g., In re Cont'l Airlines*, 91 F.3d 553, 556 (3d Cir. 1996) (en banc).

Bankruptcy Code § 361 provides three non-exclusive means of providing adequate protection. These alternatives include: (i) requiring the debtor to make a cash payment or periodic cash payments to the extent of a decrease in the value of the property; (ii) requiring a debtor to provide an additional or replacement lien to the extent of a decrease in the value of the property; (iii) granting other relief that will result in the indubitable equivalent of the interest in the property. *See* 11 U.S.C. § 361(1)–(3). When an equity cushion exists, the secured creditor's

12

interest in the collateral is already adequately protected, obviating the need for adequate protection payments or other protective measures.  3 Collier on Bankruptcy ¶ 361.03[1]. Generally, courts decide what constitutes sufficient adequate protection on a case-by-case basis. *See In re Dynaco Corp.*, 162 B.R. 389, 394 (Bankr. D.N.H. 1993) (explaining that adequate protection can take many forms and "must be determined based upon equitable considerations arising from the particular facts of each proceeding") (citation omitted).

Bankruptcy Rule 4001(b) mandates the inclusion of specific items in a cash collateral motion, including a concise summary of the relief requested and the location within the relevant documents of all material information regarding the cash collateral and the adequate protection provided.  S.D.N.Y. Local Rule 4001-2 also sets forth specific requirements for the contents of motions requesting authority to use cash collateral and for proposed orders accompanying such motions.

### III.    DISCUSSION

For the reasons stated below, the Court grants the Cash Collateral Motion and approves the Removal Stipulation.  First, the Court finds that the Debtor has complied with the relevant local and bankruptcy rules for cash collateral motion.  Second, the Court finds that the Debtor should be permitted to utilize cash collateral because the Trustee has consented to its use.  Third, the Court finds that the cash payments, replacement liens, and 507(b) claims provide adequate protection. Finally, the Court approves the Removal Stipulation, removing the state court action.

#### A.    Compliance with Local and Bankruptcy Rules

As an initial matter, the Debtor has complied with Bankruptcy Rule 4001(b)(2) by including a concise summary of the requested relief, the secured claim, and the proposed adequate protection payments.  The Debtor has also complied with all of the content

requirements of Local Rule 4001-2 by prominently highlighting and explaining the material provisions listed in Rule 4001-2 and including the budget to which the Debtor will be subject.

### B. Use of Cash Collateral

Courts permit the use of cash collateral when necessary to preserve a debtor's ability to reorganize and maximize the value of its bankruptcy estate for all interested parties. In the instant case, the Debtor requests authorization to use Cash Collateral during its Chapter 11 Case to pay those actual, necessary, ordinary course operating expenses set forth in the Budget. (Cash Collateral Motion ¶ 53.) The Debtor claims that using the Cash Collateral is essential to its rehabilitation efforts. (*Id.* ¶ 54.) The Court agrees. To preserve the going concern value of its operations, the Debtor must be able to pay its expenses. (*Id.*) Authorizing the use of the Cash Collateral will give the Debtor the liquidity needed to operate its business during the Chapter 11 Case. (*Id.*)

Importantly, in the case at bar, the Trustee has consented to the Debtor's use of Cash Collateral under the terms and conditions set forth in the Cash Collateral Order and the Budget. (*Id.* ¶ 56.) Accordingly, the Debtor has satisfied § 363(c)(2) of the Bankruptcy Code, which allows the Debtor to use cash collateral with the consent of the secured creditor, here the Trustee.

### C. Adequate Protection

To protect the Trustee from any diminution in the value of its interest in the Cash Collateral, the Debtor proposes to grant the Trustee adequate protection as set forth in the Cash Collateral Order. A debtor can provide adequate protection to a secured creditor by (1) making cash payments or periodic cash payments; (2) granting an additional or replacement lien; or (3) providing other relief as will result in the secured creditors' realization of the indubitable equivalent of its interest in pre-petition collateral. 11 U.S.C. § 361.

Here, the Debtors' proposed form of adequate protection is also proper. The Debtor offers to pay the Trustee the Cash Collateral payment, an amount equal to $12.5 Million, which the Trustee will apply per the terms of the Mortgage, thereby reducing the amounts due under the Mortgage. (Cash Collateral Motion ¶ 34.) Cash payments are a proper form of adequate protection under 11 U.S.C § 361(1). The Debtor offers additional protection by granting the Trustee a post-petition claim against the Debtor's estate, Adequate Protection Liens, a Section 507(b) Claim, and Information and Right to Access. (*Id.* ¶ 35.) Given that the Trustee will receive cash payments and a 507(b) claim if its collateral depreciates in value, the Trustee would clearly be adequately protected if the value of its collateral depreciates through the use of the Cash Collateral. Finally, given that the payment of $12.5 million is perhaps the most material term of the deal, and absent such payment, approximately $1 million in pre-petition interest would accrue, the Court agrees with the Debtor that waiver of the automatic stay to make this payment is proper. (*Id.* ¶ 59.)

D.    **The Removal Stipulation**

As a condition of not objecting to the Motion, Weiss and the Debtor agreed to remove the state court action to this Court. Given that there were no objections to this arrangement and such removal will allow the Court to administer one of the most significant disputes of the Debtor, the Court approves the Removal Stipulation.

/ / / / /

/ / / / /

/ / / / /

15

## IV.  CONCLUSION

For the reasons explained above, the Court granted the Cash Collateral Motion and approved the Removal Stipulation.

Dated:   March 13, 2023
         New York, New York

*Martin Glenn*
MARTIN GLENN
Chief United States Bankruptcy Judge