**EXHIBIT A**



**American Arbitration Association**

*Dispute Resolution Services Worldwide*

### Commercial Arbitration Tribunals

| | |
|---|---|
| Yoel Goldman,<br><br>     Claimant,<br><br>vs.<br><br>Zelig Weiss,<br><br>     Respondent. | AAA Case #01-23-0001-2090<br><br>Procedural Order No. 2:<br><br>Claimant's Request for Interim<br><br>Relief |

The undersigned Panel Chair Maureen Beyers, on behalf of herself and Arbitrators Linda Gerstel and Kevin Schlosser ("Panel"), having been appointed pursuant to the Commercial Arbitration Rules of the American Arbitration Association ("AAA") effective September 2022, and pursuant to the arbitration agreement between the parties as contained in the Fifth Amendment to Operating Agreement of Wythe Berry LLC ("Wythe Berry") effective December 31, 2016 ("Fifth Amendment"), paragraph 11, and AAA Rule R-38, does hereby issue the following order in response to Claimant's request for interim relief, as follows:

## I.    PROCEDURAL BACKGROUND

Yoel Goldman("Claimant") filed a demand for arbitration on March 29, 2023 seeking damages and relief in connection with Wythe Berry in which he is a member ("Arbitration"). By letter on the same day, Claimant submitted Claimant's Request for Emergency Relief, together with referenced exhibits and incorporated documents. In response, respondent Zelig Weiss ("Respondent") submitted a Memorandum of Law of Respondent, Zelig Weiss, in Opposition to Claimant's Request for Emergency Relief

dated April 28, 2023. Thereafter, the Emergency Arbitrator, Robin S. Abramowitz ("Emergency Arbitrator"), having considered and heard such other proofs and allegations of the Parties, rendered an Emergency Interim Award dated May 10, 2023 ("Emergency Award").

Among other things, the Emergency Award rejected Respondent's arguments that the dispute that is the subject of this Arbitration, including Claimant's Request for Emergency Relief, are not subject to arbitration under the auspices of the AAA, finding, on the contrary, that this entire dispute, including Claimant's Request for Emergency Relief are indeed encompassed within the agreed-upon arbitration provisions between the Parties, and is thereby within the authority of the AAA to administer and adjudicate.

The Emergency Award also provided as follows:

> Respondent (i) shall give to Claimant, or his representatives, immediate and continual full access to the books, accounts and financial records of Wythe Berry LLC and the Operating Affiliates (as he is already required to do under the terms of the Operating Agreement) and not to take any action to dispose of or remove any books or records of the Company; (ii) is enjoined from engaging in unilateral Major Decisions as expressly prohibited in the Operating Agreement; and (iii) is enjoined from making any transfer out of the accounts of Wythe Berry LLC and the Operating Affiliates that are not for the exclusive benefit of Wythe Berry LLC or the Operating Affiliates without the express written consent of Claimant (as required by the Operating Agreement), during the pendency of this arbitration proceeding, subject to any other or further order of the merits arbitrator(s).

Emergency Award, at p.3.

Thereafter, by letter dated July 7, 2023 (together with Exhibits 1 through 4), Claimant requested further relief concerning Respondent's alleged non-compliance with the directives of the Emergency Award.

By letter dated July 31, 2023, Respondent responded to Claimant's July 7, 2023 letter, to which Claimant replied in a letter dated August 2, 2023 (with Exhibit A).

The Panel was constituted by AAA on August 15, 2023.

On August 21, 2023, the Panel convened and conducted a preliminary hearing ("Preliminary Hearing"), at which counsel for Claimant and Respondent appeared. Among other things during the Preliminary Hearing, the Panel heard argument from counsel for both Claimant and Respondent concerning Claimant's request for interim relief, as embodied in his letters of July 7, 2023 and August 2, 2023 ("Request for Interim Relief"). As determined during the Preliminary Hearing, the Panel found that the Request for Interim Relief constituted "a motion for interim relief pursuant to R-38" of the AAA Rules, as further memorialized in the Panel's Procedural Order No. 1 -- Interim Relief and Interim Scheduling dated August 22, 2023 ("PO No. 1").

