HERRICK, FEINSTEIN LLP
Stephen B. Selbst
Janice Goldberg
Rodger T. Quigley
Two Park Avenue
New York, New York 10016
(212) 592-1400
(212) 592-1500 (fax)
sselbst@herrick.com
jgoldberg@herrick.com
rquigley@herrick.com

*Counsel for the Debtor and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------X
                                                                :
In re                                                           :        **Chapter 11**
                                                                :
**WYTHE BERRY FEE OWNER LLC,**                                  :        **Case No. 22-11340 (MG)**
                                                                :
                   **Debtor.[1]**                               :
                                                                :
                                                                :
                                                                :
----------------------------------------------------------------X

**NOTICE OF PRESENTMENT OF APPLICATION FOR AUTHORITY TO RETAIN**
**AND EMPLOY EASTDIL SECURED, L.L.C. AND A&G REALTY PARTNERS, LLC**
**AS EXCLUSIVE REAL ESTATE BROKERS FOR THE DEBTOR**

       **PLEASE TAKE NOTICE** that Wythe Berry Fee Owner LLC, as debtor and

debtor in possession (the "**Debtor**") in the above-captioned chapter 11 case ("**Chapter 11 Case**"),

will present the annexed application (the "**Application**"),[2] pursuant to sections 327(a) and 328 of

title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2014(a) and 2016 of the

Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2014-1 and 2016-1

---

[1] The Debtor's principal offices are located at 199 Lee Avenue, Suite 693, Brooklyn, New York 11211. The last four digits of the Debtor's Federal Tax Id. No. are 9776.

[2] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Application.

of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Bankruptcy Rules**"), for entry of an order authorizing the Debtor to retain and employ Eastdil Secured, L.L.C. ("**Eastdil**") and A&G Realty Partners, LLC ("**A&G**," and collectively with Eastdil, "**Advisor**") as its exclusive real estate brokers in connection with the Chapter 11 Case, to the Honorable Martin Glenn, Chief United States Bankruptcy Judge for the Southern District of New York, for signature on **November 15, 2023 at 10:00 a.m. (Prevailing Eastern Time)**.

PLEASE TAKE FURTHER NOTICE that any responses or objections (the "**Objections**") to the Application shall be in writing, shall conform to the Bankruptcy Rules and the Local Bankruptcy Rules, shall be filed with the Bankruptcy Court: (i) by attorneys practicing in the Bankruptcy Court, including attorneys admitted *pro hac vice*, electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov), and (ii) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF) (with two single-sided hard copies delivered to the Judge's Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and shall be served in accordance with General Order M-399, the Bankruptcy Rules, and the Local Bankruptcy Rules, so as to be filed and served upon (a) the Office of the United States Trustee for Region 2, One Bowling Green, Room 534, New York, NY 10004; and (b) counsel to the Petitioning Creditors, Chapman & Cutler LLP, 1270 Sixth Avenue, New York, New York 10020 (Attn: Michael Friedman, Esq., David T.B. Audley, Esq., and Eric Silvestri, Esq.), by no later than **November 14, 2023 at 4:00 p.m. (Prevailing Eastern Time)** (the "**Objection Deadline**").

PLEASE TAKE FURTHER NOTICE that if no Objections are timely filed and served with respect to the above referenced Application, the Debtor may, on or after the Objection

2

Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Application, which order may be entered without further notice or opportunity to be heard.

> **PLEASE TAKE FURTHER NOTICE** that, if an objection is timely filed and served with respect to the Application, a hearing (the "**Hearing**") will be held to consider the Application before the Honorable Martin Glenn, Chief United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, Courtroom 523, One Bowling Green, New York, NY 10004-1408 on a date to be announced.

> **PLEASE TAKE FURTHER NOTICE** that any objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted upon default.

> **PLEASE TAKE FURTHER NOTICE that, due to the COVID-19 pandemic, the Hearing, if held, will be conducted using Zoom for Government. Parties should not appear in person and those wishing to appear or participate at the Hearing (whether "live" or "listen only") must make an electronic appearance through the Court's website prior to 4:00 p.m. (Prevailing Eastern Time) on the business day prior to the Hearing. Instructions for making an eCourt Appearance and additional information on the Court's Zoom procedures can be found at http://www.nysb.uscourts.gov/content/judge-martin-glenn.**

Dated: October 26, 2023
New York, New York

 /s/ *Stephen B. Selbst*
HERRICK, FEINSTEIN LLP
Two Park Avenue
New York, New York 10016
(212) 592-1400
(212) 592-1500 (fax)
Stephen B. Selbst

Janice Goldberg
Rodger T. Quigley

*Counsel for the Debtor and Debtor in Possession*

HERRICK, FEINSTEIN LLP
Stephen B. Selbst
Janice Goldberg
Rodger T. Quigley
2 Park Avenue
New York, New York 10016
(212) 592-1400
(212) 592-1500 (fax)
sselbst@herrick.com
jgoldberg@herrick.com
rquigley@herrick.com

*Counsel for the Debtor and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------X
                                                                 :
**In re**                                                        :        **Chapter 11**
                                                                 :
**WYTHE BERRY FEE OWNER LLC,**                                   :        **Case No. 22-11340 (MG)**
                                                                 :
                        **Debtor.[1]**                           :
                                                                 :
                                                                 :
                                                                 :
-----------------------------------------------------------------X

### APPLICATION FOR AUTHORITY TO RETAIN AND EMPLOY
### EASTDIL SECURED, L.L.C. AND A&G REALTY PARTNERS, LLC
### AS EXCLUSIVE REAL ESTATE BROKERS FOR THE DEBTOR

**TO THE HONORABLE MARTIN GLENN,**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**:

        Wythe Berry Fee Owner LLC, as debtor and debtor in possession (the "**Debtor**")

in the above-captioned chapter 11 case (the "**Chapter 11 Case**"), respectfully represents as

follows in support of this application (the "**Application**"):

---

[1] The Debtor's principal offices are located at 199 Lee Avenue, Suite 693, Brooklyn, New York 11211. The last four digits of the Debtor's Federal Tax Id. No. are 9776.

**Relief Requested**

1.       The Debtor submits the Application, pursuant to sections 327(a) and 328 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Bankruptcy Rules**"), for authority to retain and employ Eastdil Secured, L.L.C. ("**Eastdil**") and A&G Realty Partners, LLC ("**A&G**," and collectively with Eastdil, "**Advisor**") as its exclusive real estate brokers in connection with the Chapter 11 Case.

2.       A proposed form of order approving Advisor's retention and employment is annexed hereto as **Exhibit A** (the "**Proposed Order**"). A copy of the engagement agreement between Advisor and the Debtor ("**Engagement Letter**") is annexed to the Proposed Order as **Exhibit 1**. In support of this Application, the Debtor submits the declarations of Scott B. Ellman (the "**Ellman Declaration**"), which is annexed hereto as **Exhibit B** and is incorporated herein by reference, and Emilio Amendola (the "**Amendola Declaration**," collectively with the Ellman Declaration, the "**Broker Declarations**") which is annexed hereto as **Exhibit C** and is incorporated herein by reference.

**Jurisdiction**

3.       The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Background**

4.      The Debtor is the owner of The William Vale Hotel, office, retail, and parking located at 55 Wythe Avenue, Brooklyn, New York (the "**WV Complex**").

5.      On or about February 28, 2017, the Debtor and Wythe Berry LLC, with Zelig Weiss ("**Weiss**") and Yoel Goldman as guarantors, entered into a February 28, 2017 Lease Agreement (the "**Lease**"), pursuant to which the WV Complex was leased to Wythe Berry LLC ("**Lessee**").

6.      On October 6, 2022, Mishmeret Trust Company Ltd., solely in its capacity as Trustee of the Series C Bonds (the "**Trustee**"), Yelin Lapidot Provident Funds Management Ltd., The Phoenix Insurance Company Limited and Klirmark Opportunity Fund III L.P. (together the "**Petitioning Creditors**") filed an involuntary petition seeking an Order for Relief pursuant to section 303 of title 11 of the United States Code against the Debtor [ECF No. 1, 2].

