Jon Schuyler Brooks
**ABRAMSON BROOKS LLP**
1051 Port Washington Blvd. #322
Port Washington, New York 11050
Tel: (516) 455-0215

*Counsel for Wythe Berry LLC*

Nicholas Bassett
**PAUL HASTINGS LLP**
2050 M Street NW
Washington, DC 20036
Tel: (202) 551-1700

*Counsel for Zelig Weiss*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| WYTHE BERRY FEE OWNER LLC, | : | Case No. 22-11340 (MG) |
| Debtor. | : | |

**RESPONSE OF WYTHE BERRY LLC AND ZELIG WEISS TO THE OBJECTION OF YOEL GOLDMAN TO THE (1) SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION OF WYTHE BERRY FEE OWNER LLC AND (2) DEBTOR'S MOTION FOR ENTRY OF AN ORDER APPROVING SETTLEMENT AGREEMENT PURSUANT TO <u>BANKRUPTCY RULE 9019</u>**

Wythe Berry LLC ("WB LLC") and Zelig Weiss ("Weiss"), by and through their respective counsel, Abramson Brooks LLP and Paul Hastings LLP, respectfully submit this response to the objection (the "Objection") of Yoel Goldman ("Goldman") (Dkt. #330) to confirmation of the Second Amended Chapter 11 Plan of Reorganization of Wythe Berry Fee Owner LLC (Dkt. #306, the "Plan") and the Debtor's Motion for Entry of an Order Approving Settlement Agreement Pursuant to Bankruptcy Rule 9019 (Dkt. #304, the "9019 Motion").

1.      WB LLC, The William Vale Hotel LLC, The William Vale FNB LLC, and North 12 Parking LLC (collectively, the "WV LLCs") are all New York limited liability companies. A core principle of the New York Limited Liability Company Law ("LLCL") is that the members of an LLC do not own, or hold any interest in, specific property of the LLC. LLCL § 601 ("A member has no interest in specific property of the limited liability company.")[1] As a matter of law, therefore, neither Goldman nor Weiss has any interest in any specific property of any of the WV LLCs.

2.      Contrary to Goldman's conclusory assertion, under both the LLCL and the respective operating agreements of the WV LLCs (collectively, the "Operating Agreements"), he has no "right to any proceeds generated from them, whether through operations or the sale of assets." Objection ¶ 34. The only right he has is to his share of distributions, if any, made by the respective WV LLCs. That right is expressly and severely limited by the terms of the Operating Agreements. For example, the Fifth Amendment to the Operating Agreement of WB LLC (the "Fifth Amendment") makes plain that "cash receipts … shall be distributed from time to time, *as and when determined by the Managing Member* …." Fifth Amendment §§ 6(a) & 6(b) (emphasis added). As Goldman concedes, Weiss is the sole Managing Member of each of the

---

[1] The same core principle exists in Delaware law. *See* 6 Del. Code § 18-701.

WV LLCs. Notably, Goldman does not, and legitimately could not, point to a single instance in which Weiss, as Managing Member, authorized a distribution of cash receipts (if any) that did not comply with the waterfall set forth in the respective operating agreements of the WV LLCs.

3. Desperate to prevent this Court from approving the Settlement Agreement (a necessary condition to confirming the Plan), Goldman argues the "Major Decisions" provision of the Operating Agreements gives him, in effect, the right to veto the Settlement Agreement by withholding his consent to its terms. That argument is meritless.

4. None of the terms of the Settlement Agreement runs afoul of the Major Decisions provision. Indeed, none of the actions taken or to be taken by the WV LLCs falls within any of the activities that constitute a Major Decision.

5. Goldman first points to the Major Decision item that, in its entirety reads, "the terms and conditions of any agreement between the Company and an Affiliate of any Member (i.e., Development Agreement, Property Management Agreement, Hotel Management Agreement, Leasing Agreement, Food and Beverage Operations Agreement, or Lease)." Fifth Amendment, Schedule 1, Item (ii) (the "Covered Agreements Major Decision").[2] The clear purpose of the Covered Agreements Major Decision is to prevent the Managing Member from making unilateral changes to the "terms and conditions" of the covered agreements. To the extent Goldman argues that this provision embraces other agreements, any such argument is predicated on a self-serving and disingenuous edit of the Covered Agreements Major Decision that omits entirely the parenthetical language quoted above (see Goldman Objection ¶ 35),

---

[2] For clarification, "Lease" as used in the Covered Agreements Major Decision does not refer to the Ground Lease between Debtor and WB LLC, but rather to the Lease between WB LLC and TWVH LLC. See Fifth Amendment § 7(d)(i) (ratification of Existing Agreements). The Fifth Amendment came into being months prior to the existence of Debtor, at the time WB LLC owned the entire WV Complex, including the Hotel.

