**DAVIS POLK & WARDWELL LLP**
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Elliot Moskowitz
Chase McReynolds

*Attorneys for Yoel Goldman*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>WYTHE BERRY FEE OWNER LLC,<br><br>                       Debtor. | Chapter 11<br><br>Case No. 22-11340 (MG) |

<u>**NOTICE OF APPEAL**</u>

<u>**Part 1: Identify the appellant(s)**</u>

1. Name(s) of appellant(s): Yoel Goldman

2. Position of appellant(s) in the adversary proceeding or bankruptcy case that is the subject of this appeal:

| For appeals in an adversary proceeding. | For appeals in a bankruptcy case and not in an adversary proceeding. |
|---|---|
| ___Plaintiff | |
| ___Defendant | ___Debtor |
| ___Other (describe)_____ | ___Creditor |
| | ___Trustee |
| | ☒ Other (describe): <u>Party in interest</u> |

<u>**Part 2: Identify the subject of this appeal**</u>

1. Describe the judgment, order, or decree appealed from:

This appeal is from the Memorandum Opinion and Order Authorizing Debtor to Comply with Restraining Notice (Dkt. #430) (attached as Exhibit A).

2. State the date on which the judgment, order, or decree was entered:

August 1, 2024.

**Part 3: Identify the other parties to the appeal**

List the names of all parties to the judgment, order, or decree appealed from and the names, addresses, and telephone numbers of their attorneys (attach additional pages if necessary):

    1. Party: Meyer Chetrit                Attorney: Douglas Segal
                                                  Sukenik, Segal & Graff, P.C.
                                                  450 Seventh Avenue, 42nd Floor
                                                  New York, NY 10123
                                                  (212) 725-9300

**Part 4: Optional election to have appeal heard by District Court (applicable only in certain districts)**

If a Bankruptcy Appellate Panel is available in this judicial district, the Bankruptcy Appellate Panel will hear this appeal unless, pursuant to 28 U.S.C. § 158(c)(l), a party elects to have the appeal heard by the United States District Court. If an appellant filing this notice wishes to have the appeal heard by the United States District Court, check below. Do not check the box if the appellant wishes the Bankruptcy Appellate Panel to hear the appeal.

    ☐ Appellant(s) elect to have the appeal heard by the United States District Court rather than by the Bankruptcy Appellate Panel.

**Part 5: Sign below**

Dated:  New York, New York
           August 14, 2024

                                      By:  */s/ Elliot Moskowitz*
                                      Elliot Moskowitz
                                      Chase McReynolds

                                      DAVIS POLK & WARDWELL LLP
                                      450 Lexington Avenue
                                      New York, New York  10017
                                      (212) 450-4000

                                      *Attorneys for Yoel Goldman*

<u>Exhibit A</u>

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>WYTHE BERRY FEE OWNER LLC,<br><br>Reorganized Debtor. | <u>**FOR PUBLICATION**</u><br><br>Chapter 11<br><br>Case No. 22-11340 (MG) |

**MEMORANDUM OPINION AND ORDER**
**<u>AUTHORIZING DEBTOR TO COMPLY WITH RESTRAINING NOTICE</u>**

*A P P E A R A N C E S :*

SUKENIK, SEGAL & GRAFF, P.C.
*Attorneys for Meyer Chetrit*
450 Seventh Avenue, 42nd Floor New York, NY 10123
By:    Douglas Segal, Esq.

DAVIS POLK & WARDWELL LLP
*Attorneys for Yoel Goldman*
450 Lexington Avenue
New York, NY 10017
By:    Elliot Moskowitz, Esq.

CHAPMAN AND CUTLER LLP
*Attorneys for the Plan Administrator*
1270 Avenue of the Americas, 30th Floor
New York, NY 10020
By:    Michael Friedman, Esq.

HERRICK, FEINSTEIN LLP
*Attorneys for the Reorganized Debtor*
2 Park Avenue
New York, NY 10016
By:    Janice Goldberg, Esq.

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

The Chapter 11 plan (the "Plan," ECF Doc. # 364) in this case was confirmed on May 29, 2024, and was declared effective on June 18, 2024 (the "Effective Date"). The Plan incorporates a settlement between the Debtor, Wythe Berry Fee Owner LLC (the "Debtor," and after the Effective Date, the "Reorganized Debtor"), on the one hand, and Yoel Goldman ("Goldman"), Zelig Weiss ("Weiss"), and several entities they controlled, on the other hand (the "Settlement," ECF Doc. # 341). The Settlement resolved a dispute about the ownership of the domain name for the Debtor's principal asset, the William Vale Hotel in Brooklyn, New York, that was sold for $177 million as part of the confirmed Plan. The sale of the hotel required the Debtor to transfer the domain name to the hotel's buyer, so the Settlement was critical to the success of the Plan. The Settlement and Plan required the Debtor to pay Goldman and Weiss $650,000.00 each.

On June 4, 2024—after the Confirmation Date, but before the Effective Date—Meyer Chetrit ("Chetrit") served the Debtor with a restraining notice,[1] (the "Restraining Notice," ECF Doc. # 400 Ex. A) issued pursuant to New York CPLR § 5222. As discussed below, Chetrit holds a final, non-appealable, unsatisfied judgment against Goldman in the amount of $8,500,950.00, entered on January 29, 2021, in the Supreme Court of New York, County of Kings. (*See* ECF Doc. # 400 Ex. B.)

Goldman's counsel argues that the Restraining Notice served on the Debtor is invalid because it violates the automatic stay; therefore, counsel argues that the Debtor is required to

---

[1]    As discussed below, restraining notices are tools "to *prohibit the transfer* of funds to which a creditor is entitled for a period of time, during which the creditor may avail himself or herself of other state court remedies for recovering on a debt or judgment." *Matarese v. Robinson*, No. 3:16-CV-0633 (GTS), 2016 WL 7131527 at *4 (N.D.N.Y. Dec. 7, 2016) (emphasis in original).

perform its contractual obligation to pay the $650,000.00 to Goldman.  Chetrit's counsel argues that the Restraining Notice is valid and enforceable and requires the Debtor to withhold the payment to Goldman.  The Reorganized Debtor does *not* object to the Restraining Notice; it asks for directions from the Court whether to pay or withhold the payment to Goldman.

For the reasons explained below, the Court concludes that the Restraining Notice does not violate the automatic stay; it is valid and enforceable; and it requires the Debtor to withhold payment to Goldman pending further order of this Court.

