UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>WYTHE BERRY FEE OWNER LLC,<br><br>Reorganized Debtor. | <u>NOT FOR PUBLICATION</u><br><br>Chapter 11<br><br>Case No. 22-11340 (MG) |

<b>MEMORANDUM OPINION AND ORDER OVERRULING WITHOUT PREJUDICE<br>THE REORGANIZED DEBTOR'S OBJECTION TO MECHANIC'S LIEN CLAIMS</b>

*A P P E A R A N C E S:*

GORDON & REES
*Attorneys for Schimenti Construction Company LLC*
One Battery Park Plaza, 28th Floor
New York, NY 10005
By:    Peter E. Strniste, Jr., Esq.
         Robert Barrack, Esq.

CHAPMAN AND CUTLER LLP
*Attorneys for the Plan Administrator*
1270 Avenue of the Americas, 30th Floor
New York, NY 10020
By:    Michael Friedman, Esq.
         Eric Silvestri, Esq.

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is Wythe Berry Fee Owner LLC's (the "Debtor" or "WBFO

LLC") objection to the claims of D and J Industries, LLC ("D&J," claim # 2), Schimenti

Construction Company LLC ("Schimenti," claim # 6), and Ziba Construction Inc. dba 212Carpet

("Ziba," claim #7) (ECF Doc. # 285, the "Objection") (D&J, Schimenti, and Ziba together

constituting the "Mechanic's Lien Claimants").[1] Schimenti filed a response (ECF Doc. # 301), as did Ziba (ECF Doc. # 310) and D&J (ECF Doc. # 311). The Debtor amended its omnibus objection post-discovery (ECF Doc. # 449, "Amended Objection"). Schimenti similarly amended its response (ECF Doc. # 451, "Schimenti Amended Response"), but D&J and Ziba did not. Pursuant to this Court's order (ECF Doc. # 448), the Debtor and the Mechanic's Lien Claimants filed a joint letter setting out the parties' contentions going into the October 9 hearing (ECF Doc. # 452). A hearing on the Amended Objection was held on October 9, 2024.at 2:00 p.m.

For the following reasons, the Court concludes that, unless resolved by settlement, this contested matter presents disputed issues of fact and law that require an evidentiary hearing and further briefing to resolve. Accordingly, the Objections to Claims is **OVERRULED WITHOUT PREJUDICE.**

*[The remainder of the page is intentionally left blank]*

---

[1] Another creditor, JSP Electrical Contracting Corp., initially filed a proof of claim to which the Debtor objected, but JSP withdrew its claim. (ECF Doc. # 374.)

## I. BACKGROUND

### A. The Parties to the Dispute

The below chart sets out the relationships between the relevant parties:



The Debtor is the owner of a commercial real property complex located at 55 Wythe Avenue, Brooklyn, New York 11249 that is comprised of the William Vale Hotel and office and retail space and parking. *In re Wythe Berry Fee Owner LLC*, 654 B.R. 524, 528 (Bankr. S.D.N.Y. 2023). The Debtor (WBFO LLC) is wholly owned by WB Member LLC ("Member LLC"), which is the Debtor's sole member. *Id.* WB Member LLC is itself co-owned by Zelig

3

Weiss ("Weiss") and an entity called YG WV LLC, with each holding 50% of the membership interests in WB Member LLC, and with YG WV LLC serving as the managing member. *Id.*

WBFO LLC entered into a ground lease with WB LLC, which is owned 50/50 by Weiss and Yoel Goldman, with Weiss serving as its managing member. *Id.* at 529. The lease, which the parties entered into in February of 2017, was to last 15 years, pursuant to which WBFO LLC leased the property at 55 Wythe Ave. to WB LLC from February 1, 2017 through January 31, 2032 "unless sooner terminated" in accordance with the lease. *Id*. Goldman was the signatory for both WBFO LLC and WB LLC on the lease, and both Goldman and Weiss served as guarantors for WB LLC. *Id.* Schimenti claims that WBFO LLC expressly "contracted, consented and provided authority for [WB LLC] to enter into subleases and make improvements to" the leased property. (Schimenti Amended Response ¶ 2.)

