CHAPMAN AND CUTLER LLP
Michael Friedman
Eric Silvestri
1270 Avenue of the Americas
New York, New York 10020
212-655-6000
friedman@chapman.com
silvest@chapman.com

*Attorneys for the Plan Administrator as Successor to the Debtor*

| | |
|---|---|
| In re:<br><br>WYTHE BERRY FEE OWNER LLC,<br><br>                                    Debtor. | Chapter 11<br><br>Case No. 22-11340 (MG) |

### DECLARATION OF ASAF RAVID IN LIEU OF DIRECT TESTIMONY IN SUPPORT OF DEBTOR'S OMNIBUS OBJECTION TO CLAIM NOS. 2, 6, AND 7

I, Assaf Ravid, hereby declare under penalty of perjury to the best of my knowledge, information, and belief, the following in support of Debtor's Omnibus Objection to Claim Nos. 2, 6, and 7, which is submitted in lieu of my direct testimony at the evidentiary hearing currently scheduled for April 23–24, 2025:

**The All Year, the Debtor, and the Plan Administrator**

1. On March 4, 2021, I was retained as the Chief Executive Officer and Chief Restructuring Officer (the *"CRO"*) of All Year Holdings Limited (*"All Year"*).

2. On December 14, 2021, All Year filed with this Court a voluntary petition for relief under chapter 11 of the United States Code.

3. All Year operated as a holding company that, through its direct and indirect subsidiaries, focused on the development, construction, acquisition, leasing, and management of residential and commercial income producing properties in Brooklyn, New York.

4. All Year served as the sole member of YG WV LLC (*"YG WV"*), which is the managing member of Wythe Berry Member LLC (*"Member LLC"*), which is in turn the sole member of Wythe Berry Fee Owner LLC, the Debtor in this case (the *"Debtor"*).

5. In February 2017, All Year issued Series C Debentures (the "*Series C Bonds"* and the holders thereof the *"Series C Bondholders"*) in the original principal amount of NIS 617,970,000 pursuant to a Deed of Trust dated February 19, 2017 (the *"Deed of Trust"*) between All Year and Mishmeret Trust Company Ltd., solely in its capacity as Trustee for the bondholders (the *"Trustee"*).

6. In connection with the issuance of the Series C Bonds, on February 28, 2017, the Debtor executed a Guaranty of Payment (the *"Guaranty"*) in favor of Trustee with respect to the Series C Bonds.

7. On March 31, 2023, pursuant to the confirmed Third Amended Chapter 11 Plan of Reorganization of All Year Holdings Limited (the *"All Year Plan"*), I was appointed Plan Administrator of AYH Wind Down LLC, which, under the All Year Plan, became the sole member of YG WV LLC (*"YG WV"*), which is the managing member of Wythe Berry Member, LLC (*"Member LLC"*), which is the sole member of Wythe Berry Fee Owner LLC, the Debtor in this case (*"Debtor"*).

8. Following confirmation and effective date of the Fourth Amended Chapter 11 Plan of Reorganization for Wythe Berry Fee Owner (the *"Plan"*), I was appointed Plan Administrator as successor to the Debtor.

**The Debtor, Yoel Goldman, and Zelig Weiss**

9. Prior to February 2017, the William Vale Hotel Complex ("WV Complex") was owned by Wythe Berry LLC, whose members were Zelig Weiss (*"Weiss"*) and Yoel Goldman (*"Goldman"*).

10. In February 2017, the existing mortgage on the WV Complex was refinanced through a transaction in which: (1) WB LLC transferred ownership of the WV Complex to Debtor, (2) All Year issued bonds on the Tel Aviv Stock Exchange; and (3) All Year loaned the proceeds from the bond issuance to the Debtor, which loan was secured by a mortgage on the WV Complex.

11. Thereafter, Debtor held title to the WV Complex.

12. Throughout Debtor's ownership of the WV Complex, Debtor was solely owned and managed by Member LLC, which was in turned solely managed by YG WV.

13. Member LLC has two owners, Weiss and YG WV. As explained above, YG WV is wholly owned by AYH Wind Down LLC, for which I serve as Plan Administrator.

14. On February 28, 2017, the Debtor, as lessor, and Wythe Berry LLC, as lessee entered into a Lease Agreement (the *"Ground Lease"*) for the WV Complex. Weiss and Goldman were the sole members and owners of Wythe Berry LLC. Weiss is the managing member of Wythe Berry LLC and is responsible for all business decisions made by Wythe Berry LLC.

