CHAPMAN AND CUTLER LLP
Michael Friedman
Eric Silvestri
1270 Avenue of the Americas
New York, New York 10020
212-655-6000
friedman@chapman.com
silvest@chapman.com

*Attorneys for the Plan Administrator as Successor to the Debtor*

| | |
|---|---|
| In re: | Chapter 11 |
| WYTHE BERRY FEE OWNER LLC, | Case No. 22-11340 (MG) |
| Debtor.[1] | |

### PLAN ADMINISTRATOR'S POST-HEARING BRIEF

TO:    HONORABLE MARTIN GLENN,
       CHIEF UNITED STATES BANKRUPTCY JUDGE:

Asaf Ravid, as Plan Administrator (*"Plan Administrator"*),[2] as successor to the Debtor, Wythe Berry Fee Owner LLC (*"Fee Owner"* or the *"Debtor"*), in the above-captioned chapter 11 case (the *"Chapter 11 Case"*), by and through its counsel, Chapman and Cutler LLP, hereby submits its Post-Hearing Brief in the above-captioned matter.

---

[1]    The Debtor can be contacted through counsel. The last four digits of the Debtor's Federal Tax Id. No. are 9776.

[2]    Between the filing of the Debtor's original Omnibus Objection and the filing of the Amended Omnibus Objection, the Debtor's Fourth Amended Plan of Reorganization (ECF No. 365) (the *"Plan"*) was confirmed. *See* ECF No. 370–71 (approving the Plan). Under the Plan, the Plan Administrator was vested with the authority to act on behalf of the Debtor with regard to Claims Nos. 2, 5, 6, and 7. *See* Plan §§ 5.3, 7.1, 7.2.

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

FACTUAL BACKGROUND ...............................................................................................2

LEGAL PRINCIPLES AND AUTHORITIES .....................................................................2

I.    CLAIMANTS HAVE NOT CARRIED THEIR BURDEN TO SHOW THE
EXISTENCE OF VALID LIENS AS AGAINST THE DEBTOR .........................................2

    A.    It is Undisputed that the Debtor is the Owner of the Property
but that Claimants Did Not Contract With the Debtor ...............................3

    B.    Claimants Did Not Show That Weiss Was the "Owner" of
the Property ...............................................................................................4

    C.    Claimants Did Not Show That Wythe Berry LLC Was the
"Owner" of the Property ...........................................................................5

    D.    Claimants Did Not Show That Weiss Was an Agent of
Debtor or Member LLC Who Could Have Consented to the
Work on Behalf of Debtor .........................................................................6

    E.    Claimants Did Not Show That the Debtor Affirmatively
Acquiesced to Claimants' Work ..............................................................10

II.    THE CLAIMS MUST BE DISALLOWED AND/OR REDUCED BECAUSE THE
MECHANIC'S LIEN CLAIMANTS INCLUDED ITEMS THAT CANNOT BE
THE SUBJECT OF A MECHANIC'S LIEN ..................................................................12

CONCLUSION ...............................................................................................................13