The PO No. 1 set out certain directives, including as follows:

> The Panel interprets Article 9 of the Operating Agreement of Wythe Berry LLC and the May 10, 2023 Emergency Award to permit Claimant Yoel Goldman broad rights to inspect and obtain paper and electronic access (including, but not limited to native files and software programs) to the books and records of Wythe Berry LLC and **Respondent is directed to immediately provide access accordingly**. Notwithstanding Respondent's **immediate** obligation to comply with this order, further instructions will follow.

PO No. 1 at ¶4 (emphasis in original).

This Order shall constitute the Panel's decision and order in response to the Request for Interim Relief.

## II.    DECISION AND ORDER ON REQUEST FOR INTERIM RELIEF

In the Request for Interim Relief, Claimant takes issue with and complains about Respondent's production of books and records as ordered in the Emergency Award and/or as otherwise required by Article 9 of the Fifth Amendment, the New York Limited Liability Company Law and any applicable fiduciary duties. In the Request for Interim Relief, Claimant also alleges that Respondent "has continued to pursue, and absent

further action from this forum, will imminently consummate, a deal with creditors of Wythe Berry Fee Owner LLC ('Fee Owner'), to purchase *unilaterally* the remaining interest of the William Vale Hotel (the 'Hotel')" (emphasis original), arguing that such alleged action violates the Major Decisions clause of the Parties' Operating Agreement (i.e., paragraph 7(e) of the Fifth Amendment), and is expressly prohibited by the Emergency Award.

For his part, Respondent maintains, in opposition to the Request for Interim Relief, that the Emergency Award does not enjoin Respondent "from negotiating or consummating a transaction to acquire the assets of any entity, including the assets of [Fee Owner] in its Chapter 11 bankruptcy proceeding," and to the extent that Claimant believes the Emergency Award does in fact so enjoin Respondent, Claimant is obligated to seek relief in the Fee Owner bankruptcy, and is also precluded from seeking to have the Emergency Arbitrator (or the Panel) review and interpret the Emergency Award.

As quoted above, the Emergency Award, on its own terms, is "subject to any other or further order of the merits arbitrator(s)"—the current Panel.

A. **Books and Records**

In the Emergency Award, the Emergency Arbitrator determined that Respondent must produce books and records to Claimant, finding that: "Respondent's use of the Company information for his sole personal benefit, to the detriment of Claimant, is inequitable." Emergency Award, p.3. As such, the Emergency Award directs Respondent to "give to Claimant, or his representatives, immediate and continual full access to the books, accounts and financial records of Wythe Berry LLC and the Operating Affiliates (as he is already required to do under the terms of the Operating

Agreement) and not to take any action to dispose of or remove any books or records of the Company" (referred to herein as "Subject Books and Records").

As the Panel indicated during the Preliminary Hearing, and as set forth in PO No. 1 (¶4), Respondent has broad obligations to produce the Subject Books and Records to Claimant and must do so forthwith. To the extent that Claimant maintains that Respondent has not complied with this obligation to produce and give access to the Subject Books and Records, the following procedure ("Production Protocol") shall be complied with by the Parties:

Counsel for Claimant and Respondent are directed to meet and confer in good faith to identify any requests that Claimant believes have not been complied with and to resolve any such open questions and issues. In the event counsel for the Parties cannot resolve such issues, the Parties are directed to provide to the Panel a "Redfern Chart," containing the following columns and information:

| Request No. | Category of Documents Requested | Grounds or Entitlement to Request | Respondent's Responses and/or Objections | Claimant's Reply to Objections | Panel's Decision |
|---|---|---|---|---|---|
| | | | | | |

Counsel for the Parties shall conduct their required meet and confer as directed herein and prepare any such Redfern Chart so that it is submitted to the Panel within fifteen (15) days of the date of this Order. To the extent there is no dispute over the production of any requested Subject Books and Records, Respondent must produce them immediately to Claimant. The Panel will issue its determination of any issue contained in the Redfern Chart after its submission.