7.      On January 18, 2023, this Court entered an Order for Relief against the Debtor [ECF No. 56].

8.      On February 14, 2023, the action proceeding as *Wythe Berry Fee Owner LLC v. Wythe Berry LLC*, Index No. 514152/2021 (Kings County Supreme Court), was removed to this Court, and is now proceeding under Case No. 23-10112 (MG) ("**Adversary Proceeding**").

9.      On August 23, 2023, the Debtor filed a motion for partial summary judgment in the Adversary Proceeding as to liability against Lessee, including as to its cause of action seeking a declaration that the Lease has been terminated as of May 20, 2021 when the Debtor served a Notice of Cancellation on Lessee [Adversary Proceeding, ECF Nos. 30-31].

10.     During the course of the Chapter 11 Case, the Debtor and Trustee negotiated with Weiss concerning a purchase of the WV Complex, a transaction that the Debtor anticipated would form the basis for a plan of reorganization.

11.     On September 29, 2023, negotiations reached an impasse and Lessee delivered a notice to the Debtor of its intention to vacate the WV Complex by October 31, 2023 [ECF No. 191, Ex. A].

12.     On October 5, 2023, the Court granted partial summary judgment to the Debtor in the Adversary Proceeding, finding that, *inter alia*, the Lease was cancelled and terminated by the Notice of Cancellation served on May 20, 2021 [Adversary Proceeding, ECF No. 45].

13.     Now, with title clear to the WV Complex and negotiations with Weiss at a standstill, the Debtor by this Application seeks to retain Advisor to arrange the sale of the WV Complex.

## Retention of Advisor

14.      The Debtor seeks to market the WV Complex and believes the retention of Advisor will enable the Debtor to either (i) effectuate a sale of the WV Complex, or (ii) obtain a proper market test that may also support a refinancing of the mortgage debt on the WV Complex.

15.     The retention of Advisor is appropriate and necessary to enable the Debtor to execute its duties as a debtor and to prosecute an eventual plan of reorganization and this Chapter 11 Case. Subject to further order of this Court, it is proposed that Advisor be employed to provide the services described herein and in the Engagement Letter. Advisor's services will not be duplicative of the services performed by any of the Debtor's other retained professionals or advisors.

16.    The Debtor has selected Eastdil and A&G due to their expertise and knowledge of real estate transactions.

### A. Eastdil's Qualifications

17.    Eastdil is a premier independent real estate investment bank with expertise in commercial real estate and capital markets. It was founded in 1967 by Benjamin V. Lambert, who is considered the founder of the real estate investment banking industry.

18.    Eastdil is now one of the largest independent commercial real estate investment banks in the world by transaction volume, with over $2.7 trillion in transactions completed over the past 15 years. Eastdil recently has been recognized as a top global advisor on transactions of $100 million and higher; a top debt placement platform in the United States and Europe; and a leader in office, retail, multifamily, hotel, and industrial investment sales in the United States and Europe.

### B. A&G's Qualifications

19.    A&G is a diversified real estate consulting firm whose principals have over fifty years of commercial real estate experience. A&G evaluates, facilitates the acquisition of, and disposes of all types of real estate in and out of bankruptcy, including hotels and hospitality assets. A&G regularly represents chapter 11 debtors, trustees, and receivers in the marketing and disposition of real estate pursuant to section 363 of the Bankruptcy Code. As a diversified real estate consulting and advisory firm with extensive experience with the kind of property at issue, A&G is well qualified to provide the services for which the Debtor seeks to retain it.

20.    A&G and Eastdil have experience working successfully as co-brokers. Recently, A&G and Eastdil were retained as co-brokers in the matter *In re 96 Wythe Acquisition LLC*, No. 21-22108 (SHL) (Bankr. S.D.N.Y.) to assist in the marketing and sale of the debtor's

property: a hotel located at 96 Wythe Avenue, Brooklyn, New York. There, the Court approved the sale of the debtor's assets, including the hotel, free and clear of all liens, claims, interests and encumbrances by order dated January 26, 2023.

21.     The Debtor believes both Eastdil and A&G possess the requisite knowledge and expertise and are well qualified to act as the Debtor's exclusive real estate brokers in this Chapter 11 Case. Further, the Debtor believes Advisor's retention is necessary given the need to market and potentially sell the WV Complex in a prompt and cost-efficient manner.

### Scope of Services

22.     Pursuant to the terms of the Engagement Letter, in consideration for the compensation contemplated thereby, Eastdil and A&G have agreed to serve as the Debtor's exclusive brokers to arrange the sale of the WV Complex by a disposition of the entire WV Complex or a portion of or partial interest in the same (the "**Services**").

23.     As part of the Services as exclusive brokers to the Debtor, Eastdil and A&G will undertake a formal marketing process, which would involve a robust and wide-ranging, public process to solicit interest and offers from potential third-party investors to either invest in the WV Complex or undertake an outright or partial purchase of it.

24.     Subject to this Court's approval of the relief requested in this Application, Advisor will provide the Services to the Debtor.

### Eastdil Is Disinterested

25.     To the best of its knowledge, as set forth in the Ellman Declaration annexed hereto as Exhibit B, Eastdil (i) is a "disinterested person" with the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) and referenced by section 328(c) of the Bankruptcy Code and does not hold or represent an interest adverse to the Debtor's estate, and (ii)

has no connection to the Debtor, its creditors or its related parties. Eastdil will periodically review its files during the pendency of the Debtor's case to ensure that no conflicts or other disqualifying circumstances exist or arise. If Eastdil discovers any new relevant facts or relationships pertaining to the matters described herein during the period of its retention, Eastdil will promptly file a supplemental declaration with the Court.

26.     To the best of the Debtor's knowledge, Eastdil has no connection with the Debtor's creditors or any other parties in interest or their respective attorneys. To the best of the Debtor's knowledge, Eastdil represents no interest adverse to the Debtor's estate, or any other interested person in the matters with respect to which Eastdil is to be engaged as a broker.

27.     As set forth in the Ellman Declaration, Eastdil believes it is a "disinterested person" as that term is defined in Bankruptcy Code § 101(14) in that said firm:

a.   is not a creditor, an equity security holder, or an insider;

b.   is not and was not, within 2 years before the Petition Date, a director, an equity security holder, or an insider;

c.   does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor, or for any other reason.

*See* 11 U.S.C. § 101(14).

28.     As a result of the foregoing, the Debtor believes that Eastdil is not only a disinterested person within the meaning of section 101 of the Bankruptcy Code, but also a qualified professional to perform services which are necessarily required.

### **A&G Is Disinterested**

29.     To the best of its knowledge, as set forth in the Amendola Declaration annexed hereto as Exhibit C, A&G (i) is a "disinterested person" with the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) and referenced by section 328(c)

of the Bankruptcy Code and does not hold or represent an interest adverse to the Debtor's estate, and (ii) has no connection to the Debtor, its creditors or its related parties. A&G will periodically review its files during the pendency of the Debtor's case to ensure that no conflicts or other disqualifying circumstances exist or arise. If A&G discovers any new relevant facts or relationships pertaining to the matters described herein during the period of its retention, A&G will promptly file a supplemental declaration with the Court.

30. To the best of the Debtor's knowledge, A&G has no connection with the Debtor's creditors or any other parties in interest or their respective attorneys. To the best of the Debtor's knowledge, A&G does not hold or represent any interest adverse to the Debtor's estate, or any other interested person in the matters with respect to which A&G is to be engaged as a broker.

31. As set forth in the Amendola Declaration, A&G believes it is a "disinterested person" as that term is defined in Bankruptcy Code § 101(14) in that said firm:

a. is not a creditor, an equity security holder, or an insider;

b. is not and was not, within 2 years before the Petition Date, a director, an equity security holder, or an insider;

c. does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor, or for any other reason.

*See* 11 U.S.C. § 101(14).

32. As a result of the foregoing, the Debtor believes that A&G is not only a disinterested person within the meaning of section 101 of the Bankruptcy Code, but also a qualified professional to perform services which are necessarily required.