3

critical language that unambiguously defines the phrase "agreement between the Company and an Affiliate of any Member," and thereby delimits the scope of the Covered Agreements Major Decision. Furthermore, Goldman fails to argue that the Settlement Agreement actually alters "the terms and conditions" of any of the covered agreements. Rather, he states only that an unidentified agreement is "impact[ed]" simply because Weiss, in his capacity as Managing Member, "signed the Settlement Agreement on behalf of the [WV LLCs]." *See* Goldman Objection ¶ 36, First Bullet Point. Notably, the word "impact" does not appear in the Covered Agreements Major Decision. *See* Fifth Amendment, Schedule 1, Item (ii).

6. Goldman next asserts that cash and non-cash assets of the WV LLCs that are necessary to fund the settlement with Debtor somehow are not being used for the exclusive benefit of the WV LLCs. *See* Goldman Objection ¶ 36, Second Bullet Point. That argument is specious at best. It ignores completely the decision of this Court to grant Debtor's motion for partial summary judgment – a motion that WB LLC, with no help from Goldman, opposed vigorously in this Court (much as WB LLC – without any objection from Goldman – had opposed the Debtor's overall effort to terminate the Ground Lease in New York State Supreme Court for almost three years prior to its removal to this Court, an action in which Goldman chose not to appear). Goldman's argument ignores also the immutable fact that, but for the Settlement Agreement, Debtor will seek (and likely obtain) a judgment against WB LLC, a judgment it no doubt will enforce against not only WB LLC as Lessee, but also Goldman (and Weiss) as Guarantor of WB LLC's rent obligation under the Lease, including against any distributions ostensibly due Goldman from any of the WV LLCs. The cash and non-cash assets of the WV LLCs, therefore, are being used for the exclusive benefit of the WV LLCs.[3] Consequently, the

---

[3] As explained by Debtor in the 9019 Motion and the Plan, to the extent Weiss, individually, is among those who, ultimately, will receive any funds out of the settlement, it will be only in his

actions taken and to be taken by the WV LLCs do not run afoul of the relevant Major Decisions Item (*see* Fifth Amendment, Schedule 1, Item (xvii)), or the unremarkable reiteration of that provision by the Emergency Arbitrator.

7. Finally, Goldman argues that, because he "receives nothing at all" under the Settlement Agreement, it disproportionately affects him (implicitly vis-à-vis Weiss) in contravention of the Major Decisions provision. *See* Goldman Objection ¶ 36, Third Bullet Point. That argument fails for at least two independent reasons.

8. *First*, the relevant Major Decision Item concerns the WV LLCs "tak[ing] action which has a disproportionate effect on any Class A Member, or tak[ing] any action with the intent to discriminate in a prejudicial manner with respect to the rights of any Member under this Agreement." Fifth Amendment, Schedule 1, Item (xix). The Settlement Agreement affects both Goldman and Weiss exactly the same way in their common capacity as a Class A Member of WB LLC (or a Member of the other WV LLCs): neither of them is getting a distribution; each of them derives the same benefit from the Releases issued in favor of each of the WV LLCs; and each of them gives up the same rights (if any) through the Releases issued by the WV LLCs in favor of Debtor and Trustees. Admittedly, Weiss will receive benefits under the Settlement Agreement that Goldman will not receive, but those benefits are wholly unrelated to the status of Weiss as a Member of the WV LLCs. As Debtor explains, Weiss receives a Release in settlement of claims Weiss – in his individual capacity, not as a Member of the WV LLCs – has against the Releasors. And, to the extent Weiss ultimately receives cash, it will result from his capacity as a Member of either Member LLC or Espresso Hospitality, not as a Member of any of the WV

---

capacity as a Member of either Member LLC or Espresso Hospitality, and only because each of those entities provided objectively valuable services to Debtor since the Petition Date and/or during the transition of management of the WV Complex (including the Hotel) to Debtor.