## I.  <u>BACKGROUND</u>

### A.  Relevant Case History

#### 1.  <u>The Debtor's Bankruptcy</u>

On October 6, 2022 (the "Petition Date"), an involuntary Chapter 11 petition was filed against the Debtor by several prepetition creditors.  (*See* "Petition," ECF Doc. # 1.)  Details of the bankruptcy case, including the many disputes that arose, are described in more detail in several of this Court's opinions.  *See Wythe Berry Fee Owner LLC v. Wythe Berry LLC (In re Wythe Berry Fee Owner LLC)*, 654 B.R. 524 (Bankr. S.D.N.Y. 2023) (granting in part the Debtor's motion for summary judgment regarding disputes over a lease); *In re Wythe Berry Fee Owner LLC*, No. 22-11340 (MG), 2023 WL 1786407 (Bankr. S.D.N.Y. Feb. 6, 2023) (denying motion to dismiss involuntary petition); *In re Wythe Berry Fee Owner LLC*, No. 22-11340 (MG), 2023 WL 2483427 (Bankr. S.D.N.Y. Mar. 13, 2023) (approving cash collateral motion); *In re Wythe Berry Fee Owner LLC*, No. 22-11340 (MG), 2023 WL 6307287 (Bankr. S.D.N.Y. Sept. 27, 2023) (sustaining the Debtor's objection to Goldman's Proof of Claim # 11 seeking indemnification for legal fees and expenses in the amount of $994,048.15).

3

2.    <u>The Settlement and Plan Confirmation</u>

On May 29, 2024, the Court entered a memorandum opinion and order approving the

Settlement (incorporated into the Plan as Exhibit A) between the Debtor, WB Hotel LLC, WB

Operations LLC, WB FNB LLC, YG WV LLC, Wythe Berry Member LLC (of which Goldman

is a 50% owner), AYH Wind Down LLC, Wythe Berry LLC, The William Vale Hotel LLC, The

William Vale FNB LLC, North 12 Parking LLC, Espresso Hospitality Management LLC, Zelig

Weiss, TWV Domain LLC, The William Vale Staffing LLC, and Mishmeret Trust Company

Ltd.  *See In re Wythe Berry Fee Owner LLC*, No. 22-11340 (MG), 2024 WL 2752905 (Bankr.

S.D.N.Y. May 29, 2024) (the "Settlement Opinion").

The Court-approved Settlement included the following provision:

> On the Effective Date, the Debtor shall purchase from WV Hotel all right,
> title and interest in and to the internet domain for the William Vale Hotel,
> "www.thewilliamvale.com," and any goodwill associated therewith
> (collectively, the "Domain Name") for the ***purchase price of $1.3 million***
> (the "Domain Purchase Price") by entering into that certain Domain Name
> Purchase and Transfer Agreement in the agreed form annexed hereto as
> Exhibit C.  As directed jointly by the members of WV Hotel, the Debtor
> shall distribute the Domain Purchase Price as follows: 50% shall be paid to
> Weiss (or as otherwise directed by Weiss) ***and 50% shall be paid to Yoel***
> ***Goldman (or as otherwise directed by Yoel Goldman)***.

(Settlement § 4.d (emphasis added); *see also* Plan Ex. A at 8 (same language).)

This provision resolved an objection by Goldman (the "Goldman Objection," ECF Doc.

# 330) to a prior incarnation of the Settlement (the "Original Settlement," ECF Doc. # 304 Ex.

A), for which he did not receive any consideration for the Domain Name.  In exchange for

receiving 50% of the Domain Name purchase price—*i.e.*, $650,000.00—Goldman withdrew his

objection to the portion of the Settlement that treated the Domain Name.

Concurrently with the Settlement Opinion, the Court entered a memorandum opinion and order confirming the Debtor's Plan. *See In re Wythe Berry Fee Owner LLC*, No. 22-11340 (MG), 2024 WL 2767121 (Bankr. S.D.N.Y. May 29, 2024) (the "Confirmation Opinion"). Goldman has appealed the Confirmation Opinion and the Settlement Opinion. (*See* ECF Doc. # 382.)

### 3. The Restraining Notice

As already explained, on January 29, 2021, the Supreme Court of New York, County of Kings, entered a judgment against Goldman in favor of Chetrit for $8,500,950.00. The judgment was not appealed and is final. A review of the state court docket reflects extensive ongoing proceedings as Chetrit has tried, largely unsuccessfully, to collect the judgment from Goldman.

On June 4, 2024, Chetrit served the Restraining Notice on the Debtor. (*See* Restraining Notice.) As discussed in the next section, the dispute about the validity and enforceability of the Restraining Notice was framed in a series of letter briefs to the Court.

## B. The Court Hearings and Letter Briefs

### 1. The Goldman Conference Request (ECF Doc. # 400)

On July 1, 2024, Goldman's counsel filed a request for a conference with the Court regarding the "Debtor's ongoing failure to pay Mr. Goldman the $650,000.00 it owes him for withdrawing his prior objection to the conveyance of the William Vale Hotel internet domain." (Goldman Conference Request at 1.) Goldman's counsel argued (1) that the Restraining Notice violated the automatic stay and (2) by withholding payments due under the Settlement, the Plan, and the Stipulation[2]—three contracts—the Debtor was "violating its contractual obligations." (*Id.* at 2.)

---

[2]    Parties entered into stipulation further memorializing Settlement as it pertained to the Domain Name (the "Stipulation," ECF Doc. # 373).

Goldman grounds his first claim on 11 U.S.C. § 362(a)(3), claiming that "[b]y seeking to restrain the Debtor from exercising its rights to dispose of its prepetition property (the $650,000), through a postpetition notice based on a prepetition debt, Mr. Chetrit is impermissibly 'act[ing] to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.'"  (*Id.* (citing 11 U.S.C. § 362(a)(3)).)  Goldman's counsel cited two cases in support of the alleged stay violation: *In re Adomah*, 340 B.R. 453 (Bankr. S.D.N.Y. 2006), *order aff'd, appeal dismissed*, 368 B.R. 134 (S.D.N.Y. 2007)—a Chapter 7 case involving a restraining notice served on a bank pre-petition in which the court held a bank in contempt for restraining, *inter alia*, funds of the debtor that were exempt from the bankruptcy estate—and *In re Am. Med. Utilization Mgmt. Corp.*, 494 B.R. 626, 630 (Bankr. E.D.N.Y. 2013) ("*American Medical*")—a Chapter 11 case involving a restraining notice served on a debtor and parties owing funds to the debtor which prevented the debtor from receiving funds it needed to make ordinary course of business payments.