WB LLC defaulted on the lease agreement, prompting WBFO LLC to serve first a Notice of Default on WB LLC on May 5, 2021, and then a Notice of Cancellation and Termination of the lease on May 20, 2021. *In re Wythe Berry Fee Owner LLC*, 654 B.R. at 530. On June 11, 2021, WBFO LLC filed a complaint in New York state court for breach of contract and declaratory judgment, seeking, among other things, to eject WB LLC. *Id.* at 532; *see also* Amended Objection ¶ 10. WBFO LLC also sought a preliminary injunction barring WB LLC from advertising unleased commercial and/or retail space on the subleased property, entering into any lease or sublease at the property, or making any alterations on then-vacant or unleased space on the property. (Amended Objection ¶ 84.) While, in December of 2021, the New York State court granted the Debtor monetary relief, it denied the motion for a preliminary injunction insofar as the Debtor sought to eject WB LLC or bar it from engaging in subleasing. *Wythe*

4

*Berry Fee Owner LLC v. Wythe Berry LLC*, 73 Misc. 3d 1228(A) (N.Y. Sup. Ct. 2021); *see also* Schimenti Amended Response ¶ 23; Amended Objection ¶ 84.

In March of 2022, WB LLC subleased the Debtor's property to HealthQuarters, Inc. ("Healthquarters"). (Amended Objection ¶ 10.) According to Schimenti, WB LLC would use the rent HealthQuarters paid it to, in turn, pay its own rent obligations to the Debtor. (Schimenti Amended Response ¶ 27.) According to D&J, the HealthQuarters-WB LLC lease contained provisions requiring that "all work be coordinated with Wythe Berry, LLC; and that Wythe Berry, LLC must approve said work," and was signed by Weiss as Managing Member of WB LLC. (ECF Doc. # 311 ¶¶ 6–7.) HealthQuarters entered into a number of contracts for work on the property it leased, including with Schimenti, which in turn contracted with several subcontractors, including Ziba. (Schimenti Amended Response ¶ 3; Amended Objection ¶ 24.)

On October 6, 2022, a number of the Debtor's creditors filed an involuntary petition seeking an order for relief pursuant to section 303 of the Code. (Amended Objection ¶ 5.) On January 18, 2023, an order for relief was entered by this Court against the Debtor. (*Id.* ¶ 6.) The Debtor's state court action against WB LLC was moved to this Court. (*Id.* ¶ 3 n.3.)

In November of 2022, HealthQuarters (the sublessee from WB LLC) filed a voluntary petition for relief under chapter 7 of the Code with the United States Bankruptcy Court for the District of Delaware. (*Id.* ¶ 11.)

On October 5, 2023, this Court found that WB LLC breached its contract with WBFO LLC and that WBFO LLC had authority to terminate the lease. *In re Wythe Berry Fee Owner LLC*, 654 B.R. at 545–49. This Court also issued a declaration that the lease had been terminated, effective May 20, 2021, and that WBFO LLC had the right to eject WB LLC from the property. *Id.* at 550. The Court noted that the entry of an order permanently enjoining WB

5

LLC from occupying the leased premises would have to wait until entry of a final order or judgment in the case, given some outstanding questions about the Court's jurisdiction to enter final orders in this case. *Id.* at 528 n.2, 551.

The Debtor claims that it had "no visibility" into the property WB LLC was leasing between March 2021 and 2023, "due to the then-ongoing and hotly contested litigation" between Debtor and WB LLC (as managed by Weiss), and because WB LLC did not permit the Debtor to access the property. (Amended Objection ¶¶ 46, 50.) In fact, the Debtor alleges that it had "zero visibility into the operations, finances, or goings-on at the [p]roperty until it gained possession of the [p]roperty" following this Court's summary judgment decision holding that the ground lease was terminated. (*Id.* ¶ 49.) The Debtor maintains that neither WB LLC nor Weiss ever disclosed the existence of a sublease between WB LLC and HealthQuarters, and that Weiss never communicated with YG WV LLC. (*Id.* ¶ 52–54.) Hence, the Debtor had no knowledge of any aspect of the three claimants' work until they filed their mechanic's lien notices. (*Id.* ¶ 55.)

The thrust of the Debtor's omnibus objection is that none of D&J, Schimenti, and Ziba were in contractual privity with the Debtor, that each instead contracted with a sublessee of the Debtor's called HealthQuarters, that the Debtor did not consent to any of the work the three claimants did for HealthQuarters, and that the Debtor therefore cannot be held responsible for its lessee's (WB LLC) sublessee's (HealthQuarters) failure to pay. The creditors' response is, at base, that the Debtor consented to their engagements and thus is liable.