15. I do not have, and at no time ever had, under any of the roles I occupy in the corporate structure described above, any control, ownership, or interest in Wythe Berry LLC.

16. The Ground Lease required that Wythe Berry LLC pay the Debtor annual rent in the amount of $15 million, payable in two installments of $7.5 million on February 1 and August 1. The Ground Lease also entitled the Debtor to (1) have access to Wythe Berry's books and records; and (2) receive financial information and tax returns about the operations of the William Vale Hotel, on a monthly, quarterly, and annual basis.

**Wythe Berry Defaults on the Ground Lease and Protracted Lawsuits Ensue:**

17. On February 1, 2021, Wythe Berry LLC breached the Ground Lease when it failed to make a $7.5 million rent payment when due. On February 11, 2021 the Debtor advised Wythe Berry

LLC that rent was due and requested that it provide the financial reporting required under the Ground Lease.

18. At the time, both Wythe Berry LLC as well as affiliated entities involved in the operation of the William Vale Hotel, were not satisfying their financial reporting obligations such that the Debtor was without any insight into the then-existing financial condition or operations of the William Vale Hotel.

19. On April 16, 2021, the Trustee served a Notice of Events of Default; Reservation of Rights on the Debtor, which accelerated all obligations thereunder. On the same day, Trustee made a demand on the Debtor under its guaranty obligations.

20. On May 5, 2021, the Debtor served a Notice of Default on Wythe Berry LLC, advising them that Wythe Berry LLC was in default of its obligations to (1) pay $7.5 million in rent due on February 1, 2021; and (2) provide the Debtor with the financial reporting due under the Ground Lease.

21. On May 20, 2021, the Debtor served a Notice of Cancellation and Termination of the Ground Lease on Wythe Berry LLC. As discussed in further detail below, this Court would eventually determine that the May 20, 2021 Notice of Cancellation and Termination effectively terminated the Ground Lease on that day.

22. On June 11, 2021, the Debtor commenced an action (the *"State Court Action"*) against Wythe Berry LLC and others in the Supreme Court, Kings County (the *"State Court"*), seeking money damages for unpaid rent by Wythe Berry LLC and seeking to enjoin Wythe Berry LLC form entering into new subleases or allowing any further alterations of the Property in August of 2021.

23. Additionally, in the State Court Action, the Debtor also filed an application for an order directing Wythe Berry LLC to immediately produce all books, records, and financial information concerning the William Vale Hotel that that Wythe Berry LLC was required to provide to the Debtor under the Ground Lease.

24. Wythe Berry LLC did not make a $7.5 million payment to the Debtor on August 1, 2021, nor did it provide the financial and operating information demanded by the Debtor.

25. On December 6, 2021, the State Court entered an order directing Wythe Berry LLC to make semi-annual use-and-occupancy payments of $7.5 million to the Debtor starting February 1, 2022. The order also granted the Debtor's application for expedited discovery of the William Vale Hotel's books, records, and financial information.

26. In an order dated January 13, 2022, the State Court directed Weiss-affiliated entities that Weiss used to manage and operate the hotel, namely The William Vale Hotel, LLC, The William Vale FNB, LLC, North 12 Parking LLC, and Espresso Hospitality Management, LLC, to produce documents responsive to subpoenas issued by the Debtor in an effort to gain insight into the financial health and operations of the William Vale Hotel.

27. The State Court eventually entered a contempt order for failing to comply with the obligations of the order entered on September 30, 2022.

28. After early 2021 and during ongoing and contested litigation, the Debtor did not receive any information to fulfill his financial reporting obligation under the Ground Lease.

29. From its inception and throughout 2022, the Debtor prosecuted the State Court Action against Wythe Berry LLC seeking, among other things, to eject Wythe Berry LLC.

30. On October 6, 2022, the Trustee, Klirmark Opportunity Fund III L.P., Yelin Lapidot Provident Funds Management Ltd, and the Phoenix Insurance Company Limited filed an involuntary bankruptcy petition in this Court against the Debtor.

31. On October 27, 2022, the Debtor answered the Involuntary Petition without consenting or objecting (ECF No. 9). Also on October 27, 2022, Weiss filed a Motion (I) to Dismiss Involuntary Petition and (II) to the Extent Necessary, to Intervene as an Interested Entity (the *"Weiss Motion"* ECF No. 12).