# TABLE OF AUTHORITIES

PAGE

**Cases**

*Bryan's Quality Plus, LLC v. Dorime*, 977 N.Y.S.2d 376 (2d Dept. 2013)................................2, 3
*Dinaco, Inc. v. Time Warner, Inc.*, 346 F.3d 64 (2d Cir. 2003) ..........................................6
*Eisenson Elec. Serv. Co. v. Wien*, 219 N.Y.S.2d 736 (N.Y. Sup. Ct. 1961) ................................11
*Elliott-Williams Co., Inc. v. Impromptu Gourmet, Inc.*, 813 N.Y.S.2d 778 (2d Dept 2006) ........10
*FDIC v. Providence College*, 115 F.3d 136 (2d Cir. 1997) ..............................................8
*Ferrara v. Peaches Café*, 32 N.Y.3d 348 (2018) ......................................................10
*Ford v. Unity Hosp.*, 32 N.Y.2d 464 (1973)........................................................8, 9, 10
*GPK 31-19 LLC v. L&L Const. Dev. Inc.*, No. 650533/2017, 2020 WL 1972234 (N.Y. Sup. Ct. Apr. 23, 2020)......................................................................................12
*Hallock v. State*, 64 N.Y.2d 224 (1984) ............................................................8, 10
*Icdia Corp. v. Visaggi*, 24 N.Y.S.3d 349 (2d Dept. 2016) ..............................................3
*In re John J. O'Rourke, Inc.*, 273 N.Y.S. 1020 (N.Y. Sup. Ct. Feb. 24, 1934)...........................12
*In re Reifler*, 2023 WL 5510233, No. 22-CV-10201 (S.D.N.Y. Aug. 25, 2023)...........................5
*Newman v. Capitol Life Ins. Co.*, 45 F.Supp.3d 376 (S.D.N.Y. 2014)..................................9, 10
*Paul T. Freund Corp. v. Commonwealth Packing Co.*, 288 F. Supp. 2d 357 (W.D.N.Y. 2003) ....6
*Rice v. Culver*, 172 N.Y. 60 (1902)................................................................10
*Schwartz v. WFG Nat'l Title Ins. Co.*, 144 N.Y.S.3d 51 (2d Dept 2021) ..................................7
*Sherrod v. Mount Sinai St. Luke's*, 168 N.Y.S.3d 95 (2d Dept 2022)..................................1, 9
*Standard Funding Corp. v. Lewitt*, 656 N.Y.S.2d 188 (1997) ..........................................9, 10
*Tech Heating and Mechanical, Inc. v. First Downstream Serv. Corp.*, 481 N.Y.S.2d 201 (N.Y. Sup. Ct. 1984)...............................................................................5
*Travelers' Ins. Co. v. Village of Ilion*, 213 N.Y.S. 206 (N.Y. Sup. Ct. Dec. 28, 1925) ...............12
*Tri-North Builders Inc. v. Di Donna*, 629 N.Y.S.2d 850 (3d Dept 1995)..................................10
*Vardon, Inc. v. Suga Dev., LLC*, 829 N.Y.S.2d 585 (2d Dept 2007) ....................................10
*Zimmerman v. Carlson*, 741 N.Y.S.2d 118 (N.Y. 2d Dept 2002) ......................................10

**Statutes**

6 DEL. CODE § 18-407 ..............................................................................7
6 DEL. CODE § 18-701 ..............................................................................5
76A NEW YORK JURISPRUDENCE 2d § 3 ..............................................................12
*Cook v. Mass. Mut. Life Ins. Co.*, 64 N.Y.S.3d 812 (4th Dept 2017)..................................9, 10
NY LIEN LAW ..................................................................................2, 3, 12

**INTRODUCTION**

This case concerns two mechanic's lien claims for work that the Debtor—the property owner—knew nothing about and to which it never consented.  Under the New York Lien Law, when an owner does not ***affirmatively*** consent to work performed on its property, no valid mechanic's lien can be proven as enforceable against that owner.  This is plainly the case here.

Specifically, all of the evidence presented at the April 23, 2025 evidentiary hearing (the "*Hearing*"), conclusively showed that: (1) claimants Schimenti Construction Company LLC ("*Schimenti*") and D and J Industries LLC ("*D and J*") (together, the "*Claimants*") never communicated at any time and in any manner with the Debtor; (2) Claimants almost exclusively dealt with their own customer, the sub-lessee HealthQuarters, Inc. ("*HealthQuarters*");  (3) Debtor never affirmatively consented in any way to any of the Claimants' work; (4) Zelig Weiss ("*Weiss*") was never the agent of the Debtor and never believed himself to be the agent of the Debtor; (5) Debtor never indicated to any Claimant, in any way, that Weiss had any authority whatsoever to bind Debtor; and (6) Claimants never bothered to check or verify that the persons with whom they were dealing were the actual owners.