### B. <u>Claims of Confidentiality Restrictions</u>

After the Preliminary Hearing, Respondent submitted an email on August 22, 2023 to which Claimant responded on August 23, 2023 concerning Respondent's request for confidentiality restrictions over the Subject Books and Records. While Claimant agreed to confer with Respondent as to a potential confidentiality stipulation and order concerning discovery produced in this Arbitration, Claimant objected to such restriction over the Subject Books and Records as so ordered in the Emergency Award and PO No.1. The Panel agrees with Claimant's position. The Panel notes that none of the relevant operating agreements contain non-disclosure or confidentiality provisions. The Panel shall not impose such extracontractual confidentiality restrictions upon Claimant. Nothing herein, however, shall immunize either of the Parties from any common law or other legal duties to remedy improper use of the Subject Books and Records.

**<u>Nothing herein shall excuse or be deemed a reason to delay Respondent's obligation to produce forthwith all of the Subject Books and Records to which Claimant is entitled</u>**.

### C. <u>Major Decisions Clause</u>

With respect to the dispute over the interpretation of the so-called "Major Decisions" clause of the Fifth Amendment, and that portion of the Emergency Award that enjoined Respondent "from engaging in unilateral Major Decisions as expressly prohibited in the Operating Agreement," the Panel decides as follows:

Insofar as Claimant's requests for interim relief were initiated under AAA Rules R-39 (Emergency Relief), and R-38 (regarding the Request for Interim Relief), respectively, the Panel determines that Claimant has not sustained his burden of

establishing at this time that, as a matter of contract interpretation, the Major Decisions clause of the Fifth Amendment applies to Respondent's personal conduct, as opposed to conduct on behalf of the "Company." On its face, paragraph 7(e) of the Fifth Amendment applies to "the Company" ("in no event will the Company take any actions listed on Schedule 1, annexed hereto (each, a 'Major Decision')... ." The Panel acknowledges Claimant's argument that the so-called "Side Agreement"—Deed of Acknowledgement, Undertaking—and Clarification acknowledges that Claimant and Respondent are entering into that agreement "on our own behalf and on that of all the corporations registered under our names, whether in whole or in part... ." Nevertheless, the Side Agreement (¶2), which is far from a clear expression of the Parties' intent, explicitly acknowledges that Claimant and Respondent shall be bound by "what is set forth and explicit in the contract that is known and called by the title 'Fifth Amendment Operating Agreement'." Similarly, the Emergency Award expressly incorporates the definition of Major Decisions "as expressly prohibited in the Operating Agreement"—which is paragraph 7(e) of the Fifth Amendment. As noted above, paragraph 7(e) of the Fifth Amendment on its face only applies to the "Company." As such, Claimant has not established on this record that the Major Decisions provision applies to Respondent in his personal and individual capacity, while not acting on behalf of "the Company." This determination is without prejudice to Claimant's offer of proof and any further arguments at the hearing on the merits of the claims to be adjudicated in this Arbitration, including but not limited to whether any such alleged conduct is a breach of any fiduciary or other legal duty imposed upon Respondent in addition to or apart from the contractual obligations of the Fifth Amendment.

### D.    Injunction Continues Until Full Production Completed

Notwithstanding the foregoing, as determined by the Emergency Arbitrator in the Emergency Award, it would be inequitable for Respondent to prevent Claimant from obtaining full and equal access to the Subject Books and Records in connection with any Proposed Transaction (as defined in the PO No. 1, ¶2).  Indeed, Respondent has maintained in this Arbitration that both Claimant and Respondent are free to submit competing proposals for any Proposed Transaction and/or consummate same, and that the Subject Books and Records would be relevant thereto.  Accordingly, Respondent shall continue to be enjoined pursuant to and as set forth in paragraph 3 of the PO No. 1 until forty- five (45) days after such time as Claimant is provided with all of the Subject Books and Records as either acknowledged by Claimant or by order of the Panel after the Production Protocol is conducted, including, if necessary, the submission of any Redfern Chart, the Panel's decision thereon and the subsequent production, if any, so-ordered by the Panel.

This shall constitute the decision and order of the Panel in relation to the Request for Interim Relief, and any relief not so addressed herein, shall be deemed denied.

This decision and order shall remain in full force and effect until such other order of the Panel is issued, including on the merits of the claims to be adjudicated herein.

**Dated**: August 24, 2023

Panel Chair Signature:    Maureen Beyers
Maureen Beyers
On behalf of the Panel