**Advisor's Compensation**

33.     All charges for fees and expenses are subject to review by the Court, in

compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local

Bankruptcy Rules and any other applicable procedures and orders of the Court.

34.     Upon the closing of the sale of the WV Complex, Advisor shall be deemed

to have earned, and shall be paid by the Debtor, a collective fee (to be shared between them) in an

amount equal to 0.75% of the first $160,000,000 of the gross sale price of the WV Complex, plus

2.0% of that portion of the gross sale price of the WV Complex that exceeds $160,000,000 but is

less than $170,000,000, plus 3.0% of that portion of the gross sale price of the WV Complex that

exceeds $170,000,000 but is less than $180,000,000, plus 4% of that portion of the gross sale price

that equals or exceeds $180,000,000, provided in the event (X) either (i) Weiss; and/or (ii) Electra

Real Estate Ltd., or any affiliates/subsidiaries thereof; provides a letter of intent ("**LOI**")

acceptable to the Debtor or enter into a purchase and sale agreement ("**PSA**") regarding acquisition

of the WV Complex, then, unless the terms of such LOI or PSA have changed following Advisor's

commencement of marketing the WV Complex, then the compensation shall be as determined

above but discounted by (x) 50%, if either such party provides an LOI acceptable to the Debtor or

enter into a PSA regarding acquisition of the WV Complex prior to the commencement of formal

marketing by Advisor (as defined in the Engagement Letter) and (y) 25%, if either such party

provides an LOI acceptable to the Debtor or enters into a PSA regarding acquisition of the WV

Complex after the commencement of formal marketing by Advisor or (Y) Blackstone Real Estate

Services L.L.C. or any affiliates/subsidiaries thereof, provides an LOI acceptable to the Debtor or

enters into a PSA regarding acquisition of the WV Complex, then, unless the terms of such LOI

or PSA have changed following Advisor's commencement of marketing the WV Complex, the

compensation shall be as determined above but discounted by (x) 30%, if such party provides an LOI acceptable to the Debtor or enters into a PSA regarding acquisition of the WV Complex prior to the commencement of formal marketing by Advisor and (y) 20%, if such party provides an LOI acceptable to the Debtor or enters into a PSA regarding acquisition of the WV Complex after the commencement of formal marketing by Advisor (the "**Compensation Structure**"). The Debtor shall provide Advisor with all current letters of intent received in respect of the WV Complex.

35.     The Debtor and Advisor understand that, although the Advisor's fee shall be paid to Advisor at closing, such compensation must be approved by this Court upon application consistent with the Bankruptcy Rules, the Local Bankruptcy Rules, and any further Order of this Court. Accordingly, promptly after the closing on the sale of the WV Complex, Advisor shall file a final fee application under Sections 328 and 330 of the Bankruptcy Code.

36.     In addition, to the extent the Engagement Letter so provides, Advisor will seek reimbursement for actual and necessary out-of-pocket expenses incurred in connection with its engagement with the Debtor in this Chapter 11 Case. Expenses for actual costs incurred will be charged in accordance with General Order M-412 (Order Establishing Procedures for Monthly Compensation and Reimbursement of Expenses of Professionals, dated December 21, 2010 (Gonzalez, C.J.)), Administrative Order M-447 (Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases, dated January 29, 2013 (Morris, C.J.)), and the U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 (collectively, the "**Fee Guidelines**"). Advisor is neither a pre-petition creditor of the Debtor nor has it received any retainer heretofore or provided pre-petition real estate advisory or broker services to the Debtor. Other than as set forth herein or in Ellman Declaration or the Amendola Declaration, there is no proposed

arrangement between the Debtor and Advisor for compensation to Advisor paid in this Chapter 11 Case.

37.     The Debtor desires to retain Advisor to perform the Services, which are necessary to the administration of the Chapter 11 Case, and the Debtor believes that Advisor's Compensation Structure is consistent with and typical of compensation arrangements entered into by Eastdil and A&G and less or equal to other comparable firms in connection with the rendering of similar services under similar circumstances. The Debtor is satisfied and believes that the Compensation Structure requested by Advisor as compensation for the services to be rendered by the firm is ordinary, fair and in fact reasonable.

### Basis for Relief

38.     The Debtor seeks to retain A&G and Eastdil as its exclusive real estate brokers pursuant section 327(a) of the Bankruptcy Code, which provides that, subject to Court approval:

> except as otherwise provided in this section, the Debtor, with the Court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor]'s duties under this title.

11 U.S.C. § 327(a).

39.     Section 328 of the Bankruptcy Code provides, in pertinent part, that under section 327 of the Bankruptcy Code, a professional may be employed "on any reasonable terms and conditions of employment, including . . . on a contingent fee basis." 11 U.S.C. § 328(a).

40.     Bankruptcy Rule 2014(a) requires that an application for retention include:

> specific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party

15

in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014(a).

41.     The retention of real estate brokers pursuant to the standard of review in section 328(a) of the Bankruptcy Code has been approved in other cases in this District and others. *See*, *e.g.*, *In re Zuca Props. LLC*, No. 21-11082 (MG) (Bankr. S.D.N.Y. July 21, 2021); *In re Weintraub*, No. 11-15499 (JLG) (Bankr. S.D.N.Y. Mar. 13, 2015); *In re FL 6801 Spirits LLC, et al.*, No. 14-11691 (SCC) (Bankr. S.D.N.Y. June 25, 2014); *In re 313 W. 77th St. Tenants Corp.*, No. 03-15522 (SCC) (Bankr. S.D.N.Y. Oct. 5, 2011); *In re Gen. Growth Props., Inc.*, No. 09-11977 (ALG) (Bankr. S.D.N.Y. Apr. 16, 2009); *In re The Brooklyn Hosp. Center*, No. 05-26990 (Bankr. E.D.N.Y. Jan. 5, 2007) (CEC); *In re Harrow Stores, Inc.*, No. 06-72860 (Bankr. E.D.N.Y. Dec. 15, 2006) (DTE); *In re TSIC, Inc., f/k/a Sharper Image Corp.*, No. 08-10322 (Bankr. D. Del. July 28, 2008) (KG).

42.     Based on the facts and for the reasons stated herein and in the Broker Declarations, the retention of Advisor as exclusive real estate brokers for the Debtor pursuant to this Application is reasonable, necessary, and appropriate, and satisfies the requirements of sections 327 and 328 of the Bankruptcy Code and Bankruptcy Rule 2014(a).

43.     The Debtor respectfully submits that for all the reasons stated above and in the Broker Declarations, the retention of Advisor as exclusive real estate brokers for the Debtor should be approved.

## **Notice**

44.     Notice of this Application will be provided to (i) the Office of the United States Trustee for Region 2, One Bowling Green, Room 534, New York, NY 10004; (ii) counsel to the Petitioning Creditors, Chapman and Cutler LLP, 1270 Sixth Avenue, New York, New York

10020 (Attn: Michael Friedman, Esq., David T.B. Audley, Esq., and Eric Silvestri, Esq.); and

(iii) all other persons and entities that have requested service in this Chapter 11 Case pursuant to

Bankruptcy Rule 2002 (collectively, the "**Notice Parties**"). The Debtor respectfully submits that

no further notice is required.

### No Prior Request

45.    No previous request for the relief sought herein has been made by the

Debtor to this or any other Court.