LLCs. *See*, *supra*, n.3. Consequently, none of the WV LLCs has taken any action that disproportionately affects Goldman vis-à-vis Weiss in their common capacity as Members of the WV LLCs.

9.   *Second*, Goldman is not disproportionately affected by the Settlement Agreement as compared to his best-case scenario in the absence of the Settlement Agreement. In either case, Goldman "receives nothing at all." Let's play it out: if there's no settlement, Debtor will proceed to judgment on its claims under the Ground Lease; Debtor then will enforce that judgment against WB LLC and, perhaps, the other WV LLCs. Even if Debtor for some reason cannot reach assets held by the other WV LLCs, Debtor unequivocally gets to enforce the judgment against Goldman as Guarantor of WB LLC's rent obligation under the Ground Lease; Debtor likely would garnish any potential distributions to Goldman, and Debtor or Mishmeret might even levy Goldman's membership interests in the other WV LLCs and commence a turnover proceeding. Therefore, to the extent the cash and/or non-cash assets remain in the WV LLCs rather than being used to fund the settlement, no portion of those assets ever would end up in Goldman's pocket, as any possible distribution would be garnished by Debtor, or Mishmeret. Bottom line: Goldman still "receives nothing at all."

10.   Goldman next attempts to derail approval of the Settlement Agreement and confirmation of the Plan by mischaracterizing what has transpired in the arbitration he commenced against Weiss. Although Goldman finally commenced that arbitration in March 2023, he showed his hand in early September 2022 by starting a "Special Proceeding" in New York State Supreme Court "in aid of arbitration" (the "Article 75 Proceeding").[4] It must be noted

---

[4] The Article 75 Proceeding played no small role in preventing Debtor and Weiss from coming to terms in 2022 on a transaction that would have culminated in Weiss purchasing the WV Complex. The arbitration itself had a similar effect in 2023.

6

that Goldman brought the Article 75 Proceeding and the arbitration against only Weiss, and then only in his individual capacity.

11. In the arbitration, Goldman alleged that the Major Decisions provision of the Fifth Amendment prohibited Weiss – again, in his individual capacity – from entering into a transaction with Debtor to purchase the WV Complex. That was the issue Goldman raised.

12. Although the Emergency Arbitrator relied on Goldman's argument to hold that Weiss "is enjoined from engaging in unilateral Major Decisions" (*see* Emergency Interim Award, May 10, 2023 at p.3), at the very first Preliminary Hearing held by the three-member arbitration panel, that "injunction" was reviewed and, rejecting Goldman's argument, significantly revised.

> ***Notwithstanding the May 10, 2023 Emergency Award***, Respondent Zelig Weiss may continue to negotiate directly or indirectly to purchase, acquire or otherwise obtain an interest in the William Vale Hotel (the "Hotel") or the Hotel's assets, including but not limited to any negotiations (i) with Wythe Berry Fee Owner LLC and/or its representatives, subsidiaries or affiliates; or (ii) with any bond holders, bond holder trustee, or other creditors and/or their representatives with respect to the Hotel, or (iii) in any way relating to the bankruptcy proceeding concerning Wythe Berry Fee Owner LLC, In re Wythe Berry Fee Owner LLC, No. 22-11340 (Bankr. S.D.N.Y.) (the content of this paragraph is defined herein as "Proposed Transaction").
> Pending further order of this Panel, Respondent Zelig Weiss is enjoined from directly or indirectly consummating, entering into, executing or otherwise finalizing any Proposed Transaction.

*See* Procedural Order No. 1, August 22, 2023, ¶¶ 2-3 at pp. 1-2 (emphasis added). "Respondent Zelig Weiss," therefore, was free "to negotiate directly or indirectly ***to purchase, acquire or otherwise obtain an interest in the William Vale Hotel (the "Hotel") or the Hotel's assets***," but he – Zelig Weiss – was enjoined from consummating a transaction that resulted in having him actually purchase, acquire or otherwise obtain an interest in the Hotel or its assets.