Goldman grounds his second claim on three contracts (the Stipulation, the Settlement, and the Plan) pursuant to which the Debtor owes him $650,000.00.  (*Id.*)  Goldman asserts that "by withholding payment the Debtor is actively violating its contractual obligations under the Stipulation, the Settlement . . . and the Plan."  (*Id.*)

The Court held an initial conference on the matter with counsel for Goldman, Chetrit and the Reorganized Debtor on July 2, 2024.  On July 2, 2024, the Plan Administrator filed a letter on behalf of the Reorganized Debtor (the "Debtor Statement," ECF Doc. # 402) clarifying that the Plan Administrator has "no desire to delay [the $650,000.00] payment."  (Debtor Statement at 1.)  The Plan Administrator makes clear that the Reorganized Debtor "stands ready to transfer the $650,000 to Goldman immediately upon receipt of assurance that either [Chetrit] has

withdrawn the restraining order or that such a transfer would not violate the restraining order."
(*Id.* at 2.)

During the conference the Court asked counsel for Goldman and Chetrit for additional

letter briefs.

### 2.   The Goldman Letter Brief (ECF Doc. # 406)

On July 8, 2024, Goldman's counsel filed the Goldman Letter Brief.  The letter addressed

the following questions which had been posed by the Court: "(1) whether the automatic stay

continues to apply after a debtor emerges from Chapter 11 but before the case is closed; (2)

whether the restraining notice served on Mr. Chetrit violated the automatic stay; and (3) whether,

if such notice did not violate the automatic stay, the notice is effective to prevent the Debtor from

making the $650,000 payment it is obligated to make to Mr. Goldman."  (Goldman Letter Brief

at 1.)  The letter also touched on "the possibility of sanctions in the event Mr. Chetrit violated the

automatic stay by issuing the notice."  (*Id.*)

*First*, the Goldman Letter Brief asserts that the automatic stay remains in effect "until a

case is closed," citing 11 U.S.C. §§ 362(c)(1) and (c)(2).  (*Id.*)  The letter also cites *In re Killmer*,

513 B.R. 41, 50 (Bankr. S.D.N.Y. 2014)—a Chapter 7 case in which a creditor sought a

declaratory judgment that a postpetition tax sale was void because it was conducted in violation

of the stay, and a taxing authority moved for a retroactive annulment of stay—and *In re Rosillo*,

No. 07-11103 (MG), 2007 WL 2230765, at *3 (Bankr. S.D.N.Y. July 31, 2007)—a case in

which, fewer than two months after a Chapter 7 debtor successfully moved to dismiss his

Chapter 7 petition, the debtor moved to reopen his bankruptcy case and convert the case to

Chapter 13 attempting to reinstate the automatic stay.  (*Id.*)  Goldman asserts that the case was

"closed" on the effective date, a restraining notice was served before the effective date, and thus,

the stay was still in effect. (*Id.* at 2.)

*Second*, Goldman asserts that because the Restraining Notice seeks "to restrain the

Debtor's property," it "plainly violated the automatic stay" pursuant to 11 U.S.C. § 362(a)(1).

(*Id.*) Goldman further argues that "[t]he fact that the Debtor intends to convey these funds to Mr.

Goldman does not relieve a party from abiding by the automatic stay, and we are aware of no

case holding otherwise." (*Id.* (citing *Adomah*, 340 B.R. at 458 and *American Medical*, 494 B.R.

at 630).)

*Third*, Goldman asserts that the "Debtor's obligation to pay Mr. Goldman $650,000

resides in no fewer than three orders of this Court," and "[t]his Court has 'ample authority to

enforce the Confirmation Order [and] the Plan' as 'a bankruptcy court has the inherent power to

enforce its own orders.'" (*Id.*) Goldman cites in support *In re Ditech Holding Corp.*, No. 19-

10412 (JLG), 2021 WL 3716398, at *7–8 (Bankr. S.D.N.Y. Aug. 20, 2021)—a case in which a

plan administrator and a consumer representative sought to (a) enforce injunction provisions

contained in a confirmed and effective Chapter 11 plan, and (b) hold a creditor in contempt and

impose sanctions on him for violating the injunction provisions—and *In re Anderson*, 884 F.3d

382, 390–91 (2d Cir. 2018)—a case in which, after a bank changed an outstanding debt from

receivable to loss and sold the debt, a Chapter 7 debtor who owed the outstanding debt filed a

putative class action to recover for the bank's alleged violation of a discharge injunction by its

continuing to report the debt as "charged off," despite the debt having been discharged in

bankruptcy. (*Id.* at 2–3.) Goldman believes that "because the restraining notice was issued in

violation of the automatic stay, it was 'void and had no effect,' . . . . The Debtor's obligation to

honor three orders of this Court was unaffected by the restraining notice, and the $650,000

8

remains due and owing to Mr. Goldman." (*Id.* at 3.)  Goldman also claims that Chetrit is "enjoined from interfering with the implementation of the Plan, including the transfer of the Domain Purchase Price." (*Id.*)

*Lastly*, the Goldman argues that sanctions on Chetrit are warranted for violation of the automatic stay and contractual obligations. (*Id.* at 3–4.)

### 3.  The Chetrit Letter Brief (ECF Doc. # 407)

The same day, Chetrit's counsel filed the Chetrit Letter Brief addressing the same questions discussed in the Goldman Letter Brief.  Chetrit asserts that "for an act to violate the automatic stay of 11 U.S.C. § 362(a), such act must fall within the categories listed therein as being stayed," and the Restraining Notice "does not fall within" any of them.  (Chetrit Letter Brief at 2.)  Chetrit claims the Restraining Notice "only noted that the Debtor owes a debt to Goldman or was in possession or in custody of property in which Goldman has an interest and restrained the transfer of property to Goldman," and "at no point has Chetrit asserted any claim against the Debtor.  Rather, Chetrit's claim is an attempt to recover a claim against Goldman." (*Id.*)

Chetrit also notes that "Goldman did not cite to any provision of 11 U.S.C. § 362(a)" in the Goldman Letter Brief and that there are significant differences between the facts of this case and those in *Adomah*[2] and *American Medical*, which make their holdings inapplicable here. (*Id.* at 3.)

Accordingly, Chetrit asserts, since the Restraining Notice did not violate section 362(a) and Goldman failed to cite any sources holding to the contrary, "Goldman's contention that Chetrit violated [the] stay must be rejected." (*Id.*)

---

[2]       Notably, the Chetrit Letter Brief cites and quotes from the original 2006 *Adomah* case, not the 2007 appeal.