**B. D&J's Claim**

D&J is a lighting equipment distributor. (*Id.* ¶ 13.) It filed a claim for $90,514.12, purportedly secured by a mechanic's lien on real estate. (*Id.* ¶ 9.) The Debtor claims that D&J only ever worked for and contracted with HealthQuarters, was never employed or engaged by

6

WBFO LLC, and never received any indication from the Debtor or anyone else that the Debtor knew of or consented to its work. (*Id.* ¶¶ 9–20.) The Debtor also alleges that D&J did not assert in its claim that it perfected its Notice of Mechanic's Lien (and thus is perhaps arguing that D&J failed to perfect its lien, though the Debtor does not state this explicitly). (*Id.* ¶¶ 21–22.)

D&J filed a response to the initial objection, but not to the updated post-discovery objection. (ECF Doc. # 311.) It argues that Weiss provided the necessary consent to D&J's work on behalf of WBFO LLC: since WBFO LLC is owned by Member LLC which is in turn 50% owned by Zelig Weiss, Weiss is an agent of WBFO LLC. (*Id.* ¶¶ 16, 19.) D&J claims that Weiss was acting in his capacity as agent of WBFO LLC when he worked with HealthQuarters to obtain permits to enable D&J to perform work on WBFO LLC's premises, hence consenting on behalf of the Debtor to the improvements made on the Debtor's property. (*Id.* ¶¶ 24–28.) D&J further claims that Weiss did not distinguish between his individual or corporate capacities, so his email communications relating to D&J's work further evidence his consent on behalf of the Debtor to D&J's work on the premises. (*Id.* ¶ 28.) Moreover, D&J argues that the Debtor had the "expectation of benefit" from D&J's work for HealthQuarters, since HealthQuarters would pay WB LLC in rent, which would subsequently pay WBFO LLC, so improvements made by D&J on behalf of HealthQuarters to the premises would trickle up. (*Id.* ¶ 27.)

### C. Schimenti's Claim

On April 28, 2023, Schimenti filed a claim, purportedly secured by a mechanic's lien, seeking $1,406,796.72. (Amended Objection ¶ 23.) As with D&J, the Debtor argues that Schimenti worked for HealthQuarters, *not* for the Debtor (Amended Objection ¶ 25) and that the Debtor did not know about, let alone consent to, Schimenti's work (*id.* ¶ 27).

Schimenti disagrees, maintaining that the Debtor consented to its work on the Debtor's property. Like D&J, Schimenti argues that Weiss expressly consented on behalf of the Debtor to Schimenti's work, and that Weiss took affirmative steps to support improvements made by Schimenti with the understanding that the Debtor would receive a benefit from the work. (Schimenti Amended Response ¶ 5.) Schimenti sets out eight theories of ways in which the Debtor consented to Schimenti's work:

1. Weiss, as owner of the real property Schimenti worked on, provided express consent to Schimenti's work by signing the sublease with HealthQuarters and thus bound the real property "for Purposes of the Lien."
2. Alternatively, WB LLC, as lessee for a term of 15 years in possession and control of the real property, provided express consent to the work furnished by Schimenti by signing a sublease with HealthQuarters, binding the real property for purposes of the lien.
3. Alternatively, Weiss was an agent of both Member LLC and the Debtor, and provided express consent to the work furnished by Schimenti.
4. Weiss, whether categorized as (a) owner of the real property, (b) managing member of WB LLC, or (c) agent of Member LLC and the Debtor, provided express or implied consent to the work furnished by Schimenti and took affirmative steps with the expectation that both the Debtor ad WB LLC would receive a benefit.
5. The New York State court order denying the Debtor's injunction against WB LLC provided express consent for WB LLC to enter into subleases and perform any alterations.
6. Weiss and WB LLC acted with apparent authority in consenting to the work completed by Schimenti.
7. The Debtor had "at least constructive knowledge" of Schimenti's work and failed to timely object to it, and expected and did receive a benefit from it.
8. "There is no dispute that WB LLC consented to Schimenti's work, and in defense of Schimenti's NY State Court Lien foreclosure Action Debtor" and WB LLC "admitted that they should be viewed as the same entity for the purposes of Schimenti's mechanic's lien."

(ECF Doc. # 452 at 2.) Schimenti argues further that the ownership structure of Debtor and its affiliates did not follow appropriate corporate formalities and thus should not be allowed to defeat the mechanic's lien rights of creditors like Schimenti. (Schimenti Amended Response ¶ 8.)