32. On January 17, 2023, this Court held an evidentiary hearing on the Weiss Motion, at the conclusion of which the Court indicated it would deny the Weiss Motion and enter an Order for Relief against the Debtor, which it eventually did on January 18, 2023 (ECF No. 56).

**Mechanic's Liens are filed, which were a complete surprise to the Debtor**

33. On or about March 6, 2023, D and J Industries LLC (*"D and J"*) filed a Claim, asserting a claim in the amount of $90,514.12, purportedly secured by a mechanic's lien on real estate. (*"D and J Claim"*). On or about April 28, 2023, Schimenti Construction Company LLC (*"Schimenti"*) filed a Claim, asserting a claim for "General Construction Contract" in the amount of $1,406,796.72. (*"Schimenti Claim"*). On or about May 1, 2023, Ziba Construction Inc. dba 212Carpet (*"Ziba"*) filed a Claim asserting a claim for "work performed and material furnished" in the amount of $89,217.56. (*"Ziba Claim"*) (each of D and J, Schimenti, and Ziba a *"Claimant"* and together the *"Claimants"*) (each of the D and J Claim, the Schimenti Claim, and the Ziba Claim a *"Claim"* and together the *"Claims"*).

34. The Claims arose from work that the Claimants had performed pursuant to a contract with a now-former subtenant at the WV Complex that was completely unknown to the Debtor at the

time. Specifically, the Claimants, according to their filings, worked for HealthQuarters, Inc. (*"HealthQuarters"*) under a between HealthQuarters and Wythe Berry LLC.

35. This sublease was a surprise as well. In fact, the Debtor had made a record in then-pending state court litigation that Debtor was opposed to (i) Wythe Berry LLC entering into any new subleases at the Property as of August 19, 2021, and (ii) any work being performed at the property. This was because the Debtor had earlier served a Notice of Cancellation and Termination of the Ground Lease on May 20, 2021.

36. The Debtor did not execute a lease or any other contract with HealthQuarters, Inc.

37. The Debtor did not contract with any Claimants in any way.

38. The Debtor had no knowledge of any aspect of the Mechanic's Lien Claimants' contracts or the work they allegedly performed until the mechanic's lien notices were filed.

39. As explained above, during the time the Claimants allegedly performed their services, the Debtor had no visibility into the Property due to the then-ongoing and hotly contested litigation between the Debtor and Wythe Berry LLC.

40. This lack of any insight into the finances and operations of the William Vale Hotel persisted even in the face of contempt findings by the State Court. Neither Weiss nor his affiliated entities ever produced documents responsive to the State Court's orders or the subpoenas the Debtor issued in the State Court litigation.

41. Thus, the Debtor had zero visibility into the operations, finances, or goings-on at the property at any time before the Claimants' mechanic's liens were filed. In fact, the Debtor did not gain possession of the WV Complex until the Bankruptcy Court's summary judgment decision in the adversary case against Wythe Berry LLC holding, among other things, that the Ground Lease between the Debtor and Wythe Berry LLC was effectively terminated.

42. Prior to the filing of the Mechanic's Liens, neither Wythe Berry LLC nor Weiss ever discussed the existence of a sublease between Wythe Berry LLC and HealthQuarters with All Year, YG WV, AYH Wind Down LLC or the Debtor.

43. In fact, during that time, I do not recall Weiss ever communicating with me regarding any subleases or mechanic's liens.  Nor did the Debtor ever communicate with and was not contacted by any of the Claimants at any time before they filed their notices of mechanic's liens.

44. The Debtor never communicated with nor was it contacted by HealthQuarters either.

45. I do not recall Weiss ever discussing any subleases with me during this time, nor did he ever inform me of the Claimants' work and he never sought the Debtor's consent for any such work.

46. Prior to the filing of the Mechanic's Lien, the Debtor was never given a copy of any contract between HealthQuarters and any of the Claimants.

47. Neither Wythe Berry LLC nor Weiss was ever authorized to act on behalf of Debtor, or on behalf of Wythe Berry Member LLC in its capacity as sole member of the Debtor.  That authority rests with me as the Plan Administrator for AYH Wind Down LLC, which is the sole member of YG WV, which is the managing member of Member LLC, which is in turn the sole member of the Debtor.

48. Weiss had no role in managing the Debtor and made no decisions with respect to the operations or the business of the Debtor.

Dated April 16, 2025



_____
Assaf Ravid