As New York courts have explained, when contractors, like Claimants, fail to perform necessary diligence, they "enter[] into the contract at [their] own peril."  *Sherrod v. Mount Sinai St. Luke's*, 168 N.Y.S.3d 95, 102 (2d Dept 2022). In other words, when construction firms enter into million-dollar contracts for services but decline to confirm or even ask whether their counterparties have the right to order the work, they do so at their own risk.  Here, the Claimants failed to perform any diligence, and that risk was realized, at least as against an innocent property owner.  Their claims should be disallowed as they have failed to carry their burden to show that their alleged mechanics' liens were valid.

### FACTUAL BACKGROUND

Rather than restating this matter's factual background, Debtor instead hereby incorporates its Prehearing Brief (ECF No. 468) and all of its other pleadings by reference. All capitalized terms not otherwise defined herein have the same meanings as in the Debtors' Prehearing Brief.

### LEGAL PRINCIPLES AND AUTHORITIES

### I.    CLAIMANTS HAVE NOT CARRIED THEIR BURDEN TO SHOW THE EXISTENCE OF VALID LIENS AS AGAINST THE DEBTOR

1.      Claimants' claims are governed by the New York Lien Law, which states, in relevant part, as follows:

> A contractor, subcontractor, laborer, materialman … who performs labor or furnishes materials for the improvement of real property with the consent or at the request of the owner thereof, or of his agent, contractor or subcontractor, and any trust fund to which benefits and wage supplements are due or payable for the benefit of such laborers, shall have a lien for the principal and interest, of the value, or the agreed price, of such labor, including benefits and wage supplements due or payable for the benefit of any laborer, or materials upon the real property improved or to be improved and upon such improvement, from the time of filing a notice of such lien as prescribed in this chapter…. Within the meaning of the provisions of this chapter, materials actually manufactured for but not delivered to the real property, shall also be deemed to be materials furnished.

NY LIEN LAW § 3.

2.      Under New York law, each Claimant has the burden to present "evidentiary facts showing the existence of a valid lien . . . ." *Bryan's Quality Plus, LLC v. Dorime*, 977 N.Y.S.2d 376, 377 (2d Dept. 2013).

3.      As the Court noted in its Objection Order, Claimants (primarily Schimenti) have put forth a mishmash of theories under which they allege their mechanics' liens legally bind the Debtor even though none of Claimants contracted with the Debtor. (ECF No. 453).

4.      In its Prehearing Brief, Debtor detailed how each of these theories must fail as a matter of law.

5.      At the Hearing itself, and notwithstanding the glaring legal deficiencies of their arguments, Claimants completely failed to put forth <u>any</u> evidentiary facts to support <u>any</u> of their theories.  Rather, <u>all</u> of the evidence presented conclusively disproved each of their various theories. Thus, as a matter of law, each of the Claimants failed to carry to their burden to establish the existence of valid liens against Debtor.  *See Bryan's Quality Plus, LLC,* 977 N.Y.S.2d at 377; *Icdia Corp. v. Visaggi*, 24 N.Y.S.3d 349, 351 (2d Dept. 2016) (noting that mechanic's lien claimant has the burden to prove that owner acquiesced to work on leased property for lien to be valid).

**A.      It is Undisputed that the Debtor is the Owner of the Property but that Claimants Did Not Contract With the Debtor**

6.      As noted above, under the New York Lien Law, a mechanic's lien is only valid against the "owner" of the subject property. *See* NY LIEN LAW §3.

7.      The term "owner" is defined as:

> Owner.  The term "owner," when used in this chapter, includes the owner in fee of real property, or of a less estate therein, a lessee for a term of years, a vendee in possession under a contract for the purchase of such real property, and all persons having any right, title or interest in such real property, which may be sold under an execution in pursuance of the provisions of statutes relating to the enforcement of liens of judgment, and all persons having any right or franchise granted by a public corporation to use the streets and public places thereof, and any right, title or interest in and to such franchise.  The purchaser of real property at a statutory or judicial sale shall be deemed the owner thereof from the time of such sale. If the purchaser at such sale fails to complete the purchase, pursuant to the terms of the sale, all liens created by his consent after such sale shall be a lien on any deposit made by him and not on the real property sold.