**WHEREFORE**, the Debtor respectfully requests entry of an order granting the

relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: October 26, 2023
        New York, New York

/s/ *Stephen B. Selbst*
HERRICK, FEINSTEIN LLP
Two Park Avenue
New York, New York 10016
(212) 592-1400
(212) 592-1500 (fax)
Stephen B. Selbst
Janice Goldberg
Rodger T. Quigley

*Counsel for the Debtor and Debtor in Possession*

**Exhibit A**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
:
In re                                                   :    **Chapter 11**
:
**WYTHE BERRY FEE OWNER LLC,**                           :    **Case No. 22-11340 (MG)**
:
Debtor.[1]                                              :
:
:
------------------------------------------------------------------X

## ORDER AUTHORIZING RETENTION AND EMPLOYMENT OF EASTDIL SECURED, L.L.C. AND A&G REALTY PARTNERS, LLC AS EXCLUSIVE REAL ESTATE BROKERS FOR THE DEBTOR

Upon the application (the "**Application**"),[2] dated October 26, 2023 [ECF Doc. #__]

of Wythe Berry Fee Owner LLC, as debtor and debtor in possession (the "**Debtor**") in the above-

captioned chapter 11 case (the "**Chapter 11 Case**"), pursuant to sections 327(a) and 328 of title 11

of the United States Code (the "**Bankruptcy Code**"), Rules 2014 and 2016 of the Federal Rules

of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2014-1 and 2016-1 of the Local

Bankruptcy Rules for the Southern District of New York (the "**Local Bankruptcy Rules**"), for

authority to retain and employ Eastdil Secured, L.L.C. ("**Eastdil**") and A&G Realty Partners

("**A&G**," and collectively with Eastdil, "**Advisor**") as its exclusive real estate brokers in the

Chapter 11 Case; and upon consideration of the Ellman Declaration, annexed to the Application

as **Exhibit B**, and the Amendola Declaration, annexed to the Application as **Exhibit C**; and the

Court having jurisdiction to consider the Application and the relief requested therein pursuant to

---

[1] The Debtor's principal offices are located at 199 Lee Avenue, Suite 693, Brooklyn, New York 11211. The last four digits of the Debtor's Federal Tax Id. No. are 9776.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Application.

28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Application and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Application having been provided to the Notice Parties, and such notice having been adequate and appropriate under the circumstances, and it appearing that no other notice need be provided; and it appearing that Advisor neither holds nor represents any interest adverse to the Debtor's estate; and it appearing that Advisor is a "disinterested person," as that term is defined in section 101(14) of the Bankruptcy Code; and it appearing that the relief requested in the Application is in the best interests of the Debtor, its estate, creditors, and all parties in interest; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**

1.      The Application is granted to the extent set forth herein.

2.      The Debtor is authorized, pursuant to sections 327(a) and 328 of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, Local Bankruptcy Rules 2014-1 and 2016-1, to employ and retain Eastdil and A&G as its exclusive brokers, in accordance with the terms and conditions set forth in the Engagement Letter annexed hereto as **Exhibit 1** and Application in the Chapter 11 Case.

3.      Advisor shall file fee applications for interim and final allowances of compensation and reimbursement of expenses pursuant to the procedures set forth in sections 330 and 331 of the Bankruptcy Code.

4.      Advisor is authorized to provide the services described in the Application and the Engagement Letter, including arranging the sale of the WV Complex by a disposition of the entire WV Complex or a portion of or partial interest in the same.

5.      Advisor shall be compensated and reimbursed upon notice and an appropriate hearing pursuant to sections 327, 330 and 331 of the Bankruptcy Code, as the case may be, and the applicable Bankruptcy Rules, the Local Bankruptcy Rules, and fee and expense guidelines and orders of this Court.

6.      Notwithstanding anything to the contrary in the Application or the Engagement Letter, the Engagement Letter is modified as follows:

a.  All requests for payment of indemnity, contribution or reimbursement pursuant to the Engagement Letter shall be made by means of an application (interim or final as the case may be) and shall be subject to review by the Court to ensure that payment of such indemnity, contribution or reimbursement conforms to the terms of the Engagement Letter (as modified and restated by this Order) and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity, contribution or reimbursement is sought; provided, however, in no event shall Advisor be indemnified to the extent the Court determines by final order that any claim or expense has resulted from the bad-faith, self-dealing, breach of fiduciary duty, gross negligence or willful misconduct on the part of Advisor;

b.  In the event that Advisor seeks reimbursement from the Debtor for attorneys' fees in connection with a request for payment of indemnity, contribution or reimbursement pursuant to the Engagement Letter (as modified and restated by this Order), the invoices and supporting time records from such attorneys shall be included in Advisor's application (interim or final as the case may be) and such invoices and time records shall be subject to the Fee Guidelines and the approval of the Court under the standards of sections 330 and 331 of the Bankruptcy Code without regard to whether such attorney has been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code;

c.  Advisor shall not be entitled to reimbursement by the Debtor for any fees, disbursements and other charges of Advisor's counsel other than those incurred in connection with a request of Advisor for payment of indemnity, retention of Advisor and preparation of fee applications;

d.  In no event shall Advisor be entitled to indemnification, contribution, exoneration, reimbursement of attorneys' fees or expenses, limitation on liability or allocation or apportionment of damages, indemnified or exonerated if the Debtor or representatives of the estate assert a claim, to the extent the Court determines by final order that such claim for

3

indemnity arose out of Advisor's own bad-faith, self-dealing, breach of fiduciary duty, gross negligence, or willful misconduct on the part of Advisor; and

e.  There shall be no limitation of liability of Advisor, or allocation or apportionment of damages, with respect to a claim or expense to the extent the Court determines by final order that the indemnification, contribution or reimbursement on account of such claim or expense has resulted from the bad-faith, self-dealing, breach of fiduciary duty, gross negligence or willful misconduct on the part of Advisor.

7.    The Court shall retain jurisdiction to hear and to determine all matters arising from or related to implementation of this Order.

8.    The Debtor is authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Application.

9.    To the extent there may be any inconsistency between the terms of the Application, the Engagement Letter, and this Order, the terms of this Order shall govern.

10.    The terms and provisions of this Order shall be immediately effective and enforceable upon its entry.

11.    This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation and/or enforcement of this Order.

Dated: _____, 2023
        New York, New York

_____
HONORABLE MARTIN GLENN
CHIEF UNITED STATES BANKRUPTCY JUDGE

## Exhibit 1

**Engagement Letter**



40 West 57th Street, 23rd Floor, New York, NY 10019
Tel 212 315 7200
www.eastdilsecured.com



October 8, 2023

Wythe Berry Fee Owner LLC
2 Park Avenue
New York, NY 10016

**Re: William Vale Hotel**

Ladies and Gentlemen:

The purpose of this letter is to describe the terms and conditions under which Wythe Berry Fee Owner LLC ("Owner") agrees to retain Eastdil Secured, L.L.C. ("Eastdil") and A&G Realty Partners, LLC ("A&G" and, collectively with Eastdil, the "Advisor") to arrange the sale of the William Vale Hotel, located at 111 N 12th Street, Brooklyn, New York (the "Property"). For the purposes of this agreement the term sale shall include a disposition of the entire Property, a portion of the Property, and/or a partial interest in the Property.

1.    <u>Grant</u>.  Owner hereby grants to Advisor the exclusive right to sell the Property for a period commencing on the date hereof and continuing through and including March 31, 2024 (the "Exclusive Period"). Advisor understands that the Property is currently in bankruptcy and Advisor will advise Owner throughout such process.

If Owner should enter into a written agreement for the sale of the Property before the termination of the Exclusive Period, but the closing does not occur until after the termination of such period, Advisor shall be entitled to be paid the compensation in accordance with the terms of this agreement whenever the closing occurs.

Advisor shall provide Owner with a list of all prospective purchasers who, during the term of this agreement signed a confidentiality agreement with respect to the Property (the "Pending List"). In the event a sale is consummated with, or a contract of sale is executed by, a prospective purchaser on the Pending List within nine (9) months after the termination of the Exclusive Period (the "Pending Period"), provided Advisor provides Owner with the Pending List within ten (10) business days after the termination of the Exclusive Period, Owner shall compensate Advisor in accordance with the terms set forth herein.  The provisions of this paragraph shall in no way be deemed to limit Advisor's right in the previous paragraph.