13. Further statements by the arbitration panel demonstrate that the only issue pressed

7

by Goldman in this regard concerned preventing Weiss, in his individual capacity, from pursuing and/or consummating a Proposed Transaction. The arbitration panel again rejected Goldman's argument, and further narrowed the Emergency Interim Award.

> With respect to the dispute over the interpretation of the so-called "Major Decisions" clause of the Fifth Amendment, and that portion of the Emergency Award that enjoined Respondent "from engaging in unilateral Major Decisions as expressly prohibited in the Operating Agreement," the Panel decides as follows:
> Insofar as Claimant's requests for interim relief were initiated under AAA Rules R-39 (Emergency Relief), and R-38 (regarding the Request for Interim Relief), respectively, **the Panel determines that Claimant has not sustained his burden of establishing at this time that, as a matter of contract interpretation, the Major Decisions clause of the Fifth Amendment applies to Respondent's personal conduct**, as opposed to conduct on behalf of the "Company." … As such, **Claimant has not established on this record that the Major Decisions provision applies to Respondent in his personal and individual capacity**, while not acting on behalf of "the Company."

*See* Procedural Order No. 2, August 24, 2023, at pp. 6-7 (emphases added).

14. Goldman's stated purpose in seeking an injunction against Weiss was to prevent Weiss from having an unfair advantage over Goldman in bidding for the Hotel and/or its assets. That is the reason the arbitration panel tied the duration of the injunction to the provision of books and records to Goldman. "The sooner Respondent produces the Subject Books and Records as required by PO No. 2, the sooner the injunction can be lifted, and thereby enable him to finalize any agreement." *See* Procedural Order No. 3, September 8, 2023, at p. 2.[5]

15. Furthermore, the arbitration panel made clear that the injunction was limited to Weiss in his individual capacity. "[T]he injunction in this Arbitration does not enjoin the Debtor or continue until [Goldman] is subjectively "satisfied" or "agrees" that the document production

---

[5] Notably, despite receiving hundreds of thousands if not millions of pages of documents far beyond the standard universe of "books and records," and despite Debtor making available information sufficient for any party to formulate a bid, Goldman never submitted one.

8

is complete. On the contrary, both ***PO No. 1 and PO No. 2 solely enjoin Respondent***," and only "as set forth in paragraph 3 of PO No. 1" (*see* Procedural Order No. 3) (emphasis added); *i.e.*, from consummating a Proposed Transaction in which he, Weiss, purchases, acquires, or other obtains an interest in the Hotel or its assets.

16. No part of either the Settlement Agreement or the Plan involves Weiss "purchas[ing], acquir[ing] or otherwise obtain[ing] an interest in" the Hotel or its assets.

17. Furthermore, given that (a) Goldman failed to name any of the WV LLCs as parties in either the Article 75 Proceeding or the original arbitration Demand, (b) Goldman failed to submit an Amended Demand seeking to add the WV LLCs as parties only on October 13, 2023 (*i.e.*, months after the injunction against Weiss in his individual capacity was issued in the arbitration), (c) Goldman never asked the arbitration panel to amend the injunction so as to have it apply to any of the WV LLCs, and (d) the First Department stayed the entire arbitration, the arbitration panel never even has considered a challenge to – let alone issued a ruling that actually limited – the express authority held by Weiss as Managing Member of each of the WV LLCs to take actions needed to settle the Rent Action and/or enter into the Settlement Agreement.

18. Consequently, even assuming *arguendo* the injunction issued in the arbitration against Weiss in his individual capacity (a) remains in effect and (b) is enforceable

9

notwithstanding that the First Department stayed the entire arbitration, it has no application to the Settlement Agreement and/or the Plan.

Dated: Nassau County, New York
May 13, 2023

                    **ABRAMSON BROOKS LLP**

                    By:   */s/ Jon Schuyler Brooks*
                         Jon Schuyler Brooks
                    1051 Port Washington Blvd. #322
                    Port Washington, NY 11050
                    (516) 455-0215
                    jbrooks@abramsonbrooks.com

                    *Counsel for Wythe Berry LLC*

                          -and-

                    **PAUL HASTINGS LLP**

                    By:   */s/ Nicholas Bassett*
                         Nicholas Bassett
                    2050 M Street NW
                    Washington, DC 20036
                    Tel: (202) 551-1700
                    nicholasbassett@paulhastings.com

                    *Counsel for Zelig Weiss*