Chetrit also claims that pursuant to section 362(c)(1) "the stay of any act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate."  (*Id.* (quoting 11 U.S.C. § 362(c)(1)).)  In support, Chetrit cites *In re Boodrow*, which states: "Property is no longer part of the estate if sold, abandoned, exempted, or a reorganization plan confirmed."  *In re Boodrow*, 126 F.3d 43, 47 (2d Cir. 1997).  Chetrit asserts that "any stay which may have been in effect with respect to the $650,000 automatically terminated once the parties agreed that the Debtor would pay $650,000 to Goldman and the Court confirmed such obligation."  (Chetrit Letter Brief at 3.)

Chetrit also asserts that, assuming *arguendo* that a stay violation occurred, Goldman lacks standing to assert a stay violation because "[i]t is for the Debtor, and not Goldman, to assert such a claim," and "the Debtor does not object to paying the subject $650,000 to Chetrit." (*Id.* at 4.)  For support, Chetrit quotes the original 2006 *Adomah* case, which states: "only a trustee has standing to prosecute causes of action on behalf of the bankruptcy estate [for a violation of the automatic stay] and that if the trustee unjustifiably refuses to bring an action, the debtor must obtain leave of court to sue before prosecuting an action."  (*Id.* at 4 (quoting *Adomah*, 340 B.R. at 457).)

Additionally, Chetrit asserts that Goldman is improperly attempting to exploit the Debtor's bankruptcy for his own benefit, and accordingly, sanctions on Goldman are warranted. (*Id.*)  "By seeking to prevent Chetrit from enforcing his judgment against Goldman's asset[s], Goldman seeks to exploit the Debtor's bankruptcy proceeding to shield Goldman's assets from his judgment creditor and dissipate such funds before such judgment creditor can seize on such assets."  (*Id.* at 5.)

4.  The Goldman *Robinson* Brief (ECF Doc. # 410)

On July 12, 2024, Goldman's counsel submitted an additional letter brief regarding the applicability in the context of this case of (1) *Matarese v. Robinson*, No. 3:16-CV-0633, 2016 WL 7131527 (N.D.N.Y. Dec. 7, 2016) and (2) 28 U.S.C. § 959(b).

*First*, Goldman asserts that, due to significant factual distinctions between the *Robinson* case and this case, the legal standard set forth in *Robinson* is not applicable here.  (Goldman *Robinson* Brief at 1.)

Goldman argues there are three major distinctions between *Robinson* and this case: "the funds sought by the creditor [in *Robinson*] had already left the debtor's possession; the debtor's case [in *Robinson*] was voluntarily dismissed; and the automatic stay was no longer in effect [in *Robinson*]."  (*Id.*)  Goldman also asserts that "the language at the end of the decision stating that the restraining notice was defective because (among several reasons) it sought the release of funds rather than mere restraint," should not be read to "endorse a creditor's attempt to restrain funds in a debtor's account."  (*Id.*)  Instead, Goldman claims the language "simply not[ed] that the restraining notice was defective in multiple ways, including that it sought more than a restraint," and "[i]t would be a leap to interpret this language as holding that a creditor may restrain funds in a debtor's account while the automatic stay is still in effect."  (*Id.*)

*Second*, Goldman asserts that 28 U.S.C. § 959(b) does not apply because "nothing in § 959(b) or the case law that suggests the statute operates to override the automatic stay and permit a creditor to use state law to restrain a debtor."  (*Id.*)  Goldman argues "[t]he statute merely stands for the proposition that a debtor must comply with state law—but as cases interpreting the statute have held, only so long as 'that state law does not conflict with the bankruptcy law.'"  (*Id.* (quoting *In re REA Express, Inc.*, 2 B.R. 730, 734 (S.D.N.Y. 1980))

(citing also *Fed. Home Loan Mortg. Corp. v. 550 Riverside Owners Corp.*, No. 90 CIV. 7873 (RLC), 1991 WL 258779, at *1–2 (S.D.N.Y. Nov. 25, 1991)).) Goldman believes that "allowing a judgment creditor to use a state law restraining notice to restrain a debtor from making plan or settlement distributions notwithstanding the automatic stay could wreak havoc in future cases," and reiterates that "[t]he payment to Mr. Goldman is required under the Plan, and the restraining notice interferes with it." (*Id.*)

### 5. The Chetrit *Robinson* Brief (ECF Doc. # 411)

The same day, Chetrit submitted the Chetrit *Robinson* Brief regarding the same issues. Chetrit asserts both section 959(b) and *Robinson* are consistent with his assertions in Chetrit Letter Brief. (Chetrit *Robinson* Brief at 1.) Chetrit argues that section 959(b), "which expressly applies to debtors in possession and has repeatedly been applied in the bankruptcy context, confirms that . . . upon the termination of an automatic stay, a bankruptcy debtor is required to comply with all local laws and treat its property the same way everyone else does," which he claims "includes complying with restraining notices served by the judgment creditors of the Debtor's payees." (*Id.*) Quoting the Supreme Court decision in *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S.Ct. 1652, 1665 (2019), Chetrit argues that "[s]ection 365 [of the Bankruptcy Code] does not grant the debtor an exemption from all the burdens that generally applicable law—whether involving contracts or trademarks—imposes on property owners [citing 28 U.S.C. § 959(b)]." (*Id.* (brackets in original).)

Chetrit, relying on *Boodrow*, asserts that the automatic stay terminated pursuant to 11 U.S.C. § 362(c)(1) "both because the Debtor abandoned any claim to such $650,000 and because such payment was confirmed by the Court," and maintains that *Robinson* is "entirely consistent

with such conclusion, as *Matarese* found no problem with the service of a restraining notice after the lifting of a stay."  (*Id.*)

## II.   <u>LEGAL STANDARD</u>

### A.  The Automatic Stay

Section 362 of the Bankruptcy Code governs the automatic stay.  The automatic stay is

> [O]ne of the fundamental debtor protections provided by the bankruptcy laws.  It gives the debtor a breathing spell from his creditors.  It stops all collection efforts, all harassment, and all foreclosure actions.  It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

*St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533, 540 (5th Cir. 2009) (quoting legislative history); *see also Windstream Holdings, Inc. v. Charter Comm's Inc. (In re Windstream Holdings, Inc.)*, 634 F. Supp. 3d 99, 105 (S.D.N.Y. 2022), *aff'd*, 105 F.4th 488 (2d Cir. 2024) ("[Section 362] protect[s] bankruptcy estates by restraining any formal or informal action or legal proceeding that might dissipate estate assets or interfere with the trustee's orderly administration of the estate.") (quoting *Bayview Loan Servicing LLC v. Fogarty (In re Fogarty)*, 39 F.4th 62, 71 (2d Cir. 2022)).