8

The Debtor's response, essentially, is that it has been engaged in litigation with Weiss (as managing member of WB LLC) for years, and that Weiss therefore cannot act on the Debtor's behalf. (*Id.* at 3.)

### D. Ziba's Claim

Schimenti subcontracted a portion of the work for HealthQuarters out to Ziba. (Amended Objection ¶ 24.) Ziba filed a claim, purportedly secured by a mechanic's lien, against the Debtor seeking $89,216.56 for "work performed and material furnished." (*Id.* ¶ 41.) Ziba contracted directly with Schimenti as a subcontractor. (*Id.* ¶ 42.) The Debtor does not expressly articulate that its problem with Ziba's claim is that the Debtor did not consent to Ziba working on its property, but it seems likely that that is the primary basis of the Debtor's objection to Ziba's claim. The Debtor also asserts that Ziba did not perfect its lien because it served its notice under New York's mechanic's lien law on the Debtor's registered agent, and thus did not meet the requirements of New York's lien law. (*Id.* ¶ 87–88.) Finally, the Debtor argues that Ziba's claim is duplicative of (because subsumed within) Schimenti's claim and should thus be disallowed, or in the alternative, the Schimenti claim should be reduced by the amount of the Ziba claim. (ECF Doc. # 452 at 3.)

Ziba did not file an amended response, but in its initial response, Ziba explained that it initially sought payment from Schimenti, but when Schimenti failed to pay, Ziba filed a mechanic's lien against the Debtor. (ECF Doc. # 310 at 1.) Ziba further argued that it properly served its mechanic's lien on the Debtor's address listed for service of process with the New York Department of State Division of Corporations. (*Id.* at 3.) Ziba joined in Schimenti's response to the Debtor's initial objection. (*Id.* at 2.)

9

### E. Other Objections

The Debtor also objects in the alternative to the amount sought by each claimant, since they allegedly seek to recover on items that cannot properly be the subject of a mechanic's lien, such as insurance, filing costs, and lost profits. (Amended Objection ¶¶ 91–94.) Schimenti protests that it did not *willfully* exaggerate its lien amount and thus its claim should not be voided. (Schimenti Amended Response ¶¶ 100–103.) The Debtor, it should be noted, also appears to be open to simply reducing the amount of Schimenti's claim, not entirely expunging it on grounds of willful exaggeration. (Amended Objection ¶ 94.)

### F. Disputed Facts

The parties identify the following disputed facts in their joint letter:

1. The Debtor's knowledge, in 2022, of the claimants' work on the property;
2. The Debtor's consent to the claimants' work;
3. Schimenti's direct communication with Weiss or WB LLC;
4. Any conduct by Weiss or WB LLC that claimants allege was on behalf of the Debtor or as the Debtor's agent or representative;
5. The amount of Ziba's claim, if allowed; and
6. The amount of Schimenti's claim, if allowed.

(ECF Doc. # 452 at 4.)

## II.    LEGAL STANDARD

N.Y. Lien Law § 3 provides that a "contractor . . . who performs labor or furnishes materials for the improvement of real property **with the consent or at the request of the owner thereof** . . . shall have a lien . . . upon the real property improved." (Emphasis added.) "The consent required by this section is not mere acquiescence and benefit, but some affirmative act or course of conduct establishing confirmation . . . . Such consent may be inferred from the terms of the lease and the conduct of the owner." *Harner v. Schecter*, 105 A.D.2d 932, 932, 482 N.Y.S.2d 124, 124–25 (1984). Whether the landlord consented is a question of fact.

10

A mechanic's lien attaches when the lienor files the required notice of lien with the clerk of the county where the property is located. N.Y. Lien Law § 3. To perfect a mechanic's lien in New York, a lienor must serve a copy of the notice of the lien on a property owner within five days before or thirty days after filing the notice of the lien in the office of the county clerk where the property is located. *Id*. §§ 10, 11. If the property-owner is a corporation, the lienor can do so by: (1) personally delivering the notice within the state to the president, vice-president, corporate secretary or clerk, cashier, treasurer, or a director or managing agent of the owner; (2) if no corporate officer can be found within the state, by affixing a copy of the notice of lien in a highly visible spot on the property between the hours of 9:00 a.m. and 4:00 p.m.; or (3) by delivering registered or certified mail addressed to the corporation's last known place of business. *Id*. § 11.