NY LIEN LAW § 2(3).

8.      It is undisputed that Debtor was the fee-simple owner of the Property.  *See In re Wythe Berry Fee Owner LLC*, No. 22-11340 (MG), 2023 WL 2483427 (Bankr. S.D.N.Y. Mar. 13, 2023) ("Fee Owner is the owner of the William Vale Hotel."); *In re Wythe Berry Fee Owner LLC*, No. 22-11340 (MG), 2024 WL 2767121, at *1 (Bankr. S.D.N.Y. May 29, 2024) ("Wythe Berry Fee Owner LLC … is the owner of a commercial real property complex located at 55 Wythe Avenue, Brooklyn, NY").  It was the Debtor who sold the Property as part of the Plan. Weiss had no say in that sale.  *In re Wythe Berry Fee Owner LLC*, No. 22-11340 (MG), 2024 WL 2767121, at *3 (Bankr. S.D.N.Y. May 29, 2024); Declaration of Asaf Ravid ("*Ravid Dec*") at ¶¶ 11 (ECF No. 476); Declaration of Zelig Weiss ("*Weiss Dec*"), ¶4 (ECF No. 477); Hearing Transcript, 141:22-142:4, attached hereto as Exhibit 1.

9.      It is also undisputed that the contracts underlying the alleged mechanic's liens in this matter were not with Debtor, but rather with Healthquarters, a sublessee.  *See* Hearing Exhibit DX1; Hearing Transcript, 138:13-139:2; 141:19-21.

10.      Accordingly, as an initial matter, it is undisputed that the Debtor, the "owner" of the property under the Lien Law, did not directly request any of the work done on the property. As such, no direct valid lien has been proved against the Debtor by the Claimants.

**B.      Claimants Did Not Show That Weiss Was the "Owner" of the Property**

11.      Because they could not show that they contracted with Debtor, Claimants pursued a theory that the Debtor somehow, some way, approved their contracts with Healthquarters.  They completely failed under all of their theories, specifically as to Zelig Weiss and his role in approving various permits related to their contracts.

12.      It is undisputed that Debtor's sole member is Wythe Berry Member LLC ("*Member LLC*"), which is co-owned by Weiss and YG WV LLC ("*YG WV*"), with YG WV as the exclusive manager of Member LLC. *See* Ravid Dec. at ¶¶ 12-13.

13.     Accordingly, it cannot be disputed that Weiss and YG WV do not hold direct LLC property interests in the Debtor, as they are merely owners of the owner of the Debtor.  *See* Ravid Dec, ¶¶12-13.  As such, any interest that Weiss or YG WV has in the Debtor is a personal property interest only, and not an interest in any property held by the Debtor itself.  *See* 6 DEL. CODE § 18-701 ("A limited liability company interest is personal property.  A member has no interest in specific limited liability company property."); *In re Reifler*, 2023 WL 5510233, No. 22-CV-10201, at *7 (S.D.N.Y. Aug. 25, 2023) (stating that "the members of a Delaware LLC do not possess any legal interest in the assets of the LLC"); *Tech Heating and Mechanical, Inc. v. First Downstream Serv. Corp.*, 481 N.Y.S.2d 201, 202-03 (N.Y. Sup. Ct. 1984) (same as to LP interests).