**2.** <u>**Compensation**</u>. Upon the closing of the sale of the Property, Advisor shall be deemed to have earned, and shall be paid by Owner, a collective fee (to be shared between them) in an amount equal to 0.75% of the first $160,000,000 of the gross sale price of the Property, plus 2.0% of that portion of the gross sale price of the Property that exceeds $160,000,000 but is less than $170,000,000, plus 3.0% of that portion of the gross sale price of the Property that exceeds $170,000,000 but is less than $180,000,000, plus 4% of that portion of the gross sale price that equals or exceeds $180,000,000, provided in the event (X) either (i) Zelig Weiss; and/or (ii) Electra Real Estate Ltd., or any affiliates/subsidiaries thereof; provides a letter of intent ("LOI") acceptable to Owner or enter into a purchase and sale agreement ("PSA") regarding acquisition of the Property, then, unless the terms of such LOI or PSA have changed following Advisor's commencement of marketing the Property, the compensation shall be as determined above but discounted by (x) 50%, if either such party provides an LOI acceptable to Owner or enter into a PSA regarding acquisition of the Property prior to the commencement of formal marketing by Advisor (defined as the distribution of the initial 'e-teaser') and (y) 25%, if either such party provides a LOI acceptable to Owner or enter into a PSA regarding acquisition of the Property after the commencement of formal marketing by Advisor or (Y) Blackstone Real Estate Services L.L.C. or any affiliates/subsidiaries thereof, provides an LOI acceptable to Owner or enter into a PSA regarding acquisition of the Property, then, unless the terms of such LOI or PSA have changed following Advisor's commencement of marketing the Property, the compensation shall be as determined above but discounted by (x) 30%, if such party provides an LOI acceptable to Owner or enter into a PSA regarding acquisition of the Property prior to the commencement of formal marketing by Advisor and (y) 20%, if such party provides an LOI acceptable to Owner or enter into a PSA regarding acquisition of the Property after the commencement of formal marketing by Advisor. Owner shall provide Advisor with all current letters of intent received in respect of the Property.

In addition to the foregoing, Owner may, in its sole discretion, pay Advisor a discretionary bonus if, in Owner's sole and absolute judgment, superior service and/or superior results were obtained through Advisor's efforts. Gross sale price shall be adjusted up to a 100% interest in the Property if less than 100% is being purchased and shall include, without limitation, any cash consideration paid or payable in connection with a sale, the then outstanding principal balances of any mortgages or deeds of trust constituting a lien on the Property assumed, or to which the Property is taken subject, by the purchaser, the face amount of any seller financing provided by Owner and the fair market value of all other consideration payable (including, without limitation, insurance proceeds) in connection with the sale of the Property, without deduction for closing expenses, adjustments or costs of any kind. For purposes of calculating fair market value, any securities constituting a part of such consideration that are publicly traded shall be valued at the last closing price thereof (or, if applicable, the mean between the latest bid and asked prices) prior to the date of the consummation of the acquisition; non-publicly traded securities or other assets shall be valued at their fair market value as determined by agreement among the parties hereto. Said compensation shall be earned by and payable to Advisor as, if and when the closing of the sale occurs. Advisor, in all events, shall be entitled to the aforesaid compensation if Owner consummates the sale of the Property or signs a written agreement for the sale of the Property during the Exclusive Period whether or not Owner utilizes Advisor's services.

Advisor shall also be entitled to the compensation set forth in this agreement if Owner elects to enter into an exchange, assignment or other transfer option or refinance

("Alternative Transaction"), so long as a purchase offer or offer to enter into an Alternative Transaction was accepted by Owner prior to the end of the Exclusive Period.  In the event of an exchange, assignment or other transfer, the compensation will be based on the fair market value of the Property that is being exchanged, assigned or transferred.  In the event of a refinancing, the compensation shall be based on the gross financing commitment, including the amount of any earnout or holdback.  To the extent Advisor only arranges mezzanine debt, the gross financing commitment shall be the aggregate of the mezzanine debt plus the amount of the underlying first mortgage debt that remains on the Property.

        **3.**      **Expenses**.  In all events, Advisor shall be entitled to reimbursement for its out-of-pocket expenses, including, but not limited to, airfare, meals, transportation and all costs incurred in the preparation of marketing materials (e.g., photography, cartography, graphic arts, reproductions, printing, etc.) provided, however, that Owner shall have no obligation to reimburse Advisor for that portion of any such expenses that is in excess of $25,000, unless such excess is attributable to unforeseen events or circumstances or events or circumstances beyond the control of Advisor. Advisor shall provide Owner with an expense budget within ten (10) business days after the execution of this agreement. Advisor shall provide Owner with detailed and itemized invoices for such expenses and shall provide Owner notice of every $10,000 spent.  Included within such reimbursement will be amounts to cover the costs to be incurred in connection with Advisor's internal graphic design and production of marketing materials for the Property, and to cover the cost to maintain a "virtual war" room for the Property. Owner shall promptly reimburse Advisor from time to time for any such expenses incurred upon Owner's receipt of an invoice from Advisor.

        **4.**      **Information**.  Owner shall make available to Advisor the documents and other information which in the reasonable judgment of Advisor are necessary or appropriate for the fulfillment of its assignment hereunder and the proper marketing of the Property.  All documents and information supplied to Advisor by Owner shall, to the best of Owner's knowledge, be complete and accurate and Owner shall correct any information which it learns is incomplete or inaccurate.  Owner may designate certain information as confidential, and Advisor will so treat such information.  Owner understands that the information provided to Advisor may be used in the preparation of marketing materials that will be distributed to prospective purchasers.  Owner will be asked to approve all marketing materials in advance of their use.  Owner acknowledges and agrees that, as between Advisor and Owner, Owner is responsible for the accuracy and completeness of all information regarding the Property that is provided by or at the direction of Owner.  Additionally, Owner agrees to provide to Advisor a copy of the final form of the closing or settlement statement(s) prepared in connection with the closing and settlement of the sale transaction(s).

        **5.**      **Analysis**.  To the extent that Advisor prepares any analysis, valuation, appraisal or other report ("Analysis") regarding the economic value of the Property or Owner's interest therein, Owner acknowledges and agrees that any such Analysis will be an estimate only and will not constitute a representation, warranty, covenant or guaranty, either expressed or implied, regarding future events or performance.  Owner represents that the Analysis will be used

3

for its internal purposes only, and will not be disseminated to any third party without the written consent of Advisor.

6.    **Reporting**.  Advisor shall keep Owner current as to the progress of its marketing efforts and Owner shall refer promptly to Advisor all inquiries concerning the Property not less than on a weekly basis.  To the extent that Owner fails to refer any inquiry to Advisor, or prevents or requests Advisor to refrain from contacting, or delivering a marketing brochure to any party, such party shall be deemed to be a party with whom Advisor dealt for all purposes of this agreement.  Owner shall provide Advisor, within 15 days of executing this agreement, a list of the names of all parties with whom Owner had discussed the sale of the Property prior to the date hereof.

7.    **Owner's Authority**.  Owner, in its sole discretion, reserves his right to accept or reject any offer for the acquisition of the Property.

8.    **Purchaser Representation**.  Owner acknowledges and agrees that the potential purchaser of the Property may request Advisor to act as its financial advisor to arrange financing for the purchase of the Property.  Owner agrees that Advisor may assist such purchaser in arranging financing to complete the acquisition of the Property and that Advisor may be paid a fee by such purchaser for arranging any such financing and such fee shall in no event reduce, or be credited against, any fee payable hereunder.

9.    **Attorney's Fees**.  In the event that any action, suit or other proceeding in law or in equity is brought in connection with any term or provision in this agreement, and such action results in the award of a judgment for money damages or in the granting of any injunction or restraining order, all expenses (including reasonable attorneys' fees) of the prevailing party in such action, suit or other proceeding shall be paid promptly by the non-prevailing party.

10.    **Limitations**.  Owner also understands that Advisor will not advise him as to the legal or tax effects of any transaction, and that Owner should, if het has not done so already, promptly engage legal and tax professionals to advise him as to all such matters during the course of this engagement and any transaction that may result.  Advisor shall also have no obligation to investigate conditions on or the condition of the Property, nor the financial stability or capability of any prospective purchaser.  Owner should engage technical staff and other analytical personnel to advise and assist him in each of these areas.