Beyond shielding the debtor, the automatic stay "also provides creditor protection.  Without it, certain creditors would be able to pursue their own remedies against the debtor's property.  Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors."  *St. Paul Fire*, 579 F.3d at 540 (quoting legislative history).

Section 362(a), unless excepted by 362(b), automatically bars a variety of actions against a debtor.  11 U.S.C. § 362.  Section 362(a)(3) bars "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."  11 U.S.C. § 362(a)(3).  Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1).  Thus, section

362(a)(3) "prohibits affirmative acts that would disturb the status quo of estate property as of the time when the bankruptcy petition was filed." *City of Chicago, Illinois v. Fulton*, 592 U.S. 154, 158 (2021).

1.  Violation of the Automatic Stay

Section 362(k) of the Bankruptcy Code provides that "an *individual* injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1) (emphasis added). While "individual" is not defined in the Bankruptcy Code, courts have generally accepted that this language grants a right of action to non-debtor "individuals." *See, e.g., In re Killmer*, 501 B.R. 208, 212 (Bankr. S.D.N.Y. 2013) ("Since the automatic stay is meant to prevent creditors from racing to the courthouse to the detriment of other creditors, the Court sees no reason why a creditor who has been harmed by a stay violation should not be able to seek redress for its injury."); *In re Prairie Trunk Ry.*, 112 B.R. 924, 929 (Bankr. N.D. Ill. 1990) ("[I]f Congress intended to limit the remedies of the section to the debtor only, it could have utilized the term 'debtor' instead of the term 'individual.'").

However, this protection does *not* extend to (a) creditors asserting rights in some other capacity than as a creditor, or (b) non-debtor, non-creditor third parties who nevertheless have some "tangential" interest in the estate. *In re Ampal-Am. Israel Corp.*, 502 B.R. 361, 371 (Bankr. S.D.N.Y. 2013) ("[T]he creditor seeking relief must allege an injury in his capacity as a creditor of the estate rather than in some other capacity."); *Siskin v. Complete Aircraft Services, Inc. (In re Siskin)*, 231 B.R. 514, 518 (Bankr. E.D.N.Y. 1999) ("[T]he definition of 'individual' under 11 U.S.C. § 362(h) does not necessarily include all parties who may have some tangential

14

interest in Debtor's bankruptcy.") (quoting *Metropolitan Life Ins. Co. v. Alside Supply Center of Knoxville (In re Clemmer)*, 178 B.R. 160, 167 (Bankr. E.D. Tenn. 1995)).

### B.  Restraining Notices Under New York Law

Restraining notices are tools "to *prohibit the transfer* of funds to which a creditor is entitled for a period of time, during which the creditor may avail himself or herself of other state court remedies for recovering on a debt or judgment." *Matarese v. Robinson*, 2016 WL 7131527, at *4 (emphasis in original).  NY CPLR § 5222 governs restraining notices.  Section 5222(a) governs issuance of such notices, and it requires restraining notices to "be issued by the clerk of the court or the attorney for the judgment creditor as officer of the court," and "may be served upon any person, except the employer of a judgment debtor or obligor where the property sought to be restrained consists of wages or salary due or to become due to the judgment debtor or obligor."  NY CPLR § 5222(a).

Section 5222(b) governs the effect of restraint, the prohibition of transfers, and the duration, and states:

> (b) Effect of restraint; prohibition of transfer; duration.  A judgment debtor or obligor served with a restraining notice is forbidden to make or suffer any sale, assignment, transfer or interference with any property in which he or she has an interest, except as set forth in subdivisions (h) and (i) of this section, and except upon direction of the sheriff or pursuant to an order of the court, until the judgment or order is satisfied or vacated.  ***A restraining notice served upon a person other than the judgment debtor or obligor is effective only if, at the time of service, he or she owes a debt to the judgment debtor or obligor or he or she is in the possession or custody of property in which he or she knows or has reason to believe the judgment debtor or obligor has an interest,*** or if the judgment creditor or support collection unit has stated in the notice that a specified debt is owed by the person served to the judgment debtor or obligor or that the judgment debtor or obligor has an interest in specified property in the possession or custody of the person served.  All property in which the judgment debtor or obligor is known or believed to have an interest then in and thereafter coming into the possession or custody of such a person, including any specified in the notice, and all debts of such a person, including any specified in the notice,

then due and thereafter coming due to the judgment debtor or obligor, shall be subject to the notice except as set forth in subdivisions (h) and (i)[3] of this section.  Such a person is forbidden to make or suffer any sale, assignment or transfer of, or any interference with, any such property, or pay over or otherwise dispose of any such debt, to any person other than the sheriff or the support collection unit, except as set forth in subdivisions (h) and (i) of this section, and except upon direction of the sheriff or pursuant to an order of the court, until the expiration of one year after the notice is served upon him or her, or until the judgment or order is satisfied or vacated, whichever event first occurs.  A judgment creditor or support collection unit which has specified personal property or debt in a restraining notice shall be liable to the owner of the property or the person to whom the debt is owed, if other than the judgment debtor or obligor, for any damages sustained by reason of the restraint.  If a garnishee served with a restraining notice withholds the payment of money belonging or owed to the judgment debtor or obligor in an amount equal to twice the amount due on the judgment or order, the restraining notice is not effective as to other property or money.

NY CPLR § 5222(b) (footnote added) (emphasis added).

The purpose of a restraining notice was explained in *Plaza Hotel*:

> This authority [under section 5222] to freeze assets of a judgment debtor was added to the arsenal of judgment creditors because of the 'great number of judgments which were never satisfied and those that were satisfied only after years of litigation involving great expenditures of time and money (see Advisory Committee Notes, 12 N.Y. Standard Civil (Practice) Service, p. 59).  As a result, enforcement proceedings have undergone extensive changes, including the simplification of examination and restraining procedures which may be utilized without resorting to special proceedings' (*Stathopoulos v Seaways Shipping Corp.*, 66 Misc.2d 607, 609; *see, Matter of Sumitomo Shoji New York v Chemical Bank New York Trust Co.*, 47 Misc.2d 741, 745, 263 N.Y.S.2d 354, 358 (Sup. Ct. N.Y. Co. 1965)).