### III. DISCUSSION

The Court concludes that this contested matter involves disputed issues of fact and law that cannot be resolved on the record before the Court. Consequently, unless the parties can consentually resolve the disputes, an evidentiary hearing will be required following further briefing and pretrial proceedings. The Court identifies below some—not all—of the factual and legal issues that will need to be resolved. The Court expects the parties to meet and confer and agree on a briefing and hearing schedule, subject to approval of the Court.

As pointed out in the joint status letter submitted to the Court (ECF Doc. # 452), the central factual question presented is whether the Debtor consented to the Mechanic's Lien Claimants' work done on the Debtor's property. The parties clearly dispute this issue and the record presented so far offers evidence cutting in both directions. It is also not clear that the parties have presented the Court with a full record, which they will have to do at an evidentiary hearing. Some key documents appear to be missing from the record as it stands. Moreover,

11

Weiss's power to bind any LLC will depend on the language of those LLCs' operating agreements, and perhaps as to the law with respect to apparent authority; the record will have to contain a full set of operating agreements for the relevant LLCs.

Moreover, the briefs filed to date implicitly raise, but do not explicitly address, numerous salient legal questions, such as questions of agency law, New York LLC law, and corporate scienter. For example, the question of whether a member of an LLC which in turn is a member of a separate LLC can bind the latter "parent" LLC under New York LLC law is not addressed by the parties and, based on the Court's search so far, appears not to have been addressed by any court in New York.

Further complications arise when the managing/non-managing member distinction is introduced. The Court is unable, on the present record, to determine whether the Debtor consented to the claimants' work.

Smaller, discrete issues are addressed below.

### G. Perfection of Ziba's and D&J's Liens

If it is the case that Ziba mailed the notice of its mechanic's lien to the wrong location, then it is in fact unlikely that Ziba perfected its lien. To have done so, Ziba would have had to either serve a copy of the notice on one of the statutorily-specified agents of the Debtor, or posted it conspicuously on the Debtor's property, or delivered it by mail to the Debtor's last known place of business. While it appears from the documents accompanying Ziba's response that Ziba's lien attached when it filed its notice with the appropriate county clerk's office, the record does not establish whether Ziba mailed the notice to the appropriate location (it mailed the notice to 25 Robert Pitt Drive, Suite 204, Monsey, New York 10952, which the Debtor claims is not its last known place of business). (ECF Doc. # 310 at 10.) Even if Ziba mailed the notice to

the wrong address, however, this does not mean that Ziba's lien should be expunged—rather, it just means that Ziba's lien gave rise to an unsecured claim, not a secured one. The Debtor's motion to expunge Ziba's lien on this alternative theory is **DENIED.** The Court may reclassify Ziba's claim down the line, if it is not entirely expunged through this proceeding.

If the Debtor is objecting to D&J's claim on the basis that it is unperfected—which is not clear—this objection can be decided upon determination of the Debtor's last known place of business. D&J did serve its notice via certified mail on 199 Lee Ave., Suite 693, Brooklyn, NY 11211; whether this is the Debtor's last known place of business is an open question. (Claim # 2 at 7.)

### H. Exaggeration of Schimenti's Lien Amount

It is not clear from the briefing by how much the Debtor wishes to reduce Schimenti's lien. There is currently no evidence on whether Schimenti willfully exaggerated its lien. Resolution of this issue needs to await the conclusion of the evidentiary hearing. Of course, the Court must first decide whether the Debtor consented to the subcontractors' work on its property.

### IV.    CONCLUSION

For the reasons discussed above, the Reorganized Debtor's omnibus objection to the Mechanic's Lien Claimants is **DENIED WITHOUT PREJUDICE.** Counsel must meet and confer and propose a schedule for further briefing and an evidentiary hearing. Counsel will need to complete the Court's form for a joint pretrial conference order, which can be found on the Court's public website. Counsel shall submit a complete proposed schedule for further proceedings on or before 5:00 pm, October 30, 2024. The Court generally will set the final pretrial conference within two weeks after all pretrial filings are made, and will endeavor to set the case for an evidentiary hearing approximately three weeks after the final pretrial conference.

13

**IT IS SO ORDERED.**

Dated:   October 10, 2024
         New York, New York

*Martin Glenn*
_____
MARTIN GLENN
Chief United States Bankruptcy Judge