14.     <u>At the Hearing, Claimants did not put forward any evidence contradicting any of this hornbook law.  Rather, they admitted that they did no investigation into who actually owned the property, or if Weiss was actually an owner.  *See* Hearing Transcript, 134:18-135:1; 142:5-15; 174:25-175:9 (ECF No. 482).  Instead, they focused on, and dealt with, HealthQuarters exclusively.  Hearing Transcript 148:6–24.  Therefore, Claimants did not carry their burden to show that Weiss was an "owner" under the New York Lien Law who was empowered to consent to the Claimants' contracts as the "owner" of the property.</u>

### C.     Claimants Did Not Show That Wythe Berry LLC Was the "Owner" of the Property

15.     This Court has already held and judicially declared that the Ground Lease, under which Wythe Berry LLC ("*WB LLC*") leased the property from Wythe Berry Fee Owner LLC ("*WBFO LLC*") terminated on May 20, 2021.  Specifically, it held that "the Debtor possessed the authority to terminate the [Ground] Lease" and issued a declaratory judgment and legal finding that "the [Ground] Lease was cancelled and terminated … on May 20, 2021" when the Court

granted the Debtor's motion for partial summary judgment in the Ground Lease Adversary case. *See* Debtor's Exhibit 12, at pp. 39, 41.

16.     Claimants' contracts with HealthQuarters and its work all took place in 2022, a year **after** the Ground Lease was ruled terminated per this Court's order. *See* Hearing Exhibits DX1, DX2, and DX3.  Thus, WB LLC was not a lessee for a term of years at the time Claimants have alleged it consented to the work, and no evidence was presented at the hearing to the contrary.

17.     To argue otherwise constitutes a collateral attack on the Court's Adversary Summary Judgment Order, and there was no evidence presented as to why this Court should contradict its prior decision.  Therefore, Claimants did not carry their burden to show that WB LLC was an "owner" under the New York Lien Law who was empowered to consent to the Claimants' contracts as the "owner" of the property.

**D.     Claimants Did Not Show That Weiss Was an Agent of Debtor or Member LLC Who Could Have Consented to the Work on Behalf of Debtor**

(i)     Weiss Had No Actual Authority to Bind the Debtor

18.     Under New York law, actual authority "may be express or implied, but in either case it exists only where the **agent** may reasonably infer from the **words or conduct** of the **principal** that the principal has consented to the agent's performance of a particular act." *Dinaco, Inc. v. Time Warner, Inc.*, 346 F.3d 64, 68 (2d Cir. 2003) (emphasis in original) (citing the Restatement (Second) of Agency in interpreting New York law).

19.     As both express and implied authority arise from the actions of the principal, the elements of each are the same under New York law: "(1) the manifestation by the principal that the agent shall act for him, (2) the agent's acceptance of the undertaking and (3) the understanding of the parties that the principal is to be in control of the undertaking."  *Paul T. Freund Corp. v. Commonwealth Packing Co.*, 288 F. Supp. 2d 357, 373 (W.D.N.Y. 2003).

20.     These must be "direct manifestations from the principal to the agent, and the extent of the agent's actual authority is interpreted in the light of all the circumstances attending these manifestations, including the customs of business, the subject matter, any formal agreement between the parties, and the facts of which both parties are aware." *Schwartz v. WFG Nat'l Title Ins. Co.*, 144 N.Y.S.3d 51, 53 (2d Dept 2021).

21.     Management of Debtor is vested in the manager as described in the LLC agreement, and any delegation of such management authority is also controlled by the terms of the LLC agreement. *See* 6 DEL. CODE §§ 18-402, § 18-407.

22.     The Debtor LLC Agreement is crystal clear that the only entity or individual empowered to act as agent for the Debtor is Member LLC, and Weiss was specifically not empowered to act as an agent for Debtor. *See* Hearing Exhibit PX 11, at §§ 3.1, 5.1. Moreover, the Debtor took steps in the Ground Lease itself to specifically limit the ability of Weiss or WB LLC to alter the property. Under Section 6.2 of the Ground Lease the Debtor's consent was required for any "Material Alteration," which was defined as any alteration in excess of $500,000. *See* Debtor's Exhibit 4, Section 6.2.