11.    **Assignment**.  Neither party shall assign this agreement or any right or obligation hereunder without the prior written consent of the other party.

12.    **Arbitration**.  Any claim or dispute arising out of or in any way relating to this agreement or its alleged breach shall be determined by the Bankruptcy Court.

13.    **Bankruptcy Court Approval**.  Advisor expressly understands that the Owner currently has a pending case under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for Southern District of New York under Case Number 22-11340 (MG) (the "Bankruptcy Court").  This Agreement and the terms herein are expressly subject to the approval of the Bankruptcy Court and the Owner shall make prompt application to the Bankruptcy Court seeking entry of an order, in form mutually acceptable to Owner and Advisor, authorizing Owner's

4

entry into same pursuant to Sections 327 and 328 of the Bankruptcy Code, effective as of the date hereof. Owner shall provide Advisor with a copy of the pleadings requesting retention of Advisor prior to submission to the Bankruptcy Court for Advisor's review and comments and advise Advisor of any objection or hearings pertaining to Advisor's retention. The order authorizing Advisors retention must be acceptable to Advisor and Advisor's obligations hereunder are conditioned upon the grant of such order. Furthermore, if such order is not obtained within sixty (60) days from the date that it is filed, Advisor shall have the right to terminate this agreement at any time thereafter. If an acceptable order is not obtained authorizing Advisor's services and fees as set forth herein, the Owner agrees to amend the application in conjunction with and the approval of Advisor and request a hearing to review the application. In the event the Owner is unable to obtain an acceptable order authorizing the hiring and retention of Advisor under the terms of this agreement and the agreement is terminated as a result, Advisor reserves the right to seek a substantial contribution claim for any rights or obligations incurred or accrued prior to such termination  Advisor understands and acknowledges that it will be required to submit a fee application to the Bankruptcy Court for the payment of any fees and expenses hereunder, and that the Bankruptcy Court must authorize any such payment. Owner shall file any applications necessary and otherwise assist Advisor in obtaining Bankruptcy Court approval of the payment of its fees and costs hereunder.

14.    **Miscellaneous**. The party executing this agreement on behalf of Owner represents and warrants that he is duly authorized to bind Owner with respect to the terms and conditions of this agreement. This Agreement may be executed in counterparts, each of which shall be deemed an original for all purposes, but all of which when taken together shall constitute only one agreement. Facsimile and electronic signatures shall be deemed to be original signatures.

This agreement contains the entire agreement of the parties hereto and replaces any prior agreements or understandings with respect to the subject matter hereof. It may not be changed, amended or modified except by an instrument in writing signed by the parties hereto.

4575308.7

Provided the terms and conditions of this agreement meet with your approval, please evidence your agreement by executing this letter on behalf of Owner, and return it to us.

Sincerely,

EASTDIL SECURED, L.L.C.

By: _____
     Name: Scott Ellman
     Title: Managing Director

A&G REALTY PARTNERS, LLC

By: _____
Name: Emilio Amendola
Title: Co-President

**AGREED AND ACCEPTED:**

Wythe Berry Fee Owner LLC

By: _____
     Name: Assaf Ravid
     Title: Authorized Signatory
     Country of Citizenship: USA

Dated: October 23, 2023

6

4575308.7

**Exhibit B**

**Ellman Declaration**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X
                                           :

In re                                    :        **Chapter 11**

                                           :

**WYTHE BERRY FEE OWNER LLC,**    :        **Case No. 22-11340 (MG)**

                                           :

                  Debtor.[1]         :

                                           :

                                           :

-----------------------------------------------------------------X

### DECLARATION OF SCOTT B. ELLMAN IN SUPPORT OF APPLICATION FOR AUTHORITY TO RETAIN AND EMPLOY EASTDIL SECURED, L.L.C. AND A&G REALTY PARTNERS, LLC AS EXCLUSIVE REAL ESTATE BROKERS FOR THE DEBTOR

Under 28 U.S.C. § 1746, I, Scott B. Ellman, declare as follows under the penalty of perjury:

1.      I am a Managing Director of Eastdil Secured, L.L.C. ("**Eastdil**").

2.      I am authorized to execute this Declaration (the "**Declaration**") on behalf of Eastdil.

3.      I respectfully submit this Declaration in support of the Application submitted on the date herein (the "**Application**") of Wythe Berry Fee Owner LLC, as debtor and debtor in possession (the "**Debtor**") in the above-captioned chapter 11 case (the "**Chapter 11 Case**"), pursuant to sections 327(a) and 328 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Bankruptcy Rules**"), for authority to retain and employ Eastdil and A&G

---

[1] The Debtor's principal offices are located at 199 Lee Avenue, Suite 693, Brooklyn, New York 11211. The last four digits of the Debtor's Federal Tax Id. No. are 9776.

Realty Partners, LLC ("**A&G,**" and collectively with Eastdil, "**Advisor**") as its exclusive real estate brokers in connection with the Chapter 11 Case.

4.      Unless otherwise stated in this Declaration, I have personal knowledge of the facts set forth herein. To the extent any information disclosed herein requires amendment or modification upon Eastdil's completion of further review, or as additional information regarding parties in interest in this Chapter 11 Case becomes available, a supplemental declaration will be submitted to the Court reflecting such amended, supplemented, or otherwise modified information.

## **Eastdil's Qualifications**

5.      Eastdil is a premier independent real estate investment bank with expertise in commercial real estate and capital markets. It was founded in 1967 by Benjamin V. Lambert, who is considered the founder of the real estate investment banking industry.

6.      Eastdil is now one of the largest independent commercial real estate investment banks in the world by transaction volume, with over $2.7 trillion in transactions completed over the past 15 years. Eastdil recently has been recognized as a top global advisor on transactions of $100 million and higher; a top debt placement platform in the United States and Europe; and a leader in office, retail, multifamily, hotel, and industrial investment sales in the United States and Europe.

7.      Eastdil possesses the requisite knowledge and expertise and is well qualified to act, along with A&G, as the Debtor's exclusive real estate brokers in this Chapter 11 Case, including by marketing and potentially selling the WV Complex in a prompt and cost-efficient manner.

## Scope of Services

8.      Pursuant to the terms of the Engagement Letter, in consideration for the compensation contemplated thereby, Eastdil has agreed to serve, along with A&G, as the Debtor's exclusive brokers to arrange the sale of the WV Complex by a disposition of the entire WV Complex or a portion of or partial interest in the same (the "**Services**").

9.      As part of the Services as exclusive brokers to the Debtor, Eastdil along with A&G will undertake a formal marketing process, which would involve a robust and wide-ranging, public process to solicit interest and offers from potential third-party investors to either invest in the WV Complex or undertake an outright or partial purchase of it.

10.     Subject to this Court's approval of the relief requested in this Application, Eastdil will provide the Services to the Debtor.

## Eastdil's Disclosure Procedures

11.     In connection with preparing and submitting this Declaration, Eastdil searched its records for any past and present transactions and/or contracts that involve, or *may* have involved the Debtor, its principals, agents, and affiliated entities, the Debtor's creditors or any other party in interest in this Chapter 11 Case and determined that it has no such transactions and/or contracts to disclose.

## Eastdil's Connections with the Debtor and Parties in Interest

12.     To the best of my knowledge, information and belief, Eastdil does not currently represent the Debtor or any of its agents, principals or affiliated entities, the Debtor's creditors or any other party in interest in this Chapter 11 Case, in connection with any active, ongoing or pending contract for sale.

13.     To the best of my knowledge, information and belief, neither Eastdil nor any of its employees or affiliated entities represents any interest adverse to the Debtor or its estate in any matters upon which Eastdil is to be engaged.

14.     Further, in the course of its real estate business, Eastdil appears in numerous cases, proceedings and/or transactions that involve many different professionals, including attorneys, accountants and financial consultants, who may represent claimants and parties-in-interest in the Debtor's Chapter 11 Case. And Eastdil has in the past, may currently and likely will in the future be working with or against other professionals involved in this case in matters unrelated to the Debtor and this case. To the best of my knowledge, information and belief, none of these relationships create interests materially adverse to the Debtor in the matters upon which Eastdil is to be employed.