> The restraining notice may serve two purposes.  First, it may be used independently of other enforcement devices, to prohibit the judgment debtor from disposing of assets, thereby encouraging him to satisfy the judgment (see, 'Legislative Studies and Reports' to CPLR 5222, McKinney's Consolidated Laws of New York, Vol. 7B, pp 81-82).  Or, the restraining notice may be sued [sic] in conjunction with other enforcement devices, to 'maintain the status quo while the judgment creditor seeks a delivery, turnover, or receivership order in what were formerly called supplementary

---

[3]    Sections (h) and (i) deal with the "[e]ffect of restraint on judgment debtor's banking institution account." NY CPLR §§ 5222(h) and (i).

> proceedings' (McLaughlin, 'Civil Practice,' 17 Syracuse Law Review 331,
> 369–70 (1966)).

*Plaza Hotel Assoc. v. Wellington Assocs.*, 84 Misc.2d 777, 779–80, 378 N.Y.S.2d 859 (N.Y.
1975).

Goldman is a judgment debtor, owing Chetrit, the judgment creditor, an amount far more

than the $650,000.00 that Goldman is contractually entitled to receive from the Debtor, and that

the Debtor has been restrained from paying.  The facts of this case fall squarely within the terms

of the statute.  There is no basis to excuse the Debtor from complying with the Restraining

Notice.  The Debtor does not object to the Restraining Notice.  The Restraining Notice does not

affect the administration of the case.

As explained in the next section, a debtor is required to operate according to the

requirements of valid state laws, unless that would interfere with the rights, privileges or

protection provided by the Bankruptcy Code.  The Court's conclusion that the Restraining Notice

is valid and enforceable in this case is further bolstered by the discussion of three bankruptcy

court cases, not identified or discussed by the parties, that support enforcing the Retraining

Notice in this case.  Those case are discussed in sections III.A(1)–(3) below.

### C.  28 U.S.C. § 959(b) Requires a Debtor to Operate According to Valid State Laws

28 U.S.C. § 959(b) provides as follows:

> (b) Except as provided in section 1166 of title 11, a trustee, receiver or
> manager appointed in any cause pending in any court of the United States,
> including a debtor in possession, ***shall manage and operate the property in
> his possession as such trustee, receiver or manager according to the
> requirements of the valid laws of the State in which such property is
> situated***, in the same manner that the owner or possessor thereof would be
> bound to do if in possession thereof.

28 U.S.C. § 959(b) (emphasis added).

NY CPLR § 5222, governing restraining notices in New York, is a state law of general applicability. Unless that statute's application in a bankruptcy case interferes with the rights or protections provided to debtors and creditors under the Bankruptcy Code, or with the administration of the bankruptcy case, the debtor is required to comply.

In this case, the Reorganized Debtor has *not* objected to complying with the Restraining Notice; it simply looks for direction from this Court whether it must comply with the Restraining Notice. The Plan is effective, and the Reorganized Debtor is making required Plan distributions to creditors. The Restraining Notice does not interfere with the Debtor's administration of this case, or the use of its property or assets other than as required by law.

In this case, the Restraining Notice served by Chetrit on the Debtor does not interfere with the rights or protections of the Bankruptcy Code; the state law should be applied.

## III.    DISCUSSION

As the parties acknowledged during the hearings, there is little caselaw on all fours with the facts in this case. Nevertheless, the Court has located three cases analyzing roughly the situation at bar—a third-party creditor ("Creditor B") of a bankrupt debtor's creditor ("Creditor A") that seeks payment directly from the debtor on account of Creditor A's debts to Creditor B. The cases support the Court's conclusion that the Restraining Notice must be enforced.

### A.  Restraining Notices in Bankruptcy

The parties' second round of letter briefs focus on the decision in *Matarese v. Robinson*, 2016 WL 7131527. The case involves a restraining notice served on a chapter 13 trustee by a creditor of a chapter 13 debtor who had voluntarily dismissed the chapter 13 case after making some plan payments that were held by the trustee. The creditor sought release of funds to the creditor by the chapter 13 trustee pursuant to a post-dismissal restraining notice. The case is

obviously distinguishable from this case in that the restraining notice there was served after the

bankruptcy case was voluntarily dismissed.  The case is nevertheless reflective, however, of the

importance of restraining notices that relate to bankruptcy cases.

The procedural context of *Robinson* was unusual, arising on an appeal by the creditor of

the bankruptcy court's denial of the creditor's motion for reconsideration.  The bankruptcy court

had refused to order the funds released to the creditor.  The district court affirmed the bankruptcy

court's denial of the creditor's motion for reconsideration.

The district court identified numerous procedural defects in the restraining notice, making

it unenforceable.  *Id.* at *2–3.  But the district court explained that even absent the procedural

defects that rendered the notice void, the restraining notice improperly sought *release* of the

funds to the creditor.  "However, the purpose of the restraining notice is to *prohibit the transfer*

of funds to which the creditor is entitled for a period of time, during which the creditor may avail

himself or herself of other state court remedies for recovering on a debt or judgment."  *Id.* at *4

(emphasis in original).

The *Robinson* court cited authority that explained that restraining notices can be used

with other enforcement devices to maintain the status quo while the creditor sought to obtain

turnover of the property.

> *See generally* CPLR Art. 52; *United States v. Ceparano*, 98-CR-0922, 2009
> WL 8690129, at *3 (E.D.N.Y. May 13, 2009) ("The restraining notice may
> . . . be used independently of other enforcement devices, to prohibit the
> judgment debtor from disposing of assets, thereby encouraging him to
> satisfy the judgment . . . [o]r, the restraining notice may be used in
> conjunction with other enforcement devices, to maintain the status quo
> while the judgment creditor seeks a delivery, turnover, or receivership order
> in what were formerly called supplementary proceedings."); Siegel, N.Y.
> Prac. § 508 (5th ed.) ("[T]he restraining notice . . . acts as a kind of freeze
> on such of the debtor's assets as the served person may have, during which
> the judgment creditor can use other devices, such as an execution, to try to
> have the property turned over.  It buys time, in other words.").

19

*Id.*

As the Court explains in the following section, the Court has found several other cases, not addressed by the parties, that are more closely on point and strongly support the Court's disposition.