23.     The other evidence presented at the Hearing was just as clear as to Weiss' complete lack of authority to bind Debtor. Debtor never delegated any authority to Weiss or WB LLC. *See* Hearing Transcript, 61-15:20. Weiss was never an agent of the Debtor and never thought he was an agent of the Debtor. *See id.*, 119:4:14; Ravid Dec, ¶47; Weiss Dec ¶¶3, 14-16. Debtor never made any direct or indirect manifestations to any of the Claimants that Weiss had any authority to manage or to act as its agent, because Claimants never communicated with Debtor in any way about anything. *See id.*, pp. 169:4-18; 174:5-175:6; Ravid Dec, ¶43.

24.     As such, Claimants did not carry their burden to show that Weiss was ever vested by Debtor with any actual authority to execute any contracts with Claimants.

(ii)    Weiss Had No Apparent Authority to Bind the Debtor

25.    Under New York law, apparent authority consists of two elements: (1) a manifestation by the principal that the agent has authority and (2) reasonable reliance on that manifestation by the person dealing with the agent.  *See FDIC v. Providence College*, 115 F.3d 136, 140 (2d Cir. 1997).  As the New York Court of Appeals has detailed, the key to the creation of any apparent authority **is the actions of the principal, not the agent:**

> The mere creation of an agency for some purpose does not automatically invest the agent with "apparent authority" to bind the principal without limitation.  An agent's power to bind his principal is coextensive with the principal's grant of authority.  One who deals with an agent does so at his peril, and must make the necessary effort to discover the actual scope of authority.  Upon failure to properly determine the scope of authority, and in the face of damages resulting from an agent's misrepresentations, "apparent authority" is not automatically available to the injured third party to bind the principal.  Rather, the existence of "apparent authority" depends upon a factual showing that the third party relied upon the misrepresentations of the agent because of some misleading conduct on the part of the principal—not the agent.  As one treatise on New York law states: "The very basis of the doctrine of apparent authority indicates that the principal can be held liable under the doctrine only where he was responsible for the appearance of authority in the agent to conduct the transaction in question.  The apparent authority for which the principal may be held liable must be traceable to him; it cannot be established by the unauthorized acts, representations or conduct of the agent."

*Ford v. Unity Hosp.*, 32 N.Y.2d 464, 472–73 (1973) (citations omitted) *See also Hallock v. State*, 64 N.Y.2d 224, 231 (1984) ("Essential to the creation of apparent authority are words or conduct of the principal, communicated to a third party, that give rise to the appearance and belief that the agent possesses authority to enter into a transaction.  The agent cannot by his own acts imbue himself with apparently authority.").

26.    As with express and implied authority, "[i]t is the conduct of the principal that is relevant in determining whether apparent authority exists."  *Cook v. Mass. Mut. Life Ins. Co.*,

64 N.Y.S.3d 812, 814 (4th Dept 2017) (emphasis added). "This is true even if the agent presents himself to an unsuspecting counterparty as fully vested with his principal's authority." *See Newman v. Capitol Life Ins. Co.*, 45 F.Supp.3d 376, 379 (S.D.N.Y. 2014).

27.     Accordingly, when the principal engages in no misleading conduct with the third party, then the third party cannot, as a matter of law, rely on any acts or representations by the agent to establish any reasonable belief in that agent's apparent authority, and, as a result, enters into a contract with that agent at its own peril. *See Ford*, 32 N.Y.2d at 473 (reversing appellate court decision finding apparent authority because principal did not mislead third-party plaintiffs and "at best, the third-party plaintiffs relied upon the misrepresentations of the agent … which is an insufficient basis for reliance upon 'apparent authority.'"); *Standard Funding Corp. v. Lewitt*, 656 N.Y.S.2d 188, 191 (1997) (reversing appellate court decision and holding that third party could not rely upon representations of agent to establish apparent authority because the principal made no representations in that regard); *Sherrod v. Mount Sinai St. Luke's*, 168 N.Y.S.3d 95, 102 (2d Dept 2022) (holding that third party could not show apparent authority because it could not show that it relied on "any word or action" of the principal and the agent could not "by her own acts imbue herself with apparent authority"); *Cook*, at 1570 (finding no apparent authority and holding that "Defendant failed to inquire about the scope of the [alleged agent's] authority to bind [principal] and thus entered into the … contract at its own peril.").