15.     It was determined that Eastdil represents no interest adverse to the Debtor's estate, and is a "disinterested person" as that term is defined in Bankruptcy Code § 101(14) in that Eastdil:

a.  is not a creditor, an equity security holder, or an insider;

b.  is not and was not, within 2 years before the Petition Date, a director, an equity security holder, or an insider;

c.  does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor, or for any other reason.

*See* 11 U.S.C. § 101(14).

16.     Eastdil maintains that it is disinterested and should be retained to serve, along with A&G, as the Debtor's exclusive real estate brokers in connection with the matters contemplated in the Application.

17.     Eastdil will periodically review its files during the pendency of the Debtor's Chapter 11 Case to ensure that no conflicts or other disqualifying circumstances exist or arise. If Eastdil discovers any new relevant facts or relationships pertaining to the matters described herein during the period of its retention, Eastdil will promptly file a supplemental declaration with the Court.

### Eastdil Is Disinterested

18.     Based on the foregoing, insofar as I have been able to ascertain after diligent inquiry, I believe that Eastdil does not hold or represent an interest adverse to the Debtor's estate in the matters upon which Eastdil is to be employed, and that Eastdil is "disinterested" as such term is defined in section 101(14) of the Bankruptcy Code, and modified by section 1107(b) of the Bankruptcy Code.

### Eastdil's Compensation

19.     It is contemplated that both Eastdil and A&G will seek compensation in accordance with the engagement agreement between Advisor and the Debtor ("**Engagement Letter**") and the Application, subject to the approval of this Court and compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules.

20.     As noted in the Engagement Letter and Application, upon the closing of the sale of the WV Complex, Advisor shall be deemed to have earned, and shall be paid by the Debtor, a collective fee (to be shared between them) in an amount equal to 0.75% of the first $160,000,000 of the gross sale price of the WV Complex, plus 2.0% of that portion of the gross sale price of the WV Complex that exceeds $160,000,000 but is less than $170,000,000, plus 3.0% of that portion of the gross sale price of the WV Complex that exceeds $170,000,000 but is less than $180,000,000, plus 4% of that portion of the gross sale price that equals or exceeds $180,000,000,

provided in the event (X) either (i) Weiss; and/or (ii) Electra Real Estate Ltd., or any affiliates/subsidiaries thereof; provides a letter of intent ("**LOI**") acceptable to the Debtor or enter into a purchase and sale agreement ("**PSA**") regarding acquisition of the WV Complex, then, unless the terms of such LOI or PSA have changed following Advisor's commencement of marketing the WV Complex, then the compensation shall be as determined above but discounted by (x) 50%, if either such party provides an LOI acceptable to the Debtor or enter into a PSA regarding acquisition of the WV Complex prior to the commencement of formal marketing by Advisor (as defined in the Engagement Letter) and (y) 25%, if either such party provides an LOI acceptable to the Debtor or enters into a PSA regarding acquisition of the WV Complex after the commencement of formal marketing by Advisor or (Y) Blackstone Real Estate Services L.L.C. or any affiliates/subsidiaries thereof, provides an LOI acceptable to the Debtor or enters into a PSA regarding acquisition of the WV Complex, then, unless the terms of such LOI or PSA have changed following Advisor's commencement of marketing the WV Complex, the compensation shall be as determined above but discounted by (x) 30%, if such party provides an LOI acceptable to the Debtor or enters into a PSA regarding acquisition of the WV Complex prior to the commencement of formal marketing by Advisor and (y) 20%, if such party provides an LOI acceptable to the Debtor or enters into a PSA regarding acquisition of the WV Complex after the commencement of formal marketing by Advisor (the "**Compensation Structure**"). The Debtor shall provide Advisor with all current letters of intent received in respect of the WV Complex.

21.    I understand that although the Advisor's fee shall be paid to Advisor at closing, such compensation must be approved by this Court upon application consistent with the Bankruptcy Rules, the Local Bankruptcy Rules, and any further Order of this Court. Accordingly,

promptly after the closing on the sale of the WV Complex, Advisor shall file a final fee application under Sections 328 and 330 of the Bankruptcy Code.

22.     In addition, to the extent the Engagement Letter so provides, Advisor will seek reimbursement for actual and necessary out-of-pocket expenses incurred in connection with its engagement with the Debtor in this Chapter 11 Case. Expenses for actual costs incurred will be charged in accordance with General Order M-412 (Order Establishing Procedures for Monthly Compensation and Reimbursement of Expenses of Professionals, dated December 21, 2010 (Gonzalez, C.J.)), Administrative Order M-447 (Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases, dated January 29, 2013 (Morris, C.J.)), and the U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330.

23.     Eastdil is neither a pre-petition creditor of the Debtor nor has it received any retainer heretofore or provided pre-petition real estate advisory or broker services to the Debtor. Other than as set forth herein, there is no proposed arrangement between the Debtor and Eastdil for compensation to Eastdil paid in this Chapter 11 Case.

## Conclusion

24.     The Application requests approval of the Debtor's retention of Eastdil, along with A&G, as its exclusive real estate brokers in the Chapter 11 Case.

25.     The foregoing constitutes the statement of Eastdil, which is true and correct to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct on this 26th day of October, 2023.

*/s/ Scott B. Ellman*
Scott B. Ellman

**<u>Exhibit C</u>**

**Amendola Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
                                       :

In re                                :        **Chapter 11**

                                       :

**WYTHE BERRY FEE OWNER LLC,**     :        **Case No. 22-11340 (MG)**

                                       :

               Debtor.[1]         :

                                       :

                                     :
-------------------------------------------------------------X

**DECLARATION OF EMILIO AMENDOLA IN SUPPORT OF APPLICATION FOR
AUTHORITY TO RETAIN AND EMPLOY EASTDIL SECURED, L.L.C.
AND A&G REALTY PARTNERS, LLC AS EXCLUSIVE
<u>REAL ESTATE BROKERS FOR THE DEBTOR</u>**

        Under 28 U.S.C. § 1746, I, Emilio Amendola, declare as follows under the penalty of perjury:

        1.        I am Co-President of A&G Realty Partners, LLC ("**A&G**").

        2.        I am authorized to execute this Declaration (the "**Declaration**") on behalf of A&G.

        3.        I respectfully submit this Declaration in support of the Application submitted on the date herein (the "**Application**") of Wythe Berry Fee Owner LLC, as debtor and debtor in possession (the "**Debtor**") in the above-captioned chapter 11 case (the "**Chapter 11 Case**"), pursuant to sections 327(a) and 328 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Bankruptcy Rules**"), for authority to retain and employ Eastdil Secured,

---

[1] The Debtor's principal offices are located at 199 Lee Avenue, Suite 693, Brooklyn, New York 11211. The last four digits of the Debtor's Federal Tax Id. No. are 9776.

L.L.C. ("**Eastdil**") and A&G Realty Partners, LLC ("**A&G**," and collectively with Eastdil, "**Advisor**") as its exclusive real estate brokers in connection with the Chapter 11 Case.

4.      Unless otherwise stated in this Declaration, I have personal knowledge of the facts set forth herein. To the extent any information disclosed herein requires amendment or modification upon A&G's completion of further review, or as additional information regarding parties in interest in this Chapter 11 Case becomes available, a supplemental declaration will be submitted to the Court reflecting such amended, supplemented, or otherwise modified information.

### A&G's Qualifications

5.      I have been in the commercial real estate business for almost 40 years. In 2012, I co-founded A&G. I am the head of A&G's real estate disposition and due diligence groups. My key areas of expertise include real estate sales, lease renegotiations and terminations, portfolio optimization, due diligence, and valuation. During my career, I have worked with more than 750 clients and generated successful outcomes for individual asset and portfolio sales, as well as lease mitigation projects, valued at more than $10 billion.