### B. The Restraining Order Should Be Enforced Based on Analogous Caselaw

In *In re Brickell*, 292 B.R. 705 (Bankr. S.D. Fla. 2003), *aff'd*, 142 F. App'x 385 (11th Cir. 2005), the court concluded that the restraints in question were permissible.  In two other cases, *NVLand, Inc. v. Vogel (In re Ocean Downs Racing Ass'n., Inc.)*, 164 B.R. 249 (Bankr. D. Md. 1993) and *Shuford v. Citizens South Bank (In re Yatko)*, 416 B.R. 193 (Bankr. W.D.N.C. 2008), the courts concluded that the attempted enforcement efforts were impermissible.  They are discussed below in chronological order.

#### 1. *Ocean Downs*

In *Ocean Downs*—a case denying garnishment against a bankruptcy trustee—two creditors ("Creditors B and C") of a creditor ("Creditor A") of a bankruptcy estate each procured competing state court garnishment judgments against Creditor A, and both sought to enforce their judgments against the bankruptcy trustee.  *Ocean Downs*, 164 B.R. at 251–54.  Creditors B and C then filed competing motions, each seeking to have their judgment granted a priority over the other.  *Id.*

The court determined that "[a] Chapter 11 trustee is not subject to garnishment by the holder of a state or federal judgment against a creditor or equity security holder of a bankruptcy estate."  *Id.* at 254.  The court explained that "[t]o permit a garnishment to be taken against a bankruptcy trustee would impede and frustrate the *policy of promoting the orderly and expeditious administration of debtors' estates*, and is therefore disfavored."  *Id.* (emphasis

added).  The *Ocean Downs* court highlighted that "[i]t is conceivable that garnishment

proceedings may be prolonged for years, so that the court may be congested with unfinished

business which in no way concerns the bankruptcy case . . . thus [turning the bankruptcy court

into] an independent collection tribunal."  *Id.*  This would be contrary to the purpose of

bankruptcy law, which is "to secure an equality of distribution of the estate of the bankrupt

among his creditors."  *Id.* at 254–55 (quoting *Wood v. Wilbert*, 226 U.S. 384, 384–87 (1912)).

The *Ocean Downs* court also noted that "[t]he proper procedure which should have been

followed in this case for the substitution of claimants in a bankruptcy estate is set forth in

Bankruptcy Rule 3001(e)(2)."  *Id.* at 255.  The *Ocean Downs* court held Rule 3001(e)(2) to be

Creditors B's and C's "exclusive remedy" for redirecting payment from Creditor A to them.  *Id.*

2.  *Brickell*

In *Brickell*, the bankruptcy court (affirmed by the Eleventh Circuit) reached the opposite

conclusion, approving garnishment against a bankruptcy trustee.  After the debtor's ex-wife—a

creditor to the bankruptcy estate—failed to pay her retained counsel, the law firm procured a

garnishment judgment against the Debtor's ex-wife and sought payment directly from the

bankruptcy estate by redirecting distributions intended for the debtor's ex-wife.  *Brickell*, 292

B.R. at 706–08.  The bankruptcy court, noting that case law was split on this issue, nevertheless

approved redirection of the funds, stating that it "disagree[d] with a *per se* ban on garnishment of

bankruptcy trustees."  *Id.* at 709.  The bankruptcy court explained that cases denying

garnishment against a trustee, such as *Grant v. Burns (In re Am. Elec. Tel. Co.)*, 211 F. 88 (7th

Cir. 1914) ("*American Electric*"), did so because approving the garnishment would impede the

bankruptcy process.  *Id.* at 708.  On the other hand, courts approved garnishment against a

21

trustee, such as in *In re Kranich*, 182 F. 849 (E.D. Pa. 1910), because doing so would *not* impede the bankruptcy process. *Id.*

The *Brickell* court distinguished between pre-judgment garnishment—a "serious" impediment to the bankruptcy process—and post-judgment garnishment—not an impediment to the bankruptcy process. *Id.* Regarding the effect of post-judgment garnishment, the *Brickell* court stated: "where the claims against the estate creditor have been reduced to final judgment and a garnishment judgment has been issued prior to bankruptcy distribution, the sole burden on the trustee is the substitution of one creditor's name and address for that of another." *Id.* at 709. The court explained, "[p]erhaps this creates a minor inconvenience for the trustee, but it hardly hampers the efficient administration of the estate nor introduces a parasite upon the bankruptcy process." *Id.* The court noted that "[t]his is especially true where . . . the trustee is not opposed to the garnishment." *Id.*

The *Brickell* court also disagreed with the *Ocean Downs* court's conclusion that Rule 3001(e)(2) is the "exclusive remedy" for the holder of a judgment against a creditor of a bankruptcy estate to transfer the creditor's claim to distribution from the bankruptcy estate. *Id.* The *Brickell* court explained that "Rule 3001(e) is designed to provide notice to the holder of a proof of claim that such holder's claim has been transferred. If the original claim holder disputes the purported transfer, he or she has the opportunity to raise an objection with the bankruptcy court." *Id.* "The procedures for obtaining a garnishment judgment likewise provide the holder of the original claim with an opportunity to dispute the proposed garnishment." *Id.*

The court also noted that "Rule 3001(e) facilitates the transfer of claims by allowing a substitution without a hearing if no objection is raised. . . . It is typically used when a third party purchases a claim against a bankruptcy estate." *Id.* The *Brickell* court explained that "[i]n such

22

a scenario, the bankruptcy court may have no way of knowing whether the transfer is authentic without the consent of the claim holder." *Id.* In addition, "Rule 3001(e) provides the holder of the claim with an opportunity to challenge the validity of the alleged transfer or to consent to the transfer through non-action." However, the court explained that "[s]uch safeguards are not necessary where a court of competent jurisdiction has entered a garnishment judgment. In such a situation, the bankruptcy court can rely on the garnishment judgment as conclusive evidence of entitlement to the transfer of the claim." *Id.*

The *Brickell* court concluded that "Bankruptcy courts consistently recognize judgments issued by other courts. Claims against bankruptcy estates are often based on judgments obtained in other federal and state courts prior to the commencement of the bankruptcy case. Each is given equal validity." *Id.* at 709–10. The *Brickell* court believed that "[a] final judgment, for garnishment or otherwise, should be recognized whether it is issued by a bankruptcy court, a federal district court, a state court, or any other tribunal of competent jurisdiction." *Id.* at 710.

In this case, Rule 3001(e) has no application. Goldman's proof of claim was expunged; there was no claim to transfer, with no requirement to record the transfer on the claim register. Rather, Goldman's entitlement arises from the Settlement that was approved at confirmation.