28.     For the same reasons that Claimants' actual authority theories fail, their apparent authority theory fails as well. First, Claimants put forth zero evidence that the Debtor – the alleged principal and the entity whose conduct is central to this inquiry – suggested to Claimants that either Weiss or WB LLC was its agent. *See* Hearing Transcript, pp. 169:4-18; 174:5-175:6. Second, at time of the Claimants' work on the property in 2022, the alleged principal, was in the middle of a very public lawsuit against Weiss and WB LLC, the alleged agents. *See* Ravid Dec, ¶¶22-26.

29.    As Claimants acknowledge, they never communicated with the Debtor, with Member LLC, or with YG WV. *See id.* Further, they admitted that they did no investigation into who actually owned the property.  *See id.*, 134:18-135:1; 142:5-15; 174:25-175:9.   Rather, Claimants consistently relied only on *Weiss's conduct* to conclude he was the owner or agent of the owner. *See id.*, 133:10-14; 143:5-11.  However, an agent cannot create his own authority, as explained by the New York courts in *Ford*, *Cook*, *Standard Funding*, *Hallock*, *Newman*, and other cases.  As such, Claimants did not carry their burden to show that Weiss was ever vested with apparent authority by Debtor to execute any contracts with Claimants.

### E.    Claimants Did Not Show That the Debtor Affirmatively Acquiesced to Claimants' Work

30.    To assert a lien claim against the owner of real property under the New York Lien Law, the owner must either: (i) be an affirmative factor in procuring the improvement; or (ii) assent to the improvement in the expectation it will benefit from it.  *See Ferrara v. Peaches Café,* 32 N.Y.3d 348 (2018).

31.    "[M]ere passive acquiescence in or knowledge" is insufficient to meet this standard. *Id.*; *see also Vardon, Inc. v. Suga Dev., LLC*, 829 N.Y.S.2d 585, 586-87 (2d Dept 2007); *Elliott-Williams Co., Inc. v. Impromptu Gourmet, Inc.*, 813 N.Y.S.2d 778, 779-80 (2d Dept 2006). Instead, there must be "some **affirmative** act or course of conduct establishing confirmation." *Zimmerman v. Carlson*, 741 N.Y.S.2d 118, 119 (N.Y. 2d Dept 2002) (emphasis added).

32.    If there is no such affirmative act or conduct, then no lien can attach against the property and the owner. *See Rice v. Culver*, 172 N.Y. 60 (1902) (holding that a lessor was not liable under a mechanic's lien for improvements made by a lessee where there was no evidence that the lessor exercised any control or supervision over the work, or that the work was in any way of benefit to the lessor); *Tri-North Builders Inc. v. Di Donna*, 629 N.Y.S.2d 850, 852 (3d Dept 1995) (holding that a lease agreement was not an "affirmative act" by the lessor sufficient to

convey the lessor's consent to a general contractor's work, which was required to create a valid mechanic's lien); *Eisenson Elec. Serv. Co. v. Wien*, 219 N.Y.S.2d 736, 742 (N.Y. Sup. Ct. 1961) (holding that no valid mechanic's lien was created against the non-consenting owner where claimant contractor only dealt with sublessee, even though it was a matter of public record that the sublessee was not the owner of the premises).

33. The evidence presented at the Hearing conclusively demonstrated that the Debtor never communicated with any of the Claimants or with Weiss about the Healthquarters sublease, any of the building permits, or any of the Claimants' contracts, and Weiss never told Debtor about the Healthquarters sublease. *See* Hearing Transcript, 119:24-120:1; 122:19-123:3; 128:19-21;169:4-18; 174:5-175:6; Ravid Dec, ¶¶34-45; Weiss Dec, ¶¶9-11. Rather, Debtor only learned of Claimants' contracts with HealthQuarters when Claimants filed their mechanic's lien notices. *See* Ravid Dec, ¶38.