6.      A&G is a diversified real estate consulting firm whose principals have over fifty years of commercial real estate experience. A&G evaluates, facilitates the acquisition of, and disposes of all types of real estate in and out of bankruptcy, including hotels and hospitality assets. A&G regularly represents chapter 11 debtors, trustees, and receivers in the marketing and disposition of real estate pursuant to section 363 of the Bankruptcy Code. As a diversified real estate consulting and advisory firm with extensive experience with the kind of property at issue, A&G is well qualified to provide the services for which the Debtor seeks to retain it.

7.      A&G possesses the requisite knowledge and expertise and is well qualified to act, along with Eastdil, as the Debtor's exclusive real estate brokers in this Chapter 11 Case,

including by marketing and potentially selling the WV Complex in a prompt and cost-efficient manner.

8.      A&G and Eastdil have experience working successfully as co-brokers. Recently, A&G and Eastdil were retained as co-brokers in the matter *In re 96 Wythe Acquisition LLC*, No. 21-22108 (SHL) (Bankr. S.D.N.Y.) to assist in the marketing and sale of the debtor's property: a hotel located at 96 Wythe Avenue, Brooklyn, New York. There, the Court approved the sale of the debtor's assets, including the hotel, free and clear of all liens, claims, interests and encumbrances by order dated January 26, 2023.

## Scope of Services

9.      Pursuant to the terms of the Engagement Letter, in consideration for the compensation contemplated thereby, A&G has agreed to serve, along with Eastdil, as the Debtor's exclusive brokers to arrange the sale of the WV Complex by a disposition of the entire WV Complex or a portion of or partial interest in the same (the "**Services**").

10.     As part of the Services as exclusive brokers to the Debtor, A&G along with Eastdil will undertake a formal marketing process, which would involve a robust and wide-ranging, public process to solicit interest and offers from potential third-party investors to either invest in the WV Complex or undertake an outright or partial purchase of it.

11.     Subject to this Court's approval of the relief requested in this Application, A&G will provide the Services to the Debtor.

## A&G's Disclosure Procedures

12.     In connection with preparing and submitting this Declaration, A&G searched its records for any past and present transactions and/or contracts that involve, or *may* have involved the Debtor, its principals, agents, and affiliated entities, the Debtor's creditors or

any other party in interest in this Chapter 11 Case and determined that it has no such transactions and/or contracts to disclose.

### A&G Has No Connections with the Debtor and Parties in Interest

13.     To the best of my knowledge, information and belief, A&G does not currently represent, or have any connections with, the Debtor, any creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

14.     Further, in the course of its real estate business, A&G appears in numerous cases, proceedings and/or transactions that involve many different professionals, including attorneys, accountants and financial consultants, who may represent claimants and parties-in-interest in the Debtor's Chapter 11 Case. And A&G has in the past, may currently and likely will in the future be working with or against other professionals involved in this case in matters unrelated to the Debtor and this case. To the best of my knowledge, information and belief, none of these relationships create interests materially adverse to the Debtor in the matters upon which A&G is to be employed.

15.     It was determined that A&G does not hold or represent any interest adverse to the Debtor's estate, and is a "disinterested person" as that term is defined in Bankruptcy Code § 101(14) in that A&G:

   a.  is not a creditor, an equity security holder, or an insider;

   b.  is not and was not, within 2 years before the Petition Date, a director, an equity security holder, or an insider;

   c.  does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor, or for any other reason.

*See* 11 U.S.C. § 101(14).

16.    A&G maintains that it is disinterested and should be retained to serve, along with Eastdil, as the Debtor's exclusive real estate brokers in connection with the matters contemplated in the Application.

17.    A&G will periodically review its files during the pendency of the Debtor's Chapter 11 Case to ensure that no conflicts or other disqualifying circumstances exist or arise. If A&G discovers any new relevant facts or relationships pertaining to the matters described herein during the period of its retention, A&G will promptly file a supplemental declaration with the Court.

## A&G Is Disinterested

18.    Based on the foregoing, insofar as I have been able to ascertain after diligent inquiry, I believe that A&G does not hold or represent an interest adverse to the Debtor's estate in the matters upon which A&G is to be employed, and that A&G is "disinterested" as such term is defined in section 101(14) of the Bankruptcy Code, and modified by section 1107(b) of the Bankruptcy Code.

## A&G's Compensation

19.    It is contemplated that both A&G and Eastdil will seek compensation in accordance with the engagement agreement between Advisor and the Debtor ("**Engagement Letter**") and the Application, subject to the approval of this Court and compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules.

20.    As noted in the Engagement Letter and Application, upon the closing of the sale of the WV Complex, Advisor shall be deemed to have earned, and shall be paid by the Debtor, a collective fee (to be shared between them) in an amount equal to 0.75% of the first $160,000,000 of the gross sale price of the WV Complex, plus 2.0% of that portion of the gross sale price of the

WV Complex that exceeds $160,000,000 but is less than $170,000,000, plus 3.0% of that portion of the gross sale price of the WV Complex that exceeds $170,000,000 but is less than $180,000,000, plus 4% of that portion of the gross sale price that equals or exceeds $180,000,000, provided in the event (X) either (i) Weiss; and/or (ii) Electra Real Estate Ltd., or any affiliates/subsidiaries thereof; provides a letter of intent ("**LOI**") acceptable to the Debtor or enter into a purchase and sale agreement ("**PSA**") regarding acquisition of the WV Complex, then, unless the terms of such LOI or PSA have changed following Advisor's commencement of marketing the WV Complex, then the compensation shall be as determined above but discounted by (x) 50%, if either such party provides an LOI acceptable to the Debtor or enter into a PSA regarding acquisition of the WV Complex prior to the commencement of formal marketing by Advisor (as defined in the Engagement Letter) and (y) 25%, if either such party provides an LOI acceptable to the Debtor or enters into a PSA regarding acquisition of the WV Complex after the commencement of formal marketing by Advisor or (Y) Blackstone Real Estate Services L.L.C. or any affiliates/subsidiaries thereof, provides an LOI acceptable to the Debtor or enters into a PSA regarding acquisition of the WV Complex, then, unless the terms of such LOI or PSA have changed following Advisor's commencement of marketing the WV Complex, the compensation shall be as determined above but discounted by (x) 30%, if such party provides an LOI acceptable to the Debtor or enters into a PSA regarding acquisition of the WV Complex prior to the commencement of formal marketing by Advisor and (y) 20%, if such party provides an LOI acceptable to the Debtor or enters into a PSA regarding acquisition of the WV Complex after the commencement of formal marketing by Advisor. The Debtor shall provide Advisor with all current letters of intent received in respect of the WV Complex.

21.    I understand that although the Advisor's fee shall be paid to Advisor at closing, such compensation must be approved by this Court upon application consistent with the Bankruptcy Rules, the Local Bankruptcy Rules, and any further Order of this Court. Accordingly, promptly after the closing on the sale of the WV Complex, Advisor shall file a final fee application under Sections 328 and 330 of the Bankruptcy Code.

22.    In addition, to the extent the Engagement Letter so provides, Advisor will seek reimbursement for actual and necessary out-of-pocket expenses incurred in connection with its engagement with the Debtor in this Chapter 11 Case. Expenses for actual costs incurred will be charged in accordance with General Order M-412 (Order Establishing Procedures for Monthly Compensation and Reimbursement of Expenses of Professionals, dated December 21, 2010 (Gonzalez, C.J.)), Administrative Order M-447 (Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases, dated January 29, 2013 (Morris, C.J.)), and the U.S. Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330.

23.    A&G is neither a pre-petition creditor of the Debtor nor has it received any retainer heretofore or provided pre-petition real estate advisory or broker services to the Debtor. Other than as set forth herein, there is no proposed arrangement between the Debtor and A&G for compensation to A&G paid in this Chapter 11 Case.

## Conclusion

24.    The Application requests approval of the Debtor's retention of A&G, along with Eastdil, as its exclusive real estate brokers in the Chapter 11 Case.

25.    The foregoing constitutes the statement of A&G, which is true and correct to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct on this

26th day of October, 2023.


_/s/ Emilio Amendola_
Emilio Amendola