### 3. *Yatko*

Lastly, in *Yatko*, the court denied garnishment against a bankruptcy trustee. There, two individual debtors—Mr. and Ms. Yatko—filed for Chapter 13, the case was converted to Chapter 7, and a trustee was appointed. *Yatko*, 416 B.R. at 195. Simultaneously, a company owned by the Yatkos also filed for bankruptcy, and the company's assets were liquidated. *Id.* at 194–95. The liquidation generated enough money to pay all administrative fees and for the bankruptcy estate to retain substantial funds for distributions to the company's shareholders. *Id.* at 195. The

Yatkos, as the sole shareholders of the company, were thus entitled to distributions from the surplus of capital in the company's bankruptcy estate. *Id.* Upon learning of the surplus, a creditor of the Yatkos—a bank—obtained a state court order forbidding the Yatkos from disposing of any assets, including assets they were entitled to receive from the company's liquidation. *Id.*

The *Yatko* court highlighted that the state court order did not cite any supporting statutes or legal authorities, but the *Yatko* court deduced the order was grounded in Article 31 of the North Carolina General Statutes. *Id.* at 196. The court noted that even if a legal authority had been cited, it did not appear that the bank had "successfully adhered to the statutory requirements necessary to create a lien against the [company's] distribution." *Id.*; *see also id.* at 198.

Furthermore, the *Yatko* court noted that even if the bank had satisfied the relevant statutory requirements, the bank "would have run afoul of the bankruptcy laws applicable to the [company's bankruptcy] case." *Id.* at 198. The *Yatko* court referenced both *Ocean Downs* and *Brickell*, writing: "[t]here is merit to both positions." *Id.* at 199. The court explained that "[c]ertainly a judgment creditor of a creditor of a bankruptcy debtor should have some method by which it can attach its judgment debtor's right to a distribution from a bankrupt case. On the other hand, subjecting the Trustee to attachment orders potentially causes problems for the trustee and the estate." *Id.* The *Yatko* court noted that "[u]nder North Carolina law, a garnishment is effectively a lawsuit against the garnishee to recover the debt due to the plaintiff by the defendant. So too are supplemental proceedings." *Id.* at 200–01 (citation omitted). Accordingly, the court determined that enforcing the order obtained by the bank would impede the bankruptcy process, and thus declined to do so.

However, the *Yatko* court also determined that if the bank had properly requested leave

under 28 U.S.C. § 959, "and assuming safeguards [such as time limits for complying with the

order] were put in place to limit the cost and disruption to the bankruptcy estate, the request

would likely have been granted." *Id.* at 201.

4.   The Analogous Cases Favor Enforcement of the Restraining Order

This case is most similar to *Brickell*.  Here, as in *Brickell*, (1) "the claims against the

estate creditor have been reduced to final judgment," (2) the judgment has been "issued prior to

bankruptcy distribution," (3) the debtor "is not opposed" to the relief sought.  *Brickell*, 292 B.R.

at 709.  As in *Brickell*, there is no danger of "impediment to the bankruptcy process."  *Id.* at 708.

The Debtor does not care to whom they must eventually remit the payment: whether to Goldman

now, or to Chetrit if he prevails in a subsequent collection attempt, the Debtor must pay

$650,000.00.  (*See* Debtor Statement.).  As in *Brickell*, this is a "'one-off' situation that would

impose little administrative burden, rather than one which would impose considerable burdens

for a lengthy period of time." *McKinney v. 2nd Chance Auto Sales, Inc.*, 611 B.R. 894, 903

(Bankr. M.D. Ala. 2020) (citing *Brickell*, 292 B.R. at 707).  Further, as Goldman has appealed

confirmation of the Plan (*see* ECF Doc. # 382), it is even less likely that the Restraining Notice

could "seriously delay the distribution of estate assets and prevent the [Plan Administrator] from

. . . closing the bankruptcy estate." *Brickell*, 292 B.R. at 708.

While *Brickell* is the most analogous case, the result of enforcing the Restraining Order is

not in conflict with either *Ocean Downs* or *Yatko*.  In *Yatko*, the court reached its conclusion

because the bank "[sought] to take estate assets to the exclusion of other creditors," which

violated the "fundamental premise underlying the Bankruptcy Code is that a Debtor's limited

assets will be distributed equally among creditors." *Yatko*, 416 B.R. at 196.  *Ocean Downs*, in

25

holding that the only proper procedure was a substitution of claimants under Rule 3001(e), relied

on language from *American Electric* that compared granting the relief to "giv[ing] entrance to a

parasite upon the bankruptcy proceedings which may seriously affect the efficiency of the act."

*Ocean Downs*, 164 B.R. at 255 (citing *American Electric*, 211 F. at 90–91). As already stated,

this case does not involve the transfer of a claim on the claim register, so Rule 3001 is not

involved.

Again, the fundamental purpose of the Code—fairness and efficiency of distribution, on

which both the *Ocean Downs* and *Yakto* courts based their decisions (and which this Court is

equally concerned with)—will not be usurped or violated by enforcing the Restraining Notice in

these circumstances. It would be a different situation had a judgment creditor of one of the

Debtor's creditors served such a notice on the Debtor during the pendency of the case, purporting

to restrain assets which the Debtor had not committed to paying towards a particular creditor's

claim. Those are not the facts at bar, and accordingly, the fundamental purpose of the Code is

not implicated by authorizing compliance with the Restraining Notice.

## IV.    CONCLUSION

The Court declines to allow the Bankruptcy Code to be wielded as a cudgel in an

unrelated dispute between Chetrit and Goldman, and thus authorizes the Debtor to honor the

Restraining Notice. This holding is by no means *carte blanche* for (proverbial) Creditor Bs to

serve any debtor in bankruptcy a restraining notice at any time on account of debts owed by

(proverbial) Creditor As with the expectation that it will be effective. Indeed, such a result

would merely substitute one race to the courthouse for another, rendering the protection of

bankruptcy a nullity. It is not open season for restraining notices, and judgment creditors serving

them on a debtor do so at their own risk. Rather, the enforcement of the Restraining Notice *here*

is permissible because it will have no effect on the reorganizational efforts of the Debtor, nor the

distributions to creditors.  In the event the dispute drags on and threatens the closing of this case,

other methods may be available, such as requiring escrow of the funds, that can be considered

should circumstances justify it.

For the foregoing reasons, the Court **AUTHORIZES** the Debtor to comply with the

Restraining Notice for the $650,000.00 payment obligation to Goldman.

**IT IS SO ORDERED.**

Dated:    August 1, 2024
          New York, New York

_Martin Glenn_
MARTIN GLENN
Chief United States Bankruptcy Judge