34. During the work on the property, Claimants communicated with HealthQuarters or each other, not with Debtor. *See* Hearing Transcript, pp. 154:9-25; 169:4-18; 174:5-175:6. Further, Schimenti itself believed that Weiss was only the "landlord," as distinguished from the "owner" of the Property. *See* Hearing Exhibit DX5, at p. 2; Hearing Transcript, 163:16-164:2.

35. Debtor itself was not in communication with WB LLC or Weiss during this time because it was expending considerable resources, time, and energy to obtain any insight it could into the operations of Property, efforts that were resisted even in the face of state court contempt orders. *See* Ravid Dec, ¶¶39-41.

36. Between March 2021 and 2023, the Debtor had no visibility into the Property whatsoever due to the then-ongoing and hotly contested litigation between the Debtor and WB LLC, as managed by Weiss. *See* Ravid Dec, ¶¶39-41.

37.    In sum, there is simply zero evidence that Debtor ever made any affirmative act to acquiesce to the work done by Claimants.

38.    As such, Claimants did not meet their burden to show that Debtor consented, in any way, to the work done by Claimants on the Property, and therefore consented to the alleged liens.

## II.    THE CLAIMS MUST BE DISALLOWED AND/OR REDUCED BECAUSE THE MECHANIC'S LIEN CLAIMANTS INCLUDED ITEMS THAT CANNOT BE THE SUBJECT OF A MECHANIC'S LIEN

39.    Finally, to the extent the Claimants' claims are not otherwise disallowed, the claims must be disallowed and/or reduced to the extent they seek to recover on items that cannot properly be the subject of a mechanic's lien.

40.    The filing of a mechanic's lien under the New York Lien Law is not an adjudication of the merits of the underlying claim.  Indeed, as noted above, a lienor must perfect and pursue its claim via an action.  *See* 76A NEW YORK JURISPRUDENCE 2d § 3.

41.    It is plain that a number of items included in the claims are not lienable under the New York Lien Law.  The New York Lien Law permits the filing of liens only for labor performed or materials furnished, not other sums that may be due under a construction contract.  N.Y. LIEN LAW § 3.  Obligations other than for labor or materials are recoverable via an action against the obligor (here, HealthQuarters), often sounding in breach of contract, quantum meruit, and/or unjust enrichment.

42.    If not disallowed, the Schimenti Claim must be reduced by $99,850, consisting of $16,640 claimed for "permit filing," $27,360 for "insurance," and $55,850 for "overhead and profit."  Insurance, filing costs, and lost profits are not properly included in a mechanic's lien.  *In re John J. O'Rourke, Inc*., 273 N.Y.S. 1020 (N.Y. Sup. Ct. Feb. 24, 1934); *Travelers' Ins. Co. v. Village of Ilion*, 213 N.Y.S. 206 (N.Y. Sup. Ct. Dec. 28, 1925); *GPK 31-19 LLC v. L&L Const. Dev. Inc.*, No. 650533/2017, 2020 WL 1972234 (N.Y. Sup. Ct. Apr. 23, 2020).  To the extent any

of the claims seek payment for items other than labor performed and materials furnished, the claims must be disallowed and/or reduced to a lesser amount based on evidence adduced at the hearing.

CONCLUSION

For these reasons, and on the basis of the evidence entered at the hearing, the Debtor seeks an order granting disallowing the Claimant's claims in their entirety.

Dated:   May 28, 2025
      New York, New York

CHAPMAN AND CUTLER LLP

By: */s/ Eric Silvestri*
    Michael Friedman
    Eric Silvestri
    Joseph P. Lombardo
    1270 Avenue of the Americas
    New York, New York  10020
    212-655-6000
    friedman@chapman.com
    silvest@chapman.com

    *Attorneys for the Plan Administrator as Successor to the Debtor*